UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| | * | |
| MR. STEVEN, L.L.C. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE JOHN W. KOLWE |

* * * * * * * *

**SBN V FNBC, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RULE 2004 EXAMINATION OF DEBTOR AND RELATED PARTIES**

SBN V FNBC LLC ("SBN"), the secured creditor in this case, hereby submits this Reply Memorandum in support of its previously filed *Motion for Rule 2004 Examination of Debtor and Related Parties* [Doc. 26] (the "Motion"), to respond to the issues raised in *Mr. Steven, LLC's Limited Opposition to SBN V FNBC LLC's Motion for Rule 2004 Examination of Debtor and Related Parties* [Doc. 28], filed by Mr. Steven, LLC ("Debtor"). SBN hereby adopts and incorporates by reference its previously filed *Objection to the Interim Employment of Adams and Reese, LLP* [Doc. 16] and *Supplemental Objection to Employment of Adams and Reese, LLP* [Doc. 31], in their entirety.

**I.     Debtor is not entitled to protection under Bankruptcy Code § 107(b).**

Bankruptcy Code § 107(a)'s "directive for open access flows from the nature of the bankruptcy process—which is heavily dependent on creditor participation, and which requires full financial disclosure of debtor's affairs." *In re Barneys, Inc.*, 201 B.R. 703, 707 (Bankr. S.D.N.Y. 1996). *See generally* 11 U.S.C. § 107(a) (setting forth the general rule that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."). Bankruptcy Code § 107(b) provides an exception to the general rule set forth in § 107(a), and permits the court to "protect an entity with

respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 1107(b). "Bankruptcy Rule 9018 implements § 107; it does not expand a bankruptcy court's ability to limit access to papers filed beyond § 107 nor does not provide a separate basis for relief." *In re Anthracite Capital, Inc.*, 492 B.R. 162, 181 (Bankr. S.D.N.Y. 2013).

"The court determines whether the subject documents fall within the provisions of § 107(b)) and the appropriate protective remedy if they do." *Barneys*, 201 B.R. at 708. It is not altogether clear from Debtor's Opposition [Doc. 28] what specific type of relief Debtor is seeking pursuant to Rule 9018: a seal order, a protective order, and/or that the discovery sought not be permitted at all. Regardless of the specific type of relief sought, Debtor has failed to demonstrate that the information sought is any way proprietary and/or confidential, and failed to carry its burden to demonstrate that relief under Rule 9018 is necessary or appropriate.

 a. **<u>Debtor has failed to cite the court to specific factual and legal authority demonstrating the necessity of protection under § 107(b); this is dispositive.</u>**

*In re Anthracite*, one of the cases relied upon by Debtor, demonstrates the extraordinarily high burden that a movant must meet to warrant protection under Bankruptcy Code § 107, stating:

> Inherent in the language of § 107(b) is the requirement that the party requesting the extraordinary relief provide the court with *specific factual and legal authority demonstrating that a particular document at issue is properly classified as "confidential" or "scandalous."* See United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 150 B.R. 334, 340–41 (D. Del. 1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information).

*In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (emphasis added).

Courts do not lightly grant relief under § 107. In *Anthracite*, the Court denied the movant's request under Bankruptcy Rule 9018 and 11 U.S.C. § 107(b) to protect and seal certain documents allegedly containing confidential commercial information. *Id.* at 170. In response to Debtor's request for protection under Rule 9018, the *Anthracite* Court stated that it would need to hold an

2

evidentiary hearing at which the moving party should be prepared to go "line-by-line and provide evidence" demonstrating why the allegedly confidential material should be protected. *Id.* at 183. Similarly, in *In re Orion Pictures Corp.*, 21 F.3d 24 (2d Cir. 1994), also relied upon by Debtor, a seal order issued only upon (1) agreement of the parties, and (2) following an *in camera* inspection of all of the subject documents by the court. *Id.* at 27. Debtor's Opposition demonstrates that Debtor's request for § 107 protection cannot withstand the above-described degree of legally mandated scrutiny, and Debtor has simply failed to demonstrate that the information at issue constitutes confidential commercial information worthy of the extraordinary protections provided for in § 107.

### b. Debtor has failed to carry its burden of establishing that any of the information sought to be protected is confidential.

"Commercial information has been defined as information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Orion*, 24 F.3d at 27. Debtor states in a conclusory fashion that "[s]ome of the documents requested by SNB [sic] contain confidential commercial information."[1] It states that "[i]nformation involving Debtor's third-party agreements constitutes confidential commercial information."[2] Debtor has entirely failed, however, to make a particularized showing, as required by the authorities cited in Debtor's own Opposition, that the information sought by SBN's motion is confidential, proprietary, or constitutes trade secrets entitled to protection under Rule 9018 or § 107. Debtor has failed to "provide the court with specific factual and legal authority demonstrating that a particular document at issue is properly classified as 'confidential'" as required by, *inter*

---

[1] *See* Opp. [Doc. 28], at 3.

[2] *Id.* at 4.

*alia*, *Anthracite*. Debtor likewise cites the court to no authority for, nor evidence in support of, the proposition that Debtor's contractual agreements or pricing information is proprietary in any way.

Debtor's business consists principally of the chartering of a single marine vessel, the Mr. Steven. Accordingly, the information sought by SBN predictably includes charter agreements pursuant to which the Mr. Steven operates.[3] This is not a particularly complex commercial case: Debtor owns a vessel, and that vessel may be rented for a rate which presumably must be disclosed to any inquiring party and potential customer in the ordinary course of Debtor's operations. That rate is not confidential or proprietary, nor is the identity of Debtor's customers. For instance, it is a matter of public record that the Mr. Steven has been operating on behalf of SpaceX, as has been repeatedly reported by various news agencies for some time. *See*, *e.g.*,, Amy Thompson, *Meet Mr. Steven, SpaceX's Rocket Nose-Cone-Catching Boat*, SPACE.COM, Aug. 26, 2018, https://www.space.com/41614-spacex-mr-steven-catcher-boat-up-close.html. This is not proprietary information. Similarly, Debtor's broker for the Mr. Steven, Guice Offshore, LLC, has already produced the charter agreement under which the Mr. Steven was previously operating. *See* **Exhibit A**, *Bimco Standard Bareboat Charter Agmt. between Seatran Marine, LLC and Guice Offshore, LLC*. It is ludicrous to assert, as Debtor does in its Opposition, that such agreements, providing the most basic, non-proprietary information regarding Debtor's business, are somehow protected trade secrets.

Debtor's creditors are entitled to discovery regarding whether the Mr. Steven is currently operating under one or more charter agreements; whether the expired charter agreement attached as Exhibit A was renewed; whether a charter agreement exists between Debtor and Related Entity,

---

[3] *See* Schedule A to SBN's Motion at ¶ 4.

Seatran Marine, LLC; the terms of any such agreements; the duration for any such agreements; whether the rates set forth in any such charter agreements are competitive in the industry; and whether Debtor, Mr. Miguez, and/or the Related Entities have made potentially avoidable transfers of funds over and above the amounts required to be paid pursuant to any such agreements.[4]

### c. Debtor is not entitled to a seal order.

To the extent Debtor is seeking the entry of a seal order under Rule 9018, "[t]here is a strong presumption and public policy in favor of public access to court records." *In re Anthracite Capital, Inc.*, 492 B.R. 162, 170 (Bankr. S.D.N.Y. 2013). Indeed, Bankruptcy Code § 107 "codifies the public's common law right to inspect and copy judicial records and creates a presumption that all documents filed in a bankruptcy case are accessible to the public and subject to examination by the public at reasonable times without charge." *Id.* at 170 (citations omitted). Debtor has simply failed to overcome this jurisprudentially and statutorily established presumption which, as a matter of public policy, errs on the side of openness and transparency of bankruptcy proceedings.

### d. The authorities cited in Debtor's Opposition do not support Debtor's position.

The remaining authorities cited by Debtor in support of its Opposition are not persuasive. For instance, Debtor cites *In re Cousins Barricades & Metal Products, Inc.*, No. 99-2035, 2000 WL 245860 (E.D. La. Mar. 2, 2000) in support of its opposition, asserting that the court therein "modified the examination order to exclude competitors from the exam[.]"[5] This is demonstrably incorrect.[6] However, while SBN believes there is no legal basis for such relief, SBN has no

---

[4] Capitalized terms shall have the meaning set forth in the Motion, unless otherwise herein defined.

[5] Opp. [Doc. 28], at 5.

[6] *See Cousins*, 2000 WL 245860, at *4 (stating:

5

objection if Debtor seeks the entry of an order precluding Debtor's competitors from attending the 2004 examination.

Debtor also cites *In re Barneys, Inc.*, 201 B.R. 703 (Bankr. S.D.N.Y. 1996) in support of its Opposition for the proposition that pricing information "*could* constitute confidential commercial information[.]"[7] What Debtor's Opposition fails to note is that the *Barney's* court only observed that, in a hypothetical case, pricing formulae (not *prices*) "might" constitute confidential information "for retailers like [Barney's]," but, in any event, "[t]hat type of information [was] not at issue" therein. *Id.* at 709. Debtor is not a retailer like Barney's; the information sought is not pricing formulae; and, in any event, the *Barney's* court ultimately denied debtor's motion for relief under Bankruptcy Code § 107(b). There is simply no basis in fact or law for the relief requested in Debtor's Opposition.

## II. Debtor's Limited Opposition further underscores the conflicting interests of Debtor, Mr. Miguez, and the Related Entities.

As set forth in SBN's Objection [Doc. 16] and Supplemental Objection [Doc. 31] to the employment application of Adams and Reese, LLP, Debtor and numerous Related Entities are solidarily liable to SBN on the same indebtedness.[8] Likewise, Debtor's principal and guarantor,

---

The Court also *rejects* appellants position that Tamis and Friedrichs must be barred entirely from the 2004 examination because the Court does not believe that their participation would prejudice appellants per se. The Court assumes that appellants object to Mr. Shushan's participation in the 2004 examination because Mr. Shushan represents Tamis and Friedrichs. Yet, the bankruptcy court's decision to allow Mr. Shushan to participate in the examination is not unreasonable given his role in ferreting out the possibility that Inline is an alter ego of Cousins. Moreover, the bankruptcy court warned that Tamis, Friedrichs, and their attorney will "be back in here on a contempt" if they use Inline's customer list to solicit Inline's customers. Thus, the Court finds no reversible error in the bankruptcy court's decision *not* to bar Tamis and Friedrichs from the 2004 examination.

(emphasis added).

[7]     Opp. [Doc. 28], at 4 (emphasis added).

[8]     *See* Supplemental Objection [Doc. 31], at ¶ 9.

6

Steve Miguez, is also solidarily liable on the same indebtedness, and, despite the inherent conflicts of interest between Debtor, Mr. Miguez, and the Related Entities, each and every one of them, incredibly, is presently represented by the same counsel.

Debtor recently filed sworn schedules indicating that Debtor transferred in excess of $2.7 million to one of the Related Entities, Iberia Marine Service, LLC ("Iberia Marine"), immediately prior to the filing of Debtor's bankruptcy petition.[9] Iberia Marine is owned and operated by Mr. Miguez, who also owns and operates Debtor. SBN's Objection [Doc. 16] and Supplemental Objection [Doc. 31] to the employment application of Adams and Reese, LLP, noted that part of the problem with Adams and Reese, LLP's proposed simultaneous representation of Mr. Miguez, the Related Entities, and Debtor is that these are the same parties against whom the Debtor may be called to investigate or bring avoidance actions or claims. Debtor's recently filed Schedules [Doc. 32] make it abundantly clear that these investigations are going to be necessary.

SBN has requested the production of documentation demonstrating the relationship(s) between Debtor and the Related Entities,[10] and documentation demonstrating the flow of cash between and among Debtor and the Related Entities.[11] In Opposition to SBN's Motion, Debtor asserts that "any agreements Debtor may have with an entity in which it has an ownership interest would be . . . proprietary."[12] Debtor offers no authority in support of this assertion whatsoever, and Debtor's reluctance to produce basic information regarding the relationship(s) between Debtor and the Related Entities is particularly troubling under the circumstances. Debtor also asserts that

---

[9] *See* Schedules [Doc. 32], at 15.

[10] Schedule A to SBN's Motion at ¶ 7.

[11] Schedule A to SBN's Motion at ¶ 10.

[12] Opp. [Doc. 28], at 2.

7

it should not be required to produce financial information because such information may reveal "charter rates, cost basis, and other practices" which would harm Debtor's business operations.[13] In effect, Debtor transferred over $2.7 million to a Related Entity just before filing bankruptcy and now appears to want to shield from production any details regarding that, and other, insider transactions. Furthermore, in addition to the fact that Debtor cites no statutory, jurisprudential, or other authority for the proposition that financial statements or vessel rental rates are proprietary in any way, Debtor will ultimately be required to disclose this information in conjunction with its plan and disclosure statement in order to demonstrate feasibility.

SBN's Motion is reasonable in scope and seeks only the production of the most basic information regarding Debtor's business operations. Debtor's Opposition [Doc. 28], on the other hand, outrageously seeks to deny Debtor's creditors the opportunity to investigate (i) the nature of the relationship between Debtor and the numerous Related Entities which are co-obligors on the debt, (ii) the value, duration, and terms of the charter agreements between Debtor and any Related Entity and/or third-party, and (iii) whether the $2.7 million payment to Iberia Marine, and possibly other payments, gives rise to one or more avoidance actions, fraud claims and claims for breach of fiduciary duty. The relief requested in Debtor's Opposition [Doc. 28] should be denied.

### III. Conclusion

The information sought by SBN is not privileged; is not protected; does not constitute a trade secret; is not proprietary; and Debtor cites no authority and offers no evidence to the contrary. The information sought is of the type and nature customarily disclosed in a reorganization proceeding, and the disclosure of the information sought will be necessary to determine plan feasibility and investigate potential avoidances, as well as to develop a basic understanding of

---

[13] *Id.*

Debtor's routine business operations. The information sought has not been particularly guarded prior to these proceedings, as evidenced by Guice's prior disclosure of the charter agreement attached as **Exhibit A**. In addition, the fact that Debtor is opposing the requested production on behalf of Debtor *and* all the Related Entities only further underscores the still unresolved conflict issues apparent from the simultaneous representation of Debtor and the Related Entities by the same counsel.

Debtor has failed to carry its burden of demonstrating entitlement to relief under Rule 9018 and 11 U.S.C. § 107(b), and SBN respectfully requests that its Motion be granted and that Debtor's request for § 107 protection be denied.

> Respectfully submitted,
>
> CARVER, DARDEN, KORETZKY, TESSIER
> FINN, BLOSSMAN & AREAUX, L.L.C.
>
> /s/ Peter J. Segrist
> DAVID F. WAGUESPACK (#21121)
> PETER J. SEGRIST (#35314)
> 1100 Poydras Street, Suite 3100
> New Orleans, Louisiana 70163
> Telephone: (504) 585-3814
> Fax: (504) 585-3801
>
> *Counsel for SBN V FNBC LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Reply Memorandum in Support of Motion for Rule 2004 Examination of Debtor and Related Entities* has been duly served upon those parties receiving electronic notification via the Court's CM/ECF System on this 5th day of November, 2018.

> /s/ Peter J. Segrist
> PETER J. SEGRIST