**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 780-357                                                                 DIVISION: A

**SBN V FNBC LLC**

**VERSUS**

**STEVE J. MIGUEZ**

FILED:_____            _____
                                                                          **DEPUTY CLERK**

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

## MOTION FOR SUMMARY JUDGMENT

Now comes plaintiff, SBN V FNBC ("SBN"), through its undersigned counsel, and respectfully moves this court for summary judgment in its favor and against defendant, Steve J. Miguez ("Miguez"), on the grounds that, as it appears from the pleadings, the affidavit of plaintiff's Authorized Representative, Mark Kilcoin, and the documents attached thereto, and the supporting memorandum attached hereto, which SBN adopts and incorporates herein by reference, there is no genuine issue of material fact in this case, and SBN is entitled to judgment as a matter of law. This matter is not presently set for trial.

WHEREFORE, SBN V FNBC LLC prays that this Court enter final judgment in its favor finding that Defendant, Steve J. Miguez is indebted to SBN V FNBC LLC for the amount of indebtedness set forth in the attached affidavit of Mark Kilcoin, and reserving all of SBN V FNBC LLC's rights (i) against borrowers, Iberia Marine Service, LLC, and its associated entities Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Row, LLC, Lady Brandi, LLC, Lady Eve, LLC, and Mr. Steven, LLC (collectively, "IMS") and Miguez for any indebtedness not being sued upon herein; (ii) against all makers, co-makers, endorsers, guarantors, and solidary obligors of the indebtedness not being sued herein; (iii) against all makers, co-makers, endorsers, guarantors and solidary obligors of the indebtedness being sued upon herein; and (iv) against any person, firms or corporations who may be liable in whole or in part for the indebtedness.



**EXHIBIT
F**

Respectfully submitted:

CARVER DARDEN KORETZKY TESSIER
FINN BLOSSMAN & AREAUX, LLC

_____
David F. Waguespack (#21121)
Peter J. Segrist (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102
Telephone: (504) 585-3800
Facsimile: (504) 585-3801
waguespack@carverdarden.com
segrist@carverdarden.com

*Attorneys for SBN V FNBC LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served upon all counsel of record via electronic mail, facsimile, and/or United States Postal Service, properly addressed and postage prepaid, on this 16th day of October, 2018.

_____
PETER J. SEGRIST

- 2 -

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez)  Pg 2 of 84

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 780-357                                                                            DIVISION: A

**SBN V FNBC LLC**

**VERSUS**

**STEVE J. MIGUEZ**

FILED:_____          _____
                                                                  **DEPUTY CLERK**

**ORDER**

Considering the foregoing Motion for Summary Judgment;

IT IS ORDERED that defendant, Steve J. Miguez, show cause on the _____ day of

_____, 2018, at __:__ _.m., why summary judgment should not be rendered in favor

of plaintiff, SBN V FNBC, LLC.

Gretna, Louisiana, this _____ day of October, 2018.

_____
                           DISTRICT JUDGE

PLEASE SERVE:

Steve J. Miguez
Through his counsel of record:
Robin B. Cheatham
ADAMS AND REESE, LLP
4500 Poydras Street, Suite 4500
New Orleans, Louisiana 70139

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 780-357**                                                                  **DIVISION: A**

**SBN V FNBC LLC**

**VERSUS**

**STEVE J. MIGUEZ**

FILED:_____                    _____
                                                                  **DEPUTY CLERK**

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT AND**
**STATEMENT OF UNCONTESTED MATERIAL FACTS**

**May It Please the Court**:

Plaintiff, SBN V FNBC LLC ("SBN"), hereby moves for summary judgment against defendant, Steve J. Miguez ("Miguez"), on his Commercial Guaranty of those debts owed to SBN by Iberia Marine Service, LLC, and its associated entities, Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Row, LLC, Lady Brandi, LLC, Lady Eve, LLC, and Mr. Steven, LLC (collectively, "IMS") which debts remain unpaid, past due and owing. Despite the Answer filed herein by Miguez, there are no genuine issues as to any material fact, and SBN, as a matter of law, is entitled to summary judgment against Miguez for the amounts set forth in the attached Affidavit of SBN's Authorized Representative, Mark Kilcoin (the "Kilcoin Affidavit").

**I.      Factual Background**

The indebtedness of Miguez to SBN arises out of his guaranty of a loan made by First NBC Bank ("FNBC") to IMS. The loan is evidenced by that certain promissory note, dated September 28, 2015, in the original principal amount of Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($22,500,000.00) (the "Note"), with a maturity date of September 28, 2020.[1] The Note provides that if IMS fails to make payments when due, then the holder of the Note may require immediate payment of all amounts outstanding under the Note, and increase the then-existing interest rate to twenty-one percent (21%) per annum.[2] The Note further provides that its

---

[1]      Copies of the Note, and the related September 28, 2015 Business Loan Agreement, are attached as **Exhibit 1** and **Exhibit 2** to the Kilcoin Affidavit, submitted contemporaneously herewith and attached as **Exhibit A.**

[2]      See Kilcoin Affidavit, **Exhibit A**, at ¶ 6; Commercial Guaranty, **Exhibit 1** to the Kilcoin Affidavit, at p.1, 2.

holder is entitled to reasonable attorneys' fees and costs in the event of collection.[3]

**A.** **Miguez personally, absolutely, and unconditionally guaranteed the entirety of IMS' debt to SBN.**

Miguez personally guaranteed IMS' entire indebtedness.[4] The September 28, 2015 Commercial Guaranty (the "Miguez Guaranty"), signed by Miguez and previously attached as Exhibit C to SBN's Petition, provides:

> For good and valuable consideration, [Miguez] absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of [IMS], or any one or more of them, to Lender, and the performance and discharge of all [IMS'] obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay [IMS'] Indebtedness or against any collateral securing [IMS'] Indebtedness, this Guaranty or any other guaranty of the Borrower's Indebtedness . . . . Under this Guaranty, [Miguez's] liability is unlimited and [Miguez's] obligations are continuing.[5]

The Miguez Guaranty further provides that in the event that IMS defaults on its payment obligations, Miguez "unconditionally and absolutely" agrees to pay "the then unpaid amount of the Indebtedness of [IMS] . . . . Such payment or payments shall be made . . . immediately following demand by [SBN]."[6] SBN is also entitled under the Miguez Guaranty to reasonable attorneys' fees.[7] On October 18, 2017, SBN purchased the indebtedness of IMS from the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for FNBC.[8]

**B.** **IMS defaulted on its loan obligations and failed to make payments when due, and the full indebtedness is now due and owing.**

IMS failed to pay the Note in accordance with the terms thereof.[9] On January 16, 2018, SBN made demand upon IMS and Miguez notifying them that the full amount of the indebtedness was immediately due.[10] No payment was made, and SBN filed the instant suit on February 6,

---

[3]     Note, **Exhibit 1** to the Kilcoin Affidavit, p.2.

[4]     See Commercial Guaranty, **Exhibit 3** to the Kilcoin Affidavit.

[5]     Commercial Guaranty, **Exhibit 3** to the Kilcoin Affidavit, at p.1.

[6]     Id.

[7]     Id. at p.3

[8]     **Exhibit A**, Kilcoin Affidavit, at ¶ 7. See also **Exhibit 4** to the Kilcoin Affidavit, Endorsement and Allonge to Promissory Note, Oct. 18, 2017.

[9]     **Exhibit A**, Kilcoin Affidavit, at ¶ 8.

[10]    **Exhibit A**, Kilcoin Affidavit, at ¶ 8; see also **Exhibit 5** to the Kilcoin Affidavit, Ltr. from L. Sher to IMS and Miguez, Jan. 16, 2018.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

2018, seeking judgment against Miguez for unpaid principal, interest, fees, costs and attorneys' fees.[11]

Miguez thereafter embarked on a prolonged campaign for the apparent purpose of delaying these proceedings for as long as humanly possible. On March 8, 2018, Miguez filed a Motion for Extension of Time, in which he represented that he had just retained counsel—the law firm of Adams and Reese, LLP—and that he required an additional thirty (30) days in order to prepare a "proper response" to SBN's Petition.[12] That same day, the Court granted Miguez's request for an extension, and Miguez filed a Motion to Enroll Blake J. Miguez as additional counsel.[13] One month later, on April 9, 2018, Miguez filed a Second Motion for Extension of Time, asserting that Miguez's new counsel, Blake Miguez, a member of the Louisiana House of Representatives, required additional time to prepare responsive pleadings, because Blake Miguez was in legislative session through June 4, 2017.[14] Miguez requested this second extension through June 19, 2018. The Court granted Miguez's second motion for an extension over SBN's written objection.

Miguez then filed a Third Motion for Extension of Time, again asserting that Miguez required additional time to file responsive pleadings due to Blake Miguez's legislative responsibilities.[15] Notably, Robin Cheatham of Adams and Reese, not Blake Miguez, is the signatory on each of Miguez's motions for extensions of time, none of which motions explain why the eighty attorneys in Adams and Reese, LLP's New Orleans office were incapable of preparing responsive pleadings while Blake Miguez was in legislative session, nor acknowledge that Blake Miguez was already in legislative session at the time he enrolled.

On July 27, 2018, after numerous extensions, Miguez filed an Answer to SBN's Petition.[16] Miguez's Answer generally denied any liability to SBN, without setting forth any valid legal or

---

[11]    See generally **Exhibit B,** Verified Petition for Collection on Note and Guaranty, Feb. 6, 2018.

[12]    See **Exhibit C,** Motion for Extension of Time, Mar. 8, 2018.

[13]    See **Exhibit D,** Motion to Enroll Additional Counsel of Record, Mar. 8, 2018. Blake Miguez is a principal of several of the IMS entities; for instance, the Louisiana Secretary of State's website identifies Blake Miguez as the manager of Seatran Marine, LLC, and the registered agent for Iberia Marine Service, LLC.

[14]    **Exhibit E,** Second Motion for Extension of Time, Apr. 9, 2018.

[15]    **Exhibit F,** Third Motion for Extension of Time, June 19, 2018.

[16]    **Exhibit G,** Answer and Affirmative Defenses to Verified Petition for Collection on Note and Guaranty, July 27, 2018.

- 3 -

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

factual bases for said denials.[17]   Although Miguez pleaded several affirmative defenses in his Answer, Miguez failed to allege any facts to support any purported affirmative defense.

Miguez has not, and cannot, refute his liability on the Miguez Guaranty.  SBN hereby moves for summary judgment against Miguez on the grounds that, despite the Answer filed herein by Miguez, there are no genuine issues as to any material fact and SBN, as a matter of law, is entitled to summary judgment for the amount set forth in the Affidavit of Mark Kilcoin, attached hereto as **Exhibit A**.

## II.     Statement of Uncontested Material Facts

In support of this Motion, SBN offers the Affidavit of Mark Kilcoin, Authorized Representative, as evidence of the nature and the amount of the indebtedness owed to SBN by Miguez. The Kilcoin Affidavit, and the documents attached thereto, evidence the following uncontested material facts:

1.     FNBC loaned IMS the amounts listed therein.[18]

2.     IMS executed the Note sued upon herein to evidence the indebtedness.[19]

3.     SBN is now the holder and owner of the Note.[20]

4.     Miguez personally guaranteed the indebtedness of IMS.[21]

5.     Miguez is justly, truly, and legally obligated and indebted, in solido, unto SBN, with others, in the following amounts:

    a.     the principal sum of $22,018,031.52 Dollars, plus accrued interest thereon through October 16, 2018, in the amount of $1,462,326.65 Dollars, plus interest continuing to accrue on the unpaid principal balance commencing October 17, 2018, at a per diem of $3,210.96, until paid in full, plus late charges of $1,250.00 Dollars;

    b.     Plus reasonable attorneys' fees, plus all collection costs, whether owing

---

[17]     See generally id.

[18]     See **Exhibit A**, Aff. of Mark Kilcoin, at ¶¶ 3-4; see also Note, **Exhibit 1**.

[19]     See **Exhibit A**, Aff. of Mark Kilcoin, at ¶ 4; Note, **Exhibit 1.**

[20]     See **Exhibit A**, Aff. of Mark Kilcoin, at ¶¶ 4, 7.

[21]     See **Exhibit A**, Aff. of Mark Kilcoin, at ¶ 5; Commercial Guaranty, **Exhibit 3** to the Kilcoin Affidavit

- 4 -

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

now or in the future, plus all costs of this proceeding.[22]

6.      Whitney notified Miguez of the default in payment on the Note, to no avail.[23]

These facts are not genuinely disputed, and copies of the pertinent loan documents are attached to

the Affidavit of Mark Kilcoin.

These facts are not genuinely disputed.

## III.    Law and Argument

### A.      Summary Judgment Standard

Summary judgment "shall be granted if the motion, memorandum, and supporting

documents show that there is no genuine issue as to material fact and that the mover is entitled to

judgment as a matter of law."[24]   Motions for summary judgment are "favored and shall be

construed to accomplish" the "just speedy, and inexpensive determination of every action."[25]   The

Louisiana Code of Civil Procedure provides that "[s]ummary judgment is appropriate if the

pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show

that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter

of law."[26]

### B.      Louisiana courts routinely grant lenders' motions for summary judgment against personal guarantors of unpaid debts.

Louisiana courts routinely grant lenders' motions for summary judgment against

guarantors upon proof of both the existence of an underlying debt and the guarantor's signature

upon a guaranty agreement covering that debt.   For instance, in Gulf Coast Bank and Trust Co. v.

Elmore, a lender filed suit against a guarantor of a loan following the borrowers' default under the

loan agreement.[27]   The guarantor had "'absolutely and unconditionally' obligated himself

'solidarily' with the [borrowers] for their indebtedness to the [lender]."[28]   The guarantor did not

---

[22]      **Exhibit A**, Aff. of Mark Kilcoin, at ¶ 3.

[23]      **Exhibit A**, Aff. of Mark Kilcoin, at ¶ 8.

[24]      LA. CODE CIV. PROC. art. 966(A)(3).

[25]      LA. CODE CIV. PROC. art. 966(A)(2); Babin v. Winn-Dixie La., Inc., 764 So. 2d 37, at 39-40 (La. 2000).

[26]      Neighbors Fed. Credit Union, 2015-1020 (La. App. 1 Cir. 6/3/16), 196 So.3d 727, 733-34 (citations omitted).

[27]      2010-CA-1237 (La. App. 4 Cir. 1/26/11), 57 So.3d 553, 554.

[28]      Id.

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez)  Pg 8 of 84

dispute that the lender had loaned the money to the borrower, nor did he dispute that he had signed the guaranty.[29] He also did not dispute that the borrowers had failed to timely repay the loan.[30] The trial court granted summary judgment in favor of the lender and the guarantor appealed.[31] On appeal, the guarantor argued that a genuine issue of material fact existed based upon alleged negotiations between the lender and the guarantor for the resolution of the guaranteed debt through some type of compromise agreement.[32] The appellate court rejected the guarantor's arguments in their entirety, stating:

> [the guarantor's] guaranty obligation to the [lender] is the obligation of a surety. See First Nat. Bank of Crowley v. Green Garden, 387 So.2d 1070, 1073 (La. 1980). Thus, [the guarantor] is bound to the [lender] to fulfill the obligation of the [borrowers] upon their failure to do so by giving "full performance of the obligation." See La. Civil Code arts. 3035 and 3045. He must fulfill their obligation despite their bankruptcy discharge. See La. Civil Code art. 3046. The obligation arising from borrowing money is fulfilled by its repayment. See La. Civil Code art. 2907. [The guarantor] admits that his obligation was not extinguished through performance, i.e. repayment. See La. Civil Code art. 1854 ("Performance by the obligor extinguishes the obligation.").[33]

Because the lender produced documents and affidavits demonstrating that the borrower was indebted to the lender, and that the guarantor signed the guaranty, the court held that the lender was entitled to summary judgment against the guarantor.[34] See also Bank of Am., N.A. v. World of Smiles, et al., No. 16-2874, 2017 WL 750400 (E.D. La. Feb. 27, 2017) (granting summary judgment in favor of a lender where the guarantor "'absolutely, unconditionally, jointly and severally' guaranteed the payment of all indebtedness of the borrower when due"); Perfection Metal & Supply Co. v. Independent Supply of N.O., Inc., 97-800 (La. App. 5 Cir. 1/14/98), 707 So.2d 86 (granting a lender's motion for summary judgment against a guarantor and further holding that parol evidence was not admissible to show that the guarantor's liability under the guaranty agreement would be limited); Whitney Nat'l Bank of New Orleans v. Badalamenti, 499 So.2d 1267 (La. App. 4 Cir. 1986) (affirming summary judgment, supported by affidavit of an

---

29    Id.

30    Id.

31    Elmore, 57 So.3d at 555, n.2.

32    Id.

33    Id.

34    Id. at 556.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

officer of the lender, in favor of a lender and against a guarantor, and holding that it was irrelevant whether the guarantor had knowledge of specific loans made where he had executed a continuing guaranty); *DROR Int'l, LP v. Thundervision, LLC*, 11-215 (La. App. 5 Cir. 12/13/11), 81 So.3d 182 (affirming summary judgment against guarantors of unpaid invoices due plaintiff).

### C. Pursuant to the Miguez Guaranty, Miguez is absolutely, unconditionally, and solidarily liable for the entirety of IMS' debts.

"A contract of guaranty is equivalent to a contract of suretyship . . . [and c]ontracts of suretyship are subject to the same rules of interpretation as contracts in general."[35] The articles of the Louisiana Civil Code governing contractual interpretation provide that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[36] Here, the Miguez Guaranty, similar to the guaranty agreement at issue in Elmore, provides that Miguez "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of [IMS] . . . to Lender, and the performance and discharge of all [IMS'] obligations under the Note and the Related Documents."[37] Also like the Elmore guarantor, Miguez agreed that his "obligations and liability under [the Miguez Guaranty] shall be on a 'solidary' or 'joint and several' basis along with [IMS] to the same degree and extent as if [Miguez] had been and/or will be a co-borrower, co-principal obligor and/or co-maker of [IMS'] Indebtedness."[38] The Miguez Guaranty further provides that "[Miguez's] liability is unlimited and [his] obligations are continuing."[39] The plain language of the Miguez Guaranty unequivocally shows that Miguez bound himself to IMS as a solidary obligor, liable for the full amount of IMS' indebtedness to SBN.

Under the clear and unambiguous terms of the Miguez Guaranty, Miguez is obligated to pay to SBN the entirety of IMS' debt on demand. Miguez cannot dispute that he signed the Miguez Guaranty. Miguez likewise cannot dispute that IMS has failed to timely repay the Loans to SBN. Miguez is thus indebted to SBN for the entirety of IMS' outstanding indebtedness.

---

[35] *DROR Int'l, LP*, 81 So.3d at 185.

[36] LA. CIV. CODE art. 2046.

[37] Commercial Guaranty, **Exhibit 3** to the Kilcoin Affidavit, at p.1.

[38] Id.

[39] Commercial Guaranty, **Exhibit 3** to the Kilcoin Affidavit, at p.1.

**D.** **SBN has carried its burden, and summary judgment should be rendered in its favor and against Miguez.**

"When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial."[40] "If he does not so respond, summary judgment, if appropriate, shall be rendered against him."[41] "A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute."[42] "Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact."[43]

SBN has submitted evidence of IMS' indebtedness to SBN;[44] IMS' failure to pay those sums due SBN under the Note;[45] and Miguez's agreement to unconditionally guaranty those sums loaned to IMS.[46] SBN has met its burden by supporting its Motion for Summary Judgment with the Note itself, the fully executed Miguez Guaranty, the pleadings filed by the parties, and the affidavit of Mark Kilcoin.

The evidentiary burden now shifts to Miguez to produce factual support sufficient to establish the existence of a genuine issue of material fact or that SBN is not entitled to judgment as a matter of law.[47] As the Louisiana Supreme Court stated in Babin v. Winn-Dixie Louisiana, Inc., "[o]nce the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute **mandates**

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

---

[40]     *Freeman v. Fon's Pest Mgmt., Inc.*, 2016-0208 (La. App. 1 Cir. 10/2/17), 2017 WL 4369175, at *8 (citing LA. CODE CIV. PROC. art. 967(B)).

[41]     LA. CODE CIV. PROC. art. 967(B).

[42]     Chanler v. Jamestown Ins. Co., 51,320 (La. App. 2 Cir. 5/17/17), 223 So.3d 614, 623.

[43]     Freeman, 2017 WL 4369175, at *8 (citing Richard v. Liberty Mutual Ins. Co., 13-26 (La. App. 3 Cir. 10/9/13), 123 So.3d 345, 348)).

[44]     **Exhibit A**, Aff. of Mark Kilcoin, at ¶¶ 3-4; Note, **Exhibit 1**, to Kilcoin Affidavit.

[45]     **Exhibit A**, Aff. of Mark Kilcoin, at ¶ 8.

[46]     **Exhibit A**, Aff. of Mark Kilcoin, at ¶ 5; Commercial Guaranty, **Exhibit 3** to Kilcoin Affidavit.

[47]     LA. CODE CIV. PROC. arts. 966(D)(1), 967(B).

the granting of the motion."[48] In the instant case, Miguez cannot meet this burden, and summary judgment should be granted in SBN's favor.

## IV.  Conclusion

The undisputed facts are that First NBC Bank loaned in excess of $22 million to IMS; that Miguez executed the Note on behalf of each and every IMS entity; that SBN is the holder and owner of the Note and IMS's indebtedness; and that Miguez absolutely and unconditionally guaranteed the repayment of IMS' loan obligations under the Note. When IMS failed to pay SBN back, SBN made demand upon IMS and Miguez for payment, and, to date, payment has not been received. Miguez has no defense with respect to his indebtedness to SBN, and, there being no genuine issue of material fact for trial, SBN respectfully requests that this court render summary judgment in SBN's favor and against Miguez for the amount of indebtedness set forth in the attached affidavit of Mark Kilcoin. SBN further respectfully requests that this Court certify the judgment as final pursuant to Louisiana Code of Civil Procedure article 1915 because there is no just reason for delay as the judgment would resolve all of SBN's claims against Miguez.

Respectfully submitted:

CARVER DARDEN KORETZKY TESSIER
FINN BLOSSMAN & AREAUX, LLC

David F. Waguespack (#21121)
Peter J. Segrist (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102
Telephone: (504) 585-3800
Facsimile:  (504) 585-3801
waguespack@carverdarden.com
segrist@carverdarden.com

*Attorneys for SBN V FNBC LLC*

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

---

[48]  2000-0078 (La. 6/30/00), 764 So.2d 37, 40 (citing *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La. App. 3d Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-0281 (La. 3/14/97), 690 So.2d 41) (emphasis added).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served upon all counsel of record via electronic mail, facsimile, and/or United States Postal Service, properly addressed and postage prepaid, on this 16th day of October, 2018.

PETER J. SEGRIST

4836-1431-7688, v. 1

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 780-357                                                    DIVISION: A

**SBN V FNBC LLC**

**VERSUS**

**STEVE J. MIGUEZ**

FILED:_____          _____
                                                              **DEPUTY CLERK**

## <u>AFFIDAVIT OF MARK KILCOIN</u>

STATE OF COLORADO
COUNTY OF DENVER

   BEFORE ME, the undersigned authority, duly qualified and commissioned in and for the State and County aforesaid, personally came and appeared Mark Kilcoin, who, after being duly sworn, did depose and state:

1.

   Affiant is the Authorized Representative for plaintiff, SBN V FNBC LLC ("SBN"). Affiant's duties include handling loan accounts of customers with defaulted loan relationships with SBN, including the defaulted loan relationship of Iberia Marine Service, LLC, and its associated entities Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Row, LLC, Lady Brandi, LLC, Lady Eve, LLC, and Mr. Steven, LLC (collectively, "IMS"). In this capacity, Affiant has access to all of the loan files and payment history records of SBN, including the loan files and payment history of IMS. Affiant has reviewed the loan files and payment history of IMS prior to executing this Affidavit, and is therefore, duly authorized to make the following statements of fact, of which he has personal knowledge.

2.

   Steve J. Miguez is a person of the full age of majority and a resident and domiciliary of St. Mary Parish, Louisiana.


EXHIBIT
A

3.

Miguez and IMS are justly, truly, and legally obligated and indebted, *in solido*, unto SBN in the following amounts:

    a. the principal sum of $22,018,031.52 Dollars, plus accrued interest thereon through October 16, 2018, in the amount of $1,462,326.65 Dollars, plus interest continuing to accrue on the unpaid principal balance commencing October 17,2018 , at a per diem of $3,210.96, until paid in full, plus late charges of $1,250.00 Dollars;

    b. Plus reasonable attorneys' fees, plus all collection costs, whether owing now or in the future, plus all costs of this proceeding.

4.

The indebtedness of IMS and Miguez to SBN, as referred to above, arises out of a loan by First NBC Bank ("FNBC") to IMS, and the guaranty thereof by Miguez. As partial evidence of the indebtedness of Miguez to SBN, SBN is the holder and owner of, *inter alia*, the following:

    a. that certain promissory note, dated September 28, 2015, in the original principal amount of Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($22,500,000.00) (the "Note"), with a maturity date of September 28, 2020. Copies of the Note and the September 28, 2015 Business Loan Agreement executed by IMS are attached hereto as *Exhibit 1* and *Exhibit 2*, respectively.

5.

The indebtedness of IMS was personally guaranteed by Miguez pursuant to the terms of that certain Commercial Guaranty ("Miguez Guaranty") executed by Miguez on September 28, 2015, a copy of which is attached as *Exhibit 3*.

6.

The Note and the Guaranty provide that if IMS or Miguez fail to make payments when due, then the holder of the Note may accelerate the maturity dates thereof, and the entire outstanding principal amounts, accrued interest thereon, plus attorney fees, costs, and expenses shall immediately become due and payable at the option of the holder.

7.

On October 18, 2017, SBN purchased the indebtedness of IMS from the Federal Deposit

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

2

Insurance Corporation ("FDIC"), in its capacity as receiver for FNBC. A copy of the Endorsement and Allonge memorializing SBN's purchase of IMS's indebtedness is attached hereto as *Exhibit 4.*

8.

IMS failed to pay the Note in accordance with the terms thereof. Pursuant to the terms of the Note, SBN exercised its option to accelerate the maturity date of the loan. Demand for full payment of the Note was made upon IMS and Miguez by letter dated January 16, 2018, a copy of which is attached hereto as *Exhibit 5.* Despite this amicable demand, IMS and Miguez have failed to fully pay the Note. Therefore, the Note, the Miguez Guaranty, and the indebtedness represented thereby are and remain in default.

9.

All makers, *in solido* endorsers, and guarantors, including IMS and Miguez, have failed to pay the sums presently due and owing under the terms of the Note and the Guaranty, and have otherwise defaulted in the performance of their obligations to SBN.

9.

The indebtedness represented by the Note and the Miguez Guaranty is or may also be secured by other security and/or collateral documents executed by, *inter alia*, IMS, Miguez, or others in favor of FNBC or SBN. Therefore, SBN specifically reserves all of its rights: (i) against IMS and Miguez for any indebtedness not being sued upon herein; (ii) against all makers, co-makers, endorsers, guarantors, and solidary obligors of the indebtedness not being sued herein; (iii) against all makers, co-makers, endorsers, guarantors and solidary obligors of the indebtedness being sued upon herein; and (iv) against any person, firms or corporations who may be liable in whole or in part for the indebtedness.

14.

SBN further specifically reserves its rights: (i) to foreclose upon and otherwise enforce its rights in any and all other collateral securing all or part of the indebtedness being sued upon herein, and (ii) to foreclose upon and otherwise enforce its rights in any or all other collateral

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

3

securing all or part of the indebtedness not being sued upon herein.

15.

Miguez has no defense to this action, and there is no genuine issue as to material fact.

SBN V FNBC LLC

By: _____

Mark Kilcoin

SWORN TO AND SUBSCRIBED, before me,
on this 15th day of October, 2018.

_____
NOTARY PUBLIC

MELISSA J. HUNTING
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19994023997
MY COMMISSION EXPIRES AUGUST 26, 2019

4851-3330-6231, v. 1

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

4

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ
against Miguez (SBN v. Miguez) Pg 17 of 84



**AFFIDAVIT EXHIBIT 1**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $22,500,000.00 | 09-28-2015 | 09-28-2020 | 1000138770 | 4A / 055 | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC;
MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON
LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY
EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1920
AMELIA, LA 70340

Lender: FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

Principal Amount: $22,500,000.00

Date of Note: September 28, 2015

**PROMISE TO PAY.** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC ("Borrower") promise to pay to the order of FIRST NBC BANK ("Lender"), in lawful money of the United States of America the sum of Twenty-two Million Five Hundred Thousand & 00/100 Dollars (U.S. $22,500,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a multiple advance basis as provided herein, together with simple interest at the rate or rates provided herein in the "PAYMENT" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on September 28, 2015, and continuing until this Note is paid in full.

**MULTIPLE ADVANCE LOAN.** This Note contemplates multiple loan advances. Once the total amount of principal has been advanced under this Note, Borrower will not be entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments during the construction loan phase under this Note until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C.; STEVE J. MIGUEZ, Manager of MR. BLAKE LLC; STEVE J. MIGUEZ, Manager of MR. RIDGE LLC; STEVE J. MIGUEZ, Manager of LADY GLENDA LLC; STEVE J. MIGUEZ, Manager of MR. MASON LLC; STEVE J. MIGUEZ, Manager of MR. ROW LLC; STEVE J. MIGUEZ, Manager of LADY BRANDI L.L.C.; STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.; and STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balance as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph. 12 monthly consecutive interest payments, beginning October 28, 2015, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days; 47 monthly consecutive principal and interest payments in the initial amount of $149,396.47 each, beginning October 28, 2016, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days; and one principal and interest payment of $19,765,650.41 on September 28, 2020, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other amounts owed under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM CENTRAL TIME, Lender will credit Borrower's payment on the next business day.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by the original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rates stated in this Note.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, KENNER OFFICE, 3535 CHATEAU BLVD SUITE 19, KENNER, LA 70065.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10.000% of the unpaid portion of the regularly scheduled payment with a maximum of $250.00. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 3.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. Upon default, Lender declares this Note to be due under this section. If Lender declares this Note to be due, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) if the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) if the original principal amount of this Note exceeds $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

Default Under Loan Agreement. If an event of default occurs or exists under the terms of Borrower's Loan Agreement in favor of Lender.

Payment Default. Borrower fails to make any payment when due under this Note.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $25.00 or 5.000% of the dishonored item (whether check or electronic payment), whichever is greater.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** This Note is secured by Titled Collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender for a grace or cure period, and no such deferral, grace or cure period has or will be agreed to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

IBERIA MARINE SERVICE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C.

MR. BLAKE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. BLAKE LLC

MR. RIDGE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. RIDGE LLC

LADY GLENDA LLC

By: _____
STEVE J. MIGUEZ, Manager of LADY GLENDA LLC

MR. MASON LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. MASON LLC

MR. ROW LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. ROW LLC

LADY BRANDI L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY BRANDI, L.L.C.

LADY EVE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.

MR. STEVEN, LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC

LaserPro, Ver. 5.4.11.022 Copr. Oi+H USA Corporation 1997, 2010. All Rights Reserved. - LA C:\HARLAND\CFI\LPL\D20.FC TR-12732 PR-ITDV

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST

780357 Case:



## BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $22,500,000.00 | 09-28-2015 | 09-28-2020 | 1000138770 | 4A / 055 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; | Lender: | FIRST NBC BANK |
|---|---|---|---|
| | MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON | | KENNER OFFICE |
| | LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY | | 3535 CHATEAU BLVD SUITE 19 |
| | EVE, L.L.C.; and MR. STEVEN, LLC | | KENNER, LA 70065 |
| | P.O. BOX 1820 | | |
| | AMELIA, LA 70340 | | |

THIS BUSINESS LOAN AGREEMENT dated September 28, 2015, is made and executed between IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC ("Borrower"), and Borrower's Members signing below ("Members"), and FIRST NBC BANK ("Lender") on the following terms and conditions. Borrower has applied to Lender for a loan or loans or other financial accommodations, including those which may be described on any schedule or schedules attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**EFFECT OF AGREEMENT.** The following provisions pertain to the effect of this Agreement.

**Applicability.** This Agreement shall apply to any and all present and future indebtedness, contracts, agreements and undertakings by and between Borrower and Lender for any purpose whatsoever.

**Amendment to Operating Agreement.** This Agreement shall for all purposes be considered and shall have the same effect as an amendment to, and shall constitute a part of Borrower's Operating Agreement, and shall be binding upon Borrower and all of Borrower's present and future Members. To this end, all persons subsequently acquiring Membership Interests in Borrower for all purposes shall be deemed to be bound and obligated under the terms and conditions of this Agreement just as if said subsequently added Members had signed this Agreement along with the Members signing below, with the consent and agreement of such subsequently added Members to be so bound and obligated hereunder being an absolute condition precedent to such persons acquiring Membership Interests in Borrower.

**ADVANCE AUTHORITY.** The following person or persons are authorized to request advances and authorize payments during the construction loan phase under the Note until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C.; STEVE J. MIGUEZ, Manager of MR. BLAKE LLC; STEVE J. MIGUEZ, Manager of MR. RIDGE LLC; STEVE J. MIGUEZ, Manager of LADY GLENDA LLC; STEVE J. MIGUEZ, Manager of MR. MASON LLC; STEVE J. MIGUEZ, Manager of MR. ROW LLC; STEVE J. MIGUEZ, Manager of LADY BRANDI L.L.C.; STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.; and STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC.

**APPLICATION AND PURPOSE OF THE LOAN.** Borrower has applied to Lender for a Loan in the aggregate principal amount of $22,500,000.00 for the following purpose: TO REFINANCE DEBT AND MOVE RELATIONSHIP CURRENTLY WITH CAPITAL ONE BANK USED TO PURCHASE/BUILD MARINE VESSELS. THESE FUNDS WILL ALSO BE USED TO INSTALL NEW DP SYSTEMS INTO THE LADY GLENDA AND MR. ROW FOR APPROXIMATELY 3800M EACH VESSEL.

**BORROWER'S NOTE.** Lender has agreed to extend a Loan to Borrower in the amount of $22,500,000.00 subject to the terms and conditions of this Agreement and Borrower's attached Note. Borrower agrees to be bound and obligated under the terms and conditions of this Agreement and Borrower's Note.

**MULTIPLE ADVANCES.** Borrower's Note shall evidence multiple Loan Advances to be made by Lender to Borrower from time to time on a non-self replenishing basis. Loan Advances under Borrower's Note may be requested orally or in writing. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums advanced by Lender under Borrower's Loan and Note in accordance with the instructions of any officer or representative of Borrower or credited to Borrower's deposit account(s) with Lender. Borrower additionally agrees that the unpaid principal balance outstanding under Borrower's Loan and Note shall at all times be evidenced by endorsements on the Note, or alternatively, by Lender's internal records, including Lender's daily computer print-out. Borrower additionally agrees that Lender may, within its sole judgment, refuse to extend Loan Advances to Borrower whenever Lender determines or has reason to believe that any one or more of the following conditions exists or will occur: (a) the amount of the requested Loan Advance will result in Borrower exceeding its maximum Loan commitment; (b) Borrower is not complying or has not complied with Lender's procedures and additional requirements for requesting Loan Advances; (c) Borrower has failed to provide Lender with satisfactory documentation to support the requested Loan Advance; (d) Lender has reason to believe that Borrower is not presently complying, or has not complied with the terms and conditions of this Agreement, or has committed or is in the process of committing an Event of Default hereunder or under any Security Agreement directly or indirectly securing repayment of Borrower's Loan and Note; or (e) Lender deems itself to be insecure with regard to the repayment of Borrower's Loan and Note. Lender shall have no obligation or liability to Borrower or any other person or persons arising out of or in any way accruing from Lender's reasonable refusal to extend Loan Advances to Borrower for any of the reasons stated above.

**TERM.** This Agreement shall be effective as of September 28, 2015, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until September 28, 2020.

**AUTHORIZED REPRESENTATIVES.** The following provisions pertain to, among other things, the authorization of persons under this Agreement.

**Resolutions.** The Members of Borrower have met and have properly authorized certain designated persons ("Authorized Representatives") to represent Borrower and to act for and on behalf of Borrower in dealing with Lender. To the extent applicable, such Authorized Representatives are listed on a separate form of Resolution or other communication delivered to Lender.

**Managers.** Borrower's present and future Managers (to the extent that Borrower has Managers) shall always have the full and unrestricted authority to deal with Lender and shall be considered Authorized Representatives of Borrower without the additional necessity of being specifically designated as such by Borrower's Members under a formal resolution.

**Unrestricted Authority.** Notwithstanding any provision of Borrower's Operating Agreement to the contrary, or any resolution of Borrower's Members not previously communicated to Lender in writing, Borrower's Authorized Representatives (including without limitation Borrower's Managers) shall have the full and unrestricted right, power and authority to deal and to contract with Lender and to otherwise bind and unrestrict right, power and authority, from time to time, one or more times, and without the necessity of obtaining the further approval of all or a majority of Borrower's Members: (1) to obtain loans, loan advances, and to incur other indebtedness and obligations in favor of Lender in any amount and for any purpose, and either to extend to be in the ordinary course of Borrower's business; and (2) to sell, exchange, lease, mortgage, pledge, or otherwise transfer or encumber or grant Security Interests in favor of Lender as affecting any or all or substantially all of the assets and movable (personal) and immovable (real) properties of Borrower, including without limitation, entering into mortgages and security agreements that contain confessions of judgment and consents to foreclosure remedies under Louisiana executory process procedures; and (3) otherwise to enter into such agreements and to incur such obligations in favor of Lender as such Authorized Representatives may deem to be necessary and proper.

**Substitute Authorized Representatives.** Lender may continue to deal and contract with such Authorized Representatives on an unrestricted basis until such time as: (1) their authority to act for and on behalf of Borrower is formally revoked and substitute Authorized Representatives appointed, and such time and place and (2) Lender is properly notified in writing and accepts and acknowledges the same.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez) Pg 22 of 84

require the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**MULTIPLE BORROWERS.** This Agreement has been executed by multiple obligors who are referred to in this Agreement individually, collectively and interchangeably as "Borrower." Unless specifically stated to the contrary, the word "Borrower" as used in this Agreement, including without limitation all representations, warranties and covenants, shall include all Borrowers. Borrower understands and agrees that, with or without notice to any one Borrower, Lender may: (A) make one or more additional secured or unsecured loans or otherwise extend additional credit with respect to any other Borrower; (B) with respect to any other Borrower alter, compromise, renew, extend, accelerate, or otherwise change the time for repayment or other terms of any Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; (C) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (D) release, substitute, agree not to sue, or deal with any one or more of Borrower's or any other Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) determine how, when and what application of payments and credits shall be made on any Indebtedness; (F) apply such security and direct the order or manner of sale of any Collateral, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) sell, transfer, assign or grant participations in all or any part of the Loan; (H) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (I) settle or compromise any Indebtedness; and (J) subordinate the payment of all or any part of any of Borrower's Indebtedness to Lender to the payment of any liabilities which may be due Lender or others.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** IBERIA MARINE SERVICE, L.L.C. is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. IBERIA MARINE SERVICE, L.L.C. is duly authorized to transact business in all other states in which IBERIA MARINE SERVICE, L.L.C. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which IBERIA MARINE SERVICE, L.L.C. is doing business. Specifically, IBERIA MARINE SERVICE, L.L.C. is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. IBERIA MARINE SERVICE, L.L.C. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. IBERIA MARINE SERVICE, L.L.C. maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless IBERIA MARINE SERVICE, L.L.C. has designated otherwise in writing, the principal office is the office at which IBERIA MARINE SERVICE, L.L.C. keeps its books and records concerning the Collateral. IBERIA MARINE SERVICE, L.L.C. will notify Lender prior to any change in the location of IBERIA MARINE SERVICE, L.L.C.'s state of organization or any change in IBERIA MARINE SERVICE, L.L.C.'s name. IBERIA MARINE SERVICE, L.L.C. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to IBERIA MARINE SERVICE, L.L.C. and IBERIA MARINE SERVICE, L.L.C.'s business activities.

MR. BLAKE LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. BLAKE LLC is duly authorized to transact business in all other states in which MR. BLAKE LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. BLAKE LLC is doing business. Specifically, MR. BLAKE LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. BLAKE LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. BLAKE LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. BLAKE LLC has designated otherwise in writing, the principal office is the office at which MR. BLAKE LLC keeps its books and records including its records concerning the Collateral. MR. BLAKE LLC will notify Lender prior to any change in the location of MR. BLAKE LLC's state of organization or any change in MR. BLAKE LLC's name. MR. BLAKE LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. BLAKE LLC and MR. BLAKE LLC's business activities.

MR. RIDGE LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. RIDGE LLC is duly authorized to transact business in all other states in which MR. RIDGE LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. RIDGE LLC is doing business. Specifically, MR. RIDGE LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. RIDGE LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. RIDGE LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. RIDGE LLC has designated otherwise in writing, the principal office is the office at which MR. RIDGE LLC keeps its books and records including its records concerning the Collateral. MR. RIDGE LLC will notify Lender prior to any change in the location of MR. RIDGE LLC's state of organization or any change in MR. RIDGE LLC's name. MR. RIDGE LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. RIDGE LLC and MR. RIDGE LLC's business activities.

LADY GLENDA LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. LADY GLENDA LLC is duly authorized to transact business in all other states in which LADY GLENDA LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which LADY GLENDA LLC is doing business. Specifically, LADY GLENDA LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. LADY GLENDA LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. LADY GLENDA LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless LADY GLENDA LLC has designated otherwise in writing, the principal office is the office at which LADY GLENDA LLC keeps its books and records including its records concerning the Collateral. LADY GLENDA LLC will notify Lender prior to any change in the location of LADY GLENDA LLC's state of organization or any change in LADY GLENDA LLC's name. LADY GLENDA LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to LADY GLENDA LLC and LADY GLENDA LLC's business activities.

MR. MASON LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. MASON LLC is duly authorized to transact business in all other states in which MR. MASON LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. MASON LLC is doing business. Specifically, MR. MASON LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. MASON LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. MASON LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. MASON LLC has designated otherwise in writing, the principal office is the office at which MR. MASON LLC keeps its books and records including its records concerning the Collateral. MR. MASON LLC will notify Lender prior to any change in the location of MR. MASON LLC's state of organization or any change in MR. MASON LLC's name. MR. MASON LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. MASON LLC and MR. MASON LLC's business activities.

MR. ROW LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. ROW LLC is duly authorized to transact business in all other states in which MR. ROW LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. ROW LLC is doing business. Specifically, MR. ROW LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. ROW LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to

engage. MR. ROW LLC maintains an office at 3829 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. ROW LLC has designated otherwise in writing, the principal office is the office at which MR. ROW LLC keeps its books and records including its records concerning the Collateral. MR. ROW LLC will notify Lender prior to any change in the location of MR. ROW LLC's state of organization or any change in MR. ROW LLC's name. MR. ROW LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. ROW LLC and MR. ROW LLC's business activities.

LADY BRANDI L.L.C. is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. LADY BRANDI L.L.C. is duly authorized to transact business in all other states in which LADY BRANDI L.L.C. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which LADY BRANDI L.L.C. is doing business. Specifically, LADY BRANDI L.L.C. is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. LADY BRANDI L.L.C. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. LADY BRANDI L.L.C. maintains an office at 3829 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless LADY BRANDI L.L.C. has designated otherwise in writing, the principal office is the office at which LADY BRANDI L.L.C. keeps its books and records including its records concerning the Collateral. LADY BRANDI L.L.C. will notify Lender prior to any change in the location of LADY BRANDI L.L.C's state of organization or any change in LADY BRANDI L.L.C's name. LADY BRANDI L.L.C. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to LADY BRANDI L.L.C. and LADY BRANDI L.L.C.'s business activities.

LADY EVE, L.L.C. is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. LADY EVE, L.L.C. is duly authorized to transact business in all other states in which LADY EVE, L.L.C. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which LADY EVE, L.L.C. is doing business. Specifically, LADY EVE, L.L.C. is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. LADY EVE, L.L.C. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. LADY EVE, L.L.C. maintains an office at 3829 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless LADY EVE, L.L.C. has designated otherwise in writing, the principal office is the office at which LADY EVE, L.L.C. keeps its books and records including its records concerning the Collateral. LADY EVE, L.L.C. will notify Lender prior to any change in the location of LADY EVE, L.L.C's state of organization or any change in LADY EVE, L.L.C.'s name. LADY EVE, L.L.C. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to LADY EVE, L.L.C. and LADY EVE, L.L.C.'s business activities.

MR. STEVEN, LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. STEVEN, LLC is duly authorized to transact business in all other states in which MR. STEVEN, LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. STEVEN, LLC is doing business. Specifically, MR. STEVEN, LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. STEVEN, LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. STEVEN, LLC maintains an office at 109 HWY 90 WEST, NEW IBERIA, LA 70560. Unless MR. STEVEN, LLC has designated otherwise in writing, the principal office is the office at which MR. STEVEN, LLC keeps its books and records including its records concerning the Collateral. MR. STEVEN, LLC will notify Lender prior to any change in the location of MR. STEVEN, LLC's state of organization or any change in MR. STEVEN, LLC's name. MR. STEVEN, LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. STEVEN, LLC and MR. STEVEN, LLC's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation.** There are no suits or proceedings pending, or to the knowledge of Borrower, threatened against or affecting Borrower or Borrower's assets, before any court or by any governmental agency, other than those previously disclosed to Lender in writing, which, if adversely determined, may have a material adverse effect on Borrower's financial condition or business.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Information.** All information heretofore or contemporaneously furnished by Borrower to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Borrower to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Other Events.** Promptly notify Lender in writing of (1) the addition of any new Members of Borrower, (2) the death, interdiction, withdrawal, expulsion, bankruptcy, or dissolution of any Member or the occurrence of any other event which may terminate the continued membership of any Member, (3) the expression of any intent or desire on the part of any Member or Members to dissolve or liquidate Borrower, and (4) the occurrence of any event specified in Borrower's Articles or in Borrower's Operating Agreement that may result in Borrower's dissolution or liquidation.

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| STEVE J. MIGUEZ | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach; and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificate.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** Borrower recognizes and agrees that Lender may incur certain expenses in connection with Lender's exercise of its rights under this Agreement. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST Case: 780357

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez) Pg 24 of 84

Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, Encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral, including without limitation, the purchase of insurance protecting only Lender's interest in any Collateral. Lender may further take such other action or actions and incur such additional expenditures as Lender may deem to be necessary and proper to cure or rectify any actions or inactions on Borrower's part as may be required under this Agreement. Nothing under this Agreement or otherwise shall obligate Lender to take any such actions or to incur any such additional expenditures on Borrower's behalf, or as making Lender in any way responsible or liable for any loss, damage, or injury to any Collateral, to Borrower, or to any other person or persons, resulting from Lender's election not to take such actions or to incur such additional expenses. In addition, Lender's election to take any such actions or to incur such additional expenditures shall not constitute a waiver or forbearance by Lender of any Event of Default under this Agreement. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Amendments to Articles or Operating Agreement.** Amend its Articles or Operating Agreement (1) to limit or restrict the permissible activities in which Borrower may engage, or (2) to withdraw the authority of or to limit or restrict the authority of Borrower's Authorized Representatives (including Borrower's Managers) to deal and contract with Lender and to bind and obligate Borrower.

**Withdrawal of Members.** Permit any Member to withdraw from the Borrower and to receive any type of withdrawal distribution.

**Distributions.** Pay any interim distribution in cash or other assets to a Member or Members of Borrower.

**Waiver or Compromise of Rights Against Members.** Waive, compromise or forgo any rights that Borrower may have against any Member for unpaid capital contributions or any other obligation owed to Borrower.

**Non-Compliance.** None of the above actions on the part of Borrower (including without limitation, any amendment to Borrower's Articles or Operating Agreement) shall be effective as against Lender unless and until, (1) Borrower shall have notified Lender in writing, and (2) Lender shall have expressly agreed to such actions in writing. Specifically, any distribution by Borrower in violation of this Agreement shall be considered as a "wrongful distribution" for purpose of applicable Law.

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**OBLIGATION OF MEMBERS.** So long as this Agreement remains in effect, each and every present and future Member of Borrower agrees and covenants as follows:

**No Withdrawal.** Not to withdraw as a Member of Borrower and to obtain a withdrawal distribution without first notifying Lender in writing and obtaining Lender's prior written consent (which Lender shall have the unrestricted right to refuse).

**Compliance.** To take whatever steps may be necessary and proper to insure that Borrower and each other Member complies with the terms, conditions and covenants of this Agreement.

**SECURITY INTEREST GRANTED BY MEMBERS.** Borrower and each Member additionally agree as follows:

**Membership Interests.** Notwithstanding any provision of Borrower's Articles or Operating Agreement to the contrary, each Member shall have the unrestricted right, power and authority to grant a Security Interest in favor of Lender as affecting his Membership Interest in Borrower.

**Rights of Lender.** Should Lender for any reason acquire the Membership Interest of any Member, whether as a result of default under a loan or extension of credit or otherwise, then Lender or any third party to whom Lender may sell or assign said Membership Interest shall have all of the rights, powers and authority of a "member" of Borrower, including the right to participate in the management and affairs permit that result to occur.

**Redemptive Rights.** Should Lender acquire the Membership Interest of any Member as a result of a default under a loan, then Lender shall have the right, without the necessity of first obtaining any type of judgment against such a Member, to redeem the defaulting Member's Membership Interest for the then value thereof, which sum shall be paid by Borrower immediately on demand by Lender to be applied against the Member's loan obligation.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of Borrower's Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of Borrower's Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**EVENTS OF DEFAULT.** The following actions or inactions or both shall constitute Events of Default under this Agreement:

**Default Under the Note.** Should Borrower default in the payment of principal or interest under the Note or any of the Indebtedness.

**Default Under this Agreement.** Should Borrower violate, or fail to comply fully with any of the terms and conditions of, or default under this Agreement.

**Default Under other Agreements.** Should any default occur or exist under any Related Document which directly or indirectly secures repayment of the Loan and any of the Indebtedness.

**Other Defaults in Favor of Lender.** Borrower or any guarantor defaults under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any Guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property, or any Guarantor's ability to perform their respective obligations under this Agreement, or any Related Document, or pertaining to the Indebtedness.

**Death.** Borrower, or any guarantor of the Indebtedness, dies.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor occur or exist.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, composition or extension under any insolvency law be brought by or against Borrower or any Guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any Guarantor file proceedings for a relief or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any Guarantor, be applied for or appointed.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of the Loan.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.

Lender shall have the right at its sole option, to accelerate payment of Borrower's Note in full, in principal, interest, costs, expenses, attorneys' fees, and other fees and charges, as well as to accelerate the maturity of any and all other loans and/or obligations that Borrower may then owe to Lender, whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, due or to become due, and whether now existing or hereafter arising, and whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or as a surety, of every nature and kind whatsoever, whether any such Indebtedness may be barred under any statute of limitations or otherwise may be unenforceable or voidable for any reason whatsoever.

Lender shall have the additional right, again at its sole option, to file an appropriate collection action against Borrower and/or against any guarantor or guarantors of Borrower's Loan and Note, and/or to proceed or exercise any rights against any Collateral then securing repayment of Borrower's Loan and Note. Borrower and each guarantor further agree that Lender's remedies shall be cumulative and not exclusive under this Agreement or otherwise, and shall be construed so to limit or restrict the options and remedies available to Lender following any event of default under this Agreement or otherwise.

Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** No amendment, modification, consent or waiver of any provision of this Agreement, and no consent to any departure by Borrower therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Loan and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Loan and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Loan and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Louisiana.

**Joint and Several Liability.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each Borrower signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** To give Borrower any notice required under this Agreement, Lender may hand deliver or mail the notice to Borrower at Borrower's last address in Lender's records. If there is more than one Borrower under this Agreement, notice to a single Borrower will be considered as notice to all Borrowers. To give Lender any notice under this Agreement, Borrower (or any Borrower) shall mail the notice to Lender by registered or certified mail at the address specified in this Agreement, or at any other address that Lender may have given to Borrower (or any Borrower) by written notice as provided in this section. All notices required or permitted under this Agreement must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail as provided herein.

**Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Agreement shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance therefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F - 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez (SBN v. Miguez) Pg 26 of 84

Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.). Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to to be attached to this Business Loan Agreement from time to time.

**Articles.** The word "Articles" means and includes Borrower Articles of Organization as presently on file with the appropriate government office, and as such Articles may subsequently be amended or modified from time to time, one or more times..

**Authorized Representatives.** The words "Authorized Representatives" mean and include, individually, collectively, interchangeably, any and all persons authorized by Borrower's Members or Managers to act for and on behalf of Borrower in dealings with Lender.

**Borrower.** The word "Borrower" means IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; MR. GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including principal, interest, costs, expenses and attorneys' fees and all other fees and charges together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of Borrower's Loan and Note, or any interest therein.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Member.** The word "MEMBER" means and include, individually, collectively, interchangeably, any and all present and future member owners of Borrower.

**Membership Interest.** The words "MEMBERSHIP INTEREST" mean and include a Member's ownership rights and interest in Borrower, including without limitation, a Member's share of the profits and losses of Borrower, right to receive distributions of Borrower's assets, and any right to vote or participate in the management and affairs of Borrower.

**Note.** The word "Note" means the Note dated September 28, 2015 and executed by IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC in the principal amount of $32,500,000.00, together with all renewals, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement.

**Operating Agreement.** The words "Operating Agreement" mean any agreement between Borrower's Members governing the affairs of Borrower and the conduct of its business.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure Indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include individually, collectively, interchangeably and without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST Case: 780357

## BUSINESS LOAN AGREEMENT
(Continued)

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED SEPTEMBER 28, 2015.

BORROWER:

IBERIA MARINE SERVICE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C.

MR. BLAKE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. BLAKE LLC

MR. RIDGE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. RIDGE LLC

LADY GLENDA LLC

By: _____
STEVE J. MIGUEZ, Manager of LADY GLENDA LLC

MR. MASON LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. MASON LLC

MR. ROW LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. ROW LLC

LADY BRANDI L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY BRANDI L.L.C.

LADY EVE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.

MR. STEVEN, LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC

LENDER:

FIRST NBC BANK

By: _____
Authorized Officer

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

AFFIDAVIT
EXHIBIT
3



*000000100013877%0000000%0220%09282015%861098286*

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 4A 7 955 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC;
MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON
LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY
EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1820
AMELIA, LA  70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA  70065

**Guarantor:** STEVE J. MIGUEZ
3015 GENE FLASH RD.
NEW IBERIA, LA 70560

**CONTINUING GUARANTY OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Borrower's Indebtedness or against any collateral securing the Borrower's Indebtedness, this Guaranty or any other guaranty of the Borrower's Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**BORROWER'S INDEBTEDNESS.** The words "Borrower's Indebtedness" as used in this Guaranty mean all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all present and future loans, loan advances, extensions of credit, obligations and/or liabilities that Borrower individually or collectively or interchangeably with others, owes or will owe or incur in favor of Lender whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether absolute or contingent, voluntary or involuntary, determined or undetermined, liquidated or unliquidated, due or to become due, secured or unsecured, and whether Borrower may be liable individually, jointly or solidarily with others, whether primarily or secondarily, or as a guarantor or otherwise, and whether now existing or hereafter arising, or every nature and kind whatsoever, including any liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**JOINT, SEVERAL AND SOLIDARY LIABILITY.** Guarantor's obligations and liability under this Guaranty shall be on a "solidary" or "joint and several" basis along with Borrower to the same degree and extent as if Guarantor had been and/or will be a co-borrower, co-principal obligor and/or co-maker of Borrower's Indebtedness. In the event that there is more than one Guarantor under this Guaranty, or in the event that there are other guarantors, endorsers or sureties of all or any portion of Borrower's Indebtedness, Guarantor's obligations and liability hereunder shall further be on a "solidary" or "joint and several" basis along with such other guarantors, endorsers and/or sureties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE BORROWER'S INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME. TO THE EXTENT THAT GUARANTOR IS OR MIGHT BECOME A MEMBER/OWNER OF BORROWER, GUARANTOR AGREES THAT, NOTWITHSTANDING THE PROVISIONS OF LA. R.S. 12:1320, GUARANTOR SHALL BE LIABLE UNDER THIS GUARANTY FOR THE BORROWER'S INDEBTEDNESS.

**DURATION OF GUARANTY.** This Agreement and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as this Agreement may be cancelled or otherwise terminated by Lender under a written cancellation instrument in favor of Guarantor (subject to the automatic reinstatement provisions hereinbelow). It is anticipated that fluctuations may occur in the aggregate amount of Borrower's Indebtedness guaranteed under this Agreement and it is specifically acknowledged and agreed to by Guarantor that reductions in the amount of Borrower's Indebtedness, even to zero ($0.00) dollars, prior to Lender's written cancellation of this Agreement, shall not constitute or give rise to a termination of this Agreement.

**CANCELLATION OF AGREEMENT; EFFECT.** Unless otherwise indicated under such a written cancellation instrument, Lender's agreement to terminate or otherwise cancel this Guaranty shall affect only, and shall be expressly limited to, Guarantor's continuing obligations and liability to guarantee Borrower's Indebtedness incurred, originated and/or extended (without prior commitment) after the date of such a written cancellation instrument; with Guarantor remaining fully obligated and liable under this Guaranty for any and all of Borrower's Indebtedness incurred, originated, extended, or committed to prior to the date of such a written cancellation instrument. Nothing under this Guaranty or under any other agreement or understanding by and between Guarantor and Lender, shall in any way obligate, or be construed to obligate, Lender to agree to the subsequent termination or cancellation of Guarantor's obligations and liability hereunder; it being fully understood and agreed to by Guarantor that Lender has and intends to continue to rely on Guarantor's assets, income and financial resources in extending credit and other indebtedness to and in favor of Borrower, and that to release Guarantor from Guarantor's continuing obligations and liabilities under this Guaranty would so prejudice Lender that Lender may, within its sole and uncontrolled discretion and judgment, refuse to release Guarantor from any of Guarantor's continuing obligations and liability under this Guaranty for any reason whatsoever as long as any of Borrower's Indebtedness remains unpaid and outstanding, or otherwise.

**OBLIGATIONS OF MARRIED PERSONS.** If Guarantor is married, Guarantor hereby expressly agrees that recourse may be had against both Guarantor's separate property and Guarantor's community property for all Guarantor's obligations under this Guaranty.

**DEFAULT.** Should any event of default occur or exist under any of Borrower's Indebtedness, Guarantor unconditionally and absolutely agrees to pay Lender the then unpaid amount of the Indebtedness of Borrower, or any one or more of them, to Lender. Such payment or payments shall be made at Lender's offices indicated above, immediately following demand by Lender.

**GUARANTOR'S WAIVERS.** Guarantor hereby waives:

(A)  Notice of Lender's acceptance of this Guaranty.

(B)  Presentment for payment of Borrower's Indebtedness, notice of dishonor and of nonpayment, notice of intention to accelerate, notice of acceleration, protest and notice of protest, collection or institution of any suit or other action by Lender in collection thereof, including any notice of default in payment thereof, or other notice to, or demand for payment thereof, on any party.

(C)  Any right to require Lender to notify Guarantor of any nonpayment relating to any collateral directly or indirectly securing Borrower's Indebtedness, or notice of any action or nonaction on the part of Borrower, Lender, or any other guarantor, surety or endorser of Borrower's Indebtedness, or notice of the creation of any new or additional Borrower's Indebtedness subject to this Guaranty.

(D)  Any rights to demand or require collateral security from the Borrower or any other person as provided under applicable Louisiana law or otherwise.

(E)  Any right to require Lender to notify Guarantor of the terms, time and place of any public or private sale of any collateral directly or indirectly securing Borrower's Indebtedness.

(F)  Any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, or any action in lieu of foreclosure.

(G)  Any election of remedies by Lender that may destroy or impair Guarantor's subrogation rights or Guarantor's right to proceed for reimbursement against Borrower or any other guarantor, surety or endorser of Borrower's Indebtedness, including without limitation, any loss of

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Borrower's Indebtedness.

(H) Any disability or other defense of Borrower, or any other guarantor, surety or endorser, or any other person, or by reason of the cessation from any cause whatsoever, other than payment in full of Borrower's Indebtedness.

(I) Any statute of limitations or prescriptive period, if at the time an action or suit brought by Lender against Guarantor is commenced, there is any outstanding Borrower's Indebtedness which is barred by any applicable statute of limitations or prescriptive period.

Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, such waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

**GUARANTOR'S SUBORDINATION OF RIGHTS.** In the event that Guarantor should for any reason (A) advance or lend monies to Borrower, whether or not such funds are used by Borrower to make payment(s) under Borrower's Indebtedness, or (B) make any payment(s) to Lender or others for and on behalf of Borrower under Borrower's Indebtedness, or (C) make any payment to Lender in total or partial satisfaction of Borrower's obligations and liabilities under this Guaranty, or (D) if any of Borrower's property is used to pay or satisfy any of Borrower's Indebtedness, Guarantor hereby agrees that any and all rights that Guarantor may have or acquire to collect from or to be reimbursed by Borrower (or from or by any other guarantor, endorser or surety of Borrower's Indebtedness), whether Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of Lender or otherwise, shall in all respects, whether or not Borrower is presently or subsequently becomes insolvent, be subordinate, inferior and junior to the rights of Lender to collect and enforce payment, performance and satisfaction of Borrower's Indebtedness that then remains, until such time as Borrower's Indebtedness is fully paid and satisfied. In the event of Borrower's insolvency or consequent liquidation of Borrower's assets, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to Borrower's Indebtedness that then remains. Guarantor hereby assigns to Lender all claims which it may have or acquire against Borrower or any assignee or trustee of Borrower in bankruptcy; provided that, such assignment shall be effective only for the purpose of assuring to Lender full payment of Borrower's Indebtedness guaranteed under this Guaranty.

**GUARANTOR'S RECEIPT OF PAYMENTS.** Guarantor further agrees to refrain from attempting to collect and/or enforce any of Guarantor's collection and/or reimbursement rights against Borrower (or against any other guarantor, surety or endorser of Borrower's Indebtedness), arising by way of subrogation or otherwise, until such time as all of Borrower's Indebtedness that then remains is fully paid and satisfied. In the event that Guarantor should for any reason whatsoever receive any payment(s) from Borrower (or any other guarantor, surety or endorser of Borrower's Indebtedness) that Borrower (or such a third party) may owe to Guarantor for any of the reasons stated above, Guarantor agrees to accept such payment(s) in trust for and on behalf of Lender, advising Borrower (or the third party payee) of such fact. Guarantor further unconditionally agrees to immediately deliver such funds to Lender, with such funds being held by Guarantor over any interim period, in trust for Lender. In the event that Guarantor should for any reason whatsoever receive any such funds from Borrower (or any third party), and Guarantor should deposit such funds in one or more of Guarantor's deposit accounts, no matter where located, Lender shall have the right to attach any and all of Guarantor's deposit accounts in which such funds were deposited, whether or not such funds were commingled with any other monies of Guarantor, and whether or not such funds then remain on deposit in such an account or accounts. To this end and to secure Guarantor's obligations under this Guaranty, Guarantor collaterally assigns and pledges to Lender, and grants to Lender a continuing security interest in, any and all of Guarantor's present and future rights, title and interest in and to all monies that Guarantor may now and/or in the future maintain on deposit with banks, savings and loan associations and other entities (other than tax deferred accounts with Lender), in which Guarantor may at any time deposit any such funds that may be received from Borrower (or any other guarantor, endorser or surety of Borrower's Indebtedness).

**ADDITIONAL COVENANTS.** Guarantor agrees that Lender may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, or any of them, or to any other party, and without incurring any responsibility to Guarantor or to any other party, and without impairing or releasing any of Guarantor's obligations or liabilities under this Guaranty:

(A) Make additional secured and/or unsecured loans to Borrower.

(B) Discharge, release or agree not to sue any party (including, but not limited to, Borrower or any other guarantor, surety, or endorser of Borrower's Indebtedness), who is or may be liable to Lender for any of Borrower's Indebtedness.

(C) Sell, exchange, release, surrender, realize upon, or otherwise deal with, in any manner and in any order, any collateral directly or indirectly securing repayment of any of Borrower's Indebtedness.

(D) Alter, renew, extend, accelerate, or otherwise change the manner, place, terms and/or times of payment or other terms of Borrower's Indebtedness, or any part thereof, including any increase or decrease in the rate or rates of interest on any of Borrower's Indebtedness.

(E) Settle or compromise any of Borrower's Indebtedness.

(F) Subordinate and/or agree to subordinate the payment of all or any part of Borrower's Indebtedness, or Lender's security rights in any collateral directly or indirectly securing any such Borrower's Indebtedness, to the payment and/or security rights of any other present and/or future creditors of Borrower.

(G) Apply any payments and/or proceeds to any of Borrower's Indebtedness in such priority or with such preferences as Lender may determine in its sole discretion, regardless of which of Borrower's Indebtedness then remains unpaid.

(H) Take or accept any other collateral security or guaranty for any or all of Borrower's Indebtedness.

(I) Enter into, deliver, modify, amend, or waive compliance with, any instrument or arrangement evidencing, securing or otherwise affecting, all or any part of Borrower's Indebtedness.

**NO IMPAIRMENT OF LENDER'S OBLIGATIONS.** No course of dealing between Lender and Borrower (or any other guarantor, surety or endorser of Borrower's Indebtedness), nor any failure or delay on the part of Lender to exercise any of Lender's rights and remedies under this Guaranty or any other agreement or agreements by and between Lender and Borrower (or any other guarantor, surety or endorser), shall have the effect of impairing or releasing Guarantor's obligations and liabilities to Lender, or of waiving any of Lender's rights and remedies under this Guaranty or otherwise. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies; it being Guarantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Guarantor further agrees that, should Borrower default under any of Borrower's Indebtedness, any waiver or forbearance on the part of Lender to pursue Lender's available rights and remedies shall be binding upon Lender only to the extent that Lender specifically agrees to such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one event of default shall not constitute a waiver or forbearance as to any other default.

**NO RELEASE OF GUARANTOR.** Guarantor's obligations and liabilities under this Guaranty shall not be released, impaired, reduced, or otherwise affected by, and shall continue in full force and effect notwithstanding the occurrence of any event, including without limitation any one or more of the following events:

(A) The death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution, or lack of authority (whether corporate, partnership or trust) of Borrower (or any person acting on Borrower's behalf), or of any other guarantor, surety or endorser of Borrower's Indebtedness.

(B) Any payment by Borrower, or any other party, to Lender that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or any such amounts or payment which, for any reason, Lender is required to refund or repay to Borrower or to any other person.

(C) Any dissolution of Borrower, or any sale, lease or transfer of all or any part of Borrower's assets.

(D) Any failure of Lender to notify Guarantor of the making of additional loans or other extensions of credit in reliance on this Guaranty.

**AUTOMATIC REINSTATEMENT.** This Guaranty and Guarantor's obligations and liabilities hereunder shall continue to be effective, and/or shall automatically and retroactively be reinstated, if a release or discharge has occurred, or if at any time, any payment or part thereof to Lender with respect to any of Borrower's Indebtedness, is rescinded or must otherwise be restored by Lender pursuant to any insolvency, bankruptcy, reorganization, receivership, or any other debt relief granted to Borrower or to any other party to Borrower's Indebtedness or any such party's security therefor. In the event that Lender must rescind or restore any payment received in total or partial satisfaction of Borrower's Indebtedness, any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect, and this Guaranty and Guarantor's obligations and liabilities hereunder shall automatically and retroactively be renewed and/or reinstated and shall remain in full force and effect to the same degree and extent as if such a release or discharge had never been granted. It is the intention of Lender and Guarantor that Guarantor's obligations and liabilities hereunder shall not be discharged except by Guarantor's full and complete performance and satisfaction of such obligations and liabilities; and then only to the extent of such performance.

**REPRESENTATIONS AND WARRANTIES BY GUARANTOR.** Guarantor represents and warrants that:

(A) Guarantor has the lawful power to own its properties and to engage in its business as presently conducted.

(B) Guarantor's guarantee of Borrower's Indebtedness and Guarantor's execution, delivery and performance of this Guaranty are not in

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

violation of any laws and will not result in a default under any contract, agreement, or instrument to which Guarantor is a party, or by which Guarantor or its property may be bound.

(C) Guarantor has agreed and consented to execute this Guaranty and to guarantee Borrower's Indebtedness in favor of Lender, at Borrower's request and not at the request of Lender.

(D) Guarantor will receive and/or has received a direct or indirect material benefit from the transactions contemplated herein and/or arising out of Borrower's Indebtedness.

(E) This Guaranty, when executed and delivered to Lender, will constitute a valid, legal and binding obligation of Guarantor, enforceable in accordance with its terms.

(F) Guarantor has established adequate means of obtaining information from Borrower on a continuing basis regarding Borrower's financial condition.

(G) Lender has made no representations to Guarantor as to the creditworthiness of Borrower.

**ADDITIONAL OBLIGATIONS OF GUARANTOR.** So long as this Guaranty remains in effect, Guarantor will not, without Lender's prior written consent, sell, lease, assign, pledge, hypothecate, encumber, transfer, or otherwise dispose of all or substantially all of Guarantor's assets. Guarantor further agrees to keep adequately informed of all facts, events and circumstances which might in any way affect Guarantor's risks under this Guaranty without in any way relying upon Lender to advise Guarantor of the same. Lender shall have no obligation to disclose to Guarantor any information acquired in the course of its relationship with Borrower or otherwise.

**TRANSFER OF INDEBTEDNESS.** This Guaranty is for the benefit of Lender and for such other person or persons as may from time to time become or be the holders of all or any part of Borrower's Indebtedness. This Guaranty shall be transferrable and negotiable with the same force and effect and to the same extent as Borrower's Indebtedness may be transferrable it being understood and agreed to by Guarantor that, upon any transfer or assignment of all or any part of Borrower's Indebtedness, the holder of such Borrower's Indebtedness shall have all of the rights and remedies granted to Lender under this Guaranty. Guarantor further agrees that, upon any transfer of all or any portion of Borrower's Indebtedness, Lender may transfer and deliver any and all collateral securing repayment of such Borrower's Indebtedness (including, but not limited to, any collateral provided by Guarantor) to the transferee of such Borrower's Indebtedness, and such collateral shall secure any and all of Borrower's Indebtedness in favor of such a transferee. Guarantor additionally agrees that, after any such transfer or assignment has taken place, Lender shall be fully discharged from any and all liability and responsibility to Borrower and Guarantor with respect to such collateral, and the transferee thereafter shall be vested with all the powers and rights with respect to such collateral.

**CONSENT TO PARTICIPATION.** Guarantor recognizes and agrees that Lender may, from time to time, one or more times, transfer all or any part of Borrower's Indebtedness through sales of participation interests in Borrower's Indebtedness to one or more third party lenders. Guarantor specifically agrees and consents to all such transfers and assignments, and Guarantor further waives any subsequent notice of such transfers and assignments as may be provided under Louisiana law. Guarantor additionally agrees that the purchaser of a participation interest in Borrower's Indebtedness will be considered as the absolute owner of a percentage interest of Borrower's Indebtedness and that such a purchaser will have all of the rights granted under any participation agreement governing the sale of such a participation interest. Guarantor waives any rights of offset that Guarantor may have against Lender and/or any purchaser of such a participation interest, and Guarantor unconditionally agrees that either Lender or such a purchaser may enforce Guarantor's obligations and liabilities under this Guaranty, irrespective of the failure or insolvency of Lender or any such purchaser.

**NOTICES.** Any notice provided in this Guaranty must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above or at such other addresses as any party may designate to the other in writing. If there is more than one Guarantor under this Guaranty, notice to any Guarantor shall constitute notice to all Guarantors.

**ADDITIONAL GUARANTIES.** Guarantor recognizes and agrees that Guarantor may have previously granted, and may in the future grant one or more additional guaranties of Borrower's Indebtedness and obligations in favor of Lender. Should this occur, the execution of this Guaranty and any additional guarantee on Guarantor's part will not be construed as a cancellation of this Guaranty or any of Guarantor's additional guaranties; it being Guarantor's full intent and agreement that all of Guarantor's guaranties of Borrower's Indebtedness and obligations in favor of Lender, shall remain in full force and shall be cumulative in nature and effect.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions.

**No Oral Agreements.** This Guaranty is the final expression of the agreement between Lender and Guarantor and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous agreement between Lender and Guarantor.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If any provision of this Guaranty is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Guaranty shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision there shall be added automatically as a part of this Guaranty, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound.** Guarantor's obligations and liabilities under this Guaranty shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code. (La. R.S. 10: 9-101, et seq.):

**Borrower.** The word "Borrower" means IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L. C.; and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation STEVE J. MIGUEZ, and in each case, any signer's successors and assigns

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Borrower's Indebtedness.** The words "Borrower's Indebtedness" mean Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of the Note or any interest therein.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions of and for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Borrower's Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED SEPTEMBER 28, 2015.

GUARANTOR:

X _____
STEVE J. MIGUEZ

LaserPro, Ver. 12.4.10.047 Copr. D+H USA Corporation 1997, 2015. All Rights Reserved. - LA DAHARLANDPROPLECB310 PR-H1932 PR-1704

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated September 28, 2015 in the original principal amount of $22,500,000.00, executed by Iberia Marine Service, L.L.C.; Mr. Blake LLC; Mr. Ridge LLC.; Lady Glenda LLC.; Mr. Mason LLC.; Mr. Row LLC.; Lady Brandi L.L.C.; Lady Eve, L.L.C.; and Mr Steven, LLC made to First NBC Bank as the same may have been renewed, assigned, amended, supplemented, restated or modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

**AFFIDAVIT EXHIBIT 4**

LAW OFFICES OF

# SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-4046
http://www.shergarner.com

LEOPOLD Z. SHER[1]
JAMES M. GARNER[2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN[1,7]
PETER L. HILBERT, JR.
MARIE A. MOORE[3]
DEBRA J. FISCHMAN
DARNELL BLUDWORTH[2]
MARTHA Y. CURTIS[2]
NEAL J. KLING
JOSHUA S. FORCE[2,4]
DEBORAH J. MOENCH
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
CHRISTOPHER T. CHOCHELES
RYAN D. ADAMS

THOMAS J. MADIGAN, II[5]
CHAD P. MORROW
KEVIN M. McGLONE
JEFFREY D. KESSLER[6]
RYAN O. LUMINAIS[5]
KAREN T. HOLZENTHAL
JONATHAN B. CERISE
ASHLEY G. COKER
AMANDA RUSSO SCHENCK
MELISSA ROME HARRIS
JACOB A. AIREY
ERIC J. BLEVINS
JOSHUA P. CLAYTON
EMILY E. ROSS
TRAVIS A. BEATON
REBEKKA O. VEITH
DAVID A. FREEDMAN

BRANDON W. KEAY
MICHAEL R. DODSON[3]
GABRIEL R. CRANE
ALEX E. HOTARD

SPECIAL COUNSEL:
MATTHEW M. COMAN

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO
THOMAS P. ANZELMO, JR.
THOMAS P. McALISTER[2]

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[6] MEMBER OF LOUISIANA AND NEW YORK BARS
[7] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
     BOARD OF LEGAL SPECIALIZATION

ALL OTHERS LOUISIANA BAR

lsher@shergarner.com
Direct Dial: (504) 299-2101
Direct Fax: (504) 299-2301

(504) 299-2100
FAX (504) 299-2300

January 16, 2018

## DEMAND FOR PAYMENT

### *Via Certified US MAIL Return Receipt Requested*

Iberia Marine Service, LLC
P.O. Box 1820
Amelia, LA 70340

Steve J. Miguez
3105 Gene Flash Rd.
New Iberia, LA 70560

Lady Eve, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Mr. Blake, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Lady Glenda, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Mr. Steven, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Mr. Ridge, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Lady Brandi, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Mr. Mason, L.L.C.
P.O. Box 1820
Amelia, LA 70340

Mr. Row, L.L.C.
P.O. Box 1820
Amelia, LA 70340

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

AFFIDAVIT
EXHIBIT
5

January 16, 2018
Page - 2 -

Dear Borrowers and Guarantor:

We represent SBN V FNBC LLC ("SBN"), as successor in interest to First NBC Bank, regarding the loans (the "Loan") First NBC made to Iberia Marine Service, LLC, Mr. Blake, L.L.C., Mr. Ridge, L.L.C., Lady Glenda, L.L.C., Mr. Row, L.L.C., Lady Glenda, L.L.C., Lady Brandi, L.L.C., Lady Eve, L.L.C., Mr. Steven, L.L.C., and Mr. Mason, L.L.C. (collectively "Borrowers"). Steve J. Miguez ("Guarantor") guaranteed the Loan First NBC made to Borrowers on a solidary basis. A copy of the Guaranty is enclosed with this correspondence.

As you know, payments on the Loan have not been made in accordance with the terms and conditions of the Loan. As of January 11, 2018 the total balance outstanding of the Loan is $22,018,031.52 in principal, $605,916.96 in interest (accruing at $3,058.06 per day), and $1,250.00 in unpaid late charges, for a total sum due of **$22,625,198.48.** Accordingly, **DEMAND IS HEREBY MADE** on each of the Borrowers for full payment of the Loan in the sum of **$22,625,198.48.** Additionally, **DEMAND IS HEREBY MADE** on Guarantor to immediately pay the outstanding Loan in full. Failure to pay the sums in full by January 22, 2018 will result in litigation being instituted to collect the sums due from Borrowers and the Guarantor. We expect your prompt attention to this very serious matter.

Sincerely,

Leopold Z. Sher
Jake Airey

Enclosure

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST


*00000010001138770%0000000%0220%09282015%881098285*

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 4A / 055 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC;
MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON
LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY
EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1820
AMELIA, LA 70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

**Guarantor:** STEVE J. MIGUEZ
3015 GENE FLASH RD.
NEW IBERIA, LA 70560

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Borrower's Indebtedness or against any collateral securing the Borrower's Indebtedness, this Guaranty or any other guaranty of the Borrower's Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**BORROWER'S INDEBTEDNESS.** The words "Borrower's Indebtedness" as used in this Guaranty mean all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all present and future loans, loan advances, extensions of credit, obligations and/or liabilities that Borrower individually or collectively or interchangeably with others, owes or will owe or incur in favor of Lender whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether absolute or contingent, voluntary or involuntary, determined or undetermined, liquidated or unliquidated, due or to become due, secured or unsecured, and whether Borrower may be liable individually, jointly or solidarily with others, whether primarily or secondarily, or as a guarantor or otherwise, and whether now existing or hereafter arising, or every nature and kind whatsoever, including any liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) effect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**JOINT, SEVERAL AND SOLIDARY LIABILITY.** Guarantor's obligations and liability under this Guaranty shall be on a "solidary" or "joint and several" basis along with Borrower to the same degree and extent as if Guarantor had been and/or will be a co-borrower, co-principal obligor and/or co-maker of Borrower's Indebtedness. In the event that there is more than one Guarantor under this Guaranty, or in the event that there are other guarantors, endorsers or sureties of all or any portion of Borrower's Indebtedness, Guarantor's obligations and liability hereunder shall further be on a "solidary" or "joint and several" basis along with such other guarantors, endorsers and/or sureties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE BORROWER'S INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME. TO THE EXTENT THAT GUARANTOR IS OR MIGHT BECOME A MEMBER/OWNER OF BORROWER, GUARANTOR AGREES THAT, NOTWITHSTANDING THE PROVISIONS OF LA. R.S. 12:1320, GUARANTOR SHALL BE LIABLE UNDER THIS GUARANTY FOR THE BORROWER'S INDEBTEDNESS.

**DURATION OF GUARANTY.** This Agreement and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as this Agreement may be cancelled or otherwise terminated by Lender under a written cancellation instrument in favor of Guarantor (subject to the automatic reinstatement provisions hereinbelow). It is anticipated that fluctuations may occur in the aggregate amount of Borrower's Indebtedness guaranteed under this Agreement and it is specifically understood and agreed to by Guarantor that reductions in the amount of Borrower's Indebtedness, even to zero ($0.00) dollars, prior to Lender's written cancellation of this Agreement, shall not constitute or give rise to a termination of this Agreement.

**CANCELLATION OF AGREEMENT; EFFECT.** Unless otherwise indicated under such a written cancellation instrument, Lender's agreement to terminate or otherwise cancel this Guaranty shall affect only, and shall be expressly limited to, Guarantor's continuing obligations and liability to guarantee Borrower's Indebtedness incurred, originated and/or extended (without prior commitment) after the date of such a written cancellation instrument; with Guarantor remaining fully obligated and liable under this Guaranty for any and all of Borrower's Indebtedness incurred, originated, extended, or committed to prior to the date of such a written cancellation instrument. Nothing under this Guaranty or under any other agreement or understanding by and between Guarantor and Lender, shall in any way obligate, or be construed to obligate, Lender to agree to the subsequent termination or cancellation of Guarantor's obligations and liability hereunder; it being fully understood and agreed to by Guarantor that Lender has and intends to continue to rely on Guarantor's assets, income and financial resources in extending credit and other indebtedness to and in favor of Borrower, and that to release Guarantor from Guarantor's continuing obligations and liabilities under this Guaranty would so prejudice Lender that Lender may, within its sole and uncontrolled discretion and judgment, refuse to release Guarantor from any of Guarantor's continuing obligations and liability under this Guaranty for any reason whatsoever as long as any of Borrower's Indebtedness remains unpaid and outstanding, or otherwise.

**OBLIGATIONS OF MARRIED PERSONS.** If Guarantor is married, Guarantor hereby expressly agrees that recourse may be had against both Guarantor's separate property and Guarantor's community property for all of Guarantor's obligations under this Guaranty.

**DEFAULT.** Should any event of default occur or exist under any of Borrower's Indebtedness, Guarantor unconditionally and absolutely agrees to pay Lender the then unpaid amount of the Indebtedness of Borrower, or any one or more of them, to Lender. Such payment or payments shall be made at Lender's offices indicated above, immediately following demand by Lender.

**GUARANTOR'S WAIVERS.** Guarantor hereby waives:

(A) Notice of Lender's acceptance of this Guaranty.

(B) Presentment for payment of Borrower's Indebtedness, notice of dishonor and of nonpayment, notice of intention to accelerate, notice of acceleration, protest and notice of protest, collection or institution of any suit or other action by Lender in collection thereof, including any notice of default in payment thereof, or other notice to, or demand for payment thereof, on any party.

(C) Any right to require Lender to notify Guarantor of any nonpayment relating to any collateral directly or indirectly securing Borrower's Indebtedness, or notice of any action or nonaction on the part of Borrower, Lender, or any other guarantor, surety or endorser of Borrower's Indebtedness, or notice of the creation of any new or additional Borrower's Indebtedness subject to this Guaranty.

(D) Any right to demand or require collateral security from the Borrower or any other person as provided under applicable Louisiana law or otherwise.

(E) Any right to require Lender to notify Guarantor of the terms, time and place of any public or private sale of any collateral directly or indirectly securing Borrower's Indebtedness.

(F) Any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, or any action in lieu of foreclosure.

(G) Any election of remedies by Lender that may destroy or impair Guarantor's subrogation rights or Guarantor's right to proceed for reimbursement against Borrower or any other guarantor, surety or endorser of Borrower's Indebtedness, including without limitation, any loss of

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Borrower's Indebtedness.

(H) Any disability or other defense of Borrower, or any other guarantor, surety or endorser, or any other person, or by reason of the cessation from any cause whatsoever, other than payment in full of Borrower's Indebtedness.

(I) Any statute of limitations or prescriptive period, if at the time an action or suit brought by Lender against Guarantor is commenced, there is any outstanding Borrower's Indebtedness which is barred by any applicable statute of limitations or prescriptive period.

Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences, and that, under the circumstances, such waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

**GUARANTOR'S SUBORDINATION OF RIGHTS.** In the event that Guarantor should for any reason (A) advance or lend monies to Borrower, whether or not such funds are used by Borrower to make payment(s) under Borrower's Indebtedness, or (B) make any payment(s) to Lender or others for and on behalf of Borrower under Borrower's Indebtedness, or (C) make any payment to Lender in total or partial satisfaction of Borrower's obligations and liabilities under this Guaranty, or (D) if any of Borrower's property is used to pay or satisfy any of Borrower's Indebtedness, Guarantor hereby agrees that any and all rights that Guarantor may have or acquire to collect from or to be reimbursed by Borrower (or from or by any other guarantor, endorser or surety of Borrower's Indebtedness), whether Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of Lender or otherwise, shall in all respects, whether or not Borrower is presently or subsequently becomes insolvent, be subordinate, inferior and junior to the rights of Lender to collect and enforce payment, performance and satisfaction of Borrower's Indebtedness that then remains, until such time as Borrower's Indebtedness is fully paid and satisfied. In the event of Borrower's insolvency or consequent liquidation of Borrower's assets, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to Borrower's Indebtedness that then remains. Guarantor hereby assigns to Lender all claims which it may have or acquire against Borrower or any assignee or trustee of Borrower in bankruptcy; provided that, such assignment shall be effective only for the purpose of assuring to Lender full payment of Borrower's Indebtedness guaranteed under this Guaranty.

**GUARANTOR'S RECEIPT OF PAYMENTS.** Guarantor further agrees to refrain from attempting to collect and/or enforce any of Guarantor's collection and/or reimbursement rights against Borrower (or against any other guarantor, surety or endorser of Borrower's Indebtedness), arising by way of subrogation or otherwise, until such time as all of Borrower's Indebtedness that then remains is fully paid and satisfied. In the event that Guarantor should for any reason whatsoever receive any payment(s) from Borrower (or any other guarantor, surety or endorser of Borrower's Indebtedness) that Borrower (or such a third party) may owe to Guarantor for any of the reasons stated above, Guarantor agrees to accept such payment(s) in trust for and on behalf of Lender, advising Borrower (or the third party payee) of such fact. Guarantor further unconditionally agrees to immediately deliver such funds to Lender, with such funds being held by Guarantor over any interim period, in trust for Lender. In the event that Guarantor should for any reason whatsoever receive any such funds from Borrower (or any third party), and Guarantor should deposit such funds in one or more of Guarantor's deposit accounts, no matter where located, Lender shall have the right to attach any and all of Guarantor's deposit accounts in which such funds were deposited, whether or not such funds were commingled with other monies of Guarantor, and whether or not such funds then remain on deposit in such an account or accounts. To this end and to secure Guarantor's obligations under this Guaranty, Guarantor unilaterally assigns and pledges to Lender, and grants to Lender a continuing security interest in, any and all of Guarantor's present and future rights, title and interest in and to all monies that Guarantor may now and/or in the future maintain on deposit with banks, savings and loan associations and other entities (other than tax deferred accounts with Lender), in which Guarantor may at any time deposit any such funds that may be received from Borrower (or any other guarantor, endorser or surety of Borrower's Indebtedness).

**ADDITIONAL COVENANTS.** Guarantor agrees that Lender may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, or any of them, or to any other party, and without incurring any responsibility to Guarantor or to any other party, and without impairing or releasing any of Guarantor's obligations or liabilities under this Guaranty:

   (A) Make additional secured and/or unsecured loans to Borrower.

   (B) Discharge, release or agree not to sue any party (including, but not limited to, Borrower or any other guarantor, surety, or endorser of Borrower's Indebtedness), who is or may be liable for any of Borrower's Indebtedness.

   (C) Sell, exchange, release, surrender, realize upon, or otherwise deal with, in any manner and in any order, any collateral directly or indirectly securing repayment of any of Borrower's Indebtedness.

   (D) Alter, renew, extend, accelerate, or otherwise change the manner, place, terms and/or times of payment or other terms of Borrower's Indebtedness, or any part thereof, including any increase or decrease in the rate or rates of interest on any of Borrower's Indebtedness.

   (E) Settle or compromise any of Borrower's Indebtedness.

   (F) Subordinate and/or agree to subordinate the payment of all or any part of Borrower's Indebtedness, or Lender's security rights in any collateral directly or indirectly securing any such Borrower's Indebtedness, to the payment and/or security rights of any other present and/or future creditors of Borrower.

   (G) Apply any payments and/or proceeds to any of Borrower's Indebtedness in such priority or with such preferences as Lender may determine in its sole discretion, regardless of which of Borrower's Indebtedness then remains unpaid.

   (H) Take or accept any other collateral security or guaranty for any or all of Borrower's Indebtedness.

   (I) Enter into, deliver, modify, amend, or waive compliance with, any instrument or arrangement evidencing, securing or otherwise affecting, all or any part of Borrower's Indebtedness.

**NO IMPAIRMENT OF GUARANTOR'S OBLIGATIONS.** No course of dealing between Lender and Borrower (or any other guarantor, surety or endorser of Borrower's Indebtedness), nor any failure or delay on the part of Lender to exercise any of Lender's rights and remedies under this Guaranty or any other agreement or agreements by and between Lender and Borrower (or any other guarantor, surety or endorser), shall have the effect of impairing or releasing Guarantor's obligations and liabilities to Lender, or of waiving any of Lender's rights and remedies under this Guaranty or otherwise. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies; it being Guarantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Guarantor further agrees that, should Borrower default under any of Borrower's Indebtedness, any waiver or forbearance on the part of Lender to pursue Lender's available rights and remedies shall be binding upon Lender only to the extent that Lender specifically agrees to such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one event of default shall not constitute a waiver or forbearance as to any other default.

**NO RELEASE OF GUARANTOR.** Guarantor's obligations and liabilities under this Guaranty shall not be released, impaired, reduced, or otherwise affected by, and shall continue in full force and effect notwithstanding the occurrence of any event, including without limitation any one or more of the following events:

   (A) The death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution, or lack of authority (whether corporate, partnership or trust) of Borrower (or any person acting on Borrower's behalf), or of any other guarantor, surety or endorser of Borrower's Indebtedness.

   (B) Any payment by Borrower, or any other party, to Lender that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or any such amounts or payment which, for any reason, Lender is required to refund or repay to Borrower or to any other person.

   (C) Any dissolution of Borrower, or any sale, lease or transfer of all or any part of Borrower's assets.

   (D) Any failure of Lender to notify Guarantor of the making of additional loans or other extensions of credit in reliance on this Guaranty.

**AUTOMATIC REINSTATEMENT.** This Guaranty and Guarantor's obligations and liabilities hereunder shall continue to be effective, and/or shall automatically and retroactively be reinstated, if a release or discharge has occurred, or if at any time, any payment or part thereof to Lender with respect to any of Borrower's Indebtedness, is rescinded or must otherwise be restored by Lender pursuant to any insolvency, bankruptcy, reorganization, receivership, or any other debt relief granted to Borrower or to any other party to Borrower's Indebtedness or any such security therefor. In the event that Lender must rescind or restore any payment received in total or partial satisfaction of Borrower's Indebtedness, any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect, and this Guaranty and Guarantor's obligations and liabilities hereunder shall automatically and retroactively be renewed and/or reinstated and shall remain in full force and effect to the same degree and extent as if such a release or discharge had never been granted. It is the intention of Lender and Guarantor that Guarantor's obligations and liabilities hereunder shall not be discharged except by Guarantor's full and complete performance and satisfaction of such obligations and liabilities; and then only to the extent of such performance.

**REPRESENTATIONS AND WARRANTIES BY GUARANTOR.** Guarantor represents and warrants that:

   (A) Guarantor has the lawful power to own its properties and to engage in its business as presently conducted.

   (B) Guarantor's guarantee of Borrower's Indebtedness and Guarantor's execution, delivery and performance of this Guaranty are not in

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

violation of any laws and will not result in a default under any contract, agreement, or instrument to which Guarantor is a party, or by which Guarantor or its property may be bound.

(C) Guarantor has agreed and consented to execute this Guaranty and to guarantee Borrower's Indebtedness in favor of Lender, at Borrower's request and not at the request of Lender.

(D) Guarantor will receive and/or has received a direct or indirect material benefit from the transactions contemplated herein and/or arising out of Borrower's Indebtedness.

(E) This Guaranty, when executed and delivered to Lender, will constitute a valid, legal and binding obligation of Guarantor, enforceable in accordance with its terms.

(F) Guarantor has established adequate means of obtaining information from Borrower on a continuing basis regarding Borrower's financial condition.

(G) Lender has made no representations to Guarantor as to the creditworthiness of Borrower.

**ADDITIONAL OBLIGATIONS OF GUARANTOR.** So long as this Guaranty remains in effect, Guarantor will not, without Lender's prior written consent, sell, lease, assign, pledge, hypothecate, encumber, transfer, or otherwise dispose of all or substantially all of Guarantor's assets. Guarantor further agrees to keep adequately informed of all facts, events and circumstances which might in any way affect Guarantor's risks under this Guaranty without in any way relying upon Lender to advise Guarantor of the same. Lender shall have no obligation whatsoever to disclose to Guarantor any information acquired in the course of its relationship with Borrower or otherwise.

**TRANSFER OF INDEBTEDNESS.** This Guaranty is for the benefit of Lender and for such other person or persons as may from time to time become or be the holders of all or any part of Borrower's Indebtedness. This Guaranty shall be transferrable and negotiable with the same force and effect and to the same extent as Borrower's Indebtedness may be transferrable; it being understood and agreed to by Guarantor that, upon any transfer or assignment of all or any part of Borrower's Indebtedness, the holder of such Borrower's Indebtedness shall have all of the rights and remedies granted to Lender under this Guaranty. Guarantor further agrees that, upon any transfer of all or any portion of Borrower's Indebtedness, Lender may transfer and deliver any and all collateral securing repayment of such Borrower's Indebtedness (including, but not limited to, any collateral provided by Guarantor) to the transferee of such Borrower's Indebtedness, and such collateral shall secure any and all of Borrower's Indebtedness in favor of such a transferee. Guarantor additionally agrees that, after any such transfer or assignment has taken place, Lender shall be fully discharged from any and all liability and responsibility to Borrower and Guarantor with respect to such collateral, and the transferee thereafter shall be vested with all the powers and rights with respect to such collateral.

**CONSENT TO PARTICIPATION.** Guarantor recognizes and agrees that Lender may, from time to time, one or more times, transfer all or any part of Borrower's Indebtedness through sales of participation interests in Borrower's Indebtedness to one or more third party lenders. Guarantor specifically agrees and consents to all such transfers and assignments, and Guarantor further waives any subsequent notice of such transfers and assignments as may be provided under Louisiana law. Guarantor additionally agrees that the purchaser of a participation interest in Borrower's Indebtedness will be considered as the absolute owner of a percentage interest of Borrower's Indebtedness and that such a purchaser will have all of the rights granted under any participation agreement governing the sale of such a participation interest. Guarantor waives any rights of offset that Guarantor may have against Lender and/or any purchaser of such a participation interest, and Guarantor unconditionally agrees that either Lender or such a purchaser may enforce Guarantor's obligations and liabilities under this Guaranty, irrespective of the failure or insolvency of Lender or any such purchaser.

**NOTICES.** Any notice provided in this Guaranty must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above or at such other addresses as any party may designate to the other in writing. If there is more than one Guarantor under this Guaranty, notice to any Guarantor shall constitute notice to all Guarantors.

**ADDITIONAL GUARANTIES.** Guarantor recognizes and agrees that Lender may have previously granted, and may in the future grant one or more additional guaranties of Borrower's Indebtedness and obligations in favor of Lender. Should this occur, the execution of this Guaranty and any additional guaranties on Guarantor's part will not be construed as a cancellation of this Guaranty or any of Guarantor's additional guaranties; it being Guarantor's full intent and agreement that all of Guarantor's guaranties of Borrower's Indebtedness and obligations in favor of Lender, shall remain in full force and shall be cumulative in nature and effect.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** No amendment, modification, consent or waiver of any provision of this Guaranty, and no consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the purpose for which given.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions.

**No Oral Agreements.** This Guaranty is the final expression of the agreement between Lender and Guarantor and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous agreement between Lender and Guarantor.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If any provision of this Guaranty is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Guaranty shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Guaranty, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound.** Guarantor's obligations and liabilities under this Guaranty shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.):

**Borrower.** The word "Borrower" means IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation STEVE J. MIGUEZ, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Borrower's Indebtedness.** The words "Borrower's Indebtedness" mean Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

## COMMERCIAL GUARANTY
### (Continued)

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of the Note or any interest therein.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions of and for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Borrower's indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED SEPTEMBER 28, 2015.**

GUARANTOR:

X _____
STEVE J. MIGUEZ

LaserPro, Ver. 15.4.1.147  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - LA  C:\HARLAND\CFI\LPL\E35.FC  TR-6762  PR-17DV



# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO. 780.357

DIVISION " "

*A*

SBN V FNBC LLC

VERSUS

STEVE J. MIGUEZ

FILED: _____    _____
DEPUTY CLERK

## VERIFIED PETITION FOR COLLECTION ON NOTE AND GUARANTY

NOW INTO COURT, through undersigned counsel, SBN V FNBC LLC, who respectfully asserts as follows:

### Nature of Action

1.

This collection action arises out First NBC Bank's ("First NBC") failure and money it lent to Iberia Marine Service, L.L.C. and its associated entities MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR.MASON LLC; MR. ROW LLC; LADY BRANDI LLC; LADY EVE LLC; AND MR. STEVEN LLC (collectively "IMS"). To induce First NBC to loan IMS well over twenty-two million dollars, IMS insider, namely Steve J. Miguez ("Guarantor") offered to absolutely and unconditionally guarantee the sums lent to IMS. The Guarantor agreed that he received a benefit from the loans being made to IMS. IMS has been and is in default of the loan it made with First NBC.

After First NBC failed, the Federal Deposit Insurance Corporation as Receiver (FDIC-R) took over First NBC's operations. On or about October 18, 2017, the FDIC transferred the credits to SBN V FNBC LLC, and SBN V FNBC LLC made demand for payment on both IMS and the Guarantor to no avail. SBN V FNBC LLC seeks a judgment against the Guarantor for all the sums due as set forth below.

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**EXHIBIT**

**B**

2.

Plaintiff is SBN V FNBC LLC ("SBN"), a non-Louisiana limited liability company, as successor in interest to FDIC-R's right title and interest to the loan and guaranty at issue in this litigation.

3.

Made Defendant is Steve J. Miguez, a person of the full age of majority and believed to be a resident of St. Mary Parish.

## Venue

4.

Venue is approatiate herein because the Loan, Promissory Note, and Guaranty at issue were executed in Jefferson Parish, Louisiana.

## Facts.

5.

First NBC Bank entered into Business Loan Agreements with IMS (loan number ******8770), dated September 28, 2015 ("the Loan"). A copy of the Business Loan Agreement is attached hereto as Exhibit A. As evidence of the loans made pursuant to the Business Loan Agreement, IMS made a promissory note in the amount of Twenty-two Million Five Hundred Thousand Dollars & 00/100 Dollars (U.S. $22,500,000.00) dated September 28, 2015, in favor of First NBC Bank with a due date of September 28, 2020. A copy of the Note is attached hereto as Exhibit B.

6.

Steve J. Miguez, an insider of IMS, absolutely and unconditionally guaranteed the Loan in a Commercial Guaranty, also dated September 28, 2015. A copy of the Commercial Guaranty is attached as Exhibit C.

7.

Demand has been made for payment and IMS is in default of said loans for nonpayment.

8.

In the Note, IMS and the Guarantor waived demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and agreed that all the obligations under the Note were on an *in solido* basis.

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

9.

In the Commercial Guaranty the Guarantor, absolutely and unconditionally guaranteed full and punctual payment and satisfaction of the IMS's indebtedness. The Guarantor also waived demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion. The documents evidencing the Loan give, without waiving any remedies, SBN the ability to file suit to collect the sums due directly from the Guarantor without sizing or selling any collateral securing the loan or proceeding directly against the borrowers. SBN specifically reserves the right to file suit at a later date against IMS and/or to seize and sell collateral securing the loan.

10.

As of January 11, 2018 the total balance outstanding of the Loan is $22,018,031.52 in principal, $605,916.96 in interest (accruing at $3,058.06 per day), and $1,250.00 in unpaid late charges, for a total sum due of $22,625,198.48. Such sum continues to accrue. IMS and the Guarantor are justly and truly indebted and liable *in solido* to SBN for the sums due.

11.

IMS and the Guarantor also agreed to pay all SBN's reasonable attorneys fees in an amount not to exceed 25% of the amount demanded, plus all costs and fees associated with this lawsuit, are thus is justly and truly indebted and liable to SBN for these sums.

WHEREFORE, SBN V FNBC LLC prays that Steve J. Miguez be duly served with a copy of this pleading and be summoned to appear and answer it, and after all due proceedings are had, there be judgment in favor of SBN V FNBC LLC and against Steve J. Miguez for all amounts prayed for, plus reasonable attorney's fees, and interest at the default rate during the pendency of these proceedings; that SBN V FNBC LLC be granted such other general, just, legal, and equitable relief as to which it is entitled under the Commercial Loan Agreement, the Note, the Guaranty and other documents associated with the Loan, at law and/or in equity.

RESPECTFULLY SUBMITTED,

*/s/ James M. Garner*
LEOPOLD Z. SHER #12014
JAMES M. GARNER #19589 (trial counsel)
JACOB A. AIREY #27933
BRANDON KEAY #36528
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.**
909 Poydras Street - 28th Floor

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

New Orleans, Louisiana 70112
Telephone: 504-299-2100
Facsimile: 504-299-2300
Email: jgarner@shergarner.com
       lsher@shergarner.com
       jairey@shergarner.com
       bkeay@shergarner.com
**COUNSEL FOR SBN V FNBC LLC**

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

4

PLEASE SERVE

STEVE J. MIGUIZ
at
107 Hwy 90 West
New Iberia, LA 70560
or
3015 Gene Flash Rd
New Iberia, LA 70560

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 780-357.                                    DIVISION " "

**SBN V FNBC LLC**

**VERSUS**

**STEVE J. MIGUEZ**

FILED: _____          _____
                                                    **DEPUTY CLERK**

**VERIFICATION**

STATE OF COLORADO

PARISH/COUNTY OF DENVER

COMES NOW, Mark Kilcoin, a person of the full age of majority, who, after being duly sworn, hereby under oath does state:

1. That he has personal knowledge of the facts of this matter;

2. That on behalf of SBN V FNBC LLC he manages the loan to IMS ending in loan number ******8770 (the "Loan");

3. That SNB V FNBC LLC purchased the Loan from the Federal Deposit Insurance Corporation in its capacity as Receiver for First NBC Bank (FDIC-R);

4. That he is familiar with the Loan and the Loan is in default;

5. That the factual allegations set forth in the above foregoing Verified Petition for Collection On Note And Guaranty ("Demand") are true and correct to the best of his knowledge and belief;

6. As of January 11, 2018 the total balance outstanding of the Loan is $22,018,031.52 in principal, $605,916.96 in interest (accruing at $3,058.06 per day), and $1,250.00 in unpaid late charges, for a total sum due of $22,625,198.48. Such sum continues to accrue; and

7. All documents attached to the Demand are true and correct copies of documents that are keep in the ordinary course of SBN V FNBC LLC's business, as said documents were received from the FDIC-R.

5

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

MARK KILCOIN, authorized signatory for SBN V
FNBC LLC

SWORN AND SUBSCRIBED BEFORE ME
THIS 5th DAY OF February , 2018.

_____
NOTARY PUBLIC

Print Name: _Melissa J. Hunting___

MELISSA J. HUNTING
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19994023997
MY COMMISSION EXPIRES AUGUST 26, 2019

24th E-Filed: 02/06/2018 15:02:55 Case: 780357 Div:A Atty:019589 JAMES M GARNER
24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

6

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ
against Miguez (SBN v. Miguez) Pg 46 of 84

*0000001000138770%0000000%0070%09282015%881098385*

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $22,500,000.00 | 09-28-2015 | 09-28-2020 | 1000138770 | 4A / 655 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1820
AMELIA, LA 70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

**THIS BUSINESS LOAN AGREEMENT dated September 28, 2015, is made and executed between IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC ("Borrower"), and Borrower's Members signing below ("Members"), and FIRST NBC BANK ("Lender") on the following terms and conditions. Borrower has applied to Lender for a loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.**

**EFFECT OF AGREEMENT. The following provisions pertain to the effect of this Agreement.**

**Applicability.** This Agreement shall apply to any and all present and future indebtedness, contracts, agreements and undertakings by and between Borrower and Lender for any purpose whatsoever.

**Amendment to Operating Agreement.** This Agreement shall for all purposes be considered and shall have the same effect as an amendment to, and shall comprise a part of Borrower's Operating Agreement, and shall be binding upon Borrower and all of Borrower's present and future Members. To this end, all persons subsequently acquiring Membership Interests in Borrower for all purposes shall be deemed to be bound and obligated under the terms and conditions of this Agreement just as if said subsequently added Members had signed this Agreement along with the Members signing below, with the consent and agreement of such subsequently added Members to be so bound and obligated hereunder being an absolute condition precedent to such persons acquiring Membership Interests in Borrower.

**ADVANCE AUTHORITY.** The following person or persons are authorized to request advances and authorize payments during the construction loan phase under the Note until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C.; STEVE J. MIGUEZ, Manager of MR. BLAKE LLC; STEVE J. MIGUEZ, Manager of MR. RIDGE LLC; STEVE J. MIGUEZ, Manager of LADY GLENDA LLC; STEVE J. MIGUEZ, Manager of MR. MASON LLC; STEVE J. MIGUEZ, Manager of MR. ROW LLC; STEVE J. MIGUEZ, Manager of LADY BRANDI L.L.C.; STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.; and STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC.**

**APPLICATION FOR AND PURPOSE OF THE LOAN.** Borrower has applied to Lender for a Loan in the aggregate principal amount of **$22,500,000.00** for the following purpose:**TO REFINANCE DEBT AND MOVE RELATIONSHIP CURRENTLY WITH CAPITAL ONE BANK USED TO PURCHASE/BUILD MARINE VESSELS. THESE FUNDS WILL ALSO BE USED TO INSTALL NEW DP SYSTEMS INTO THE LADY GLENDA AND MR. ROW FOR APPROXIMATELY $600M EACH VESSEL..**

**BORROWER'S NOTE.** Lender has agreed to extend a Loan to Borrower in the amount of **$22,500,000.00** subject to the terms and conditions of this Agreement and Borrower's attached Note. Borrower agrees to be bound and obligated under the terms and conditions of this Agreement and Borrower's Note.

**MULTIPLE ADVANCES.** Borrower's Note shall evidence multiple Loan Advances to be made by Lender to Borrower from time to time on a non-self replenishing basis. Loan Advances under Borrower's Note may be requested orally or in writing. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums advanced by Lender under Borrower's Loan and Note in accordance with the instructions of any officer or other representative of Borrower or credited to Borrower's deposit account(s) with Lender. Borrower additionally agrees that the unpaid principal balance outstanding under Borrower's Loan and Note shall at all times be evidenced by endorsements on the Note, or alternatively, by Lender's internal records, including Lender's daily computer print-out. Borrower additionally agrees that Lender may, within its sole judgment, refuse to extend Loan Advances to Borrower whenever Lender determines or has reason to believe that any one or more of the following conditions exists or will occur: (a) the amount of the requested Loan Advance will result in Borrower exceeding its maximum Loan commitment; (b) Borrower is not complying or has not complied with Lender's procedures and additional requirements for requesting Loan Advances; (c) Borrower has failed to provide Lender with satisfactory documentation to support the requested Loan Advance; (d) Lender has reason to believe that Borrower is not presently complying, or has not complied with the terms and conditions of this Agreement, or has committed or is in the process of committing an Event of Default hereunder or under any Security Agreement directly or indirectly securing repayment of Borrower's Loan and Note; or (e) Lender deems itself to be insecure with regard to the repayment of Borrower's Loan and Note. Lender shall have no obligation or liability to Borrower or to any other person or persons arising out of or in any way accruing from Lender's reasonable refusal to extend Loan Advances to Borrower for any of the reasons stated above.

**TERM.** This Agreement shall be effective as of September 28, 2015, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until September 28, 2020.

**AUTHORIZED REPRESENTATIVES. The following provisions pertain to, among other things, the authorization of persons under this Agreement.**

**Resolutions.** The Members of Borrower have met and have properly authorized certain designated persons ("Authorized Representatives") to represent Borrower and to act for and on behalf of Borrower in dealing with Lender. To the extent applicable, such Authorized Representatives are listed in a separate form of Resolution or other communication delivered to Lender.

**Managers.** Borrower's present and future Managers (to the extent that Borrower has Managers) shall always have the full and unrestricted authority to deal with Lender and shall be considered Authorized Representatives of Borrower without the additional necessity of being specifically designated as such by Borrower's Members under a formal resolution.

**Unrestricted Authority.** Notwithstanding any provision of Borrower's Operating Agreement to the contrary, or any resolution of Borrower's Members not previously communicated to Lender in writing, Borrower's Authorized Representatives (including without limitation Borrower's Managers) shall have the full and unrestricted right, power and authority to deal and to contract with Lender and to otherwise bind and unrestrict right, power and authority, from time to time, one or more times, and without the necessity of obtaining the further approval of all or a majority of Borrower's Members: (1) to obtain loans, loan advances, and to incur other Indebtedness and obligations in favor of Lender in any amount and for any purpose, and whether or not deemed to be in the ordinary course of Borrower's business; and (2) to sell, exchange, lease, mortgage, pledge, or otherwise transfer or encumber or grant Security Interests in favor of Lender as affecting any or all or substantially all of the assets and movable (personal) and immovable (real) properties of Borrower, including without limitation, entering into mortgages and security agreements that contain confessions of judgment and consents to foreclosure remedies under Louisiana executory process procedures; and (3) otherwise to enter into such agreements and to incur such obligations in favor of Lender as such Authorized Representatives may deem to be necessary and proper.

**Substitute Authorized Representatives.** Lender may continue to deal and contract with such Authorized Representatives on an unrestricted basis until such time as: (1) their authority to act for and on behalf of Borrower is formally revoked and substitute Authorized Representatives are properly appointed by Borrower's Members, and (2) Lender is properly notified in writing and accepts and acknowledges the same.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may

EXHIBIT "A"

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**MULTIPLE BORROWERS.** This Agreement has been executed by multiple obligors who are referred to in this Agreement individually, collectively and interchangeably as "Borrower." Unless specifically stated to the contrary, the word "Borrower" as used in this Agreement, including without limitation all representations, warranties and covenants, shall include all Borrowers. Borrower understands and agrees that, with or without notice to any one Borrower, Lender may (A) make one or more additional secured or unsecured loans or otherwise extend additional credit with respect to any other Borrower; (B) with respect to any other Borrower alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (C) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (D) release, substitute, agree not to sue, or deal with any one or more of Borrower's or any other Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) determine how, when and what application of payments and credits shall be made on any indebtedness; (F) apply such security and direct the order or manner of sale of any Collateral, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) sell, transfer, assign or grant participations in all or any part of the Loan; (H) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (I) settle or compromise any indebtedness; and (J) subordinate the payment of all or any part of any of Borrower's indebtedness to Lender to the payment of any liabilities which may be due Lender or others.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** IBERIA MARINE SERVICE, L.L.C. is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. IBERIA MARINE SERVICE, L.L.C. is duly authorized to transact business in all other states in which IBERIA MARINE SERVICE, L.L.C. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which IBERIA MARINE SERVICE, L.L.C. is doing business. Specifically, IBERIA MARINE SERVICE, L.L.C. is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. IBERIA MARINE SERVICE, L.L.C. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. IBERIA MARINE SERVICE, L.L.C. maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless IBERIA MARINE SERVICE, L.L.C. has designated otherwise in writing, the principal office is the office at which IBERIA MARINE SERVICE, L.L.C. keeps its books and records concerning the Collateral. IBERIA MARINE SERVICE, L.L.C. will notify Lender prior to any change in the location of IBERIA MARINE SERVICE, L.L.C.'s state of organization or any change in IBERIA MARINE SERVICE, L.L.C.'s name. IBERIA MARINE SERVICE, L.L.C. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to IBERIA MARINE SERVICE, L.L.C. and IBERIA MARINE SERVICE, L.L.C.'s business activities.

**MR. BLAKE LLC** is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. BLAKE LLC is duly authorized to transact business in all other states in which MR. BLAKE LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. BLAKE LLC is doing business. Specifically, MR. BLAKE LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. BLAKE LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. BLAKE LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. BLAKE LLC has designated otherwise in writing, the principal office is the office at which MR. BLAKE LLC keeps its books and records including its records concerning the Collateral. MR. BLAKE LLC will notify Lender prior to any change in the location of MR. BLAKE LLC's state of organization or any change in MR. BLAKE LLC's name. MR. BLAKE LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. BLAKE LLC and MR. BLAKE LLC's business activities.

**MR. RIDGE LLC** is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. RIDGE LLC is duly authorized to transact business in all other states in which MR. RIDGE LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. RIDGE LLC is doing business. Specifically, MR. RIDGE LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. RIDGE LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. RIDGE LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. RIDGE LLC has designated otherwise in writing, the principal office is the office at which MR. RIDGE LLC keeps its books and records including its records concerning the Collateral. MR. RIDGE LLC will notify Lender prior to any change in the location of MR. RIDGE LLC's state of organization or any change in MR. RIDGE LLC's name. MR. RIDGE LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. RIDGE LLC and MR. RIDGE LLC's business activities.

**LADY GLENDA LLC** is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. LADY GLENDA LLC is duly authorized to transact business in all other states in which LADY GLENDA LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which LADY GLENDA LLC is doing business. Specifically, LADY GLENDA LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. LADY GLENDA LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. LADY GLENDA LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless LADY GLENDA LLC has designated otherwise in writing, the principal office is the office at which LADY GLENDA LLC keeps its books and records including its records concerning the Collateral. LADY GLENDA LLC will notify Lender prior to any change in the location of LADY GLENDA LLC's state of organization or any change in LADY GLENDA LLC's name. LADY GLENDA LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to LADY GLENDA LLC and LADY GLENDA LLC's business activities.

**MR. MASON LLC** is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. MASON LLC is duly authorized to transact business in all other states in which MR. MASON LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. MASON LLC is doing business. Specifically, MR. MASON LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. MASON LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. MASON LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. MASON LLC has designated otherwise in writing, the principal office is the office at which MR. MASON LLC keeps its books and records including its records concerning the Collateral. MR. MASON LLC will notify Lender prior to any change in the location of MR. MASON LLC's state of organization or any change in MR. MASON LLC's name. MR. MASON LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. MASON LLC and MR. MASON LLC's business activities.

**MR. ROW LLC** is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. ROW LLC is duly authorized to transact business in all other states in which MR. ROW LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. ROW LLC is doing business. Specifically, MR. ROW LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. ROW LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

engage. MR. ROW LLC maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless MR. ROW LLC has designated otherwise in writing, the principal office is the office at which MR. ROW LLC keeps its books and records including its records concerning the Collateral. MR. ROW LLC will notify Lender prior to any change in the location of MR. ROW LLC's state of organization or any change in MR. ROW LLC's name. MR. ROW LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. ROW LLC and MR. ROW LLC's business activities.

LADY BRANDI L.L.C. is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. LADY BRANDI L.L.C. is duly authorized to transact business in all other states in which LADY BRANDI L.L.C. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which LADY BRANDI L.L.C. is doing business. Specifically, LADY BRANDI L.L.C. is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. LADY BRANDI L.L.C. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. LADY BRANDI L.L.C. maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless LADY BRANDI L.L.C. has designated otherwise in writing, the principal office is the office at which LADY BRANDI L.L.C. keeps its books and records including its records concerning the Collateral. LADY BRANDI L.L.C. will notify Lender prior to any change in the location of LADY BRANDI L.L.C.'s state of organization or any change in LADY BRANDI L.L.C.'s name. LADY BRANDI L.L.C. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to LADY BRANDI L.L.C. and LADY BRANDI L.L.C.'s business activities.

LADY EVE, L.L.C. is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. LADY EVE, L.L.C. is duly authorized to transact business in all other states in which LADY EVE, L.L.C. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which LADY EVE, L.L.C. is doing business. Specifically, LADY EVE, L.L.C. is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. LADY EVE, L.L.C. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. LADY EVE, L.L.C. maintains an office at 3820 LAKE PALOURDE, MORGAN CITY, LA 70380. Unless LADY EVE, L.L.C. has designated otherwise in writing, the principal office is the office at which LADY EVE, L.L.C. keeps its books and records including its records concerning the Collateral. LADY EVE, L.L.C. will notify Lender prior to any change in the location of LADY EVE, L.L.C.'s state of organization or any change in LADY EVE, L.L.C.'s name. LADY EVE, L.L.C. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to LADY EVE, L.L.C. and LADY EVE, L.L.C.'s business activities.

MR. STEVEN, LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. MR. STEVEN, LLC is duly authorized to transact business in all other states in which MR. STEVEN, LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which MR. STEVEN, LLC is doing business. Specifically, MR. STEVEN, LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. MR. STEVEN, LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. MR. STEVEN, LLC maintains an office at 109 HWY 90 WEST, NEW IBERIA, LA 70560. Unless MR. STEVEN, LLC has designated otherwise in writing, the principal office is the office at which MR. STEVEN, LLC keeps its books and records including its records concerning the Collateral. MR. STEVEN, LLC will notify Lender prior to any change in the location of MR. STEVEN, LLC's state of organization or any change in MR. STEVEN, LLC's name. MR. STEVEN, LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to MR. STEVEN, LLC and MR. STEVEN, LLC's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation.** There are no suits or proceedings pending, or to the knowledge of Borrower, threatened against or affecting Borrower or Borrower's assets, before any court or by any governmental agency, other than those previously disclosed to Lender in writing, which, if adversely determined, may have a material adverse effect on Borrower's financial condition or business.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Information.** All information heretofore or contemporaneously furnished by Borrower to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Borrower to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez) Pg 49 of 84

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Other Events.** Promptly notify Lender in writing of (1) the addition of any new Members of Borrower, (2) the death, interdiction, withdrawal, expulsion, bankruptcy, or dissolution of any Member or the occurrence of any other event which may terminate the continued membership of any Member, (3) the expression of any intent or desire on the part of any Member or Members to dissolve or liquidate Borrower, and (4) the occurrence of any event specified in Borrower's Articles or in Borrower's Operating Agreement that may result in Borrower's dissolution or liquidation.

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount    |
|-------------------|-----------|
| STEVE J. MIGUEZ   | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** Borrower recognizes and agrees that Lender may incur certain expenses in connection with Lender's exercise of rights under this Agreement. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST :

18-51277 - #50-6  File 11/19/18  Enter 11/19/18 14:52:04  Exhibit F- 2018-10-16 SBN MSJ against Miguez (SBN v. Miguez) Pg 50 of 84

Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, Encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral, including without limitation, the purchase of insurance protecting only Lender's interest in any Collateral. Lender may further take such other action or actions and incur such additional expenditures as Lender may deem to be necessary and proper to cure or to rectify any actions or inactions on Borrower's part as may be required under this Agreement. Nothing under this Agreement or otherwise shall obligate Lender to take any such actions or to incur any such additional expenditures on Borrower's behalf, or as making Lender in any way responsible or liable for any loss, damage, or injury to any Collateral, to Borrower, or to any other person or persons, resulting from Lender's election not to take such actions or to incur such additional expenses. In addition, Lender's election to take any such actions or to incur such additional expenditures shall not constitute a waiver or forbearance by Lender of any Event of Default under this Agreement. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Amendments to Articles or Operating Agreement.** Amend its Articles or Operating Agreement (1) to limit or restrict the permissible activities in which Borrower may engage, or (2) to withdraw the authority of or to limit or restrict the authority of Borrower's Authorized Representatives (including Borrower's Managers) to deal and contract with Lender and to bind and obligate Borrower.

**Withdrawal of Members.** Permit any Member to withdraw from the Borrower and to receive any type of withdrawal distribution.

**Distributions.** Pay any interim distribution in cash or other assets to a Member or Members of Borrower.

**Waiver or Compromise of Rights Against Members.** Waive, compromise or forgo any rights that Borrower may have against any Member for unpaid capital contributions or any other obligation owed to Borrower.

**Non-Compliance.** Any of the above actions on the part of Borrower (including without limitation, any amendment to Borrower's Articles or Operating Agreement) shall be effective as against Lender unless and until (1) Borrower shall have notified Lender in writing; and (2) Lender shall have expressly agreed to such actions in writing. Specifically, any distribution by Borrower in violation of this Agreement shall be considered as a "wrongful distribution" for purpose of applicable Law.

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**OBLIGATION OF MEMBERS.** So long as this Agreement remains in effect, each and every present and future Member of Borrower agrees and covenants as follows:

**No Withdrawal.** Not to withdraw as a Member of Borrower and to obtain a withdrawal distribution without first notifying Lender in writing and obtaining Lender's prior written consent (which Lender shall have the unrestricted right to refuse).

**Compliance.** To take whatever steps may be necessary and proper to insure that Borrower and each other Member complies with the terms, conditions and covenants of this Agreement.

**SECURITY INTEREST GRANTED BY MEMBERS.** Borrower and each Member additionally agree as follows:

**Membership Interests.** Notwithstanding any provision of Borrower's Articles or Operating Agreement to the contrary, each Member shall have the unrestricted right, power and authority to grant a Security Interest in favor of Lender as affecting his Membership Interest in Borrower.

**Rights of Lender.** Should Lender for any reason acquire the Membership Interest of any Member, whether as a result of default under a loan or extension of credit or otherwise, then Lender or any third party to whom Lender may sell or assign said Membership Interest shall have all of the rights, powers and authority of a "member" of Borrower, including the right to participate in the management and affairs permit that result to occur.

**Redemptive Rights.** Should Lender acquire the Membership Interest of any Member as a result of a default under a loan, then Lender shall have the right, without the necessity of first obtaining any type of judgment against such a Member, to redeem the defaulting Member's Membership Interest for the then value thereof, which sum shall be paid by Borrower immediately on demand by Lender to be applied against the Member's loan obligation.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of Borrower's Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by Law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of Borrower's Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**EVENTS OF DEFAULT.** The following actions or inactions or both shall constitute Events of Default under this Agreement:

**Default Under the Note.** Should Borrower default in the payment of principal or interest under the Note or any of the Indebtedness.

**Default Under this Agreement.** Should Borrower violate, or fail to comply fully with any of the terms and conditions of, or default under this Agreement.

**Default Under other Agreements.** Should any default occur or exist under any Related Document which directly or indirectly secures repayment of the Loan and any of the Indebtedness.

**Other Defaults in Favor of Lender.** Borrower or any guarantor defaults under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any Guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property, or any Guarantor's ability to perform their respective obligations under this Agreement, or any Related Document, or pertaining to the Indebtedness.

**Death.** Borrower, or any guarantor of the Indebtedness, dies.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor occur or exist.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, composition or extension under any insolvency law be brought by or against Borrower or any Guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any Guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any Guarantor, be applied for or appointed.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of the Loan.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.

Lender shall have the right, at its sole option, to accelerate payment of Borrower's Note in full, in principal, interest, costs, expenses, attorneys' fees, and other fees and charges, as well as to accelerate the maturity of any and all other loans and/or obligations that Borrower may then owe to Lender, whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, due or to become due, and whether now existing or hereafter arising, and whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or as a surety, of every nature and kind whatsoever, whether any such indebtedness may be barred under any statute of limitations or otherwise may be unenforceable or voidable for any reason whatsoever.

Lender shall have the additional right, again at its sole option, to file an appropriate collection action against Borrower and/or against any guarantor or guarantors of Borrower's Loan and Note, and/or to proceed or exercise any rights against any Collateral then securing repayment of Borrower's Loan and Note. Borrower and each guarantor further agree that Lender's remedies shall be cumulative in nature and nothing under this Agreement or otherwise, shall be construed as to limit or restrict the options and remedies available to Lender following any event of default under this Agreement or otherwise.

Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement.

**Amendments.** No amendment, modification, consent or waiver of any provision of this Agreement, and no consent to any departure by Borrower therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Loan and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Loan and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Loan and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Louisiana.

**Joint and Several Liability.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each Borrower signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** To give Borrower any notice required under this Agreement, Lender may hand deliver or mail the notice to Borrower at Borrower's last address in Lender's records. If there is more than one Borrower under this Agreement, notice to a single Borrower shall be considered as notice to all Borrowers. To give Lender any notice under this Agreement, Borrower (or any Borrower) shall mail the notice to Lender by registered or certified mail at the address specified in this Agreement, or at any other address that Lender may have given to Borrower (or any Borrower) by written notice as provided in this section. All notices required or permitted under this Agreement must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail as provided herein.

**Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Agreement shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST : Case: 780357

# BUSINESS LOAN AGREEMENT
## (Continued)

Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.). Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached or to be attached to this Business Loan Agreement from time to time.

**Articles.** The word "Articles" means and includes Borrower Articles of Organization as presently on file with the appropriate government office, and as such Articles may subsequently be amended or modified from time to time, one or more times.

**Authorized Representatives.** The words "Authorized Representatives" mean and include, individually, collectively, interchangeably, any and all persons authorized by Borrower's Members or Managers to act for and on behalf of Borrower in dealings with Lender.

**Borrower.** The word "Borrower" means IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including principal, interest, costs, expenses and attorneys' fees and all other fees and charges together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of Borrower's Loan and Note, or any interest therein.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Member.** The word "Member" means and include, individually, collectively, interchangeably, any and all present and future member owners of Borrower.

**Membership Interest.** The words "MEMBERSHIP INTEREST" mean and include a Member's ownership rights and interest in Borrower, including without limitation, a Member's share of the profits and losses of Borrower, right to receive distributions of Borrower's assets, and any right to vote or participate in the management and affairs of Borrower.

**Note.** The word "Note" means the Note dated September 26, 2015 and executed by IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC in the principal amount of $22,500,000.00, together with all renewals, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement.

**Operating Agreement.** The words "Operating Agreement" mean any agreement between Borrower's Members governing the affairs of Borrower and the conduct of its business.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure Indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include individually, collectively, interchangeably and without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST Case: 780357

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO
ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED SEPTEMBER 28, 2015.

BORROWER:

IBERIA MARINE SERVICE, L.L.C.

By: _____
    STEVE J. MIGUEZ, Manager of IBERIA MARINE
    SERVICE, L.L.C.

MR. BLAKE LLC

By: _____
    STEVE J. MIGUEZ, Manager of MR. BLAKE LLC

MR. RIDGE LLC

By: _____
    STEVE J. MIGUEZ, Manager of MR. RIDGE LLC

LADY GLENDA LLC

By: _____
    STEVE J. MIGUEZ, Manager of LADY GLENDA LLC

MR. MASON LLC

By: _____
    STEVE J. MIGUEZ, Manager of MR. MASON LLC

MR. ROW LLC

By: _____
    STEVE J. MIGUEZ, Manager of MR. ROW LLC

LADY BRANDI L.L.C.

By: _____
    STEVE J. MIGUEZ, Manager of LADY BRANDI
    L.L.C.

LADY EVE, L.L.C.

By: _____
    STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.

MR. STEVEN, LLC

By: _____
    STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC

LENDER:

FIRST NBC BANK

By: _____
    Authorized Officer

LaserPro, Ver. 15.4.10.001, Copr. D+H USA Corporation 1997, 2015. All Rights Reserved. - LA E:\HARLAND\CFI\LPL\C40.FC TR-14002 PR-170

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated September 28, 2015 in the original principal amount of $22,500,000.00, executed by Iberia Marine Service, L.L.C.; Mr. Blake LLC; Mr. Ridge LLC.; Lady Glenda LLC.; Mr. Mason LLC.; Mr. Row LLC.; Lady Brandi L.L.C.; Lady Eve, L.L.C.; and Mr Steven, LLC made to First NBC Bank as the same may have been renewed, assigned, amended, supplemented, restated or modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact

```
EXHIBIT
  "B"
```

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST



*000001000138770%0000000%0055%09282015%661098285*

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $22,500,000.00 | 09-28-2015 | 09-28-2025 | 1000138770 | 4A / 055 | | PJS | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC;
MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON
LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY
EYE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1820
AMELIA, LA 70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

**Principal Amount: $22,500,000.00**      **Date of Note: September 28, 2015**

**PROMISE TO PAY.** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EYE, L.L.C.; and MR. STEVEN, LLC ("Borrower") promise to pay to the order of FIRST NBC BANK ("Lender"), in lawful money of the United States of America the sum of Twenty-two Million Five Hundred Thousand & 00/100 Dollars (U.S. $22,500,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a multiple advance basis as provided herein, together with simple interest at the rate or rates provided herein in the "PAYMENT" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on September 28, 2015, and continuing until this Note is paid in full.

**MULTIPLE ADVANCE LOAN.** This Note contemplates multiple loan advances. Once the total amount of principal has been advanced under this Note, Borrower will not be entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following persons or persons are authorized to request advances and authorize payments during the construction loan phase under this Note until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C., STEVE J. MIGUEZ, Manager of MR. BLAKE LLC; STEVE J. MIGUEZ, Manager of MR. RIDGE LLC; STEVE J. MIGUEZ, Manager of LADY GLENDA LLC; STEVE J. MIGUEZ, Manager of MR. MASON LLC; STEVE J. MIGUEZ, Manager of MR. ROW LLC; STEVE J. MIGUEZ, Manager of LADY BRANDI L.L.C.; STEVE J. MIGUEZ, Manager of LADY EYE, L.L.C.; and STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balance as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph. 12 monthly consecutive interest payments, beginning October 28, 2015, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days; 47 monthly consecutive principal and interest payments in the initial amount of $149,366.47 each, beginning October 28, 2016, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days; and one principal and interest payment of $19,765,550.41 on September 28, 2025, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM CENTRAL TIME, Lender will credit Borrower's payment on the next business day.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during the Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rates stated in this Note.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, KENNER OFFICE, 3535 CHATEAU BLVD SUITE 19, KENNER, LA 70065.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10.000% of the unpaid portion of the regularly scheduled payment with a maximum of $50,000. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Borrower fails to pay any payment under this Note within 10 days of when due, Lender declares this Note to be in default, Lender has the right (prospectively) to adjust and fix the simple interest rate under this Note as this Note is paid in full, as follows: (A) if the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater, (B) if the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Default Under Loan Agreement.** If an event of default occurs or exists under the terms of Borrower's Loan Agreement in favor of Lender.

**Payment Default.** Borrower fails to make any payment when due under this Note.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default In Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $25.00 or 5.000% of the dishonored item (whether check or electronic payment), whichever is greater.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** This Note is secured by Titled Collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charged for deferral of time for payment and will not and are not intended to compensate Lender for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST Case: 780357

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

IBERIA MARINE SERVICE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of IBERIA MARINE
SERVICE, L.L.C.

MR. BLAKE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. BLAKE LLC

MR. RIDGE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. RIDGE LLC

LADY GLENDA LLC

By: _____
STEVE J. MIGUEZ, Manager of LADY GLENDA LLC

MR. MASON LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. MASON LLC

MR. ROW LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. ROW LLC

LADY BRANDI, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY BRANDI,
L.L.C.

LADY EVE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.

MR. STEVEN, LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST


*000001000138770%0000000%0220%09282015%861098285*

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 4A7 955 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC;
MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON
LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY
EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1820
AMELIA, LA 70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

**Guarantor:** STEVE J. MIGUEZ
3015 GENE FLASH RD.
NEW IBERIA, LA 70560

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Borrower's Indebtedness or against any collateral securing the Borrower's Indebtedness, this Guaranty or any other guaranty of the Borrower's Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**BORROWER'S INDEBTEDNESS.** The words "Borrower's Indebtedness" as used in this Guaranty mean all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all present and future loans, loan advances, extensions of credit, obligations and/or liabilities that Borrower individually or collectively or interchangeably with others, owes or will owe or incur in favor of Lender whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether absolute or contingent, voluntary or involuntary, determined or undetermined, liquidated or unliquidated, due or to become due, secured or unsecured, and whether Borrower may be liable individually, jointly or solidarily with others, whether primarily or secondarily, or as a guarantor or otherwise, and whether now existing or hereafter arising, or every nature and kind whatsoever, including any liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**JOINT, SEVERAL AND SOLIDARY LIABILITY.** Guarantor's obligations and liability under this Guaranty shall be on a "solidary" or "joint and several" basis along with Borrower to the same degree and extent as if Guarantor had been and/or will be a co-borrower, co-principal obligor and/or co-maker of Borrower's Indebtedness. In the event that there is more than one Guarantor under this Guaranty, or in the event that there are other guarantors, endorsers or sureties of all or any portion of Borrower's Indebtedness, Guarantor's obligations and liability hereunder shall further be on a "solidary" or "joint and several" basis along with such other guarantors, endorsers and/or sureties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE BORROWER'S INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME. TO THE EXTENT THAT GUARANTOR IS OR MIGHT BECOME A MEMBER/OWNER OF BORROWER, GUARANTOR AGREES THAT, NOTWITHSTANDING THE PROVISIONS OF LA. R.S. 12:1320, GUARANTOR SHALL BE LIABLE UNDER THIS GUARANTY FOR THE BORROWER'S INDEBTEDNESS.

**DURATION OF GUARANTY.** This Agreement and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as this Agreement may be cancelled or otherwise terminated by Lender under a written cancellation instrument in favor of Guarantor (subject to the automatic reinstatement provisions hereinbelow). It is anticipated that fluctuations may occur in the aggregate amount of Borrower's Indebtedness guaranteed under this Agreement and it is specifically acknowledged and agreed to by Guarantor that reductions in the amount of Borrower's Indebtedness, even to zero ($0.00) dollars, prior to Lender's written cancellation of this Agreement, shall not constitute or give rise to a termination of this Agreement.

**CANCELLATION OF AGREEMENT; EFFECT.** Unless otherwise indicated under such a written cancellation instrument, Lender's agreement to terminate or otherwise cancel this Guaranty shall affect only, and shall be expressly limited to, Guarantor's continuing obligations and liability to guarantee Borrower's Indebtedness incurred, originated and/or extended (without prior commitment) after the date of such a written cancellation instrument; with Guarantor remaining fully obligated and liable under this Guaranty for any and all of Borrower's Indebtedness incurred, originated, extended, or committed to prior to the date of such a written cancellation instrument. Nothing under this Guaranty or under any other agreement or understanding by and between Guarantor and Lender, shall in any way obligate, or be construed to obligate, Lender to agree to the subsequent termination or cancellation of Guarantor's obligations and liability hereunder; it being fully understood and agreed to by Guarantor that Lender has and intends to continue to rely on Guarantor's assets, income and financial resources in extending credit and other indebtedness to and in favor of Borrower, and that to release Guarantor from Guarantor's continuing obligations and liabilities under this Guaranty would so prejudice Lender that Lender may, within its sole and uncontrolled discretion and judgment, refuse to release Guarantor from any of Guarantor's continuing obligations and liability under this Guaranty for any reason whatsoever as long as any of Borrower's Indebtedness remains unpaid and outstanding, or otherwise.

**OBLIGATIONS OF MARRIED PERSONS.** If Guarantor is married, Guarantor hereby expressly agrees that recourse may be had against both Guarantor's separate property and Guarantor's community property for all Guarantor's obligations under this Guaranty.

**DEFAULT.** Should any event of default occur or exist under any of Borrower's Indebtedness, Guarantor unconditionally and absolutely agrees to pay Lender the then unpaid amount of the Indebtedness of Borrower, or any one or more of them, to Lender. Such payment or payments shall be made at Lender's offices indicated above, immediately following demand by Lender.

**GUARANTOR'S WAIVERS.** Guarantor hereby waives:

(A) Notice of Lender's acceptance of this Guaranty.

(B) Presentment for payment of Borrower's Indebtedness, notice of dishonor and of nonpayment, notice of intention to accelerate, notice of acceleration, protest and notice of protest, collection or institution of any suit or other action by Lender in collection thereof, including any notice of default in payment thereof, or other notice to, or demand for payment thereof, on any party.

(C) Any right to require Lender to notify Guarantor of any nonpayment relating to any collateral directly or indirectly securing Borrower's Indebtedness, or notice of any action or nonaction on the part of Borrower, Lender, or any other guarantor, surety or endorser of Borrower's Indebtedness, or notice of the creation of any new or additional Borrower's Indebtedness subject to this Guaranty.

(D) Any rights to demand or require collateral security from the Borrower or any other person as provided under applicable Louisiana law or otherwise.

(E) Any right to require Lender to notify Guarantor of the terms, time and place of any public or private sale of any collateral directly or indirectly securing Borrower's Indebtedness.

(F) Any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, or any action in lieu of foreclosure.

(G) Any election of remedies by Lender that may destroy or impair Guarantor's subrogation rights or Guarantor's right to proceed for reimbursement against Borrower or any other guarantor, surety or endorser of Borrower's Indebtedness, including without limitation, any loss of

EXHIBIT
"C"

rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Borrower's Indebtedness.

(H) Any disability or other defense of Borrower, or any other guarantor, surety or endorser, or any other person, or by reason of the cessation from any cause whatsoever, other than payment in full of Borrower's Indebtedness.

(I) Any statute of limitations or prescriptive period, if at the time an action or suit brought by Lender against Guarantor is commenced, there is any outstanding Borrower's Indebtedness which is barred by any applicable statute of limitations or prescriptive period.

Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, such waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

**GUARANTOR'S SUBORDINATION OF RIGHTS.** In the event that Guarantor should for any reason (A) advance or lend monies to Borrower, whether or not such funds are used by Borrower to make payment(s) under Borrower's Indebtedness, or (B) make any payment(s) to Lender or others for and on behalf of Borrower under Borrower's Indebtedness, or (C) make any payment to Lender in total or partial satisfaction of Borrower's obligations and liabilities under this Guaranty, or (D) if any of Borrower's property is used to pay or satisfy any of Borrower's Indebtedness, Guarantor hereby agrees that any and all rights that Guarantor may have to acquire to collect from or to be reimbursed by Borrower (or from or by any other guarantor, endorser or surety of Borrower's Indebtedness), whether Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of Lender or otherwise, shall in all respects, whether or not Borrower is presently or subsequently becomes insolvent, be subordinate, inferior and junior to the rights of Lender to collect and enforce payment, performance and satisfaction of Borrower's Indebtedness that then remains, until such time as Borrower's Indebtedness is fully paid and satisfied. In the event of Borrower's insolvency or consequent liquidation of Borrower's assets, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to Borrower's Indebtedness that then remains. Guarantor hereby assigns to Lender all claims which it may have or acquire against Borrower or any assignee or trustee of Borrower in bankruptcy; provided that, such assignment shall be effective only for the purpose of assuring to Lender full payment of Borrower's Indebtedness guaranteed under this Guaranty.

**GUARANTOR'S RECEIPT OF PAYMENTS.** Guarantor further agrees to refrain from attempting to collect and/or enforce any of Guarantor's collection and/or reimbursement rights against Borrower (or against any other guarantor, surety or endorser of Borrower's Indebtedness), arising by way of subrogation or otherwise, until such time as all of Borrower's Indebtedness that then remains is fully paid and satisfied. In the event that Guarantor should for any reason whatsoever receive any payment(s) from Borrower (or any other guarantor, surety or endorser of Borrower's Indebtedness) that Borrower (or such a third party) may owe to Guarantor for any of the reasons stated above, Guarantor agrees to accept such payment(s) in trust for and on behalf of Lender, advising Borrower (or the third party payee) of such fact. Guarantor further unconditionally agrees to immediately deliver such funds to Lender, with such funds being held by Guarantor over any interim period, in trust for Lender. In the event that Guarantor should for any reason whatsoever receive any such funds from Borrower (or any third party), and Guarantor should deposit such funds in one or more of Guarantor's deposit accounts, no matter where located, Lender shall have the right to attach any and all of Guarantor's deposit accounts in which such funds were deposited, whether or not such funds were commingled with any other monies of Guarantor, and whether or not such funds then remain on deposit in such an account or accounts. To this end and to secure Guarantor's obligations under this Guaranty, Guarantor collaterally assigns and pledges to Lender, and grants to Lender a continuing security interest in, any and all of Guarantor's present and future rights, title and interest in and to all monies that Guarantor may now and/or in the future maintain on deposit with banks, savings and loan associations and other entities (other than tax-deferred accounts with Lender), in which Guarantor may at any time deposit any such funds that may be received from Borrower (or any other guarantor, endorser or surety of Borrower's Indebtedness).

**ADDITIONAL COVENANTS.** Guarantor agrees that Lender may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, or any of them, or to any other party, and without incurring any responsibility to Guarantor or to any other party, and without impairing or releasing any of Guarantor's obligations or liabilities under this Guaranty:

(A) Make additional secured and/or unsecured loans to Borrower.

(B) Discharge, release or agree not to sue any party (including, but not limited to, Borrower or any other guarantor, surety, or endorser of Borrower's Indebtedness), who is or may be liable to Lender for any of Borrower's Indebtedness.

(C) Sell, exchange, release, surrender, realize upon, or otherwise deal with, in any manner and in any order, any collateral directly or indirectly securing repayment of any of Borrower's Indebtedness.

(D) Alter, renew, extend, accelerate, or otherwise change the manner, place, terms and/or times of payment or other terms of Borrower's Indebtedness, or any part thereof, including any increase or decrease in the rate or rates of interest on any of Borrower's Indebtedness.

(E) Settle or compromise any of Borrower's Indebtedness.

(F) Subordinate and/or agree to subordinate the payment of all or any part of Borrower's Indebtedness, or Lender's security rights in any collateral directly or indirectly securing any such Borrower's Indebtedness, to the payment and/or security rights of any other present and/or future creditors of Borrower.

(G) Apply any payments and/or proceeds to any of Borrower's Indebtedness in such priority or with such preferences as Lender may determine in its sole discretion, regardless of which of Borrower's Indebtedness then remains unpaid.

(H) Take or accept any other collateral security or guaranty for any or all of Borrower's Indebtedness.

(I) Enter into, deliver, modify, amend, or waive compliance with, any instrument or arrangement evidencing, securing or otherwise affecting, all or any part of Borrower's Indebtedness.

**NO IMPAIRMENT OF LENDER'S OBLIGATIONS.** No course of dealing between Lender and Borrower (or any other guarantor, surety or endorser of Borrower's Indebtedness), nor any failure or delay on the part of Lender to exercise any of Lender's rights and remedies under this Guaranty or any other agreement or agreements by and between Lender and Borrower (or any other guarantor, surety or endorser), shall have the effect of impairing or releasing Guarantor's obligations and liabilities to Lender, or of waiving any of Lender's rights and remedies under this Guaranty or otherwise. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies; it being Guarantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Guarantor further agrees that, should Borrower default under any of Borrower's Indebtedness, any waiver or forbearance on the part of Lender to pursue Lender's available rights and remedies shall be binding upon Lender only to the extent that Lender specifically agrees to such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one event of default shall not constitute a waiver or forbearance as to any other default.

**NO RELEASE OF GUARANTOR.** Guarantor's obligations and liabilities under this Guaranty shall not be released, impaired, reduced, or otherwise affected by, and shall continue in full force and effect notwithstanding the occurrence of any event, including without limitation any one or more of the following events:

(A) The death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution, or lack of authority (whether corporate, partnership or trust) of Borrower (or any person acting on Borrower's behalf), or of any other guarantor, surety or endorser of Borrower's Indebtedness.

(B) Any payment by Borrower, or any other party, to Lender that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or any such amounts or payment which, for any reason, Lender is required to refund or repay to Borrower or to any other person.

(C) Any dissolution of Borrower, or any sale, lease or transfer of all or any part of Borrower's assets.

(D) Any failure of Lender to notify Guarantor of the making of additional loans or other extensions of credit in reliance on this Guaranty.

**AUTOMATIC REINSTATEMENT.** This Guaranty and Guarantor's obligations and liabilities hereunder shall continue to be effective, and/or shall automatically and automatically be reinstated, if at any time, release or discharge has occurred, or if at any time, any payment or part thereof to Lender with respect to any of Borrower's Indebtedness, is rescinded or must otherwise be restored by Lender pursuant to any insolvency, bankruptcy, reorganization, receivership, or any other debt relief granted to Borrower or to any other party to Borrower's Indebtedness or any such security therefor. In the event that Lender must rescind or restore any payment received in total or partial satisfaction of Borrower's Indebtedness, any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect, and this Guaranty and Guarantor's obligations and liabilities hereunder shall automatically and retroactively be renewed and/or reinstated and shall remain in full force and effect to the same degree and extent as if such a release or discharge had never been granted. It is the intention of Lender and Guarantor that Guarantor's obligations and liabilities hereunder shall not be discharged except by Guarantor's full and complete performance and satisfaction of such obligations and liabilities; and then only to the extent of such performance.

**REPRESENTATIONS AND WARRANTIES BY GUARANTOR.** Guarantor represents and warrants that:

(A) Guarantor has the lawful power to own its properties and to engage in its business as presently conducted.

(B) Guarantor's guarantee of Borrower's Indebtedness and Guarantor's execution, delivery and performance of this Guaranty are not in

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

violation of any laws and will not result in a default under any contract, agreement, or instrument to which Guarantor is a party, or by which Guarantor or its property may be bound.

(C) Guarantor has agreed and consented to execute this Guaranty and to guarantee Borrower's Indebtedness in favor of Lender, at Borrower's request and not at the request of Lender.

(D) Guarantor will receive and/or has received a direct or indirect material benefit from the transactions contemplated herein and/or arising out of Borrower's Indebtedness.

(E) This Guaranty, when executed and delivered to Lender, will constitute a valid, legal and binding obligation of Guarantor, enforceable in accordance with its terms.

(F) Guarantor has established adequate means of obtaining information from Borrower on a continuing basis regarding Borrower's financial condition.

(G) Lender has made no representations to Guarantor as to the creditworthiness of Borrower.

**ADDITIONAL OBLIGATIONS OF GUARANTOR.** So long as this Guaranty remains in effect, Guarantor will not, without Lender's prior written consent, sell, lease, assign, pledge, hypothecate, encumber, transfer, or otherwise dispose of all or substantially all of Guarantor's assets. Guarantor further agrees to keep adequately informed of all facts, events and circumstances which might in any way affect Guarantor's risks under this Guaranty and Guarantor will promptly notify Lender of any such facts, events and circumstances. Guarantor has no obligation whatsoever to disclose to Guarantor any information acquired in the course of its relationship with Borrower or otherwise.

**TRANSFER OF INDEBTEDNESS.** This Guaranty is for the benefit of Lender and for such other person or persons as may from time to time become or be the holders of all or any part of Borrower's Indebtedness. This Guaranty may be transferable and negotiable with the same force and effect and to the same extent as Borrower's Indebtedness may be transferable it being understood and agreed to by Guarantor that, upon any transfer or assignment of all or any part of Borrower's Indebtedness, the holder of such Borrower's Indebtedness shall have all of the rights and remedies granted to Lender under this Guaranty. Guarantor further agrees that, upon any transfer of all or any portion of Borrower's Indebtedness, Lender may transfer and deliver any and all collateral securing repayment of such Borrower's Indebtedness (including, but not limited to, any collateral provided by Guarantor) to the transferee of such Borrower's Indebtedness, and such collateral shall secure any and all of Borrower's Indebtedness in favor of such a transferee. Guarantor additionally agrees that, after any such transfer or assignment has taken place, Lender shall be fully discharged from any and all liability and responsibility to Borrower and Guarantor with respect to such collateral, and the transferee thereafter shall be vested with all the powers and rights with respect to such collateral.

**CONSENT TO PARTICIPATION.** Guarantor recognizes and agrees that Lender may, from time to time, one or more times, transfer all or any part of Borrower's Indebtedness through sales of participation interests in Borrower's Indebtedness to one or more third party lenders. Guarantor specifically agrees and consents to all such transfers and assignments, and Guarantor further waives any subsequent notice of such transfers and assignments as may be provided under Louisiana law. Guarantor additionally agrees that the purchaser of a participation interest in Borrower's Indebtedness will be considered as the absolute owner of a percentage interest of Borrower's Indebtedness and that such a purchaser will have all of the rights granted under any participation agreement governing the sale of such a participation interest. Guarantor waives any rights of offset that Guarantor may have against Lender and/or any purchaser of such a participation interest, and Guarantor unconditionally agrees that either Lender or such a purchaser may enforce Guarantor's obligations and liabilities under this Guaranty, irrespective of the failure or insolvency of Lender or any such purchaser.

**NOTICES.** Any notice provided in this Guaranty must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above or at such other addresses as any party may designate to the other in writing. If there is more than one Guarantor under this Guaranty, notice to any Guarantor shall constitute notice to all Guarantors.

**ADDITIONAL GUARANTIES.** Guarantor recognizes and agrees that Guarantor may have previously granted, and may in the future grant one or more additional guaranties of Borrower's Indebtedness and obligations in favor of Lender. Should this occur, the execution of this Guaranty and any additional guarantee on Guarantor's part will not be construed as a cancellation of this Guaranty or any of Guarantor's additional guaranties; it being Guarantor's full intent and agreement that all of Guarantor's guaranties of Borrower's Indebtedness and obligations in favor of Lender, shall remain in full force and shall be cumulative in nature and effect.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty.

**Amendments.** No amendment, modification, consent or waiver of any provision of this Guaranty, and no consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the amount due under this Guaranty and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions.

**No Oral Agreements.** This Guaranty is the final expression of the agreement between Lender and Guarantor and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous agreement between Lender and Guarantor.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise in demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If any provision of this Guaranty is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Guaranty shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Guaranty, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound.** Guarantor's obligations and liabilities under this Guaranty shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.).

**Borrower.** The word "Borrower" means IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation STEVE J. MIGUEZ, and in each case, any signer's successors and assigns

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Borrower's Indebtedness.** The words "Borrower's Indebtedness" mean Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J SEGRIST Case: 780357

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of the Note or any interest therein.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions of and for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Borrower's Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED SEPTEMBER 28, 2015.

GUARANTOR:

X _____
STEVE J. MIGUEZ

LaserPro, Ver. 12.4.1.047 Copr. D.H.Lab Corporation 1997, 2013, All Rights Reserved. - LP C:\HARLAND\CFI\LPL\E2E31.FC 69-19792 PR-1521

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

Rec orig by mail

FILED FOR RECORD 03/09/2018 14:58:13
Alesia M (Lisa) LeBoeuf, DY CLERK
JEFFERSON PARISH, LA

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 780-357                                           DIVISION "A"

SBN V FNBC LLC

Versus

STEVE J. MIGUEZ

Filed by: Fax 3-8-2018
Date: 6:10 pm
Time:
Deputy Clerk: Alesia LeBoeuf
(SEE ATTACHED LOG)

FILED: _____

_____
DEPUTY CLERK

## MOTION FOR EXTENSION OF TIME

**NOW INTO COURT**, through undersigned counsel, comes Steve J. Miguez ("Mr. Miguez" and/or "Defendant"), made defendant demand herein, who respectfully requests an extension of time to answer the Verified Petition for Collection on Note and Guaranty ("Petition for Collection") filed by SBN V FNBC LLC ("SBN" and/or "Petitioner") and would aver:

1.

SBN filed a Petition for Collection against Defendant on February 6, 2018.

2.

Defendant was served with the Petition for Collection through Mr. Ryan Landry on February 12, 2018.

3.

Defendant has retained undersigned counsel and therefore, requires an additional period of time within which to file a proper response to Petitioner herein and respectfully requests this Court allow an extension of thirty (30) days from date of this Order within which to respond to the Petition to Collection.

4.

This is the first such extension of time requested in regard to the allegations contained in the Petition for Collection.

**WHEREFORE**, Steve J. Miguez prays:

1.      That this Honorable Court grant an extension of time for a period of thirty (30) days from date of this Order within which to file a response to the allegations contained in the Verified Petition for Collection on Note and Guaranty filed by SBN V FNBC LLC; and

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**EXHIBIT**

**C**

2. For such other and further relief as may be just in the premises.

Respectfully submitted:

**ADAMS AND REESE LLP**

_____
Robin B. Cheatham, Bar No. 4004
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone:    (504) 581-3234
Facsimile:    (504) 566-0210

_Counsel for Steve J. Miguez_

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the above and foregoing Motion

for Extension of Time has been served upon counsel for the SBN V FNBC LLC through its

counsel of record, Leopold Z. Sher, James M. Garner, Jacob A. Airey, Brandon Keay, Sher

Garner Cahill Richter Klein & Hilbert, L.L.C., 909 Poydras Street, 28th Floor, New Orleans, LA

70112, via email transmission and/or by depositing a copy of same in the United States Mail,

First Class, postage prepaid, properly addressed on the 8th day of March, 2018.

_____
ROBIN B. CHEATHAM

## O R D E R

Considering the above and foregoing Motion for Extension of Time by the Defendant in

Steve J. Miguez to respond to the Verified Petition for Collection on Note and Guaranty filed by

SBN V FNBC LLC, accordingly:

**IT IS ORDERED** that Steve J. Miguez be and the same hereby is granted an extension

of thirty (30) days from date of this Order within which to file appropriate responsive pleadings.

GRETNA, LOUISIANA, this 09 day of March ,2018

_____
J U D G E

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

Rec orig by mail

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 780-357

DIVISION "A"

SBN V FNBC LLC

Versus

STEVE J. MIGUEZ

Filed by: Fax
Date: 3-8-2018
Time: 6:10 Pm
Deputy Clerk: Alesia Reboul
(SEE ATTACHED LOG)

FILED: _____

_____
DEPUTY CLERK

## MOTION TO ENROLL ADDITIONAL COUNSEL OF RECORD

NOW INTO COURT, through undersigned counsel, come Defendant, Steve J. Miguez,

who moves this Court for an Order enrolling Blake J. Miguez (Louisiana Bar Number 32204) as

co-counsel for Defendant. Counsel certifies that Mr. Miguez is admitted to practice in this Court

and is a member in good standing with the Louisiana Bar.

Respectfully submitted,

**ADAMS AND REESE LLP**

ROBIN B. CHEATHAM (#4004)
4500 One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210

**AND**

Blake J. Miguez. (#32204)
107 Hwy 90 W
New Iberia, LA 70560-9485
Telephone: (337) 937-8827

*Attorneys for Steve J. Miguez*

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

**EXHIBIT**
**D**

1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing Motion to Enroll

Additional Counsel of Record has been served upon counsel for the SBN V FNBC LLC through

its counsel of record, Leopold Z. Sher, James M. Garner, Jacob A. Airey, Brandon Keay, Sher

Garner Cahill Richter Klein & Hilbert, L.L.C., 909 Poydras Street, 28th Floor, New Orleans, LA

70112, via email transmission and/or by depositing a copy of same in the United States Mail,

First Class, postage prepaid, properly addressed on the _8th_ day of March, 2018.

ROBIN B. CHEATHAM

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.  780-357                                                      DIVISION "A"

SBN V FNBC LLC

Versus

STEVE J. MIGUEZ

FILED: _____        _____
                                                          DEPUTY CLERK

## ORDER

Considering Defendants' Motion to Enroll Additional Counsel of Record;

IT IS HEREBY ORDERED that Defendant's Motion is GRANTED, and Blake J. Miguez

(Louisiana Bar Number 32204) of the law firm of Adams and Reese LLP is hereby enrolled as

co-counsel of record for Defendant.

Gretna, Louisiana, this 09 ___ day of ___ March _____ 2018

_____
                        JUDGE

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

1

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 780-357                                                           DIVISION "A"

**SBN V FNBC LLC**

**versus**

**STEVE J. MIGUEZ**

FILED:_____          _____
                                                                          DEPUTY CLERK

**SECOND MOTION FOR EXTENSION OF TIME**

NOW INTO COURT, through undersigned counsel, comes Steve J. Miguez ("Mr. Miguez" and/or "Defendant"), made defendant herein, who respectfully requests a second extension of time to file responsive pleadings to the Petition of SBN V FNBC LLC ("SVN") and would aver:

1.

SBN filed a Petition on February 6, 2018 in the above referenced matter.

2.

Defendant was served with the Petition and Citation through Mr. Ryan Landry on or about February 12, 2018.

3.

On or about March 9, 2018, Defendant filed a Motion for Extension of Time which was granted the same date until April 8, 2018.

4.

Co-counsel of record for Defendant is Mr. Blake Miguez, who is a member of the Louisiana Legislature, more specifically the duly elected representative of House District No. 49, as evidenced by the attached affidavit. Further evidenced by the affidavit, Blake Miguez is presently in Legislation Session until June 4, 2017 in connection with his service in the Legislature of Louisiana.

**EXHIBIT**

**E**

5.

Counsel for Mr. Miguez requires information from co-counsel in the preparation of the response to the Petition.

6.

## APPLICABLE LAW

Louisiana Revised Statute [La R.S.] 13:4163 generally provides members of the legislature, the clerk, and staff an extension during a legislative session or while engaged in activities in connection with or ordered by the legislature, any legislative committee or subcommittee appointed by the president of the Senate or the speaker of the House of Representatives, any committee or commission appointed by the governor or other person authorized to make such appointments, or any constitutional convention or commission, and more particularly provides as follows:

§4163. Ex parte motion for legislative continuance or extension of time, legislators or employees engaged in legislative or constitutional convention activities

A.(1) A member of the legislature and a legislative employee shall have peremptory grounds for continuance or extension of a criminal case, civil case, or administrative proceeding as provided below. The continuance or extension shall be sought by written motion specifically alleging these grounds.

(2) For purposes of this Section, "legislative employee" means the clerk of the House of Representative, the secretary of the Senate, and an employee of the House of Representatives, the Senate, or the Legislative Bureau, when such person is employed full-time during the legislative session or during any other time in which the continuance or extension is being sought.

B. The peremptory grounds for continuance or extension is available to and for the benefit of a member or legislative employee and may only be asserted or waived by a member or employee.

C.(1) Such peremptory grounds are available for the continuance of any type of proceeding and the extension of any type of deadline pertaining to a criminal case, civil case, or administrative proceeding, if the presence, participation, or involvement of a member or employee is required in any capacity, including any pretrial or post-trial legal proceeding, during:

(a) Any time between fifteen days prior to the original call to order and fifteen days following the adjournment sine die of any session of the legislature.

(b) Any time between fifteen days prior to convening and fifteen days following adjournment sine die of any constitutional convention.

(c) Any time other than those provided in Subparagraph (a) or (b) of this Paragraph when such person is engaged in activities in connection with or ordered by: (i) the legislature; (ii) any legislative committee or subcommittee appointed by the president of the Senate or the speaker of the House of Representatives; (iii) any committee or commission appointed by the governor or other person authorized to make such appointments; or (iv) any constitutional convention or commission.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST \M

(2) Such peremptory grounds are available to any member or employee enrolled as counsel of record when his participation is required. The availability of other counsel to assume the duties or responsibilities of counsel invoking the continuance or extension does not negate the peremptory nature of his motion.

D. A motion for legislative continuance or extension filed by a legislative employee shall be accompanied by an affidavit, verifying such employment or service, executed by the presiding officer or the clerk or secretary of the respective house.

E.(1)(a) If the grounds for a legislative continuance or extension are founded upon the convening of a regular legislative session or a constitutional convention, the motion for legislative continuance or extension shall be timely if filed no later than five calendar days prior to the hearing or proceeding to be continued.

(b) If the grounds for a legislative continuance or extension are founded upon any provision of Subparagraph (C)(1)(c) of this Section or upon the issuance of a call for an extraordinary session of the legislature, the motion for legislative continuance or extension shall be timely if filed no later than five calendar days prior to the hearing or proceeding to be continued or no later than two days following the issuance of the notice of the meeting or of the call for the extraordinary legislative session, which ever occurs last. An affidavit of the clerk of the House of Representatives or the secretary of the Senate verifying the issuance and date of the issuance of the notice or of the call shall be attached to the motion.

(2) Within seventy-two hours of the filing of a motion for a legislative continuance or extension, the court or agency shall grant the continuance or extension ex parte as follows:

(a) If the grounds for the motion are pursuant to Subparagraph (C)(1)(a) or (b) of this Section, the continuance or extension shall be granted for a period of not less than sixty days from the date of adjournment sine die of the session of the legislature or of the constitutional convention.

(b) If the grounds for the motion are pursuant to Subparagraph (C)(1)(c) of this Section, the continuance or extension shall be granted for the day or days the member or employee is engaged in such activities.

F.(1) The provisions of this Section shall not apply to cases in the Supreme Court of Louisiana, criminal cases where the death penalty is sought, and administrative rulemaking authorized by R.S. 49:953.

(2) The provisions of this Section shall not apply to cases and proceedings wherein a member or employee is called as a witness, in which instances the provisions of R.S. 13:3667.1 and 3667.3 shall apply.

G. Any action taken against a person, including any sanction imposed on an attorney, who has filed a motion for legislative continuance or extension and which results from the failure of such person or attorney to appear or comply with an order of the court or agency or any deadline shall be considered an absolute nullity and shall be set aside by the court or agency upon the filing of a motion by the aggrieved person or attorney.

H.(1) Any person or attorney who has filed a motion for legislative continuance or extension which has been denied or which has not been granted within seventy-two hours
of filing may apply directly to the Supreme Court of Louisiana for supervisory writs to review the action or inaction of the court or agency where the motion was filed.

(2) If a motion filed pursuant to Subsection G of this Section is denied, such denial shall be an appealable order.

I. For sufficient cause shown, the court may consider a motion for legislative continuance or extension at any time prior to the hearing or proceeding.

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST \M

7.

In light of the above undersigned counsel therefore, requests an extension of time of fifteen (15) days after the expiration of the Legislation Session presently scheduled to end on June 4, 2018 within which to file a proper response to petitioner herein and respectfully requests this Court allow an extension of fifteen (15) days from June 4, 2018 within which to respond to the Petition.

8.

This is the second such extension of time requested in regard to the allegations contained in the Petition.

**WHEREFORE**, Defendant prays:

1. That this Honorable Court grant this second extension of time through and including the 19th day of June, 2018, within which to file a response to the allegations contained in the Petition of SBN V FNBC, LLC; and

2. For such other and further relief as may be just in the premises.

Respectfully submitted:

**ADAMS AND REESE**

Robin B. Cheatham, Bar No. 4004
4500 One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
(504) 581-3234

*Counsel for Steve J. Miguez*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the above and foregoing Second Motion for Extension of Time has been served upon SBN V FNBC LLC through its counsel of record, Leopold Z. Sher, James M. Garner, Jacob A. Airey, Brandon Keay, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., 909 Poydras Street, 28th Floor, New Orleans, LA 70112, via email transmission and/or by first class mail, properly addressed and postage prepaid and by fax transmission this 9th day of April, 2018.

Robin B. Cheatham

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST \M

STATE OF LOUISIANA

PARISH OF _Iberia_

AFFIDAVIT

Before me, Notary Public, came and appeared Blake John Miguez, is a Louisiana State

Representative for District No. 49, "affiant" who states that: (1) Blake John Miguez is an elected member

of the Louisiana House of Representatives from District No. 49; and (2)Blake John Miguez will be in an

official session through June 4, 2017 in connection with his service in the Legislature of Louisiana.

_____
Blake John Miguez

Sworn to and subscribed before me this
9th day of April 2018.

_____
Notary Public
Jack C Jowers
Notary Name
92343
Notary Number

Commission Expires Upon Death

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST \M

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 780-357                                                   DIVISION "A"

**SBN V FNBC LLC**

**versus**

**STEVE J. MIGUEZ**

FILED:_____     _____
                                                              DEPUTY CLERK

<u>O R D E R</u>

Considering the above and foregoing Second Motion for Extension of Time by the

Defendant, Steve J. Miguez to respond to the Petition of SBN V FNBC, LLC, accordingly:

**IT IS ORDERED** that Steve J. Miguez be and the same hereby is granted an extension

of fifteen (15) days from the end of the Legislative Session ending June 4, 2018, within which to

file appropriate responsive pleadings.

GRETNA, LOUISIANA, this ___11th___ day of ___April___, 2018.

                                        _____
                                                  JUDGE

24th E-Filed: 04/09/2018 12:02:17 Case: 780357 Div:A Atty:004004 ROBIN B CHEATHAM

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO. 780-357                                    DIVISION "A"

### SBN V FNBC LLC

**versus**

### STEVE J. MIGUEZ

FILED:_____      _____

                                   DEPUTY CLERK

### <u>THIRD MOTION FOR EXTENSION OF TIME</u>

NOW INTO COURT, through undersigned counsel, comes Steve J. Miguez ("Mr. Miguez" and/or "Defendant"), made defendant herein, who respectfully requests a third extension of time to file responsive pleadings to the Petition of SBN V FNBC LLC ("SVN") and would aver:

1.

SBN filed a Petition on February 6, 2018 in the above referenced matter.

2.

Defendant was served with the Petition and Citation through Mr. Ryan Landry on or about February 12, 2018.

3.

On or about March 9, 2018, Defendant filed a Motion for Extension of Time which was granted the same date until April 8, 2018.

4.

On or about April 9, 2018, Defendant filed a Second Motion for Extension of Time and Plaintiff filed an Opposition to the Second Motion for Extension of Time. The Court entered an Order granting the Second Motion for Extension of Time on April 11, 2018 until fifteen (15) days from the end of the Legislative Session ending June 4, 2018 or until June 19, 2018.

5.

Co-counsel of record for Defendant is Mr. Blake Miguez, who is a member of the Louisiana Legislature, more specifically the duly elected representative of House District No. 49,



EXHIBIT
F

as evidenced by previously filed affidavit in the record. Further evidenced by the prior affidavit attached to the Second Motion for Extension of Time, Blake Miguez was in Legislative Session until June 4, 2017. Please see the attached Affidavit of Mr. Blake Miguez advising of the requirement of his attendance for a Special Legislative Session which began June 18, 2018 through June 27, 2018 in connection with his service in the Legislature of Louisiana.

6.

Counsel for Mr. Miguez requires information and assistance from co-counsel in the preparation of the response to the Petition.

7.

## APPLICABLE LAW

Louisiana Revised Statute [La R.S.] 13:4163 generally provides members of the legislature, the clerk, and staff an extension during a legislative session or while engaged in activities in connection with or ordered by the legislature, any legislative committee or subcommittee appointed by the president of the Senate or the speaker of the House of Representatives, any committee or commission appointed by the governor or other person authorized to make such appointments, or any constitutional convention or commission, and more particularly provides as follows:

§4163. Ex parte motion for legislative continuance or extension of time; legislators or employees engaged in legislative or constitutional convention activities

A.  (1)  A member of the legislature and a legislative employee shall have peremptory grounds for continuance or extension of a criminal case, civil case, or administrative proceeding as provided below. The continuance or extension shall be sought by written motion specifically alleging these grounds.
(2)  For purposes of this Section, "legislative employee" means the clerk of the House of Representative, the secretary of the Senate, and an employee of the House of Representatives, the Senate, or the Legislative Bureau, when such person is employed full-time during the legislative session or during any other time in which the continuance or extension is being sought.

B.  The peremptory grounds for continuance or extension is available to and for the benefit of a member or legislative employee and may only be asserted or waived by a member or employee.

C.  (1)  Such peremptory grounds are available for the continuance of any type of proceeding and the extension of any type of deadline pertaining to a criminal case, civil case, or administrative proceeding, if the presence,

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST AM

participation, or involvement of a member or employee is required in any capacity, including any pretrial or post-trial legal proceeding, during:

    (a)    Any time between thirty days prior to the original call to order and thirty days following the adjournment sine die of any session of the legislature.

    (b)    Any time between thirty days prior to convening and thirty days following adjournment sine die of any constitutional convention.

    (c)    Any time other than those provided in Subparagraph (a) or (b) of this Paragraph when such person is engaged in activities, including travel, in connection with or ordered by: (i) the legislature; (ii) any legislative committee or subcommittee appointed by the president of the Senate or the speaker of the House of Representatives; (iii) any committee or commission appointed by the governor or other person authorized to make such appointments; or (iv) any constitutional convention or commission.

(2)    Such peremptory grounds are available to any member or employee enrolled as counsel of record when his participation is required. The availability of other counsel to assume the duties or responsibilities of counsel invoking the continuance or extension does not negate the peremptory nature of his motion.

D.    A motion for legislative continuance or extension filed by a legislative employee shall be accompanied by an affidavit, verifying such employment or service, executed by the presiding officer or the clerk or secretary of the respective house.

E.    (1)    (a)    If the grounds for a legislative continuance or extension are founded upon the convening of a regular legislative session or a constitutional convention, the motion for legislative continuance or extension shall be timely if filed no later than five calendar days prior to the hearing or proceeding to be continued.

    (b) If the grounds for a legislative continuance or extension are founded upon any provision of Subparagraph (C)(1)(c) of this Section or upon the issuance of a call for an extraordinary session of the legislature, the motion for legislative continuance or extension shall be timely if filed no later than five calendar days prior to the hearing or proceeding to be continued or no later than two days following the issuance of the notice of the meeting or of the call for the extraordinary legislative session, which ever occurs last.

    (c) The provisions of this Paragraph shall not be applied so as to impede the peremptory nature of this Section.

(2)    Within seventy-two hours of the filing of a motion for a legislative continuance or extension, the court or agency shall grant the continuance or extension ex parte as follows:

    (a) If the grounds for the motion are pursuant to Subparagraph (C)(1)(a) or (b) of this Section, the continuance or extension shall be granted for a period of not less than sixty days from the date of adjournment sine die of the session of the legislature or of the constitutional convention.

    (b)    If the grounds for the motion are pursuant to Subparagraph (C)(1)(c) of this Section, the continuance or extension shall be granted for the day or days the member or employee is engaged in such activities.

F.    (1)    The provisions of this Section shall not apply to cases in the Supreme Court of Louisiana, criminal cases where the death penalty is sought, and administrative rulemaking authorized by R.S. 49:953.

G.     (2)    The provisions of this Section shall not apply to cases and proceedings wherein a member or employee is called as a witness, in which instances the provisions of R.S. 13:3667.1 and 3667.3 shall apply.

G.     Any action taken against a person, including any sanction imposed on an attorney, who has filed a motion for legislative continuance or extension and which results from the failure of such person or attorney to appear or comply with an order of the court or agency or any deadline shall be considered an absolute nullity and shall be set aside by the court or agency upon the filing of a motion by the aggrieved person or attorney.

H.     (1)    Any person or attorney who has filed a motion for legislative continuance or extension which has been denied or which has not been granted within seventy-two hours of filing may apply directly to the Supreme Court of Louisiana for supervisory writs to review the action or inaction of the court or agency where the motion was filed.

    (2)    If a motion filed pursuant to Subsection G of this Section is denied, such denial shall be an appealable order.

I.     (1)    For sufficient cause shown, the court shall consider a motion for legislative continuance or extension at any time prior to the hearing or proceeding.

    (2)    The motion for a legislative continuance may be filed by electronic means such as facsimile transmission or electronic mail, or any other means authorized by law, provided that the mover shall provide all opposing counsel or parties with a copy of the motion, simultaneously with the transmission of the motion to the court.

7.

In light of the above undersigned counsel therefore, requests an extension of time of thirty (30) days after the expiration of the Legislation Session presently scheduled to end on June 27, 2018 within which to file a proper response to petitioner herein and respectfully requests this Court allow an extension of thirty (30) days from June 27, 2018 within which to respond to the Petition.

8.

This is the third such extension of time requested in regard to the allegations contained in the Petition.

**WHEREFORE**, Defendant prays:

1.     That this Honorable Court grants this third extension of time through and including the 27th day of July, 2018, within which to file a response to the allegations contained in the Petition of SBN V FNBC, LLC; and

2.     For such other and further relief as may be just in the premises.

Respectfully submitted:

**ADAMS AND REESE**

_(signature)_
_____
Robin B. Cheatham, Bar No. 4004
4500 One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
(504) 581-3234

_Counsel for Steve J. Miguez_

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the above and foregoing Third

Motion for Extension of Time has been served upon SBN V FNBC LLC through its counsel of

record, Leopold Z. Sher, James M. Garner, Jacob A. Airey, Brandon Keay, Sher Garner Cahill

Richter Klein & Hilbert, L.L.C., 909 Poydras Street, 28th Floor, New Orleans, LA 70112, via

email transmission and/or by first class mail, properly addressed and postage prepaid and by fax

transmission this 19th day of June, 2018.

_(signature)_
_____
Robin B. Cheatham

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO. 780-357                                                      DIVISION "A"

### SBN V FNBC LLC

versus

### STEVE J. MIGUEZ

FILED:_____          _____
                                                        DEPUTY CLERK

STATE OF LOUISIANA

PARISH OF *East Baton Rouge*

AFFIDAVIT

Before me, Notary Public, came and appeared Blake John Miguez, is a Louisiana State Representative for District No. 49, "affiant" who states that: (1) Blake John Miguez is an elected member of the Louisiana House of Representatives from District No. 49; and (2)Blake John Miguez will be in a special official session commencing June 18, 2018 through June 27, 2018 in connection with his service in the Legislature of Louisiana.

_____
Blake John Miguez

Sworn to and subscribed before me this
19th day of June 2018.
_____
Notary Public
CYNTHIA Simmons Mancuso
Notary Name
Bar # 17799
Notary Number

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST AM

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO. 780-357                                                    DIVISION "A"

### SBN V FNBC LLC

**versus**

### STEVE J. MIGUEZ

FILED:_____        _____
                                        DEPUTY CLERK

## O R D E R

Considering the above and foregoing Third Motion for Extension of Time by the Defendant, Steve J. Miguez to respond to the Petition of SBN V FNBC, LLC, accordingly:

**IT IS ORDERED** that Steve J. Miguez be and the same hereby is granted an extension of Thirty (30) days from the end of the Special Legislative Session ending June 27, 2018, within which to file appropriate responsive pleadings.

**GRETNA, LOUISIANA**, this _21_ day of _June_____, 2018

_____
                JUDGE

24th E-Filed: 10/16/2018 16:27:30 PETER J SEGRIST/AM
24th E-Filed: 10/16/2018 16:27:30 Div:A Atty:035314 PETER J CHEATHAM

24th JUDICIAL DISTRICT COURT PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 780-357                                                    DIVISION "A"

SBN V FNBC LLC

VERSUS

STEVE J. MIGUEZ

FILED:_____          _____
                                                 DEPUTY CLERK

**ANSWER AND AFFIRMATIVE DEFENSES TO VERIFIED PETITION FOR
COLLECTION ON NOTE AND GUARANTY**

NOW INTO COURT, through undersigned counsel comes, Steve J. Miguez ("Defendant") , appearing solely for the purposes of filing this Answer and Affirmative Defenses to the Verified Petition for Collection on Note and Guaranty ("Petition") who respectfully avers, to wit:

**Nature of Action**

1.

The allegations of paragraph 1 of the Petition do not require an answer, however to the extent that a response is required same are denied.

**Parties**

2.

The allegations contained in paragraph 2 are denied for lack of knowledge or information sufficient to justify a belief as to the truth of the allegations asserted therein.

3.

Defendant admits the allegations of paragraph 3 of the Petition as to being a person of the full age of majority and a resident of St. Mary Parish, State of Louisiana. The remaining allegations of paragraph 3 of the Petition are denied.

4.

Defendant admits that venue is appropriate in the Parish of Jefferson, State of Louisiana.

<div align="right">24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST \M</div>



**EXHIBIT
G**

24th E-Filed: 10/16/2018 16:27:30 Case: 780357 Div:A Atty:035314 PETER J SEGRIST M

5.

The allegations of paragraph 5 of the Petition are denied as the documents referred to therein form the best evidence of their terms and conditions as more particularly set forth therein.

6.

The allegations of paragraph 6 of the Petition are denied as the documents referred to therein form the best evidence of their terms and conditions as more particularly set forth therein. The remaining allegations of paragraph 6 are denied.

7.

The allegations of paragraph 7 of the Petition are denied.

8.

The allegations of paragraph 8 of the Petition are denied as the documents referred to therein form the best evidence of their terms and conditions as more particularly set forth therein.

9.

The allegations of paragraph 9 of the Petition are denied as the documents referred to therein form the best evidence of their terms and conditions as more particularly set forth therein. The remaining allegations of paragraph 9 of the Petition are denied.

10.

The allegations of paragraph 10 of the Petition are denied as the documents referred to therein form the best evidence of their terms and conditions as more particularly set forth therein. The remaining allegations of paragraph 9 of the Petition are denied.

11.

The allegations set forth in the last paragraph paragraph or prayer of the Petition are denied.

## II.

## <u>AFFIRMATIVE DEFENSES</u>

**NOW IN FURTHER ANSWERING,** the Defendant, Steve J. Miguez, specifically avers that:

### First Affirmative Defense

Plaintiffs' Petition fails to state a cause of action.

### Second Affirmative Defense

Defendant avers that any and all damages alleged to have been suffered by Plaintiff was the result of Plaintiff's and/or its predecessor's own acts or omissions and/or failures to act.

### Third Affirmative Defense

Defendant avers that Plaintiff's alleged damages were caused by the acts, wrongs, omissions, and/or negligence of other individuals or entities over which Defendant had no legal or contractual responsibility and/or control.

### Fourth Affirmative Defense

Plaintiff's damages, if any and which are denied, were caused by intervening and/or superseding causes over which Defendant has no control, and is thus not liable.

### Fifth Affirmative Defense

Defendant avers that Plaintiff's claims are barred on statutory and/or equitable grounds, including without limitation, prescription, peremption, waiver, estoppel and/or laches.

### Sixth Affirmative Defense

Plaintiffs' requested relief is barred or must be reduced to the extent that Plaintiff has failed to mitigate their alleged damages.

### Seven Affirmative Defense

Defendant avers that Plaintiff's predecessor failed to sign the document referred to in paragraph 5 of the Petition. Defendant reserves any and all rights and claims that such failure results in non-formation of any agreement between Plaintiff and Defendant.

### Eighth Affirmative Defense

Defendant reserves the right to supplement and/or amend its Answer and Affirmative Defenses to the Petition to assert such other and additional defenses as may become known during the course of this litigation.

Any and all allegations not specifically admitted above are denied.

**WHEREFORE,** Steve J. Miguez, the Defendant herein, respectfully prays that this Answer affirmative defenses be deemed good and sufficient and, after due proceedings are had t herein, there be judgment in favor of Steve J. Miguez rejecting all of Plaintiffs' demands and claims at Plaintiffs' sole cost and with prejudice.

Respectfully Submitted,

**ADAMS AND REESE LLP**

/s/Robin B. Cheatham
Robin B. Cheatham (#4004)
4500 One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Email: robin.cheatham@arlaw.com


And

Blake John Miguez, LA Bar No. 32204
107 Highway 90 W
New Iberia LA, 70560
Phone: (337) 465-2783
Facsimile: (985) 631-0404
Counsel for Steve J. Miguez


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Answer and Affirmative Defenses to Verified Petition for Collection on Note and Guaranty has been served upon James M. Garner, Leopold Z. Sher, Jake A. Airey, Brandon W. Keay, of Sher Garner Cahill Richter Klein & Hilbert, L.L.C, 909 Poydras Street, Twenty-eighth Floor, New Orleans, LA 70112 by placing a copy in the United States mail, first class, postage prepaid and properly addressed on this 27th of July, 2018.


/s/Robin B. Cheatham
Robin B. Cheatham