UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| | * | |
| MR. STEVEN, L.L.C. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE JOHN W. KOLWE |

\* \* \* \* \* \* \* \*

**MOTION FOR RELIEF FROM AUTOMATIC STAY
PURSUANT TO 11 U.S.C. § 362(d)**

SBN V FNBC LLC ("SBN"), the secured creditor in this case, respectfully moves this Court for relief from the automatic stay imposed by 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(d) as follows:

## I. Jurisdiction

1. This Court has jurisdiction over this matter under 28 U.S.C. § 157 and § 1334. The relief sought is governed by 11 U.S.C. § 362(d), and this Motion is brought under 11 U.S.C. § 362(d), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-1 *et seq*.

2. This matter is a core proceeding under 28 U.S.C. § 157.

## II. Background

3. Mr. Steven, L.L.C. ("Debtor") filed this case on October 3, 2018 ("Petition Date") under Chapter 11 of Title 11 of the United States Bankruptcy Code. Debtor remains in possession and no trustee has been appointed.

4. Debtor's business consists of chartering a single marine vessel, the M/V Mr. Steven, which is Debtor's sole asset ("Mr. Steven" or the "Property").

5. As of the Petition Date, the Debtor is indebted unto SBN in the full principal sum of $22,018.031.52, together with accrued interest thereon through October 3, 2018 in the amount

of $1,417,373.17, plus interest continuing to accrue on the unpaid principal balance at a per diem of $3,210.96, until paid in full, plus late charges of $1,250, plus SBN's attorneys' fees and costs. The Debtor's indebtedness to SBN is evidenced by that certain Promissory Note dated September 28, 2015 in the original principal amount of Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($22,500,000) ("Note") executed by Debtor and Iberia Marine Service, LLC, Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Row, LLC, Lady Brandi, LLC, and Lady Eve, LLC (collectively, "IMS"). True and correct copies of the Note and the September 28, 2015 Business Loan Agreement are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, which are incorporated herein by reference.

6. The Debtor's indebtedness to SBN is secured by that certain Preferred Ship Mortgage dated September 28, 2015 executed by IMS, including Debtor (the "Mortgage") on *inter alia*, the Mr. Steven and all earnings, issues, revenues, accounts, assets, payments, income and profits derived from the use or operation of the Mr. Steven, or any part or parts thereof. The Mortgage was properly recorded with the National Vessel Documentation Center on October 7, 2015. A certified copy of the Mortgage is attached hereto as <u>Exhibit C</u> and incorporated herein by reference. A UCC-1 financing statement was filed on October 9, 2015, at No. 26-349272. A certified copy of the UCC-1 is attached hereto as <u>Exhibit D</u> and incorporated herein by reference.

7. On October 18, 2017, SBN purchased the indebtedness of Debtor (and IMS), the Note, the Mortgage and related documents from the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for FNBC. A copy of the Endorsement and Allonge memorializing SBN's purchase of Debtor's indebtedness and related documents is attached hereto as <u>Exhibit E</u> and incorporated herein by reference. A certified copy of the Assignment of the Mortgage is attached hereto as <u>Exhibit F</u> and incorporated herein by reference and a certified copy of the UCC-3 for the assignment of the UCC-1 financing statement is attached hereto as <u>Exhibit G</u> and incorporated herein by reference.

8. Neither Debtor nor any other IMS party has made a payment on the Note since July 31, 2017 thereby placing the Note in default. On January 16, 2018, SBN made demand upon IMS, including Debtor, and Miguez notifying them that the full amount of the indebtedness was immediately due pursuant to the terms of the Note. A true and correct copy of this January 16, 2018 correspondence is attached hereto as <u>Exhibit H</u> and incorporated herein by reference. Despite demand, IMS and Miguez still failed to make any payment on the Note.

9. On February 6, 2018, SBN filed a *Verified Petition for Collection on Note and Guaranty* against Miguez in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana, which suit bears case no. 780-357, seeking judgment against Miguez for unpaid principal, interest, fees, costs and attorneys' fees. Miguez thereafter delayed the state court proceedings for months, culminating with his removal of the lawsuit to the United States District Court for the Eastern District of Louisiana based upon bankruptcy jurisdiction shortly before the hearing on SBN's motion for summary judgment.[1]

---

[1] *See SBN's Omnibus Memorandum in Opposition to (1) Steven J. Miguez and Seatran Marine, LLC's Motion to Continue Hearing Date and Associated Deadlines and (2) Ex Parte/Consent Motion to Continue Hearing Date and Associated Deadlines* [Doc. 50] ("SBN's Omnibus Opposition"), at 3-4, which filing SBN adopts and incorporates herein, by reference.

10. Prior to the bankruptcy filing, Guice Offshore, LLC chartered the Mr. Steven which has been operating on behalf of SpaceX off the coast of California. *See* Amy Thompson, *Meet Mr. Steven, SpaceX's Rocket Nose-Cone-Catching Boat*, SPACE.COM, Aug. 26, 2018, https://www.space.com/41614-spacex-mr-steven-catcher-boat-up-close.html. In its pending *Motion to Determine Property of the Estate and Motion for Turnover of Property* [Doc. 29], Debtor specifically represents that, "[p]rior to filing its voluntary petition, the Debtor was under a bareboat charter with Guice Offshore, LLC ("Guice Offshore") beginning October 15, 2017."[2] Seatran Marine, LLC ("Seatran"), also controlled by Miguez and Blake Miguez, also apparently charters the Mr. Steven.[3] By letter dated April 2, 2018, SBN issued notice to Guice to enforce SBN's security interest in sums owed by Guice for its charter of Debtor's sole asset, the Mr. Steven. However, Debtor's then counsel issued a letter to Guice contesting the Debtor's interests in the sums owed by Guice for its use of the vessel. As a result, Guice has been holding such proceeds that accrue each month in its counsel's trust account.[4] By SBN's calculation, no less than $986,605 was owed by Guice in connection with the charter of the Mr. Steven through October 26, 2018. SBN advised Debtor that it was prepared to foreclose on the Mr. Steven but offered forbearance in exchange for Debtor's consent to the release of the funds held by Guice to SBN as required by the Mortgage and applicable law. Debtor refused to consent.

11. On October 2, 2018—the day before Debtor filed this case—SBN filed a *Verified Complaint in Rem for Foreclosure of Preferred Ship Mortgage* in the United States District Court for the Central District of California, case no. 2:18-cv-08492-RSWL-RAO (the "Foreclosure

---

[2] *See Mot. To Determine Property of the Estate and Mot. For Turnover of Property* [Doc. 29], at ¶ 7.

[3] *See Ex Parte Consent Motion to Continue Hearing Date and Associated Deadlines* [Doc. 48], at ¶ 3.

[4] *See SBN's Omnibus Opposition*, at 4-7.

Proceeding"), wherein SBN sought to enforce its Mortgage against the Mr. Steven. A true and correct copy of this Verified Complaint is attached hereto as Exhibit I. A warrant for arrest in action in rem was issued in the Foreclosure Proceeding on October 3, 2018, but on that same day a *Notice of Automatic Stay* was filed therein under 11 U.S.C. § 362(a). On October 4, 2018, the Court in the Foreclosure Proceeding issued a Minute Order staying that matter and stating SBN "may seek relief from the automatic stay with the Bankruptcy court in accordance with 11 U.S.C. § 362(d)." SBN now seeks such relief by filing this Motion.

12. Despite the expiration of the existing charter agreement on October 15, 2018, Guice is continuing to use the Mr. Steven. Debtor has not filed a motion herein seeking authority for any such use. Further, reports indicate that the Mr. Steven is being moved from the west coast of the United States, off the coast of California, to the east coast of the United States, to Port Canaveral, Florida. *See* Emre Kelly, *SpaceX's Mr. Steven, a unique fairing-catching ship, could soon make its Florida debut*, Floridatoday.com, November 14, 2018, https://amp.floridatoday.com/amp/1998666002?__twitter_impression=true (Port Canaveral CEO John Murray "went on to confirm that Mr. Steven is slated to arrive [at the Port] in early December."). Debtor has refused to respond to SBN's inquiries relating to the Mr. Steven and has filed nothing in the record of this case seeking any authority for the continued use of the Mr. Steven.

13. Additionally, Debtor's recently filed sworn schedules reveal that Debtor transferred more than $2.7 million to one of Debtor's related entities, Iberia Marine Service, LLC ("Iberia Marine") immediately prior to the filing of Debtor's bankruptcy petition on the Petition Date

5

leaving Debtor with little cash.[5] Iberia Marine is owned and operated by Miguez, who also owns and operates Debtor.

14.     Debtor's schedules show the value of the Mr. Steven as $12,614,459.61.[6] SBN's secured claim exceeds $23 million. SBN has been unable to obtain an appraisal of the Mr. Steven due to its lack of access to the vessel and the Debtor's refusal to apprise SBN of the terms of any charter of the Mr. Steven. SBN specifically reserves all rights to supplement this Motion if and when it is able to have the Mr. Steven appraised.

15.     Based on the facts set forth above, the automatic stay should be lifted because (1) "cause" exists to lift the stay because Debtor's petition was not filed in good faith and Debtor and its principals/related entities have not cooperated with SBN (Debtor's only secured creditor), and SBN's interest in the Property is not adequately protected; and (2) Debtor does not have equity in the Property and the Property is not necessary to an effective reorganization.

### III.     Relief Requested

16.     SBN respectfully requests the Court modify, vacate, and lift the automatic stay as to SBN to allow SBN to (1) commence and continue with the enforcement of any and all rights SBN possesses in law or in equity as to the Note, Mortgage, and the Property, including its right to foreclose on its mortgage and security interests on the Property, including but not limited to the prosecution of the Foreclosure Proceeding; and (2) enforce any other rights and remedies it may have with respect to the indebtedness and its collateral as specified in the Note, Mortgage and the documents related thereto or under applicable law.

---

[5]     *See* Schedules [Doc. 32], at 15.

[6]     *See* Schedules [Doc. 32], at 5.

17. Further, SBN requests waiver of the 14-day stay provided for by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

## IV. Analysis

18. The automatic stay provided in 11 U.S.C. § 362 commences upon filing a bankruptcy case and protects the assets of the debtor for equitable distribution to creditors. *In re Chestnut*, 422 F.2d 298, 201 (5th Cir. 2005) (citing *McMillan v. MBank Fort Worth*, N.A., 4 F.2d 362, 366 (5th Cir. 1993)). SBN is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2), which provides (emphasis added):

> (d) On request of a party in interest and after notice and a hearing, the court ***shall grant relief from the stay*** provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) ***for cause***, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
>     (a) the ***debtor does not have an equity in such property***; and
>     (b) such property is ***not necessary to an effective reorganization***.

19. Section 362(d) of the Bankruptcy Code provides two separate grounds under which relief from the automatic stay may be granted. *In re Tewell,* 355 B.R. 674, 679 (Bankr. N.D. Ill. 2006) (citations omitted). The first ground is for cause, including lack of adequate protection, and the second ground is that the debtor does not have equity in the property and the property is unnecessary to an efficacious reorganization. *Id.*

20. Although a motion for relief from the stay often is filed after a debtor has failed to take any action toward filing a plan, the U.S. Supreme Court has recognized that relief from the automatic stay may be granted early in a bankruptcy case. *See U.S. v. Sav. Ass'n of Tex. v. Timbers*

*of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) ("*Timbers I*"). The Fifth Circuit has noted that because the vast majority of chapter 11 cases do not end with confirmed plans, the challenge to the bankruptcy court is to recognize those cases promptly and limit the administrative expenses and costs borne by the creditors. *Canal Place Ltd. P'ship v. Aetna Life Ins. Co.* (*In re Canal Place Ltd. P'ship)*, 921 F.2d 569, 577 (5th Cir. 1991).

### *(i) Cause Exists to Lift the Automatic Stay Under § 362(d)(1)*

21. Section 362(d)(1) states that relief from the stay may be granted "for cause, including the lack of adequate protection of an interest in property…" "'Cause' as is used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis." *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995); *see also Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1996) (cause is "not defined in the statute as to afford flexibility to the bankruptcy courts.") (citing *In re Victory Constr. Co.*, 9 B.R. 549, 558-60 (Bankr. C.D. Cal. 1981) ("cause" is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process)). "'Cause' is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *Texas State Optical*, 188 B.R. at 556. Factors generally looked to in determining whether to modify an automatic stay for cause include interference with bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditor if the stay is modified, injury to movant if the stay is not modified, and proportionality of harms from modifying or continuing the stay. *See In re Milne,* 185 B.R. 280, 283 (N.D. Ill 1995).

22. Courts have recognized that a debtor's lack of good faith in filing a petition for bankruptcy may be the basis for lifting the automatic stay. *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994) (collecting cases, including *Little Creek Dev.*, 779 F.2d at 1071-72 (lack of

8

good faith constitutes "cause" for lifting the stay to permit foreclosure)); *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995). The analysis of bad faith under § 362(d) proceeds in much the same way as the analysis of whether to dismiss a case for cause under § 1112(b). *See Trident*, 52 F.3d at 131. The good faith requirement balances the interests of the debtors and creditors. As the Fifth Circuit noted:

> [The good faith requirement] furthers the balancing between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons… available only to those debtors and creditors with "clean hands."

*Little Creek Dev.*, 779 F.2d at 1072; *see also Elmwood Dev. Co. v. Gen. Elec. Pension Trust (In re Elmwood Dev. Co.),* 964 F.2d 508, 510 (5th Cir. 1992). Good faith generally is held to require "honesty of intention." *See In re Metro. Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970) ("'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose.").

23. Findings of bad faith are based upon an overall review of the circumstances on a case-by-case basis. *See Little Creek Dev.*, 779 F.2d at 1072. Although there is no particular test for determining whether a debtor has filed a petition void of good faith, courts generally conduct a balancing test and "consider any factors which evidence an 'intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Boughton*, 243 B.R. 830, 834 (Bankr. M.D. Fla. 2000) (internal citations omitted); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

24. The Fifth Circuit has developed a list of non-exclusive factors that indicate bad faith, including:

> The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(2), 363(e), or 364(d)(1). Typically, there are only a few, if any unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court…Bankruptcy offers the only possibility of forestalling loss of the property.

*Little Creek Dev.*, 779 F.2d at 1073.

25. As shown herein, SBN submits that the automatic stay should be lifted for cause because most of the *Little Creek* "bad faith" factors are satisfied. First, the timing and nature of Debtor's filing evinces an intent to delay or frustrate SBN's efforts to enforce its rights under the Note and Mortgage. Debtor filed its petition herein on October 3, 2018, the day after SBN instituted the Foreclosure Proceeding in California and after SBN filed its motion for summary judgment in the Louisiana state court proceeding against Miguez wherein SBN sought to enforce the Note, Mortgage, and Miguez Guaranty. These facts alone demonstrate Debtor filed its bankruptcy petition for no other purpose than to delay and frustrate SBN from exercising its legal rights.

26. Second, Debtor has only one asset—the Property—which is subject to the Note and Mortgage. Even if the Court were to accept Debtor's value of the Mr. Steven as $12,614,459.61, Debtor has no equity in the Property. Given that the outstanding balance on the Note is in excess of $23 million, the Debtor's assets are encumbered beyond their value.

27. Third, a warrant for arrest of the Mr. Steven was issued in the Foreclosure Proceeding as it is Debtor's sole asset and the Property subject to the Foreclosure Proceeding because of Debtor's failure to satisfy the terms of the Note.

28. Fourth, Debtor has only one non-insider creditor, SBN. According to Debtor's recently filed schedules, SBN is Debtor's only secured creditor and Debtor's only unsecured creditor is an insider, Iberia Marine, which is owned and operated by Miguez, who also owns and operates Debtor. Iberia Marine is also the recipient of the Debtor's $2.7 million dollars transfer just before the Debtor filed bankruptcy.[7] This is a two-party dispute for which Chapter 11 bankruptcy protection is not warranted.

29. Fifth, Debtor has few employees or no employees. On information and belief, Debtor has either a small number of employees or no employees at all given that its business consists principally of the chartering of a single marine vessel, the Mr. Steven.

30. Sixth, there is no possibility of reorganization. SBN is under secured as to the Debtor by at least $10 million according to Debtor's own schedules,[8] and the whole of Debtor's interest in the Property is subject to the Mortgage. There are no assets to distribute to unsecured creditors, and no possibility of reorganization exists. The only purpose this bankruptcy proceeding will serve is to accrue legal fees and expenses which will detract from SBN's recovery. No party or persons will benefit, including the other IMS Parties who are unnecessarily adding interest and fees to their obligations under the Note.

---

[7] Iberia's claim is stated to be $223,187.32. SBN is not aware of any legitimate basis for Iberia Marine to have any claim against the Debtor.

[8] To the extent Debtor will rely on *In re Cardell*, 88 B.R. 627, 632 (Bankr. D.N.J. 1988), to argue the collateral of the other IMS entities secures the Mortgage, this argument has been rejected by the Fifth Circuit. *See McManus v. Cadle Co. (In re McManus),* 30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. July 18, 1994) (unpublished). There, the debtors "contend[ed]… that the bankruptcy court should have considered a piece of property owned by a different party … in assessing whether the [debtors] had equity in their home" citing *Cardell*. *Id*. The Fifth Circuit distinguished *Cardell*, finding that the bankruptcy court in *Cardell* "in determining equity considered other property of the debtor, not property owned by a different party." *Id*. The Fifth Circuit summarized the relevant holding from *Cardell* as "finding [the] debtor had equity under § 362(d)(2) because companies [the] debtor owned and controlled provided alternative sources to satisfy creditor's debt." *Id*. The Fifth Circuit ultimately held that equity under 362(d)(2) did not include property owned by a different party. *Id*.

11

31. Seventh, bankruptcy offers the only possibility of forestalling loss of the Property. Debtor filed bankruptcy simply to stop the Foreclosure Proceeding. Debtor transferred its cash to a related party and ensured that amounts owed to it would not be paid. Debtor is merely forestalling the loss of the Property.

32. Finally, and perhaps most importantly, Debtor has deliberately transferred millions of dollars of its cash and rights to cash to affiliated entities **choosing** to deprive Debtor of the resources it would need to reorganize. These actions by themselves demonstrate that Debtor's goal is not reorganization but to frustrate and delay its creditor SBN. Immediately prior to filing bankruptcy, Debtor transferred over $2.7 million to Iberia Marine, which, like Debtor, is owned and controlled by Miguez. Likewise, Debtor, Miguez, and his other entities took the position that funds generated by its Property that were owed by Guice did not belong to the Debtor but to others ensuring that the Debtor's income would cease. SBN offered forbearance if the Guice funds would be released but Debtor chose bankruptcy instead. Debtor's transfer of its cash and rights to cash is a clear and inexplicable breach of its fiduciary duty to SBN. Debtor deliberately did not pay its lender and chose instead to transfer its resources to others. On facts not nearly as egregious as those in this case, courts have found that a debtor's failure to cooperate with its creditor constituted bad faith and provided cause to lift the stay. *See In re G.Y. Trucking, Inc.*, 28 B.R. 59, 61 (Bankr. M.D. Pa. 1982) (debtor's "failure to allow [Creditor] to inspect one of the trucks, as was agreed by counsel, constitutes bad faith. Further evidence of bad faith is the debtor's failure to pay [creditor] the $5000 interim payment for the use of the trucks as was also agreed.").

33. No payment has been on the Note since July 31, 2017. Debtor did not even try to pay SBN.

34. Nothing has changed since Debtor filed bankruptcy. Debtor has not provided adequate protection to SBN since filing its bankruptcy case. Debtor has allowed its Property to be used outside of the ordinary course without obtaining bankruptcy court approval. Debtor has allowed its Property to be moved from the west coast to the east coast without advising the Court or SBN, forcing SBN to search the internet for reports as to the location of its collateral. The vessel is an asset that deteriorates in value over time and use. Debtor is incurring ever increasing administrative costs and fees without purpose or end game.

35. SBN cannot envision a case with stronger facts establishing cause to lift the stay than this case.

### *(ii) The Court Must Lift the Stay Because Debtor Has No Equity in the Property and the Property is Not Necessary to an Effective Reorganization*

36. The Court must lift the automatic stay because this bankruptcy case is essentially a two-party dispute between Debtor and SBN, wherein the Property's value is substantially less than the amount of the indebtedness which it secures. Section 362(d)(2) of the Bankruptcy Code provides that the Court must lift the automatic stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Because Debtor has no equity in the Property and the Property is not necessary to an effective reorganization, the Court is required to lift the automatic stay.

*a. Debtor has no equity in the Property*

37. "'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it." *In re Sutton*, 904 F.2d 327, 329 (5th Cir. 1990). The Property is subject to the Mortgage which secures indebtedness to SBN in excess of $23.6 million. Even if the Court were to accept Debtor's value of the Mr. Steven as $12,614,459.61, Debtor has no equity in the Property. Thus, the value of the Property is markedly less than Debtor's secured

indebtedness to SBN. Further, Debtor cannot rely on collateral not owned by the Debtor to establish equity in its property. *See McManus v. Cadle Co. (In re McManus),* 30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. July 18, 1994) (unpublished); *see also In re SW Boston Hotel Venture LLC*, 449 B.R. 156, 177-78 (Bankr. D. Mass. 2011).

### b. *The Property is not necessary to an effective reorganization*

38. Once the movant has demonstrated there is no equity in the secured property, the burden shifts to the debtor to demonstrate that the property is necessary to reorganization. 11 U.S.C. § 362(g); *Sutton*, 904 F.2d at 330; *see also In re Canal Place*, 921 F.2d at 576 ("In every case where a creditor seeks relief under § 362(d)(2), the creditor has the burden to establish the lack of equity in the property and the debtor has the burden to establish that the property is necessary for an effective reorganization.").

39. To demonstrate that the Property is necessary to an effective reorganization, Debtor must show that the Property is "essential for an effective reorganization ***that is in prospect***." *Timbers I*, 484 U.S. at 376 (emphasis in original). "This means … there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id*. "However honest in its efforts the debtor may be, and however, sincere its motives, the [Court] is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *First Jersey Nat'l Bank v. Brown (In re Brown),* 951 F.2d 564, 572 (3d Cir. 1991) (quoting *Tennessee Publ'g Co. v. Am. Nat'l Bank*, 299 U.S. 18, 22 (1936)). "Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd*., 921 F.2d at 577; *see also In re Brown*, 951 F.2d at 572 (quoting the Fifth Circuit in *In re Canal Place Ltd*.).

40. Debtor has demonstrated that it cannot service SBN's indebtedness and has chosen not to try, improperly shifting its cash to other entities. Again, this is a two party, single asset case

14

which should not be consuming this Court's resources.  Debtor cannot obtain the consent of a noninsider impaired class to vote for a plan.  Debtor filed this case to delay and frustrate SBN, not to reorganize.  Therefore, the Court is required to lift the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

41. Accordingly, SBN requests this Court to lift the automatic stay to allow SBN to foreclose on the Property.  Given the bad faith facts of this case, SBN further requests that the Court insert in the Order lifting the stay that the order granting relief from the stay will apply in any future case filed by the Debtor.  SBN expressly requests that the entry of the Order granting relief from the automatic stay not be stayed pending the expiration of a fourteen (14) day post-entry period of the Order, pursuant to Bankruptcy Rule 4001(a)(3).

WHEREFORE, SBN V FNBC LLC prays that, after notice and hearing, for the entry of an order lifting the automatic stay accorded the Debtor under section 362(d)(1) and (2) of the Bankruptcy Code to permit SBN V FNBC LLC to foreclose on the Property, providing that such order applies in this case and any future case filed by the Debtor, and providing that such order not be stayed pending the expiration of a fourteen (14) day post-entry period of the Order, pursuant to Bankruptcy Rule 4001(a)(3).

[Remainder of page intentionally blank]

New Orleans, Louisiana, this 26th day of November, 2018.

                                            Respectfully submitted,

                                            CARVER, DARDEN, KORETZKY, TESSIER
                                            FINN, BLOSSMAN & AREAUX, L.L.C.

                                            /s/ Peter S. Segrist
                                            DAVID F. WAGUESPACK (#21121)
                                            PETER J. SEGRIST (#35314)
                                            ANDREW J. BRIEN (#37051)
                                            1100 Poydras Street, Suite 3100
                                            New Orleans, Louisiana 70163
                                            Telephone: (504) 585-3814
                                            Fax: (504) 585-3801

                                            Counsel for SBN V FNBC LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* has been served by:

1. ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on November 26th, 2018; and

2. U.S. Mail, postage prepaid, upon Debtor, Mr. Steven, L.L.C., through its counsel of record, Robin B. Cheatham, Adams and Reese LLP, 701 Poydras Street, Suite 701, New Orleans, LA 70139, on November 26th, 2018.

                                            /s/ Peter S. Segrist
                                            PETER S. SEGRIST

**Exhibit 1**

Robin B. Cheatham on behalf of Debtor Mr. Steven, L.L.C.
cheathamrb@arlaw.com, vicki.owens@arlaw.com

Benjamin W. Kadden on behalf of Interested Party Seatran Marine, LLC
bkadden@lawla.com, mnguyen@lawla.com

William Kaufman on behalf of Interested Party Guice Offshore, LLC
whkaufman@ohllc.com, egnormand@ohllc.com

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Stewart F. Peck on behalf of Interested Party Seatran Marine, LLC
speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com

Peter James Segrist on behalf of Creditor SBN V FNBC LLC
segrist@carverdarden.com, clary@carverdarden.com

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

Randall Scott Wells on behalf of Interested Party Guice Offshore, LLC
swells@rushing-guice.com

4846-9486-6560, v. 5