UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-51277 |
| | § | |
| MR. STEVEN, L.L.C., et al[1] | § | CHAPTER 11 |
| | § | |
| Debtor. | § | JUDGE JOHN W. KOLWE |
| | § | |

| | | |
|---|---|---|
| MR. STEVEN, L.LC., LADY EVE, L.L.C., | § | Adv. Pro. No. _____ |
| LADY BRANDI L.L.C., LADY GLENDA | § | |
| LLC, MR. BLAKE LLC, MR. MASON | § | |
| LLC, MR. RIDGE LLC, AND MR. ROW | § | |
| LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| Versus | § | |
| | § | |
| SBN V FNBC, LLC, | § | |
| | § | |
| Defendant, | § | |
| | § | |

**COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANANENT INJUNCTION, AND DECLARATORY ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 362 AND FEDERAL RULE OF BANRUPTCY PROCEDURE 7065**

**NOW INTO COURT**, through undersigned counsel, comes Mr. Steven, L.L.C. ("Debtor") together with the following entities seeking joint administration with Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC (collectively the "Debtors" or "Plaintiffs"), as debtors and debtors-in-

---

[1] The Debtor is seeking joint administration with each of the following Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi L.L.C. (18-51517), Lady Glenda LLC (18-51518), Mr. Blake LLC (18-51519), Mr. Mason LLC (18-51521), Mr. Ridge LLC (18-51522), and Mr. Row LLC (18-51523).

{00365625-4}

possession, who file this Complaint ("Complaint") for (i) Preliminary and Permanent Injunctions, restraining SBN V FNBC, LLC ("SBN" or "Defendant") from asserting certain claims against Mr. Steven J. Miguez ("Miguez") for alleged breaches of an agreement to guarantee a loan extended prepetition by SBN to the Debtors (the "Loan") and/or (ii) an Order declaring the pending proceeding against Miguez to be automatically stayed pursuant to 11 U.S.C. § 362. In support of the Complaint, the Debtors respectfully state the following:

## BACKGROUND

The Debtors' Bankruptcy Proceeding and Associated Filings

1. Each of the following vessels are owned by a limited liability corporation for which Miguez is the Manager and each company has filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Western District of Louisiana (the "Chapter 11 Cases"):

| Debtor | Case Number | Petition Date |
|---|---|---|
| Mr. Steven, LLC | 18-51277 | October 3, 2018 |
| Lady Eve, L.L.C. | 18-51488 | November 16, 2018 |
| Lady Brandi L.L.C. | 18-51517 | November 21, 2018 |
| Lady Glenda LLC | 18-51518 | November 21, 2018 |
| Mr. Blake LLC | 18-51519 | November 21, 2018 |
| Mr. Mason LLC | 18-51521 | November 21, 2018 |
| Mr. Ridge LLC | 18-51522 | November 21, 2018 |
| Mr. Row LLC | 18-51523 | November 21, 2018 |

2. The Debtors continue to operate the businesses and manage the properties as a debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. No trustee or committee of unsecured creditors has been appointed in in the Chapter 11 Cases. The Debtors will seek joint administration.

### Miguez's Role

4.     Miguez is the managing member of each of the Debtors and, therefore, has a top-to-bottom knowledge of the daily operations. He is the principal party in obtaining work for the vessels, handling any problems that may arise in connection with the vessels and in dealing with vendors for the vessels. His work for each of the Debtors gives him a familiarity with the industry that can only be developed through many years of experience.

5.     Miguez spends significant time per week running the businesses.

### The Debtors' Restructuring Efforts and Plans

6.     SeaTran Marine, LLC ("SeaTran") is fifty percent (50%) owned by Iberia Marine Service, LLC and Capt. Elliott's Party Boats, LLC d/b/a Texas Crewboats. Blake Miguez is the President, CEO and Manager of SeaTran, which operates 18 vessels under various management agreements, including the Debtors' vessels. All land and vessel employees that manage and crew the Debtors are employees of SeaTran. SeaTran is the counterparty in all of the Master Time Charters and Charter Contracts.

7.     The Debtors filed for relief under the Bankruptcy Code to address the seizure of their respective vessels. The plan of reorganization will pay all creditors in full, including SBN, from the operations of the vessels and other funds that are provided under various federal programs.

### The SBN Loan and Guaranty Action

8.     On September 28, 2015, borrowers identified as Iberia Marine Service, L.L.C. and each of the Debtors executed a Business Loan Agreement and a Promissory Note with First

NBC Bank as the Lender. Under the terms of the Business Loan Agreement, Miguez executed a commercial guaranty prior to the disbursement of any loan proceeds.

9. The Debtors executed, to secure the Promissory Note. The Debtors executed documents that purported to grant First NBC Bank a security interest of certain assets of each Debtor.

10. Upon information and belief, on October 18, 2017, the FDIC, as Receiver for First NBC Bank, executed an Assignment of Preferred Ship Mortgage and an Endorsement and Allonge to Promissory Note assigning all of its rights, title, and interest in and to the Note, and any and all other documents or instruments evidencing or securing the Note, and its obligations thereunder, to SBN.

11. Upon information and belief, SBN asserts a perfected security interest in the Debtors' assets.

12. The Debtors have defaulted in their agreements to SBN.

13. On February 6, 2018, SBN filed its Verified Petition for Collection on Note and Guaranty in the 24th Judicial District Court for the Parish of Jefferson (the "Guaranty Action"). The Guaranty Action is seeking a judgment against Miguez as the Guarantor for the Loan. SBN asserts that the total outstanding balance of the Loan is $22,018,031.52 in principal, $605,916.96 in interest (accruing at $3,058.06) per day), and $1,250.00 in unpaid late charges, for a total sum due of $22,625,198.48 as of January 11, 2018.

14. On November 15, 2018, the Guaranty Action was removed to the United States District Court for the Eastern District of Louisiana, Case No. 18-11016.

15. On November 15, 2018, Miguez filed a Motion to transfer the removal Guaranty Action to the Western District of Louisiana pursuant to 28 U.S.C. §§ 1412 and 1404 for ultimate referral to this Court. That motion is scheduled for submission to the District Court on December 12, 2018.

16. SBN has filed a Motion for Summary Judgment in the United States District Court for the Eastern District.

## JURISDICTION AND VENUE

17. Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction (i) to hear and determine this Complaint, and (ii) over the persons and property affected hereby. The subject matter of this Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

18. The venue of this proceeding and this Complaint is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

19. The relief sought with this Complaint is based upon §§ 362 and 105 of the Bankruptcy Code.

## THE PARTIES

20. The Plaintiffs are the Debtors, who filed the Chapter 11 Cases and are limited liability companies registered in the State of Louisiana. The principal place of business address for each of the Debtors is 107 Highway 90 West, New Iberia, Louisiana 70560.

21. Upon information and belief, Defendant SBN, is a limited liability company organized and existing under the laws of the State of Delaware, with offices in Denver, State of Colorado. The registered agent is listed as The Corporation Trust Company, Corporation Trust

Center, 1209 Orange Street, Wilmington, Delaware 19801. SBN purchased the indebtedness it is believed for approximately twenty-three percent (23%) of the face amount of the loan.

## CAUSES OF ACTION

### COUNT ONE: PRELIMINARY INJUNCTION

22. The Plaintiffs incorporate all prior paragraphs into this section to the extent not inconsistent, as if fully set forth herein.

23. The Debtors respectfully request that this Court use the powers granted to it under 11 U.S.C. § 105(a) to issue a Preliminary Injunction to enjoin SBN from proceeding with its claims against Miguez for breach of the commercial guaranty in the Guaranty Action, until a hearing for a permanent injunction is held before this Court, as these claims will irreparably harm the Debtors' ability to reorganize. The continued litigation of the Guaranty Action poses a direct threat to reorganization of the Debtors because it will distract Miguez as the manager member from fulfilling his duties and operating the companies. *See Lahman Mfg. Co. v. First Nat'l Bank of Aberdeen (In re Lahman Mfg. Co.)*, 33 B.R. 681 (Bankr. D.S.D. 1983).

### An Injunction Granted under Section 105 Requires Unusual Circumstances and the Classic Prerequisites for Injunctive Relief

24. Congress anticipated that discretionary injunctive powers would be required to stay proceedings that fall outside of the automatic stay but will have an adverse effect on reorganization. *See* 1 COLLIER ON BANKRUPTCY ¶ 105[4] (citing S. REP. NO. 989, 95th, Cong., 2d Sess. 51 (1978)). Section 105 of the Bankruptcy Code is the provision which authorizes bankruptcy courts to use equitable powers to stay proceedings that threaten reorganization. *See Reuther v. Smith*, No. CIV A 06-6612, 2007 WL 1962956, at *4 (E.D. La. June 29, 2007) ("Section 105 allows a bankruptcy court to 'issue any order, process, or judgment that is

{00365625-4}

6

necessary or appropriate to carry out the provisions of this title.'") (quoting 11 U.S.C. § 105(a)). In the Fifth Circuit, a bankruptcy court can employ its equitable powers to enjoin a third party where there are "unusual circumstances" and the preliminary requisites for issuance of an injunction are met. *In re Babcock & Wilcox Co.*, No. 00-1051, 2001 WL 536305, at *6 (E.D. La. May 18, 2001) (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995)).

<u>"Unusual Circumstances" Exist in this Case to Justify an Injunction</u>

25. Circumstances qualify as "unusual" "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *In re Zale Corp.*, 62 F.3d at 761. "When either of these circumstances occurs, an injunction may be warranted." *Id.*

26. Here, sufficient "identity of interests" exists between the Debtors and Miguez such that SBN would be essentially asserting claims against the Debtors.[2] As to the second circumstance, the Debtors assert that, if allowed to proceed, the Guaranty Action will have a significant adverse impact on the Debtors' ability to reorganize and operate.

27. Courts in this Circuit have found adverse impact because claims made against a debtor's president and majority shareholder would divert his attention from assisting in the reorganization. *See, e.g.*, *SAS Overseas Consultants v. Benoit*, No. CIV.A. 99-1663, 2000 WL 140611, at *3 (E.D. La. Feb. 7, 2000) (citing *In re Venzke Steel Corp.*, 142 B.R. 183, 183 (Bankr. N.D. Ohio 1992)). That opinion is consistent with the larger body of case law. For example,

---

[2] Courts have also found that this first circumstance renders Section 362 applicable to the non-debtor. Out of an abundance of caution, the Debtors argue in the alternate that relief should be found under Section 362 and Section 105 for overlapping reasons.

{00365625-4}

7

courts in the Second Circuit have found that relief under Section 105 is warranted under "limited" rather than "unusual" circumstances, but similarly, one such limited circumstance is where creditor actions against non-debtors will adversely affect the estate. *See In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 147 (S.D.N.Y. 1992). The adverse impact can occur because "[1] the action will impede the non-debtor third party from injecting funds into the reorganization, [or] because [2] the action would detract invaluable time and attention of the non-debtor" that would otherwise be devoted to the debtor's business operations and reorganization. *Id.*[3]

28. The Guaranty Action will have an adverse impact on reorganization because it will divert Miguez's invaluable services and attention away from reorganization efforts.

29. Courts have also found a sufficient adverse impact on the debtor to justify an injunction where claims against guarantors will divert invaluable services and attention away from reorganization efforts. "If it [were] established that the estate would suffer if the guarantor's services and attention were compromised by the distraction of defending against the Guarantee Action, this factor could justify a stay." *Chase Manhattan Bank, N.A. v. Third Eighty-Ninth Assocs.* (*In re Third Eighty-Ninth Assocs.*), 138 B.R. 144, 147 (S.D.N.Y. 1992); *see also Lomas Fin. Corp. v. N. Tr. Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 66 (S.D.N.Y. 1990) (issuing a stay against action against debtor's officer who devoted over 50% of his time to and was "irreplaceable" in the reorganization effort); *Rustic Mfg., Inc. v. Marine Bank Dane Cty.* (*In re Rustic Mfg., Inc.*), 55 B.R. 25, 31 (Bankr. W.D. Wis. 1985) (issuing a stay of an action against

---

[3] Courts in the Second Circuit also grant relief for the other unusual circumstance, that an action against the non-debtor is effectively an action against the debtor, but often consider this a third factor for determining adverse impact.

{00365625-4}

8

debtor's officer who was a "key staff member" of the reorganization task force); *Northlake Bldg. Partners v. Nw. Nat'l Life Ins. Co. (In re Northlake Bldg. Partners)*, 41 B.R. 231, 233 (Bankr. N.D. Ill. 1984) (issuing stay of action against debtor's general partner who was "intimately connected" with the management of the debtor's business).

30. Considering the above authorities, there is ample support to find that an injunction is warranted because the Guaranty Action will adversely impact reorganization by diverting Miguez's invaluable attention and services away from reorganization. Miquez's situation strongly resembles that of the guarantor in *In re Northlake Building Partners*. There, the court stayed creditor's claims against a general partner of the debtor who ran day-to-day operations for the business, managing over sixty employees, and who had agreed personally to guarantee a $3 million mortgage granted by the debtor. 41 B.R. at 233. Here, Miguez runs the day-to-day operations of the business as the manager member of the Debtors. Miguez will be intimately involved in the reorganization process and is critical to its success.

31. In the Debtors' ongoing efforts to reorganize, Miguez will provide funds, leadership, management, and direction needed in a successful reorganization. Allowing claims to proceed against Miguez will adversely impact the reorganization of the Debtors. Thus, the requirement for unusual circumstances is met.

<u>The Prerequisites for a Preliminary Injunction are Met</u>

32. The second half of the test to stay the Guaranty Action as to Miguez requires the movants to demonstrate that the classic requirements for a preliminary injunction are met. The prerequisites for a preliminary injunction are:

> (a) a substantial likelihood that the movant will prevail on the merits; (b) a substantial threat that the movant will suffer irreparable injury if the injunction is

{00365625-4}

9

18-51277 - #71  File 11/28/18  Enter 11/28/18 13:44:52  Main Document  Pg 9 of 15

not granted; (c) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (d) that the granting of the injunction will not disserve the public interest.

*Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp., Inc.)*, 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011).

<u>Miguez can Demonstrate a Likelihood of Success on the Merits</u>

33. "Success on the merits" is judged on a sliding scale. *See Hunt v. Commodity Futures Trading Comm'n (In re Hunt)*, 93 B.R. 484, 492 (N.D. Tex. 1988) (adopting the Fifth Circuit's sliding scale test which requires "balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits"). "Moreover, where the potential harm to the party seeking an injunction is greater than the prejudice to the defendant, 'it is not even necessary that a *substantial likelihood* of success be shown . . . a showing of *some* likelihood of success on the merits will justify temporary injunctive relief." *Id.* (quoting *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F. 2d 683, 686 (5th Cir. 1980)). And "when the other factors weigh in favor of an injunction, a showing of some likelihood of success on the merits will justify temporary injunctive relief." *SAS Overseas Consultants*. 2000 WL 140611, at *4.

34. "Bankruptcy courts have defined success on the merits as 'the probability of a successful plan or reorganization.'" *In re The Babcock & Wilcox Co.*, No. 00-1051, 2001 WL 536305, at *7 (E.D. La. May 18, 2001) (quoting *In re Otero Mills, Inc.*, 21 B.R. 777, 779 (Bankr. D.N.M.)). Furthermore, "[a] bankruptcy court should resolve issues in favor of reorganization." *In re Lahman Mfg. Co., Inc.*, 33 B.R. at 685.

35. A substantial likelihood exists that the Debtors will be able to reorganize successfully, assuming the Guaranty Action against Miguez is stayed. Under Miguez's leadership, the Debtors can continue operating and will be on a path to profitability.

36. Although the Debtors cannot now predict a positive outcome in reorganization with absolute certainty does not mean that Miguez cannot show success on the merits. *See Nelson v. Gen. Elec. Capital Corp. (In re Steven P. Nelson, D.C., P.A.)*, 140 B.R. 814, 816 (Bankr. M.D. Fla. 1992) ("This Chapter 11 case is still in an embryonic stage and it is clearly unreasonable to require the Debtor at this early stage of the case to make detailed projections of the terms or anticipated feasibility of its plan of reorganization."). The Debtor is in negotiations with SeaTran and Miguez to provide a plan term sheet to serve as a plan sponsor and backstop a plan, which will pay all creditors in full. In addition, Miguez has access to federal program funds that can only be used to make payments incident to a plan.

37. In fact, in *SAS Overseas Consultants*, the court did not find it necessary to explore this factor further because it noted at the start of its analysis that reorganization was more likely to be successful if actions were stayed against the debtor's president and majority stockholder, so that he could concentrate on reorganization. *See* 2000 WL 140611, at *4. Successful reorganization for the Debtors appears likely but it will be much less likely if Miguez is distracted in defending a $22 million claim as a result of the adjudication of the Guaranty Action at this time instead of operating the vessels. Therefore, the first prerequisite justifying preliminary injunctive relief is met.

## Miguez can Demonstrate Irreparable Harm

38. The same circumstances that indicate the reorganization will be adversely impacted will often also prove irreparable harm. *See id*. Courts have consistently found irreparable harm where a key officer in the debtor organization would be distracted by defending a claim brought forth by a creditor. *See id.; see also Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *In re Steven P. Nelson*, *D.C., P.A.*, 140 B.R. at 816; *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 426 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) ("The massive drain on [key officers'] time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan or reorganization.").

39. The Debtors simply cannot afford to have their primary officer devoting "15-20 hours per week defending against these lawsuits." *In re Steven P. Nelson*, *D.C., P.A.*, 140 B.R. at 816. The Debtors depend on Miguez for oversight of the businesses. If Miguez is unable to devote anything less than 100% of his time to the reorganization process during this critical juncture, irreparable harm will occur as successful reorganization may not be possible.

40. Without the injunction in place, the Debtors will be denied Miguez's invaluable leadership and daily management. Any of Miguez's energies and resources that will be expended in defending the Guaranty Action will be expended to the detriment of the Debtors and their creditors. *See In re Venzke Steel Corp.*, 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992). All of that distraction works to possibly deprive this Court of control over issues central to its

administration of the Chapter 11 Cases. *Id.* ("Because the suit would ultimately divert the debtor's resources and attention from the bankruptcy process, and possibly deprive this court of control over issues central to its administration of the case, it is necessary to enjoin . . . plaintiffs from continuing the . . . lawsuit.").

The Threatened Injury to the Debtors and their Creditors Outweighs the
<u>Threatened Harm an Injunction may cause SBN</u>

41. The Debtors will be irreparably harmed if the Guaranty Action is not enjoined against Miguez, but no reason exists to suspect that SBN will suffer harm at all. As a creditor who has allegedly taken a security interest in each of the Debtors' vessels, SBN may possibly be paid in full on the Loan by the Debtors through successful reorganizations. Allowing SBN to pursue its claims against Miguez means that SBN could likely recover the substantial expense of all other creditors, who will recover little or nothing if reorganization fails. Furthermore, the relief sought by Debtors will merely delay the Guaranty Action against Miguez allowing the Debtors sufficient time to successfully reorganize and does not bar SBN from bringing its claims after reorganization or asserting claims in the Chapter 11 Cases. *See SAS Overseas Consultants*, No. CIV.A. 99-1663, 2000 WL 140611, at *5. Therefore, the disruption of the Guaranty Action will be extremely minimal. *See id.*

<u>Granting the Injunction will not Disserve the Public Interest</u>

42. Finally, as demonstrated above, harm to SBN is non-existent or negligible, while "the issuance of an injunction will serve the public interest as promoting the reorganization of a potentially viable company." *In re Venzke Steel Corp.*, 142 B.R. at 185. All creditors, including SBN, of course will benefit from a successful reorganization.

43. Given that the prerequisites for an injunction are met and that there are unusual circumstances, an injunction should issue enjoining the Guaranty Action against Miguez, until reorganization can be accomplished.

COUNT TWO: PERMANENT INJUNCTION

44. Plaintiffs incorporate all prior paragraphs into this section to the extent not inconsistent, as if fully set forth herein.

45. Debtors respectfully request that this Court issue a permanent injunction enjoining the Guaranty Action from proceeding against Miguez during the pendency of Debtors' Chapter 11 Cases. Such an injunction, conditioned on the pendency of the bankruptcy, does not conflict with § 524 of the Bankruptcy Code (which prohibits the discharge of the debts of nondebtors) because it does not deny SBN its claims against Miguez, but merely imposes a delay. *Cf. Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995). By tying the injunction to Chapter 11 Cases, the injunction will have a definite end date, and will therefore not constitute a discharge, but will give protection to the Debtors only for the period it is needed.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Debtors respectfully request that this Court (i) following notice and hearing, enter Preliminary and Permanent Injunctions, enjoining the SBN from proceeding against Miguez during the pendency of the Debtors' bankruptcy.

{00365625-4}

14

18-51277 - #71  File 11/28/18  Enter 11/28/18 13:44:52  Main Document  Pg 14 of 15

November 28, 2018

                                                                <u>/s/ Douglas S. Draper</u>
Douglas S. Draper, LA Bar No. 5073
Leslie A. Collins, LA Bar No. 14891
Greta M. Brouphy, LA Bar No. 26216
Heller, Draper, Patrick, Horn & Manthey, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Office: 504 299-3300/Fax: 504 299-3399
E-mail: ddraper@hellerdraper.com
E-mail: lcollins@hellerdraper.com
E-mail: gbrouphy@hellerdraper.com

***Proposed Counsel for the Debtors***