UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| | * | |
| MR. STEVEN, L.L.C. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE JOHN W. KOLWE |
| | * | |

* * * * * * * * * * * * * * * * * *

### SBN V FNBC LLC'S LIMITED OBJECTION TO MOTION TO DETERMINE PROPERTY OF THE ESTATE AND FOR TURNOVER OF PROPERTY

SBN V FNBC LLC ("SBN"), the secured creditor in this case, hereby submits this Limited Objection to the *Motion to Determine Property of the Estate and for Turnover of Property* [Doc. 29] (the "Motion"), filed by Mr. Steven, LLC ("Debtor"), as follows:

**I.    Factual Background**

**A.    SBN has been assigned Debtor's right to collect Debtor's accounts.**

1. Debtor owns the M/V Mr. Steven.

2. Steven J. Miguez ("Miguez") is the Debtor's principal and guarantor of SBN's indebtedness.

3. Miguez personally guaranteed those debts owed to SBN by Iberia Marine Service, LLC, and its associated entities, including Debtor, Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Row, LLC, Lady Brandi, LLC, and Lady Eve, LLC, (collectively, "IMS") which debts remain unpaid, past due and owing.

4. Miguez owns Iberia Marine Service, LLC, which is a member of SeaTran Marine, LLC. Miguez is thus, indirectly, an owner of SeaTran.

5. On September 28, 2015, Miguez, on behalf of Debtor, executed a Preferred Ship Mortgage in favor of First NBC Bank, predecessor-in-interest to SBN (the

"Mortgage"), which Mortgage provides, *inter alia*,

> Lender's Right to Collect Directly and Receive Proceeds and Payments Before or After Default. **Lender shall have the right**, at its sole option and election, at any time . . . **to collect directly and receive all proceeds and payments arising under or in any way accruing from [Debtor's] Rights, as such amounts become due and payable** . . . . Lender shall have the further right . . . to file suit, either in Lender's own name or in the name of [Debtor], to collect any and all proceeds and payments that may now and/or in the future be due and owing under and/or as a result of such Rights. *Where* it is necessary for Lender to attempt to collect any such proceeds or payments from the obligors or debtors therefor, Lender may compromise, settle, extend or renew for any period (whether or not longer than the original period) any indebtedness thereunder or evidenced thereby, or surrender, release or exchange all or *any* part of said indebtedness, without affecting the liability of [Debtor] under this Ship Mortgage or under the Indebtedness. To that end, [Debtor] hereby irrevocably constitutes and appoints Lender as [Debtor's] attorney-in-fact, coupled with an interest and with full power of substitution, to take any and all such actions and any and all other actions permitted hereby, either in the name of Grantor or Lender.

*See* **Exhibit A**, Preferred Ship Mortgage, Sept. 28, 2015, at p.6 (emphasis added).

6. The Mortgage further provides that Debtor shall, at lender's request, "notify individual obligors under [Debtor's] Rights, advising such obligors of the fact that their respective agreements and obligations have been assigned and pledged to Lender." *Id.*

7. The Mortgage further provides that Debtor provides lender with a continuing security interest in

> Any and all present and future leases or charters affecting the Vessel, including without limitation any and all rents, income, profits, bonuses, revenues, royalties, cash or security deposits, advance rentals and other payments, and further including [Debtor's] rights to enforce such leases or charters and to receive and enforce any rights that [Debtor] might have to collect such payments."

*See* Mortgage, at p.5.

8. The Mortgage further granted SBN a security interest in Debtor's "earnings, issues,

- 2 -

18-51277 - #94 File 12/11/18 Enter 12/11/18 19:42:03 Main Document Pg 2 of 11

revenues, accounts, assets, payments, income and profits derived or to be derived from the use or operation of the Vessel, or any part or parts thereof, including the rights of [Debtor] to receive such payments directly from the obligor or obligors thereof, and to further enforce any rights that [Debtor] collect such payments[.]" *Id.*

9. The Mortgage further provides:

> Upon request by [SBN], [Debtor] immediately will notify individual obligors under [Debtor's] Rights, advising such obligors of the fact that their respective agreements and obligations have been assigned and pledged to [SBN]. In the event that [Debtor] should fail to provide such notices for any reason upon [SBN's] request, [Debtor] agrees that [SBN] may forward appropriate notices to such obligors either in [SBN's] name or in [Debtor's] name.

*Id.* at p.6.

10. The Mortgage was properly recorded with the National Vessel Documentation Center on October 7, 2015, and a UCC-1 financing statement was filed on October 9, 2015, at No. 26-349272, which financing statement was assigned to SBN on November 21, 2017. *See* **Exhibit B**, UCC-1 and Assignment thereof, *in globo*.

B. **SBN made demand pre-petition upon Debtor's account debtors pursuant to Louisiana Revised Statutes § 10:9-406(a).**

11. In Debtor's Motion for Turnover, Debtor represents that "[p]rior to filing its voluntary petition, the Debtor was under a bareboat charter with Guice Offshore, LLC ('Guice Offshore') beginning October 15, 2017. *See* Mot. for Turnover [Doc. 29], at ¶ 7.

12. On April 2, 2018, counsel for SBN sent written notice to Guice Offshore advising that Debtor had assigned all of its accounts receivable to SBN, as successor in interest to First NBC Bank (the "Accounts"), and that the Accounts include all payments to be made for the use or hire of the M/V Mr. Steven. *See generally* **Exhibit C**, Ltr.

- 3 -

18-51277 - #94  File 12/11/18  Enter 12/11/18 19:42:03  Main Document  Pg 3 of 11

from L. Sher to Guice Offshore, Apr. 2, 2018. SBN accordingly directed Guice Offshore to remit payments owed by Debtor directly to SBN pursuant to, *inter alia*, Section 9-406 of the UCC and the terms of the Mortgage.

13. On April 9, 2018, Debtor responded to SBN, stating: "There is no privity of contract by and between Guice Offshore, LLC and MS [Debtor]. As a result, your efforts to effectuate direct payment from Guice Offshore, LLC is inapplicable." *See generally* **Exhibit D**, Ltr. from R. Cheatham to L. Sher, Apr. 9, 2018.

14. According to Guice Offshore's *Response to Motion to Determine Property of the Estate and for Turnover of Property* [Doc. 43], SeaTran (owned in whole or in part by Miguez), not Guice Offshore, is actually the operator of the Mr. Steven, and Guice Offshore charters the Mr. Steven from SeaTran. *See Response to Motion to Determine Property of the Estate and for Turnover of Property* [Doc. 43], at ¶ 1.

15. On April 11, 2018, SBN also served written notice upon Seatran, notifying Seatran that all of Debtor's Accounts had been assigned to SBN, and directing Seatran to remit payments owed to Debtor directly to SBN pursuant to, *inter alia*, Section 9-406 of the UCC and the terms of the Mortgage. *See* **Exhibit E**, Ltr. from L. Sher to Seatran, Apr. 11, 2018.

16. In Debtor's Motion for Turnover [Doc. 29], Debtor specifically represents that, "[p]rior to filing its voluntary petition, the Debtor was under a bareboat charter with Guice Offshore, LLC ("Guice Offshore") beginning October 15, 2017."[1] This representation directly contradicts Debtor's counsel's representation in its prior April 9, 2018 correspondence to SBN stating that "[t]here is no privity of contract by and

---

[1] *See Mot. to Determine Property of the Estate and Mot. for Turnover of Property* [Doc. 29], at ¶ 7.

between Guice Offshore, LLC and MS [Debtor]. As a result, your efforts to effectuate direct payment from Guice Offshore, LLC is inapplicable."

17. This case was filed on October 3, 2018. Both before filing bankruptcy and after filing bankruptcy, the Debtor has been unable to adequately explain the contractual relationships between the Debtor, SeaTran and Guice Offshore despite many requests.

18. In response to Debtor's April 9, 2018 correspondence to SBN, with a copy to Guice Offshore—which correspondence itself constituted a violation of Debtor's obligations to SBN under the Mortgage—counsel for Guice Offshore refused to remit its charter payments to SBN. *See* Motion for Turnover [Doc. 29], at ¶ 10. As a result of Debtor's wrongful conduct in issuing instructions to SeaTran and/or Guice Offshore, SBN was deprived of its right to receive the charter payments on the vessel.

19. On October 26, 2018, counsel for SBN wrote to Debtor, advising:

   a. That, by SBN's calculation, through October 26, 2018, no less than $986,605 was owed in connection with the charter of the M/V Mr. Steven (the "Improperly Withheld Funds");

   b. That Guice Offshore is continuing to use the vessel despite the fact that Debtor has not filed a motion in its bankruptcy case seeking authority for any such use;

   c. That Debtor has taken no action to recover the Improperly Withheld Funds, in violation of its duties to its creditor;

   d. That Debtor has a duty to demand, and take all necessary recourse to obtain, the Improperly Withheld Funds and to ensure that such funds are paid to

SBN;

  e. That SBN formally demands that Debtor make demand upon Guice Offshore for the remission of the Improperly Withheld Funds; and

  f. That Debtor's failure to provide a formal response to SBN's demand on or before October 31, 2018 will result in the filing of a motion seeking authority to take such actions on behalf of the Debtor pursuant to *In re Louisiana World Exposition*, 858 F.2d 233, 246 (5th Cir. 1988).

*See* **Exhibit F**, Ltr. from D. Waguespack to R. Cheatham, Oct. 26, 2018.

20. On October 31, 2018, Debtor filed the Motion for Turnover [Doc. 29].

21. On November 13, 2018, Guice Offshore filed a *Response to Motion to Determine Property of the Estate and for Turnover of Property* [Doc. 43], advising

  a. That Guice Offshore (not Debtor) has entered into a charter agreement with SeaTran for the use of the M/V Mr. Steven;

  b. That Guice Offshore is obligated to make payment for the account to SeaTran;

  c. That Guice Offshore has received competing demands regarding the charter payments; and

  d. That Guice Offshore has no objection to payment of funds owed on this charter into the registry of the Court provided that Guice Offshore is relieved of its obligation to make payment on the charter between Guice Offshore and Seatran.

22. While SBN has no objection if SeaTran and/or Guice Offshore wish to deposit funds into the registry of the Court, SBN specifically objects to SeaTran and/or Guice

Offshore's request that such deposit relieve them of liability for sums due on Debtor's accounts, as the granting of such relief violates Louisiana Revised Statutes § 10:9-406(a).

## II. Objection

23. As set forth above, Debtor assigned any and all present and future charters and leases affecting the vessel as well as all associated rents and payments to SBN. Debtor clearly cannot defeat SBN's mortgage and security interests and rights in the vessel, the agreements affecting the vessel, and the proceeds therefrom by interjecting other related entities between it and the end user of the vessel. Despite many requests to Debtor's counsel to explain the legal and factual basis for diverting the proceeds from the vessel from the mortgagor during this extended period of default, Debtor has failed to provide any basis for its position. To date, SBN does not understand why or how Debtor has taken these positions. SBN fully reserves its rights to supplement this response and/or address whatever legal issues may be raised by Debtor or others after appropriate notice.

24. SBN further submits that it fully complied with the UCC by properly placing both SeaTran and Guice Offshore on notice. Debtor assigned the right to recover on Debtor's accounts to SBN. When Debtor failed to make payment to SBN as required under the loan documents, SBN made demand upon both SeaTran and Guice Offshore for payment.

25. Louisiana Revised Statutes § 10:9-406(a) provides that "an account debtor . . . may discharge its obligation by paying the assignor [Debtor] until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee,

that the amount due or to become due has been assigned and that payment is to be made to the assignee [SBN]." *See also* LA. REV. STAT. § 10:9-607(a)(1) ("If so agreed, and in any event after default, a secured party may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party").

26. Both SeaTran and Guice Offshore are "account debtors." *See* LA. REV. STAT. § 10:9-102(3) (providing in pertinent part that "'Account debtor' means a person obligated on an account, chattel paper, or general intangible.").

27. Crucially, "[a]fter receipt of the notification, the account debtor may discharge its obligation by paying the assignee [SBN] *and may not discharge the obligation by paying the assignor* [Debtor]." *Id.* (emphasis added).

28. Debtor states in its Motion that it is under a charter agreement with Guice Offshore. *See* Mot. for Turnover [Doc. 29], at ¶ 7. If Guice Offshore is indebted to Debtor, then, under the plain language of Louisiana Revised Statutes § 10:9-406(a), Guice Offshore may not discharge its indebtedness by paying Debtor. Guice Offshore may *only* discharge its indebtedness by paying those past due sums to SBN.

29. Guice Offshore, on the other hand, states that it is under a charter agreement with SeaTran, and that SeaTran operates the M/V Mr. Steven for Debtor. *See* Guice Offshore's Response [Doc. 43], at ¶ 1. If this is true, then SeaTran is an account debtor of Debtor, in which case SeaTran cannot discharge its indebtedness by paying Debtor. SeaTran may *only* discharge its indebtedness by paying SBN.

30. The non-bankrupt, Miguez-controlled SeaTran now contends that it is entitled to the Improperly Withheld Funds, based upon a Vessel Operating Agreement that SeaTran

- 8 -

18-51277 - #94  File 12/11/18  Enter 12/11/18 19:42:03  Main Document  Pg 8 of 11

and Debtor signed the day before Debtor filed for bankruptcy. However, the documents produced by Debtor—emails that SeaTran's own affiant sent to First NBC Bank, SBN's predecessor in interest—indicate that *SeaTran* is the account debtor of Debtor. *See* **Exhibit G**, Email from Charlie Tizzard, Executive Vice President and CFO for SeaTran, to Fred Beebe, First NBC Bank, June 23, 2015 (stating "All vessel charters are billed to the customers by SeaTran. **When the receivables are collected by SeaTran, they are funded 100% to the vessel owners**.") (emphasis added). Debtor is the vessel owner.

31. Moreover, Both SeaTran and Guice had actual notice of the Mortgage.

   a. On August 25, 2017, Charlie Tizzard of Seatran told Guice Offshore that the unexecuted charter agreement between SeaTran and Guice Offshore needed to be amended to reflect that the M/V Mr. Steven was encumbered by the Mortgage. *See* **Exhibit H**, Email from Charlie Tizzard, Executive Vice President and CFO for SeaTran, to Nathan Guice, Billy Guice, and Blake Miguez, Aug. 25, 2017 (wherein SeaTran advised Guice Offshore that "Box 28" of the charter agreement, detailing the mortgaged status of the vessel, needed to be amended to indicate that clause "12(b)" of the form charter agreement applies, indicating the encumbered status of the vessel);

   b. *See also* **Exhibit I**, *Bimco Std. Bareboat Charter between Seatran and Guice Offshore*, Oct. 15, 2017, at Box 28; *see also id.* at Clause 12(b) (stating that the M/V Mr. Steven was subject to a mortgage and that Guice Offshore would "undertake to comply" with the Mortgage, and that Guice Offshore had "acquainted itself with all relevant forms, conditions, and

provisions" of the Mortgage).

32. SBN further notes that, while Louisiana Revised Statutes § 9:3108 previously provided that "[t]he account debtor may, at his option commence concursus proceedings instead of making payment to the debtor or the assignee," that provision, along with the rest of the Louisiana Assignment of Accounts Receivable Act was repealed by Acts 2001, No. 128, § 18, effective July 1, 2001.

33. SBN has no objection to Guice Offshore's request to deposit the Improperly Withheld Funds into the registry of the Court, provided that SBN's rights under Louisiana Revised Statutes § 10:9-406(a) and the Mortgage are recognized, preserved, and enforced. Specifically, SBN objects to the deposit of the Improperly Withheld Funds into the registry of the Court unless the Court specifically recognizes that Guice Offshore and/or SeaTran's indebtedness to SBN is not discharged through the deposit of same. *See Greenfield Commercial Credit, LLC v. Catlettsburg Refining, LLC*, 03-3391, 2007 WL 97068, at *3 (E.D. La. Jan. 9, 2007) ("It is well established that an account debtor who fails to comply with a valid assignment and improperly pays the assignor may be liable to the assignee for the amount of the improper payment.").

34. In the alternative, SBN requests that the Improperly Withheld Funds be released to SBN in accordance with the terms of the Mortgage and Louisiana law.

Respectfully submitted,

CARVER, DARDEN, KORETZKY, TESSIER
FINN, BLOSSMAN & AREAUX, L.L.C.

  /s/ Peter J. Segrist
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102
Telephone:  (504) 585-3814
Facsimile:   (504) 585-3801

*Counsel for SBN V FNBC LLC*

4850-1848-2816, v. 1