UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE – OPELOUSAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| MR. STEVEN, LLC | § | CASE NO. 18-51277 |
| | § | |
| DEBTOR. | § | |
| | § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW Steve J. Miguez ("Miguez"), through undersigned counsel, joins the Opposition filed by the Debtor, and submits this Opposition (the "Opposition") to SBN V FNBC's ("SBN") *Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "Motion for Relief"). [ECF Doc. 60]. The Motion for Relief should be denied as it (i) fails to show sufficient "cause" for lifting the stay under 11 U.S.C. § 362(d)(1) and (ii) the M/V Mr. Steven, (the "Mr. Steven"), over which SBN seeks stay relief, is necessary for an effective reorganization for which there is reasonable likelihood of success. In support of the Opposition, Miguez states as follows:

### BACKGROUND

1. Mr. Miguez is the managing member of Mr. Steven, LLC (the "Debtor"), whose sole asset is the Mr. Steven.

2. On October 1, 2018, the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in this Court, commencing the above-captioned bankruptcy case bearing case number 18-51277. The Debtor lists SBN as having a disputed claim of $23,438,218.32, allegedly secured by a First Preferred Ship Mortgage. [ECF Doc. 32].

3. The Debtor's business operates primarily through various charter agreements for

1

the use of the Mr. Steven, which is operated via a Vessel Operating Agreement with Iberia Marine Service, LLC ("IMS"). IMS, in turn, contracts SeaTran to operate all of the vessels via a Vessel Operating Agreement. SeaTran is the counterparty with all of the Master Time Charters and Charter Contracts for use of the Mr. Steven, as well as the vessels owned by other affiliated companies that have also filed for chapter 11 bankruptcy relief in this Court.[1]

4. On February 6, 2018, prior to the filing date, SBN filed an action in the Twenty-Fourth Judicial District Court in the Parish of Jefferson against Mr. Miguez, asserting a collection action on a guaranty for debts allegedly owed by Iberia Marine and associated entities including the Debtor. *See SBN V FNBC LLC v. Steve J. Miguez*, No. 780-357 (24th J.D.C. filed Feb. 6, 2018) (the "State Court Action").

5. On November 26, 2018, SBN filed the Motion for Relief citing "cause" insofar as the "Debtor's petition was not filed in good faith and Debtor and its principals/related entities have not cooperated with SBN … and SBN's interest in the [Mr. Steven] is not adequately protected; and (2) Debtor does not have equity in the [Mr. Steven] and the [Mr. Steven] is not necessary to an effective reorganization." Motion for Relief, ¶ 15.

6. On November 28, 2018, the Debtors filed a *Complaint for Preliminary Injunction, Permanent Injunction, and Declaratory Order Pursuant to 11 U.S.C. §§ 105 and 362 and Federal Rule of Bankruptcy Procedure 7065* (the "TRO Complaint") seeking a temporary restraining order from this Court enjoining the State Court Action in order to preserve the Debtors' efforts to reorganize on the grounds that Mr. Miguez's full investment in the operations of the Debtors was essential to their ability to reorganize, and that requiring Mr. Miguez to

---

[1] The Debtor has filed a *Motion for Joint Administration* with each of the following affiliated Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi, L.L.C. (18-51517), Lady Glenda, L.L.C. (18-51518), Mr. Blake, L.L.C. (18-51519), Mr. Mason, L.L.C. (18-51521), Mr. Ridge, L.L.C. (18-51522), and Mr. Row, L.L.C. (18-51523) (collectively, the "Debtors").

defend the State Court Action would divert Mr. Miguez's attention and resources away from the Debtors' operations. [Adv. Pro. 18-5043, ECF Doc. 1].

7. The TRO Complaint detailed the ongoing efforts of the Debtors, SeaTran, and Mr. Miguez to propose and consummate a plan that will "pay all creditors in full, including SBN, from the operations of the vessels and other funds that are provided under various federal programs." TRO Complaint, ¶ 7. Specifically, the TRO Complaint stated that "[t]he Debtor is in negotiations with SeaTran and [Mr.] Miguez to provide a plan term sheet to serve as a plan sponsor and backstop a plan, which will pay all creditors in full. In addition, [Mr.] Miguez has access to federal program funds that can only be used to make payments incident to a plan." *Id.* ¶ 36. On the basis of these facts, the Debtors represented to this Court that "a substantial likelihood exists that the Debtors will be able to reorganize successfully . . . ." *Id.* ¶ 35.

8. This Court granted the TRO Motion and enjoined SBN from further prosecution of the State Court Action on a temporary basis. [Adv. Pro. 18-05043, ECF Doc. 10].

9. On December 13, 2018, the Debtor filed an opposition to the Motion for Relief.

10. For the reasons set forth below, Mr. Miguez joins in the Debtor's Opposition and opposes the Motion for Relief.

## LAW & ARGUMENT

11. The Motion for Relief should be denied as SBN has not satisfied its burden of showing cause to lift the automatic stay, and furthermore, the property over which SBN seeks relief is necessary to an effective organization of which there is a reasonable probability.

**A. The Motion for Relief Should Be Denied to the Extent That It Asserts the Bankruptcy Case Was Filed in Bad Faith.**

12. As commentators have noted "the concept of bad faith filing should be used sparingly to deny bankruptcy relief to statutorily eligible debtors only in extraordinary

circumstances." 3 COLLIER'S ON BANKRUPTCY ¶ 362.07[7][a].

13. The Fifth Circuit announced the governing test for a finding of bad faith in *In re Little Creek*, 779 F.2d 1068 (5th Cir. 1986). Although SBN has cited the factors noted therein, SBN did not include the Fifth Circuit's crucial statement regarding the state of affairs designed to be rooted out as "bad faith" by reference to such factors: "Resort to the protection of the bankruptcy laws is not proper under these circumstances **because there is no going concern to preserve**, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id.* at 1073 (emphasis added).

14. Furthermore, the Fifth Circuit cautioned against the talismanic reference to the *Little Creek* factors and instead advised that "determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id.* at 1072. Accordingly, bankruptcy courts in the Fifth Circuit have stated that "the oft-cited laundry list of factors is not always relevant or dispositive on the facts of a given case . . . ." *See In re Briggs-Cockerham, L.L.C.*, Case No. 10-34222, 2010 WL 4866874, at * 5 (Bankr. N.D. Tex., Nov. 23, 2010); *see also In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *3 (Bankr. N.D. Tex. Jan. 26, 2015) (stating that "more useful to the court are cases that have adopted a 'valid bankruptcy purpose' test to determine good faith").

15. SBN recited various individual *Little Creek* factors as indicative of the Debtor's bad faith: (1) the timing of the Debtor's bankruptcy filing on the eve of foreclosure; (2) the Mr. Steven being the Debtor's sole asset; (3) the fact that SBN is the main non-insider creditor of the Debtor, making this essentially a two-party dispute; (4) the Debtor's lack of a substantial workforce; (5) the lack of possibility of reorganization; and (5) allegedly furtive transfers of

property to the Debtor's related entities   But those factors are either unsupported by the facts of this case or are insufficient in and of themselves to warrant a finding of bad faith filing.  Indeed, the Debtors plan to propose a plan of reorganization which would pay creditors 100%, which itself undercuts SBN's ability to show "cause" or bad faith.  *See, e.g.*, *Town of Hempstead Emps. Fed. Credit Union v. Wicks*, 215 B.R. 316, 321 (E.D.N.Y. 1997) (finding that creditor failed to make an initial showing of cause to lift the automatic stay in part because the debtors proposed a plan of reorganization that provided for payment in full to all creditors).  Therefore, the Motion for Relief should be dismissed insofar as it asserts bad faith.

16. Firstly, bankruptcy courts have routinely found that the filing of a bankruptcy petition on the eve of foreclosure, even in single asset cases, is not by itself indicative of bad faith.  *See In re Omni Lion's Run, L.P.*, 578 B.R. 394, 394 (Bankr. W.D. Tex. 2017) (finding that "automatic stay could not be lifted based on chapter 11 debtors' alleged bad faith in filing for bankruptcy relief on eve of foreclosure of apartment complexes that were their sole assets"); *In re Gremlin*, 547 B.R. 196, 198 (Bankr. E.D. La. 2016) ("[T]his charge is hardly exceptional. Virtually every debtor files bankruptcy to prevent the immediate collection of debt . . . . Without more, [the creditor] has merely stated the obvious.").  Accordingly, the timing of the Debtor's filing does not assist SBN in carrying its burden here.

17. Secondly, even accepting *arguendo* that the Bankruptcy Case is essentially a two-party dispute between SBN and the Debtor—which it is not—this fact alone is also insufficient by itself to support a finding of bad faith.  *See In re Gremillion*, 547 B.R. 196, 200 (Bankr. E.D. La. 2016) (finding challenge of bankruptcy case as two-party dispute insufficient to support bad faith filing dismissal of case).

18. Thirdly, the presence of a substantial workforce or possibility of reorganization go

5

to the animating principle of the bad-faith inquiry—whether the debtor is pursuing a legitimate objective under the Bankruptcy Code—as expressly acknowledged by the Fifth Circuit in *In re Little Creek*. As discussed in Part B herein, the Debtor is diligently pursuing a plan of reorganization that will protect its going-concern value and is thus pursuing the primary purpose of bankruptcy protection. Accordingly, the presence of individual factors which may in some circumstances indicate a lack of proper purpose, including the lack of a substantial workforce, is trumped by the fact that the Debtor is in fact pursuing the legitimate aim of preserving going-concern value, as detailed below.

19. Finally, with respect to the allegedly furtive transfer alleged by SBN, *see* Motion for Relief, ¶ 32, the Debtor confirmed at the § 341 Meeting of Creditors that the transfer of $2.7 million to IMS is nothing of the sort. The nature of those transfers was explained to SBN on Tuesday, November 27, in the recent initial meeting of creditors pursuant to 11 U.S.C. § 341. The fact is that $2.7 million was paid by Mr. Steven, LLC to Iberia Marine Service and then Iberia Marine Services paid $2.7 million contemporaneously to Mr. Steven, LLC to reconcile the books and records (due to/from) of each entity as has been the course of dealing between the parties for years. And the United States Trustee, having reviewed copies of the checks themselves, appears to be satisfied with the Debtor's explanation of the contemporaneous exchange. And not only has the United States Trustee reviewed copies of the checks evidencing the contemporaneous exchange, but SBN has reviewed the checks at the § 341 hearing as well. Accordingly, that contemporaneous exchange is not indicative of bad faith.

20. Consistent with these principles, bankruptcy courts in the Fifth Circuit have declined to find evidence of bad-faith filing in single-asset cases filed on the eve of foreclosure where sources of income appearing to provide a reasonable prospect of reorganization were

6

available to the debtor. For example, in *In re Omni Lion's Run, L.P.*, the bankruptcy court made particular note of the Debtor's demonstration of progress in formulating a plan to pay lenders and the infusion of capital into the debtor's business: "The financial realities . . . do not indicate that the Debtors are attempting to take unfair advantage of the breathing room the automatic stay provides, but rather are pouring money into the properties and preparing plans." 578 B.R. 394, 398 (Bankr. W.D. Tex. 2017). As set forth more fully below, the Debtor has made a sufficient demonstration that it is currently pursuing a legitimate bankruptcy goal of reorganization, for which it has made a showing of reasonable likelihood, indicating that the Debtor did not file the bankruptcy petition in bad faith.

21. For those reasons, the Motion for Relief should be denied insofar as it relies on an argument of bad faith.

**B. This Court Should Not Grant Relief from Stay Pursuant to 11 U.S.C. § 362(d)(2) as the Mr. Steven Is Necessary for an Effective Reorganization.**

22. "Relief from stay under 11 U.S.C. § 362(d)(2) is a two-part test, consisting of evidence that the debtor does not have equity in the property **and** that the property is not necessary for the debtor to effectively reorganize its debts." *In re Panther Mountain Land Dev.*, LLC, 438 B.R. 169, 180 (Bankr. E.D. Ark. 2010) (citing 11 U.S.C. § 362(d)(2)) (emphasis added). Accordingly, the failure to establish either element of the conjunctive test is sufficient to defeat a motion for relief under 11 U.S.C. § 362.

23. To determine whether property is necessary for an effective reorganization, the court must analyze the two intermingled concepts of necessity and effective reorganization. "Property is necessary for an effective reorganization whenever it is necessary either in the operation of the business or in a plan, to further the interests of the estate through rehabilitation or liquidation." *Id.* (internal quotations and citations omitted). But the necessity of the property

is only important to the extent that it exists simultaneously with a reasonable possibility of reorganization. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375 (1988) (describing the appropriate standard as that of a "reasonable possibility of successful reorganization within a reasonable time").

24. "A determination as to what is 'necessary for an effective reorganization' inherently involves an intense factual analysis, requiring evidence as to the debtor's intent, the anticipated integration of the property at issue in the production of future income and the nature and extent of the property involved." *In re Scott*, 121 B.R. 605, 608 (Bankr. E.D. Okla. 1990).

25. It has been established that the Mr. Steven is the sole income-producing asset of the Debtor, and that the Debtor proposes to fund the reorganization plan in part from revenue produced from the operation of the Mr. Steven. Evidence will be introduced at an evidentiary hearing on this matter proving the Debtor's ability to reorganize and the Mr. Steven's crucial role in that reorganization. As will be shown, because the going-concern value of the Debtor depends entirely on the continued operation of the Mr. Steven, the vessel is essential to an effective reorganization.

26. As to the issue of probability of reorganization, bankruptcy courts in the Fifth Circuit have been reluctant to find a lack of reasonable possibility of a successful reorganization in the early stages of a bankruptcy case and have situated the inquiry as whether "it appears that the proposed arrangement cannot be effected as a matter of law . . . ." *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 111 (Bankr. W.D. Tex. 1987).

27. Additionally, a debtor's assertion in the first few months of a bankruptcy case that commitments to fund a plan of reorganization are forthcoming has been found sufficient to defeat a motion for relief from stay at this early stage. *See In re Knight Energy Corp.*, No. 09-

8

18-51277 - #97  File 12/13/18  Enter 12/13/18 16:27:48  Main Document  Pg 8 of 10

32163, 2009 WL 1851739, at *3 (Bankr. N.D. Tex., June 26, 2009) (declining to grant relief from stay due to lack of reasonable probability of reorganization two-and-a-half months into a debtor's case and instead giving the debtor "the benefit of the doubt that there could be an effective reorganization in prospect").

28. The Debtor has filed papers attesting to the earnest efforts of its principal, Mr. Miguez, to consummate a plan of reorganization that pays all creditors in full through capital contributions and additional financing from federal loan programs, which are contingent upon the Debtor's retention of the Mr. Steven for ongoing operations. Given the fact that the Bankruptcy Case is in its early stages, these representations are sufficient to support a showing that relief from stay under 11 U.S.C. § 362(d)(2) should be denied.

29. SBN attempts to refute this showing by claiming that "Debtor cannot obtain the consent of a non-insider impaired class [i.e., SBN] to vote on a plan." Motion for Relief, ¶ 40. Such a position assumes that SBN's interests will be impaired under the terms of the plan to be proposed and that SBN's acceptance of the plan would thus be required for confirmation. *See* 11 U.S.C. § 1124 & 1129(a)(8)(A). However, the Debtor has made a sufficient showing at this stage that there is a substantial probability of consummating a plan that will result in payment in full to SBN, making SBN an unimpaired creditor, and thus not entitled to vote on a plan of reorganization. Accordingly, SBN's consent to the plan described by the Debtor or lack thereof, is, at best, premature, and in no way rebuts the Debtor's showing of a reasonable likelihood of a successful reorganization.

## **CONCLUSION**

For the reasons set forth above, Mr. Miguez respectfully requests that this Court DENY the Motion for Relief in its entirety.

Respectfully submitted,

| | |
|---|---|
| **LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD, A LAW CORPORATION** | /s/ Stewart F. Peck<br>STEWART F. PECK (LA #10403)<br>BENJAMIN W. KADDEN (LA #29927)<br>MEREDITH S. GRABILL (LA #35484)<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Telephone: (504) 568-1990<br>Facsimile: (504) 310-9195<br>E-mail: speck@lawla.com; bkadden@lawla.com; mgrabill@lawla.com<br><br>*Counsel for Steve J. Miguez* |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was served upon the parties that receive electronic notice via the Court's ECF Filing System on this 13th day of December 2018.

/s/ Stewart F. Peck