UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE - OPELOUSAS DIVISION

IN RE:     *     CASE NO. 18-51277

MR. STEVEN, L.L.C.     *     CHAPTER 11

    Debtor     *

**OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY
PURSUANT TO 11 U.S.C. § 362(d)**

Now into Court, through undersigned counsel, comes Mr. Steven, L.L.C. ("Debtor" or "Mr. Steven"), who files this Opposition to the *Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* ("Motion") [Dkt. #60] filed by SBN V FNBC LLC ("SBN"). In opposition, Debtor asserts that the stay should not be lifted due to the following:

    1.     The Debtor and the other affiliated entities will file a Joint Plan of Reorganization that can be confirmed and, in fact, will pay the allowed secured claim of SBN in full through a combination of operating revenue, loans made by Steven Miguez and Capital Construction Funds. The fact that the Debtor can and will file a plan that has a reasonable prospect of confirmation means that the property subject to the SBN lien is necessary for an effective reorganization.

    2.     Cause does not exist to lift the automatic stay inasmuch as the Debtor did not file its Chapter 11 in bad faith. The Debtor is not seeking to delay or defeat creditors but rather is using the bankruptcy process to effect a speedy, efficient reorganization. The elements asserted by SBN as bad faith such as the transfer of $2,700,000.00 by Debtor to an affiliated entity, Iberia Marine Service LLC ("Iberia Marine"), is a non-issue. SBN, prior to filing its Motion, was aware that the transfer of the $2,700,000.00 occurred the same day as Iberia Marine transferred

1

{00366014-11}

18-51277 - #98  File 12/13/18  Enter 12/13/18 18:15:29  Main Document  Pg 1 of 10

$2,700,000.00 to the Debtor. In fact, the day prior to the transfer of the $2,700,000.00 to Iberia Marine by Debtor, the Debtor's account had a balance of approximately $54.00.

## BACKGROUND

3. On September 28, 2015, First NBC Bank (the "<u>FNBC</u>") made a loan of $23,500,000.00 to the Debtor, Mr. Blake LLC, Mr. Ridge LLC, Lady Glenda LLC, Mr. Mason LLC, Mr. Row LLC, Lady Brandi L.L.C. and Lady Eve, L.L.C (collectively, "<u>Filing Entities</u>") and Iberia Marine ("<u>Note</u>"). Each of the Filing Entities owns a vessel used in the oil and gas industry. Each entity is a co-maker on a single note, as opposed to a guarantor of another entity's debt and each entity, with the exception of Iberia Marine, purported to grant to the FNBC a preferred ship mortgage on the vessel it owns in the amount of the Note. Each of the Filing Entities listed above have filed for relief under Chapter 11 of the United States Bankruptcy Code. Each of the co-makers of the Note are affiliates of one another, as such term is defined under the Bankruptcy Code.

4. Prior to the execution of the Note and the granting of the preferred ship mortgages that secured the Note, Iberia Marine, SeaTran Marine, LLC ("<u>SeaTran</u>") and the Filing Entities entered into an oral agreement for the joint marketing and operation of the vessels owned by each entity. The structure of the agreement and the economics of the agreement were made available to the FNBC prior to its making the loan. In fact, in the course of the negotiation of the loan terms, the FNBC requested a guaranty from SeaTran and an assignment of its accounts and the requests were denied. The FNBC elected to make the loan based upon the structure that existed with only the Filing Entities and Iberia Marine as co-makers and the security provided by the assets of those entities.

5.      In connection with the making of the loan, the FNBC relied upon the assets of all the co-makers of the Note to provide collateral for the loan. The cash flow generated from vessels owned by the Filing Entities served as the source of payment for the Note. The FNBC recognized, by relying on the fleets' revenue, that at different points in time some vessels would be working and generating revenue while others would be stacked and not generating revenue.

6.      The FNBC also knew that SeaTran would charter the vessels owned by the Filing Entities.

7.      In April of 2017, the FNBC was taken over by the FDIC. Its loan portfolio was split into packages and sold. The package that contained the Note was sold to SBN at a substantial discount to the face amount of the loans contained in the package.

8.      After the failure of the FNBC, representatives of the Filing Entities met with FDIC agents and, in fact, the Filing Entities tried to make some payment on the Note. It is believed the FDIC had surveys done of the vessels owned by the Filing Entities.

9.      At some point after, upon obtaining the Note, SBN advised the makers of the Note that it wanted payment in full and would not restructure the Note. Offers made by the Filing Entities to restructure the Note were met with silence on the part of SBN.

10.     In October of 2017, the vessel owned by the Debtor was leased pursuant to a bareboat charter by SeaTran to Guice Offshore, LLC ("Guice"), who in turn leased the vessel to Space Ex. The lease between SeaTran and Guice expired in late October of 2018, however, pursuant to an email, the bareboat charter has been extended.

11.     SBN, in April of 2018, attempted to seize the revenues generated by the SeaTran/Guice bareboat charter notwithstanding the fact that SeaTran is not a maker of the Note

and SeaTran had not granted to SBN a security interest in its accounts to secure payment of the Note.

12. The actions of SBN in wrongfully attempting to seize the proceeds of the bareboat charter between Guice and SeaTran have caused the rentals due, pursuant to the bareboat charter, to be held by counsel for Guice pending a resolution.

13. In October of 2018, the oral agreement and course of dealing that existed between the Filing Entities, Iberia Marine and Sea Tran that predated the execution of the Note and was known to FNBC was reduced to writing.

14. The Debtor filed for relief pursuant to Chapter 11 on the day after SBN filed a Complaint in the United States District Court of California seeking a seizure of the vessel owned by the Debtor.

15. The Filing Entities (other than Mr. Steven) filed for relief under Chapter 11 in November to avail themselves of the Bankruptcy Code provisions that allow for a restructure of existing debt provided the restructure meets the requirements of 11 U.S.C. § 1129 (b)(2)(a).

**FILING ENTITIES WILL SHORTLY FILE A JOINT PLAN OF REORGANIZATION THAT PAYS ALL CREDITORS IN FULL**

16. It is the intention of the Filing Entities to shortly file a Joint Plan of Reorganization that pays in full over time the claim of SBN represented by the Note.

17. The Joint Plan will be funded by the operations of the vessels owned by the Filing Entities, capital contributions or loans made by Steven Miguez and Capital Construction Funds that are held in the name of Iberia Crewboat & Marine Services, L.L.C. and Steven Miguez, individually. The Miguezs and Capital Construction Funds will be used to backstop the payments proposed under the Joint Plan.

18. The Capital Construction Fund Program is a program that helps owners and operators of U.S. flag vessels. It was created by the Merchant Marine Act of 1936, as amended (46 U.S.C. § 1177) and is administered by the U. S. Department of Transportation Maritime Administration ("Marad"). It is a program that allows owners and operators to segregate funds tax-free under Section 7518. It is similar to a corporate 401(k). The funds can be used to make principal payments on loans secured by U.S. Flag Vessels. The Filing Entities have over $4,000,000.00 of Capital Construction Funds available to backstop any plan and assure SBN that it will be paid in full over the life of the plan.

19. SBN, in its Motion, has gone to great lengths to assert that the Debtor and, by extension, the Filing Entities have filed the Chapter 11 petitions in bad faith. The problem with the argument is that there cannot be bad faith where the proposed plan will pay the secured creditor in full and satisfy the requirements of 11 U.S.C. § 1129. See *In re Fay Associates,* 225 B.R. 1 (Bankr. D.C. 1998). The Debtor and the Filing Entities have an honest intention to reorganize their financial affairs in accordance with the policies underlying the Bankruptcy Code. See *In Re Setzer,* 47 B.R. 340 (Bankr. E.D. N.Y. 1985).

20. The Joint Plan that will be filed by the Filing Entities has the capital to ensure feasibility through the Capital Construction Funding and the financial assets of Steven Miguez. The facts in the cases where Chapter 11 filings have been dismissed for bad faith are distinguishable because those debtors did not possess the resources or the access to a rainy fund that this Debtor possesses. The Bankruptcy Code has no requirement that, in order to confirm a plan, a Debtor must have employees, have an operating business, as opposed to an income generating asset and a large unsecured creditor non-insider class. The 5th Circuit in *In Re Village*

5

*at Camp Bowie I, LP* 710 F3d 239, 246 (5th Cir 2013)**,** expressly rejected a materiality test for purposes of 11 USC Section 1129 (a)(10). The Court stated:

> "But this logic sets the cart before the horse, resting on the unsupported assumption that Congress intended Section 1129(a)(10) to implicitly mandate a materiality requirement."

The fact that the unsecured creditor class may be small in comparison to the SBN claim does not mean that a small unsecured creditor class cannot satisfy the requirements for plan confirmation contained in 11 U.S.C. § 1129(a)(10).

21. The Debtor and the Filing Entities will present pro-formas to show that, with the use of assets of Steven Miguez, the Capital Construction Funds and the operations of the vessels, the Filing Entities will have a "successful reorganization within a reasonable time" and that the Chapter 11 petitions of the Filing Entities were not filed to clog the Court's docket with visionary or impractical schemes for reorganization.

22. SBN asserts that cause exists for the lifting of the automatic stay and asserts that the Debtor's filing represents a bad faith filing. This Court, in determining whether good faith exists, must look on the "totality of the circumstances in light of the Bankruptcy Code's purpose to provide Debtor with a fresh start." See *In Re Sun Country Development Inc.,* 764 F. 2d 406, 408 (5th Cir. 1985). As the 6th Circuit stated *In Re Caklwell*, 851 F. 2d 852, 860 (6th Cir. 1988), the totality of the circumstances test means exactly what it says: It exacts an examination of all the facts in order to determine the bona fides of the Debtor. The Supreme Court has emphasized that to support a finding of bad faith, the debtors' conduct must be atypical and the case must be extraordinary. See *Marrama v Citizens Bank of Massachusetts,* 549 U.S. 365, 374 n11 (2007).

23. The Chapter 11 cases filed by Mr. Steven and the other Filing Entities were filed with the intended purpose of restructuring the debt of the Filing Entities such that they would

6

survive a temporary downturn in a market or an economy. The clear motivation of the Filing Entities as evidenced by the Joint Plan that will be filed and the financial resources that will be committed to making the Joint Plan work is a desire to rehabilitate temporarily distressed entities and protect against a lender that is unwilling to accept anything other than immediate payment in full.

24. In this case, the actions of the Filing Entities in seeking to pay the secured lender in full pursuant to restructured terms with the availability of the Capital Construction Funds and personal assets of Steven Miguez falls within the essence of the Bankruptcy Code goals. The Bankruptcy Code, and specifically Section 1129(b)(2)(a), were written to allow debtors to restructure existing debt when faced with an intransient lender.

25. SBN, in support of its bad faith argument, asserts that the Debtor paid $2,700,000.00 to an insider within a few weeks of the filing. SBN, when it filed its Motion, knew that the transaction at issue was a swapping of checks between entities to pay due to's and due from's. SBN has not told the Court that on the date of the Debtor's check to Iberia Marine a check in the same amount was written by Iberia Marine to the Debtor. In fact, the day before the check at issue, the Debtor's account had a balance of about $54.00. The so-called transfer was a means of documenting the payment of inter corporate debts mandated by the Debtor's accountant and is a practice that had predated the FNBC loan. The check was not an instance of $2,700,000.00 of Debtor funds being used to pay an insider, as opposed to SBN on its note.

26. SBN in support of its bad faith argument asserts that the Debtor has no employees and the Bankruptcy was filed on the eve of foreclosure. The Code does not prohibit a financially distressed entity that has no employees from filing a Chapter 11 and confirming a plan. Cases such as *In re Gremlin 547* BR 196,198 (Bankr E.D. 2016 and *In re Omni Lion's Run L.P* 578

B.R.394, (Bankr W.D. Tex 2017) have held that filing on the eve of foreclosure is not by itself indicative of bad faith. *In In re Gremillion* 547 B.R. 196,200 (Bank E.D. La 2016) the Court did not make a finding of bad faith in what was essentially a dispute over terms between a Debtor and a single creditor. The real test is whether a Debtor is moving forward in good faith to pursue a confirmable plan.

## ADEQUATE PROTECTION

27. The Debtor recognizes that it is using the vessel and that a legitimate argument can be made that the value of the vessel is depreciating due to its use. No issue exists that the vessel is not being maintained or that it is under insured. To address the perceived reduction in value due to use the Debtor proposes to make monthly adequate protection payments to SBN. The payments will be based upon the following formula: the difference between the value of the vessel today and the terminal value of the vessel divided by the useful life of the vessel and then divided by twelve. The Debtor believes the diminution in value amounts to about $25,000.00 per month.

## DEBTORS MAY HAVE EQUITY

28. SBN in its Motion asserts that this Court cannot look to the assets owned by the other Filing Entities to determine if equity exists in the assets that secure the Note. The cases cited by SBN do not address the factual pattern in this case but rather involve the assets of other entities where the Debtor is a guarantor. This case involves a single note with multiple vessels as collateral and thus the cases cited by SBN are distinguishable. *In In re Property Techs Ltd* 263 BR 750 (Bankr Ed Va 2001) and *In re Colonial Center* 156 BR 452 (Bankr Ed Pa 1993) the Courts looked to other collateral in determining whether the "no equity "element of 11 USC 362 (d)(2)(a) was satisfied.

## **CONCLUSION**

The Court should deny the SBN Motion due to the fact that cause for the lifting of the automatic stay does not exist and the property subject to the SBN loan is necessary for an effective reorganization of the Debtor.

December 13, 2018

        /s/ *Douglas S. Draper*
        Douglas S. Draper, LA Bar No. 5073
        Leslie A. Collins, LA Bar No. 14891
        Greta M. Brouphy, LA Bar No. 26216
        HELLER, DRAPER, PATRICK, HORN
          & MANTHEY, L.L.C.
        650 Poydras Street, Suite 2500
        New Orleans, LA 70130-6103
        Office: 504 299-3300/Fax: 504 299-3399
        E-mail: ddraper@hellerdraper.com
        E-mail: lcollins@hellerdraper.com
        E-mail: gbrouphy@hellerdraper.com

        *Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I, Douglas S. Draper, proposed counsel for Debtor, hereby certify that I caused the *Opposition Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* to be served on December 13, 2018, via ECF Notification to the following:

- Greta M. Brouphy    gbrouphy@hellerdraper.com
- Douglas S. Draper    ddraper@hellerdraper.com, kfritscher@hellerdraper.com;lcollins@hellerdraper.com
- Benjamin W. Kadden    bkadden@lawla.com, mnguyen@lawla.com
- William Kaufman    whkaufman@ohllc.com, egnormand@ohllc.com
- Gail Bowen McCulloch    gail.mcculloch@usdoj.gov
- Amanda W. Messa    amanda.messa@phelps.com
- Stewart F. Peck    speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com
- Peter James Segrist    segrist@carverdarden.com, clary@carverdarden.com
- Office of U. S. Trustee    USTPRegion05.SH.ECF@usdoj.gov
- David F. Waguespack    waguespack@carverdarden.com, plaisance@carverdarden.com
- Randall Scott Wells    swells@rushing-guice.com

December 13, 2018

/s/ *Douglas S. Draper*
Douglas S. Draper, LA Bar No. 5073
Leslie A. Collins, LA Bar No. 14891
Greta M. Brouphy, LA Bar No. 26216
HELLER, DRAPER, PATRICK, HORN
  & MANTHEY, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Office: 504 299-3300/Fax: 504 299-3399
E-mail: ddraper@hellerdraper.com
E-mail: lcollins@hellerdraper.com
E-mail: gbrouphy@hellerdraper.com

*Proposed Counsel for the Debtor*