UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| IN RE: | * | CASE NO. 18-51277 |
| --- | --- | --- |
| | * | |
| MR. STEVEN, L.L.C. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE JOHN W. KOLWE |
| | * | |

* * * * * * * * * * * * * * * * * * *

## REPLY AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

SBN V FNBC LLC ("SBN"), the secured creditor in this case, respectfully submits this memorandum to (i) supplement its Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d) based upon information recently obtained from Mr. Steven, LLC ("Debtor") in discovery, and (ii) to reply to the oppositions to the Motion filed by Debtor and Mr. Miguez.

**Cause to Lift Stay**

SBN cannot envision a stronger case for cause to lift the automatic stay. Not only does this case fit squarely within each of the *Little Creek* factors as set forth in the Motion, the day before filing bankruptcy, Debtor purported to grant total control of its sole asset and title to all charters and the proceeds therefrom to a non-debtor affiliate in clear violation of the SBN mortgage. Debtor's sole asset, the vessel the Mr. Steven ("Vessel"), is currently being used by Space X to try to catch hot pieces of rocket falling from the sky. Despite this dangerous mission, Debtor has failed to ensure that an effective charter agreement is in place for the Vessel. Debtor chose to leave its sole asset and SBN's collateral unprotected in a misguided attempt to defeat SBN's mortgage on the Vessel and operate outside of the restrictions of the Bankruptcy Code. This is the latest in a series of bad faith efforts to thwart SBN from enforcing its lawful rights and interests.

*SeaTran and the "Vessel Operating Agreement"*

Since filing the Motion, SBN was finally able to force Debtor (with this Court's assistance at the recent hearing) to respond to SBN's discovery seeking to ascertain the operable agreements impacting its collateral. SBN now understands why Debtor did not want to produce this basic information. ***On October 2, 2018, the day before it filed bankruptcy and while the Vessel was under seizure***, Debtor and SeaTran Marine, LLC ("SeaTran") and other related entities executed a document entitled Vessel Operating Agreement ("VOA") which purported to be effective on July 1, 2014.[1] SeaTran is an affiliate entity which is not an obligor on the SBN debt.[2] In the VOA, Debtor purported to grant its affiliate, SeaTran: (i) sole decision making authority and exclusive rights to control all aspects of the Vessel;[3] (ii) a waiver of any Debtor's rights, title, or interest in and to any charters, contractual relationships or funds derived from same;[4] (iii) ownership of all invoices for the charter of the Vessel;[5] (iv) the right to offset any amounts which may be due to Debtor;[6] (v) full indemnification without a reciprocal indemnity despite that SeaTran purports to be in total control of the Vessel;[7] (vi) the right of first refusal on a sale of the Vessel,[8] (vii) appointment as its exclusive

---

[1]  A copy of this VOA is attached hereto as Exhibit A.
[2]  SBN reserves all rights and claims against SeaTran and simply means by this statement that SeaTran did not sign the note or a guaranty.
[3]  VOA, Art. 4 ("SeaTran shall be solely responsible and have sole decision making authority for the solicitation, bidding, setting charter rates, selecting customers and negotiation of charters. Any and all charters or other contractual relationships entered into with respect to the use of the Vessel shall be in the name of SeaTran and shall be the sole property of SeaTran and the Owner shall not have any rights, title, or interest in any toe any such charters or other contractual relationships or funds or charter-hire derived from same..."). VOA, Art. 1 ("Owner hereby appoints SeaTran to manage, maintain books and records, operate, maintain, oversee and supervise the chartering, crewing, provisioning, maintenance and repair of the Vessel and SeaTran hereby accepts such appointment on the terms and conditions set forth herein…. Unless otherwise agreed in writing by SeaTran, Owner agrees that SeaTran shall have the exclusive right to operate and manage all vessels owned, managed or operated by Owner." However, while the Vessel was under charter the charter party took care of nearly aspect of the Vessel. Seatran's Mr. Tizzard testified that as of January 1, 2018 the Debtor was charged only a flat monthly fee but this is not reflected in the terms of the VOA.
[4]  VOA Art. 4(a)
[5]  VOA, Art.4(g)(i)
[6]  VOA, Art. 4(h)
[7]  VOA, Art. 11, Art. 6(e).
[8]  VOA, Art. 8.

broker for any sale;[9] (viii) brokerage fee of 1% or $50,000 upon any sale of the Vessel;[10] (ix) an early termination fee upon any sale of the Vessel if the VOA is not continued by the new owner;[11] (x) a fee of 5% of gross revenues from any active charter of the Vessel if the VOA is terminated;[12] (xi) a maritime lien for any amounts owed to SeaTran;[13] (xii) a waiver of the right to recover most forms of damages from SeaTran;[14] (xiii) the obligation to pay a disproportionate share of shared overhead fees and expenses;[15] (xiv) a term through at least July 1, 2019;[16] and (xv) many other rights and interests which are adverse to its own interests. Further, Debtor purports to be an intervenor in the VOA stating its agreement to be fully bound by the VOA without a single reciprocal obligation by SeaTran.

In its Opposition, Debtor states that "[i]n October of 2018, the oral agreement and course of dealing that existed between the Filing Entities, Iberia Marine and SeaTran that predated the execution of the Note and was known to FNBC was reduced to writing."[17] Debtor's inaccurate assertions and attempt to legitimize the VOA is telling and underscores its conflicted management and its bad faith. FNBC did not know about or agree to the VOA or any alleged prior oral predecessor agreement. If it had, Debtor would have a subordination and attornment agreement specifically addressing the issues raised by such an alleged agreement. Moreover, Debtor's allegation is barred by the *D'oenche Duhme* doctrine and the Louisiana Credit Agreement Statute, La. R.S. 6:1121, *et seq*.[18] Even if this

---

[9] VOA, Art. 8.
[10] VOA, Art. 8.
[11] VOA, Art. 9(c),(d).
[12] VOA, Art. 9(h).
[13] VOA, Art. 17
[14] VOA, Art. 21.
[15] VOA, Art. 3 (the Shared Overhead Fee is based upon the percentage that the Vessel's length bears to all of the vessels' lengths being operated by SeaTran. Since the Vessel is by far the longest vessel operated by SeaTran, the Debtor bears the largest percentage of the fees despite that
[16] VOA, Art. 2.
[17] Opposition, p. 4, para. 13.
[18] The *D'Oench, Duhme* doctrine "holds that when a federally insured bank fails, borrowers from the bank may not later defend against collection efforts of a federal receiver by arguing that they had an unrecorded agreement with the bank." *Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 (5th Cir. 1990) (citing *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 459-60 (1942)). The *D'Oench, Duhme* doctrine is applicable to both the FDIC and its assignees, such as SBN, and is codified at 12 U.S.C 1823(e). *See id.* (citing *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.

Court were to consider Debtor's evidence of FNBC knowledge relevant and admissible, the alleged email from Mr. Tizzard dated June 23, 2015 upon which Debtor's allegation is based, completely refutes that FNBC knew about the VOA or its alleged oral predecessor. Indeed, Mr. Tizzard's alleged email states that the boat owners would be using SeaTran to manage the vessel and "[w]hen the receivables are collected by SeaTran, they are funded 100% to the vessel owners."[19] Neither the alleged oral predecessor to the VOA, nor its disastrous terms are disclosed. Rather than attempt to nullify the clearly invalid and one-sided VOA executed on the eve of bankruptcy or simply reject it, Debtor embraces the VOA which so clearly undermines its position.

*Misguided Attempt to Defeat the Mortgage*

Debtor's inadmissible allegations that FNBC knew about the alleged oral predecessor to the VOA are also irrelevant. Debtor executed a Mortgage dated September 28, 2015[20] which set forth Debtor's obligations and SBN's rights and interests, which are not affected in any way by the alleged

---

1990)) (additional citation omitted) (stating, "we recently extended *D'Oench, Duhme* to 'assignees of the FDIC'"). "The purpose of this statute is to protect the federal agency from hidden agreements which would defeat its interest in what is otherwise a facially valid note, as such agreements would hinder it from accurately valuing a bank's assets." *Albuquerque Federal Savings & Loan Association v. Deville*, 91-2188 (La. App. 1 Cir. 5/14/93), 615 So.2d 1002, 1005-1006 (citing *Commerce Fed. Savings Bank v. Fed. Deposit Ins. Corp.*, 872 F.2d 1240 (6th Cir. 1989)).

Likewise, the Louisiana Credit Agreement Statute, enacted in 1989, provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." LA. REV. STAT. § 6:1122. The Statute operates as a "statute of frauds" for the credit industry, *King v. Parish Nat'l Bank,* 2004-0337 (La. 10/19/04); 885 So.2d 540, 546, and "[t]he Louisiana Supreme Court has been clear that the Louisiana Credit Agreement Statute precludes 'all actions' against a creditor absent an agreement in writing." *Bass v. Chase Home Finance, LLC*, No. 09-3339, 2010 WL 3922709, at *5 (E.D. La. Oct. 1, 2010) (citing *Jesco Construction Corp. v. Nationsbank Corp.*, 2002-0057 (La. 10/25/02), 830 So.2d 989, 992 (additional citations omitted)). Louisiana law does not recognize a cause of action by a debtor against a creditor based upon alleged representations in the negotiation for, or execution of, a credit agreement outside the terms and provisions of the signed, written credit agreement itself. *See St. Landry Homestead Fed. Sav. Bank v. Vidrine*, 2012-1406 (La. App. 3 Cir. 6/12/13); *Hancock Bank of La. v. 3429 H, LLC*, 15-355 (La. App. 5 Cir. 1/13/16), 184 So.3d 274; *First American Bank & Trust v. Jackson*, 2014-0739 (La. App. 1 Cir. 3/6/15), 2015 WL 997210. The Louisiana Credit Agreement Statute likewise precludes a debtor from asserting similar allegations regarding alleged verbal representations made by, or understandings with, bank officers as a *defense* to repayment on a promissory note or other credit agreement. *See generally* LA. REV. STAT. § 1122.1(A).

[19] Exhibit B, Email from C. Tizzard to F. Beebe, et al., June 23, 2015.
[20] A certified copy of the properly recorded Mortgage was attached to the Motion as Exhibit C [Doc. 60-4].

oral VOA. In the Mortgage, the Debtor conferred numerous rights, interests, and representations to SBN which the VOA directly violates, including without limitation, the following:

    (i)    a security interest and mortgage in Debtor's present and future rights, title and interest in and to the whole of the Vessel;[21]

    (ii)    a security interest in any and all proceeds derived or to be derived from the Vessel and all present and future leases or charters affecting the Vessel, including without limitation any and all rents, payments and other amounts and including the rights to enforce such leases and charters and to receive and enforce any rights to collect such payments;[22]

    (iii)    a security interest in any and all earnings, issues, revenues, accounts, assets, payments, income and profits derived or to be derived from the use or operation of the Vessel, including the rights to receive such payments directly;[23]

    (iv)    a security interest in any and all options to sell, lease or charge the Vessel or any interest in the Vessel;[24]

    (v)    a security interest in any and all other rights, contract rights general intangibles relating to the Vessel or any interest in the Vessel;[25]

    (vi)    a representation and warranty that it was the sole owner of all of the rights pledged and granted to lender in the Mortgage;[26]

    (vii)    a representation and warranty that it had not made any previous assignments or otherwise encumbered its rights;[27]

    (viii)    a representation and warranty that such rights giving rise to third party obligations will be free from offset;[28]

    (ix)    a representation and warranty that it would not assign or sell or grant its rights and preserve such rights so as to be free from offset, compensation;[29]

    (x)    a representation and warranty that it would not sell, assign, transfer, convey, option, mortgage, lease or charter the Vessel, permit any liens or

---

[21] Mortgage, p. 1
[22] Mortgage, p. 5 (Additional Security in Rights)
[23] Mortgage, p. 5 (Additional Security in Rights)
[24] Mortgage, p. 6 (Additional Security in Rights)
[25] Mortgage, p. 6
[26] Mortgage, p. 6
[27] Mortgage, p. 6
[28] Mortgage, p. 6
[29] Mortgage, p. 6

    encumbrances to be placed on the Vessel, or change the hailing port of the Vessel without lender consent;[30]

 (xi) a representation and warranty that lender would have the right at its sole option at any time to directly receive all proceeds and payments arising or any way accruing from Debtor's rights.[31]

 (xii) a representation and warranty that no alterations would be made to the Vessel that may reduce or impair value.[32]

 (xiii) a representation and warranty that the Mortgage would be provided to anyone having business with the Vessel and that notice of the mortgage would be prominently displayed under glass on the Vessel as set forth therein along with a specific statement that no lien may be placed on the Vessel.[33]

The VOA agreement, and the related attempt by the Debtor and SeaTran to take SBN's collateral proceeds, runs afoul of dozens of provisions of the Mortgage as set forth above. SeaTran certainly cannot claim that it was unaware of the Mortgage because SeaTran insisted that its charter agreement with Guice specifically recognize the Mortgage and the parties' obligations to comply with the Mortgage. Mr. Tizzard specifically requested that the applicable section of the charter agreement notifying the parties of the Mortgage be made applicable.[34] The recognition of the Mortgage in the Guice charter renders the SeaTran attempt to convert SBN's collateral proceeds truly absurd.

  The VOA clearly is an attempt to defeat SBN's mortgage and security interest in the Vessel. Quite clearly, the VOA can have no impact on SBN's rights under the Mortgage from a legal perspective. However, the VOA provides further cause for relief from the stay because the outrageous

---

[30] Mortgage, p. 6
[31] Mortgage, p. 6 and p. 2, 3 (Representations)(Vessel Ownership and Title)
[32] Mortgage, p. 2 (Representations)
[33] Mortgage, p. 2 (Representations)
[34] A copy of the Charter Agreement with Guice which expired on October 15, 2018 is attached hereto as Exhibit C. Box 28 on the second page of the charter and corresponding section 12(b) recognize the Mortgage and require the parties to comply therewith. This Charter Agreement was provided to SBN prior to the filing of the bankruptcy case without a protective order or other request for confidentiality. Nonetheless, in an abundance of caution, SBN has redacted the day rate in the Charter Agreement based upon the Court's guidance at the recent hearing on the Rule 2004 discovery. A copy of Mr. Tizzard's email addressing the request to insert recognition of the Mortgage is attached hereto as Exhibit D.

agreement reflects: (i) the utter bad faith of Debtor and its principal, and (ii) a complete disregard of Debtor's obligations under the SBN Mortgage.

***Specious Tactics to Delay and Thwart SBN's Rights and the Destruction of Trust in Debtor***

The VOA is just one in a series of events aimed at thwarting SBN's enforcement of its rights and remedies that has led SBN to conclude that it cannot trust this Debtor or its principals. Debtor failed to make any payments since July of 2017 and blocked SBN's attempts to enforce direct payment from the charter party. Debtor rebuffed SBN's offers of forbearance based upon a release of those funds.

In SBN's suit against Miguez where he employed a large law firm to defend him, Miguez then enrolled his son Blake Miguez as additional counsel, who then obtained three separate extensions to answer for Miguez based upon his legislative obligations.[35] Miguez managed to postpone answering the suit for more than six month after it was filed. Blake Miguez admitted in his deposition that "I'm not a practicing attorney…"[36] Then shortly before Miguez's response was due to SBN's motion for summary judgment, Miguez removed the case to the Eastern District of Louisiana thereby upsetting the December 5, 2018 hearing. When SBN resubmitted the motion for summary judgment in the Eastern District and the Court denied Miguez's motion to again delay the submission of the motion for summary judgment until after his motion to transfer was decided, Miguez obtained a temporary restraining order from this Court without advising SBN of the submission of the order or allowing SBN to review the form of order. Debtor obtained the TRO through inaccurate allegations regarding Miguez's involvement in the operation of Debtor.[37] Miguez then submitted the order to the

---

[35] The record of this case has now been referred to this Court. SBN incorporates this record by reference.
[36] Blake Miguez's deposition, p. 6:11-12 attached hereto as Exhibit E.
[37] See SBN's opposition to Debtor's motion for preliminary injunction.

Eastern District which cited the order and its findings (issued without a hearing) to transfer the case to the Western District, thereby again delaying the ruling on SBN's Motion for Summary Judgment.

As reflected from the record of this case, Debtor filed objections to SBN's discovery and Rule 2004 examination based upon purported confidentiality concerns and delayed replacement of its long conflicted counsel which delayed SBN from learning about the VOA and the fact that the Vessel is being operated without an effective charter in place. When Debtor and SeaTran finally produced documents in response to the Rule 2004 motion, there was no indication that the documents produced were confidential.

When Debtor appeared for the Rule 2004 and Rule 30(b)(6) deposition on December 11, 2018, Debtor did not bring Mr. Miguez or any other officer or employee of Debtor. Instead, Debtor presented Mr. Tizzard who is the executive vice president of SeaTran, an entity whose interests are adverse to SBN. With respect to Mr. Tizzard's discussions with Debtor 's counsel, Debtor instructed Mr. Tizzard not to answer certain questions based upon an alleged joint defense agreement with SeaTran, an alleged agreement for which it did not obtain court approval and which is contrary to its obligations as a debtor in possession.[38] When SBN insisted that Miguez be made available for deposition prior to the hearing on his motion for preliminary injunction, Miguez was only available on Monday, December 17, 2018, the day before the hearing.

In its Opposition, Debtor incredibly claims that SBN's attempt to collect the proceeds from its collateral was "wrongful" again underscoring its conflicted position. Debtor brushes off its transfer of $2.7 million to its affiliate on the day it filed bankruptcy as a "non-issue." The $2.7 million transfer to an affiliate *is* an issue. Debtor produced checks showing that the funds went into Debtor's bank account and out of Debtor's bank account the same day along with an explanation that this was an

---

[38] The Rule 30(b)(6) deposition of the Debtor is attached hereto as Exhibit F, pages 12-13 regarding assertion of joint defense agreement.

accounting reconciliation of intercompany balances. Debtor ignores that it owns the Vessel that was under a profitable charter to a third party that required little or no work or management from anyone to produce income. Yet somehow Debtor did not receive the benefit of this charter. Rather a related party apparently held back $2,700,000 it owed Debtor, and then with Debtor facing bankruptcy, the related party put the funds in Debtor's bank account only to have the Debtor immediately use those funds to pay an alleged intercompany obligation. Why did Debtor choose to pay an insider an alleged intercompany obligation rather than SBN to forestall foreclosure? Again Debtor's actions are not one of a party seeking to repay its lender but an attempt to protect its affiliate.

***Other Debtor Positions in Opposition Not Relevant or Misplaced***

In its Opposition, Debtor asserts a myriad of allegations about what FNBC knew or required to make the loan. None of this evidence is relevant and is inadmissible under D'oenche Duhme and La. R.S. 6:1122.[39] Debtor is bound by the Note, the Mortgage and the other loan documents it signed. Debtor also inaccurately characterizes its interactions with SBN. Again, these baseless allegations are irrelevant.

Debtor's purported offer of adequate protection is not adequate. Debtor states there is no issue as to whether the Vessel is being maintained and insured. Debtor is relying upon a postpetition email dated October 12, 2018 to Blake Miguez who is not an officer of Debtor from Guice that simply states "…we agree to extend the Mr. Steven bareboat contract on a month-to-month basis[.]"[40] This vague email was not produced until after Debtor's deposition and hardly comports to any of the basic rules of contract. The Debtor is in bankruptcy. Any charter of its sole asset must be approved by the Court under section 363 and must be approved by SBN under the Mortgage. No such motion has been filed and no such approval has been sought or obtained from SBN. Debtor claims its Vessel is worth

---

[39] *See* note 18, *supra*.
[40] *See* Exhibit G, Email from N. Guice to B. Miguez, Oct. 12, 2018.

$12,000,000 but apparently cannot be bothered to protect the Vessel by a proper contract with Court approval and lender consent (which is also lacking for the alterations to the Vessel). Debtor's purported formula for adequate protection offer lacks any underlying information. Does Debtor propose that it just allow its nondebtor affiliate to retain all of the proceeds from its Vessel and not pay its lender in this two party dispute? Debtor simply ignores its obligation to address cash collateral and fails to explain why it would not at least offer to pay SBN the monthly charter payments for the Vessel.

Grounds to lift the stay could not be clearer. Each of the *Little Creek* factors are present. Debtor's bad faith is further established by its execution of the VOA the day before bankruptcy in an effort to put the revenue from its Vessel out of the reach of SBN to whom it owes more than $23,000,000. Debtor is allowing its Vessel to operate without an effective charter placing itself and SBN at risk. The incredible delay tactics employed by Debtor and its principal Miguez have not ceased. Debtor's management is conflicted as shown by the legal positions taken in its Opposition in favor of SeaTran. SBN has lost all confidence in Debtor. SBN requests that the automatic stay be lifted as quickly as possible.

**Lack of Equity and Not Necessary for Effective Reorganization**

*Lack of Equity*

In its Opposition, Debtor does not dispute that it does not have equity in the Vessel as established by SBN in the Motion and as reflected in Debtor's schedules. Debtor includes a section entitled "Debtors May Have Equity" but does not allege much less establish this position. Further, Debtor's attempt to distinguish the cases cited by SBN is misplaced.

The Fifth Circuit has held that property owned by other parties may not be considered for purposes of determining equity under section 362(d)(2). *McManus v. Cadle Co. (In re McManus)*,

30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. Jul. 18, 1994) (unpublished). In fact, in *McManus*, the Fifth Circuit specifically found *Matter of Cardell*, 88 B.R. 627 (Bankr. D. N.J. 1988) unpersuasive, the only case located by SBN where a court considered the property of jointly administered debtors in assessing equity under section 362(d)(2). Like the Fifth Circuit, other bankruptcy courts have held that non-debtor property may not be considered even in jointly administered cases.

In *In re SW Boston Hotel Venture LLC*, 449 B.R. 156 (Bankr. D. Mass. 2011), the secured creditor moved for relief from the stay as to the property of one debtor in a case that was jointly administered with other debtors who also mortgaged property to secure the creditor's claim. In assessing whether the debtor had equity in the mortgaged assets for purposes of section 362(d)(2), the court phrased the issue as "whether the court is limited to consideration of the ***subject*** property upon which the creditor is seeking foreclosure, or whether the court should consider ***all*** property subject to creditor's liens." *Id*. at 177 (emphasis in original). "Based upon the language of the statute and the authorities [it reviewed], [the] Court agree[d] with the majority of courts that it is not appropriate for a court to consider all of the collateral available to the secured creditor, such as property pledged by guarantors, in making a determination as to whether 'the debtor does not have an equity in such property.'" *Id*. The court therefore only considered the value of the debtor against whom the motion was filed and not the collateral owned by the related debtors in finding that the debtor lacked equity in the property.

Similarly, in *NationsBank of Virginia, N.A. v. DCI Pub of Alexandria, Inc*., 160 B.R. 538, 539 (E.D. Vir. 1993), a case apparently not being jointly administered but "growing out of thirteen related corporate Chapter 11 bankruptcy cases[,]" the court reversed the bankruptcy court's denial of a relief from stay after "considering the creditor's collateral in property other than that belonging

to the debtor." The court held that "a creditor's equity cushion stemming from other collateral or liens on property [owned by non-debtor guarantors] is not relevant under § 362(d)(2). The sole focus of section 362(d)(2) is the debtor's equity in the property that is the subject of the stay." *Id*. at 541. Like *SW Boston Hotel Venture*, the court concluded this by relying on the plain language of § 362(d)(2): "'Such property' in subsection (d)(2) plainly refers to the debtor's property that secures the debt in issue." *Id*. at 540 (emphasis in original). The court therefore remanded the matter to the bankruptcy court to decide whether the debtor's property is essential to debtor's reorganization.

Debtor asserts that the cases cited by SBN are distinguishable because they involved "the assets of other entities where the Debtor is a guarantor." Debtor fails to explain this distinction (which is also inaccurate as to some of the cases cited by SBN); this distinction is completely irrelevant to the issue of whether the Court may look to nondebtor collateral in assessing equity. Further, Debtor cites *In re Property Techs, Ltd*., 263 B.R. 750 (Bankr. E.D. Vir. 2001) which simply does not address the issue before the Court-- its citation must have been in error. Debtor's second case also involved the debtor as a guarantor—which Debtor claimed for some reason was the basis for distinguishing SBN's cases. *See In re Colonial Center, Inc*., 156 B.R. 452, 461 (Bankr. 1993) ("In this dispute, the secured creditor seeking relief from the stay loaned money to a nondebtor, with the loan guaranteed by the two debtors."). Additionally, *Colonial Center* relied on *In re Cardell* in reaching its conclusion, *see id*. at 462 ("one could consider the value of nonestate property when computing the value of the collateral. *See In re Cardell*"). As explained above, the Fifth Circuit reviewed and rejected *In re Cardell's* analysis in *McManus v. Cadle Co. (In re McManus)*, 30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. July 18, 1994) (unpublished).

*Not Necessary for Effective Reorganization*

In this single asset, single non-insider creditor case, Debtor cannot sustain its burden that the Vessel is necessary for an effective reorganization because Debtor cannot establish that it can confirm a plan. The United States Supreme Court has interpreted the phrase "effective reorganization" in U.S.C. § 362(d)(2)(B) to require:

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). In this case, Debtor cannot satisfy the 11 U.S.C. § 1129(a)(10) requirement that at least one impaired class (not counting the votes of insiders) has accepted the plan. SBN is the only non-insider creditor listed in the Debtor's schedules.[41] SBN will not vote to confirm a plan proposed by Debtor. Debtor admits in its Opposition that SBN's claim will be impaired in its plan by stating that SBN's claim will be paid over time.[42]

If a chapter 11 plan is unlikely to be confirmed absent the moving creditor's affirmative vote, the property securing the claim is not necessary for an effective reorganization, and thus, the creditor is entitled to relief from automatic stay. *In re 500 Fifth Ave. Associates*, 148 B.R. 1010, 1021 (Bkrtcy. S.D.N.Y. 1993); *In re 266 Washington Associates*, 141 B.R. 275, 281 (Bkrtcy. E.D. N.Y. 1992); *In re State Street Assocs., L.P.*, 342 B.R. 32, 44-45 (Bkrtcy. N.D. N.Y. 2005).

Despite that Debtor did not list any other non-insider creditors other than SBN in its Schedules, and despite that Debtor testified at its section 341 meeting that it was not able to identify

---

41      *See* Schedules [Doc. 32].
42      Debtor Opposition, p. 4, para. 16.

any such creditors,[43] Debtor's counsel has advised that he intends to amend the schedules to list other unsecured claims. Even if such claims exists, based upon SBN's deficiency claim apparent from the face of the Debtor's schedules, Debtor cannot carry the unsecured class.[44] Debtor cannot manipulate classification to evade this reality. "The Debtor's classification of claims predicament is insoluble." *In re 266 Washington Associates*, 141 B.R. at 287; *see also In re Greystone III Joint Venture,* 948 F.2d 134, 137-38 (5th Cir.1991), *withdrawn in part, reinstated in part on reh'g* (5th Cir.1992), *cert. denied,* ___ U.S. ___, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992).

Pursuant to section 362(d), SBN requests that this Court lift the automatic stay both for cause and because the Debtor lacks equity in the Vessel and the Vessel is not necessary to an effective reorganization.

New Orleans, Louisiana, this 17th day of December, 2018.

Respectfully submitted,

CARVER, DARDEN, KORETZKY, TESSIER
FINN, BLOSSMAN & AREAUX, L.L.C.

/s/ Peter J. Segrist
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102
Telephone: (504) 585-3814
Facsimile: (504) 585-3801

***Counsel for SBN V FNBC LLC***

---

[43] *See* Exhibit H, § 341 Meeting Transcript, Nov. 27, 2018, at 18:4-7.
[44] A class of claims accepts a plan if more than one half in number and at least two-thirds in amount of claims voting in a class favor the plan. 11 U.S.C. § 1126(c).

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Reply and Supplemental Memorandum in Support of Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* has been served by ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on December 17th, 2018.

    /s/ David F. Waguespack
DAVID F. WAGUESPACK

**Exhibit 1**

Robin B. Cheatham on behalf of Debtor Mr. Steven, L.L.C.
cheathamrb@arlaw.com, vicki.owens@arlaw.com

Benjamin W. Kadden on behalf of Interested Party Seatran Marine, LLC
bkadden@lawla.com, mnguyen@lawla.com

William Kaufman on behalf of Interested Party Guice Offshore, LLC
whkaufman@ohllc.com, egnormand@ohllc.com

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Stewart F. Peck on behalf of Interested Party Seatran Marine, LLC
speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com

Peter James Segrist on behalf of Creditor SBN V FNBC LLC
segrist@carverdarden.com, clary@carverdarden.com

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

Randall Scott Wells on behalf of Interested Party Guice Offshore, LLC
swells@rushing-guice.com

4840-1099-5842, v. 1