UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| MR. STEVEN, LLC, et al.[1] | § | CASE NO. 18-51277 |
| | § | |
| DEBTOR. | § | JUDGE JOHN W. KOLWE |
| | § | |

*************************************************************************

**MOTION FOR ORDER AUTHORIZING APPROVAL AND AUTHORIZATION OF DEBTORS TO OBTAIN AND EXECUTE POSTPETITION FINANCING TERM SHEET PURSUANT TO SECTIONS 105 AND 364(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001, AND 9014 AND LOCAL RULE 4001-1(b)(1)**

**NOW INTO COURT**, through undersigned counsel, comes Mr. Steven, L.L.C., together with the Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC (collectively, the "Debtors"), which move this Court to enter an order pursuant to Bankruptcy Code §§ 105, 364(c), 363(c), Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-1(b)(1), authorizing the Debtors to obtain postpetition financing from SeaTran Marine, LLC and Steve Miguez (collectively, the "DIP Lender") per the terms identified in the DIP Loan Term Sheet attached hereto as **Exhibit A** (the "Term Sheet"). In support, the Debtors respectfully state as follows:

**SUMMARY OF ESSENTIAL TERMS**

The essential terms of the Term Sheet reflecting the Debtors' use of postpetition financing as proposed in this Motion are as follows: The Debtors and DIP Lender will execute a postpetition

---

[1] The Debtor is seeking joint administration with each of the following Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi L.L.C. (18-51517), Lady Glenda LLC (18-51518), Mr. Blake LLC (18-51519), Mr. Mason LLC (18-51521), Mr. Ridge LLC (18-51522) and Mr. Row LLC (18-51523).

{00366118-1}
1

financing agreement (the "DIP Loan Agreement") and associated promissory note (the "DIP Note," and collectively with the DIP Loan Agreement, the "DIP Loan Documents") allowing Debtors to incur postpetition indebtedness in the form of a non-revolving line of credit in an amount of $1 million (the "DIP Loan") per the terms outlined in the Term Sheet, which include:

- Interest on the principal amount of the DIP Loan shall accrue at four percent (4%) *per annum*; effective immediately upon the occurrence of an Event of Default as that term will be defined in the DIP Loan Documents, interest shall accrue at a default rate of twelve percent (12%) *per annum*;

- Subject to the ability to repay the DIP Loan under the terms of a Plan of Reorganization approved by the Lender and as described hereinbelow, the maturity date if no plan of reorganization is confirmed in accordance with the plan support agreement by and between the Debtors and the Plan Sponsors shall be the earliest of: (i) the effective date of a Plan of Reorganization approved in the Borrowers' Bankruptcy Case; (ii) the date of appointment of (a) an examiner with expanded powers, or (b) a Chapter 11 Trustee; (iii) conversion of the Bankruptcy Case to Chapter 7; or (iv) the occurrence of an Event of Default under the DIP Loan Documents, which Event of Default is not cured within any applicable period of grace or cure.

- In exchange for the use of the proceeds of the DIP Loan, and pursuant to Section 364(c)(1) of the Bankruptcy Code, the DIP obligations shall be entitled to superpriority administrative claim status in the Bankruptcy Case. The superpriority administrative claim to be afforded to the DIP Lender in connection with the DIP Loan shall be subject to an agreed-upon carveout for professional fees and all U.S. Trustee fees and expenses;

- The DIP Loan Agreement will include usual and customary affirmative and negative covenants, including, but not limited to, (a) prohibitions against the Debtors using cash or proceeds from the DIP Loan for any purpose other than as contemplated by the Term Sheet; (b) receipt of financial information and other due diligence information related to assets of the Debtors as may be reasonably required by the DIP Lender; and (c) a default if a Plan of Reorganization that has not been approved by the DIP Lender has been filed.

- To the extent that the Debtors confirm a Plan of Reorganization that is acceptable to the DIP Lender, the DIP Lender may, but shall not be required to, agree to repayment of the DIP Loan on the same term and using the same amortization and rate as is

contemplated to be used for payment of the allowed claim of SBN V FNBC LLC ("SBN"). No payment shall be due on repayment of the DIP loan during any period in which the Reorganized Debtors (as defined below) is required to make use of the Plan Reserve Account (as defined below) to make a payment to SBN; and

- Reimbursement of DIP Lender's reasonable and necessary legal fees incurred by Lender in connection with the DIP Loan including, but not limited to, preparation of the DIP loan documents, obtaining approval of the DIP Loan by the Bankruptcy Court, and maintenance of the DIP Loan.

The DIP Loan is required to ensure that the Debtors are able to: (i) to satisfy certain bankruptcy-related expenses, including, but not limited to, (a) fees of professionals of the Debtors approved for payment by the Bankruptcy Court, (b) any fees due and payable to the U.S. Trustee, (c) any adequate protection payments to be paid by the Debtors to SBN; and (ii) to provide working capital as necessary to operate the Debtors' respective businesses as debtors-in-possession subject to the consent of the DIP Lender, which consent shall be in the DIP Lender's sole and absolute discretion. The proceeds of the DIP Loan shall not be used to pay any pre-petition debts of the Debtors' estates or any postpetition obligations of any Debtor unless specifically contemplated and included the DIP Loan Documents or otherwise approved in writing by DIP Lender. No other financing or liquidity is immediately available to the Debtors from unaffiliated, non-insider lenders on an unsecured basis in an amount sufficient to meet the current operating needs of the Debtors.

## BACKGROUND

1. The Debtors each filed voluntary petitions for bankruptcy relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court in the following captioned cases and on the following date:

2. On November 30, 2018, the Debtors filed a *Motion for Order Under Fed. R. Bankr.*

*P. 1015(b) Directing Joint Administration of Chapter 11 Cases* (ECF Doc. 76) requesting that each of their respective bankruptcy cases be jointly administered under Case No. 18-51277, and such motion is set for hearing on December 18, 2018.

3. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. The United States Trustee has not appointed an Official Committee of Unsecured Creditors in this case.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider the matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are sections 105, 362, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 6004, and Local Bankruptcy Rule 4001-1(b).

## RELIEF REQUESTED

7. The Debtors have an immediate need to access and obtain funds to satisfy bankruptcy-related costs and expenses, and in order to continue the operation of their businesses. At the present time, it is critical that the Debtors obtain authority from this Court, in accordance with section 364 of the Bankruptcy Code, to use the proceeds from the DIP Loan in order to maintain their business operations and protect their ability to reorganize in accordance with Chapter 11 of the Bankruptcy Code.

8. The Debtors' management and professionals have worked diligently to locate potential sources of postpetition financing, and the Debtors have concluded that the best source of postpetition financing available to them is the contemplated DIP Loan from the DIP Lender.

9. For the reasons set forth herein, the Debtors seek authorization to execute DIP Loan Documents incorporating the terms set forth in the Term Sheet, which would allow them to obtain the funds available through the DIP Loan. Specifically, by this Motion, the Debtors seek the entry of an order:

    a. Authorizing the Debtors to obtain the DIP Loan pursuant to the terms outlined in the Term Sheet;

    b. Authorizing the Debtors to execute and deliver the necessary documents to obtain the DIP Loan, including, but not limited to, the contemplated DIP Loan Documents;

    c. Granting to the DIP Lender, pursuant to Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative claim for all obligations associated with and arising out of the DIP Loan; and

    d. Waiving applicable stay and providing for the immediate effectiveness of the Order on this Motion.

10. The DIP Loan (and all accrued and unpaid interest thereon) will become due and payable upon the earlier of (i) the confirmation of the Debtors' plan of reorganization; (ii) upon the appointment of a chapter 11 Trustee; (iii) conversion to chapter 7; or (iv) occurrence of an Event of Default not cured within the applicable cure period.

## BASIS FOR RELIEF

11. Bankruptcy Code § 364 authorizes a debtor to obtain, in certain circumstances, postpetition financing on a secured basis. Specifically, section 364 of the Bankruptcy Code states that that Court, after notice and hearing, may authorize a debtor that is unable to obtain credit

allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

- a. With priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code;

- b. Secured by a lien on property of the estate that is not otherwise subject to a lien; or

- c. Security by a junior lien on property of the estate that is subject to a lien.

12. Thus, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain adequate unsecured credit, and the proposed borrowing in in the best interests of the estate. *See, e.g., Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F. 2d 1303, 1311 (5th Cir. 1985) (noting that "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtors' estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that, with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties").

13. The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under § 503(b)(1) of [the Bankruptcy Code] as an administrative expense." *See Ames Dep't Stores*, 115 B.R. at 37–39. In addition, courts have articulated a three-part test to determine whether a debtor may obtain financing under section 364(c):

- a. The debtor is unable to obtain unsecured credit solely under § 364(b) (i.e., by granting a lender administrative expense priority);

b. The credit transaction is necessary to preserve the assets of the estate; and

c. The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*See In re Aqua Assocs.*, 123 B.R. 192, 195–96 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores*, 115 B.R. at 37–39.

14. To show that the financing required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c). *See Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F. 2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.*; *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001).

15. As described herein and in the Term Sheet, the Debtors have attempted to and were successful in obtaining financing on an unsecured basis, subject to the proposed granting of superpriority administrative claim status.

16. The DIP Loan will enable the Debtors to meet its financial obligations associated with their bankruptcy cases and maintain business operations while they focus on negotiating, filing, confirming, and consummating a plan of reorganization.

17. The Term Sheet has been negotiated in good faith and at arm's length between the Debtors and the DIP Lender. The Debtors believe in the exercise of their business judgment the terms of the Term Sheet and the DIP Loan are fair, reasonable, and appropriate, and that the proposed DIP Loan is in the best interests of the Debtors, their estates, and all creditors of the estates

insofar as it will aid the Debtors in obtaining sufficient funds to pay bankruptcy-related expenses and provide working capital. Any credit extended in connection with the DIP Loan shall be deemed to have been extended in good faith by DIP Lender as that term is used in Section 364(e) of the Bankruptcy Code.

18. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their respective estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

19. Finally, it is imperative that the Debtor be able to execute necessary DIP Loan Documents and obtain the DIP Loan proceeds as soon as possible, and the Debtor requests that the Order granting the authority requested herein not be subject to any stay pursuant to Rule 6004(h).

20. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors further request that the Court commence a final hearing on the Debtors' Motion at the earliest time convenient to the Court and on a date not less than fourteen (14) days after service of this Motion.

**WHEREFORE**, premises considered, the Debtors pray that this Court enter an order (a) authorizing the Debtors to obtain the DIP Loan pursuant to the terms outlined in the Term Sheet attached hereto as **Exhibit A**, (b) authorizing the Debtors to execute and deliver the necessary documents to obtain the DIP Loan, including, but not limited to, the contemplated DIP Loan

Documents; (c) granting to the DIP Lender, pursuant to Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative claim for all obligations associated with and arising out of the DIP Loan; (d) waiving applicable stay and providing for the immediate effectiveness of any Order on this Motion; and (e) granting such other and further relief as it deems just and proper.

December 17, 2018

>
> */s/ Douglas S. Draper*
> Douglas S. Draper, LA Bar No. 5073
> Leslie A. Collins, LA Bar No. 14891
> Greta M. Brouphy, LA Bar No. 26216
> Heller, Draper, Patrick, Horn & Manthey, L.L.C.
> 650 Poydras Street, Suite 2500
> New Orleans, LA 70130-6103
> Office: 504 299-3300/Fax: 504 299-3399
> E-mail: ddraper@hellerdraper.com
> E-mail: lcollins@hellerdraper.com
> E-mail: gbrouphy@hellerdraper.com
>
> ***Proposed Counsel for the Plaintiffs***