
EXHIBIT #1 12/18/18 seatran
18-51277 mr Steven, LLC

# VESSEL OPERATING AGREEMENT

This Vessel Operating Agreement ("Agreement") is made effective as of June 1, 2014 (the "Effective Date") by and between SeaTran Marine, LLC, a Louisiana limited liability company, appearing herein through Blake Miguez, its Chief Executive Officer (hereinafter referred to as "SeaTran"), and _____, a _____ (hereinafter referred to as "Owner"). (SeaTran and Owner hereinafter sometimes referred to generally as a "Party" or as "Parties.")

### WITNESSETH:

WHEREAS, Owner is the owner or operator of the vessel or vessels identified on Exhibit "A" hereto (whether, one or more, singularly and collectively referred to as the "Vessel");

WHEREAS, Owner desires to enter this Agreement with SeaTran whereby SeaTran will manage and operate the Vessel, pursuant to the terms and conditions hereof; and

WHEREAS, SeaTran is willing to undertake the management and operation of the Vessel pursuant to the terms and conditions hereof.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and conditions hereinafter set forth, the parties agree as follows:

ARTICLE 1. APPOINTMENT. Owner hereby appoints SeaTran to manage, maintain books and records, operate, maintain, oversee and supervise the chartering, crewing, provisioning, maintenance and repair of the Vessel and SeaTran hereby accepts such appointment on the terms and conditions set forth herein. SeaTran's relationship to Owner under the Agreement shall be that of an independent contractor, and nothing in the Agreement shall be construed to constitute a joint venture, partnership or other relationship other than one between an independent contractor (SeaTran) and its principal (Owner). It is agreed that SeaTran's employees and/or its subcontractors, who are assigned to perform work required under the Agreement, shall at all times be and remain employees/subcontractors of SeaTran. Unless otherwise agreed in writing by SeaTran, Owner agrees that SeaTran shall have the exclusive right to operate and manage all vessels owned, managed or operated by Owner.

ARTICLE 2. TERM. This Agreement shall commence effective as of 0001 hours on June 1, 2014 and shall continue in full force and effect for a period of three (3) years (the "Initial Term"), unless earlier terminated pursuant to some other provision of this Agreement or by mutual written agreement of the parties. The term of this Agreement shall automatically extend for successive one (1) year renewal periods beyond the Initial Term unless written notice of the intent to terminate this Agreement is received by Owner from SeaTran or by SeaTran from Owner at least 180 days prior to the end of the initial term of the Agreement or any subsequent term. The Initial Term and any renewal term herein, the "Term." All of the original terms and conditions of this Agreement shall continue in full force and effect upon any extension of this Agreement, except as are modified by mutual written agreement of the Owner and SeaTran.

ARTICLE 3. SEATRAN MANAGEMENT SERVICES AND SHARED OVERHEAD FEE. Owner shall pay to SeaTran a monthly fee (the "Shared Overhead Fee") equal to Owner's pro-

rata share of the marketing, sales, administrative and overhead expenses of SeaTran incurred in the operation and management of the Vessel (the "Shared Overhead Expenses"). Shared Overhead Expenses shall include all indirect costs of operating and managing all of the vessels being operated by SeaTran. Unless otherwise agreed by the Parties, Owner's pro-rata share of the Shared Overhead Expenses shall be calculated based on the total marketable length of Owner's Vessel divided by the total marketable vessel length of all vessels being operated by SeaTran. By way of example, if Owner's Vessel is marketed as a 180' supply vessel and the total marketable length of all vessels being operated by SeaTran is 1,800', Owner will pay 10% of the Shared Overhead Expenses. On a calendar year basis beginning on January 1, 2015, SeaTran shall prepare a budget for the Shared Overhead Expenses for such upcoming calendar year. This annual budget of Shared Overhead Expenses will be for information purposes only. Shared Overhead Expenses shall be billed monthly by SeaTran (based on an accrual basis) with Owner being invoiced for its Shared Overhead Fee by SeaTran no later than the twentieth (20) day of the following calendar month for its Shared Overhead Expenses incurred in the prior calendar month. Owner's Shared Overhead Fee shall be due and payable by Owner no later than the last business day of the month in which it is billed to Owner.

Within five (5) days of Owner's execution of this Agreement, Owner shall deposit with SeaTran an advance of its estimated pro-rata share of the Shared Overhead Expenses covering the initial two (2) months of SeaTran's operation of the Vessel (the "Initial Shared Overhead Advance"). If and when SeaTran has sufficient available cash to satisfy the Shared Overhead Expenses on a recurring basis based on the monthly reimbursements described above from Owner and the other vessel owners and/or other income generated by SeaTran from sub-rents, sales brokerage services or other sources, SeaTran shall return Owner's Initial Shared Overhead Advance. SeaTran shall have the sole and exclusive judgment as to if and when the Initial Shared Overhead Advance is returned to Owner.

This Shared Overhead Fee shall be in addition to the payment and/or reimbursement of all Owner Operating Expenses which shall include the direct costs of operating and managing the Vessel. Owner acknowledges that SeaTran, either directly or through its affiliated companies or designees, may perform other services (including without limitation maintenance and repair services), and may supply materials, equipment and supplies (including without limitation repair and replacement of parts, material, equipment and supplies) as are necessary for the operation of the Vessel. Such services, materials, equipment and supplies shall be deemed Owner Operating Expenses (as defined herein). All such services, materials, equipment and supplies shall be furnished or supplied to Owner at SeaTran's cost.

In consideration of Owner's payment of the Shared Overhead Fee, SeaTran shall provide the following services:

(a) SeaTran shall use its best efforts (herein "best efforts" is defined to mean all commercially reasonable efforts by SeaTran to place the Vessel for work with responsible third parties and which are comparable to the efforts used by SeaTran to place vessels owned by its affiliated companies under charter) to obtain charters for the Vessel and to keep the Vessel under charter throughout the term of this Agreement. SeaTran shall be solely responsible and have the sole decision making authority for the solicitation, bidding, setting charter rates, selecting customers, and negotiation of charters. Any and all charters or other contractual relationships entered into with respect to the use of the Vessel shall be in the name of SeaTran and shall be the sole property of SeaTran and the Owner shall not have any rights, title, or interest in and to any such charters or other contractual relationships or funds or charter-hire derived from same; provided, however, that in the event SeaTran does not have a master service agreement or time charter agreement in place with the

{N0861803-}  -2-

particular customer for an available job, SeaTran is hereby appointed as Owner's agent-in-fact and is authorized to enter into one or more work order(s) with the customer in Owner's name. It is the intent of the Parties that SeaTran shall eventually be the contracting party with all customers and the Parties shall work together to facilitate SeaTran's entering into a master service agreement or time charter agreement with such customers as expeditiously as possible.

(b) Revenues earned under customer charters entered into in the name of Owner will be deposited in a segregated account of SeaTran and administered in the same manner as customer charters entered into between SeaTran and the customer. Owner acknowledges and agrees that SeaTran performs vessel management services for others and may be in competition with the Vessel and that SeaTran is under no obligation to give any preferential treatment to the Vessel of Owner and that the Vessel may from time to time be idle while other vessels managed by SeaTran are chartered. SeaTran shall have the sole decision making authority for the movement of any Vessel owned by Owner, SeaTran, or other vessel owners on and off charters and replacing vessels on charters as needed in the overall marketing efforts of SeaTran with a reasonable explanation to Owner. Owner acknowledges and recognizes that SeaTran does not represent or warrant that the Vessel will be chartered for any specific period or at any specific day rate during the term of this Agreement and that the market for offshore crewboats is cyclical in nature and that, by entering into this Agreement, Owner acknowledges that SeaTran has made no warranty, representation or guarantee of any kind regarding future utilization or day rates for Owner's Vessel. SeaTran agrees to use all reasonable efforts (herein "all reasonable efforts" is defined to mean all commercially reasonable efforts by SeaTran as a prudent operator to manage and operate the Vessel in a manner which is comparable to the manner in which SeaTran manages and operates vessels owned by SeaTran's affiliated companies) to manage and operate the Vessel within the terms, conditions and limitations of this Agreement and to comply with the terms and conditions of any time charter to which the Vessel is subject during the term hereof.

(c) SeaTran shall maintain books and records sufficient to completely and properly account for all income and expenses applicable to the Vessel including, without limitation, all the charter hire, expenses, and Shared Overhead Fees.

(d) SeaTran shall provide on each business day to the Owner via email or fax a daily report of the Vessel charter status, charter rate, Vessel location and incident report to include any Vessel mechanical problems, physical damage to the Vessel in such 24 hour period and any reports of injuries (the "Daily Vessel Status Report").

(e) SeaTran shall also provide a monthly financial statement to Owner which shall reflect Vessel income and expenses for the calendar month, which shall be delivered to Owner no later than the last business day of the following month. Owner or its representative shall have the right upon reasonable advance notice to review and inspect SeaTran's records relating to the Vessel upon reasonable notice to SeaTran. Such review and inspection will be undertaken in a manner as to not unreasonably interfere with SeaTran's business.

(f) Except as set forth herein to the contrary, SeaTran shall issue invoices to charterers of the Vessel in the name of SeaTran for charter hire and other amounts payable for use of the Vessel. Owner and SeaTran acknowledge and agree that:

(i) All invoices issued by SeaTran to the charterers of the Vessel shall be owned by SeaTran, irrespective of whether the invoice for charter hire or related expenses is issued in the name of SeaTran, its designee, or Owner (singularly, a "SeaTran Invoice" and

{N0861803-} -3-

collectively, the "SeaTran Invoices").

(ii) SeaTran owns/charters/operates other vessels (herein "SeaTran's Vessels");

(iii) SeaTran performs vessel management services with respect to vessels which are owned/chartered/operated by other parties including, without limitation, affiliates of SeaTran (herein "Managed Vessels");

(iv) Invoices submitted by SeaTran to charterers for the use of the Vessel, SeaTran's Vessels, and Managed Vessels will be submitted in the name of SeaTran except in those instances when Owner is the contracting party with the customer in which case the invoice will be issued in Owner's name;

(v) Invoices submitted by SeaTran to charterers for the hire of the Vessel may also include charges for the use of SeaTran's Vessels and/or the Managed Vessels;

(vi) Payment of all such invoices shall be made directly to SeaTran or to any location directed by SeaTran; and

(vii) From time to time, SeaTran may receive lump sum payments from charterers in satisfaction of one or more invoices and such lump sum payments may, in addition to including payment in satisfaction of charges for the use of the Vessel, also include payment in satisfaction of charges for the use of SeaTran's Vessels and/or the Managed Vessels. If and when requested, SeaTran agrees to send Owner copies of all invoices submitted to charterers, which include charges for the use of the Vessel. SeaTran agrees that all invoices submitted by SeaTran to charterers shall clearly identify each vessel covered thereby and shall clearly identify the charges allocable to the use of each such vessel.

(g) SeaTran will be responsible for and agrees to use its best efforts to collect all SeaTran Invoices and other revenues earned from the operation of the Vessel from the third party customers. SeaTran shall also issue in the name of Owner, an invoice to be due by SeaTran for the total charter hire due from the third party customer (the "Owner Invoice"). SeaTran, subject to its right to offset any then outstanding Owner Shared Overhead Fee and Owner's Operating Expenses, will pay the Owner Invoice to Owner on the Friday (or next business day if Friday is a legal holiday) following SeaTran's receipt of payment of the corresponding SeaTran Invoice from the third party customer. SeaTran will have no liability whatsoever in the event any of the accounts receivable prove to be non-collectible and offers no warranties as to the collectability of such funds; its sole and only obligation being to exercise commercially reasonable efforts to collect any outstanding accounts receivable, short of incurring legal fees and/or instituting litigation. In the event that legal services and/or proceedings are required to collect outstanding accounts receivable relating to the Vessel, all attorneys' fees and associated costs will be for Owner's account and deemed Owner Operating Expenses.

(h) SeaTran will use commercially reasonable efforts to collect the SeaTran Invoices relating to the Vessel as soon as possible. If a SeaTran Invoice with respect to the Vessel has not been paid by the third party customer within 180 days of the invoice date, upon the written election of Owner, Owner shall have the right to take over the collection of this SeaTran Invoice. In such event, SeaTran will assign over to Owner, without recourse or warranty of any kind, all of SeaTran's right, title and interest in the SeaTran Invoice and Owner shall have the right to directly pursue the collection of such invoice and SeaTran shall have no further responsibility whatsoever with respect

{N0861803-}  -4-

to such invoice.

ARTICLE 4. **SEATRAN SERVICES; OWNER OPERATING EXPENSES.** SeaTran shall provide the following services for the account of and at the sole expense of Owner (the following, "Owner Operating Expense(s)"):

(a) SeaTran shall furnish master(s) and crew (collectively, the "Crew") reasonably necessary to operate and maintain the Vessel in accordance with applicable law. SeaTran shall arrange for the payment of the wages and all associated expenses of the Crew (including, without limitation, wages, bonuses, incentives, employer contribution or match to any 401(k), profit sharing or similar plan, safety gear, certifications, training, physicals, drug screens, supplemental insurance, payroll taxes, employee benefits, maintenance and cure payments, end of voyage payments, insurance deductibles and insurance premiums). The Crew shall be employees of SeaTran. SeaTran shall have the sole decision making authority on all crewing issues, including hiring, terminating, and moving of crew members between vessels operated by SeaTran; provided, however, that SeaTran agrees to advise Owner of all fleet wide planned salary increases for crew members before such salary increases become effective.

(b) SeaTran shall be responsible for the marketing of and obtaining charters for the Vessel. If these services are provided directly by SeaTran, the cost shall be included in the Shared Overhead Fee. If an outside broker is used, the cost or commission paid to such broker will be billed to the Vessel as an Owner Operating Expense. Owner shall have the right to arrange a charter of its own for the Vessel; provided, however, that any such charter shall be subject to the terms and conditions of this Agreement (including, without limitation, Owner's Shared Overhead Fee), chartered only to a financially responsible party, and treated just as if SeaTran had placed such charter for the Vessel.

(c) SeaTran, at its discretion, may determine that certain fleet wide employee incentives are required to maintain the required vessel staffing; provided, however, that SeaTran agrees to notify Owner of all fleet wide planned incentives for crew members before any such incentives become effective. Owner will be charged for the actual cost attributed to the Vessel based upon the number of days the Vessel was crewed during the incentive accrual period.

(d) SeaTran shall be responsible for transporting supplies and other necessaries to the Vessel as well as land transportation for the Crew of the Vessel. If these services are provided directly by SeaTran, the cost shall be calculated at a rate equal to the rate charged per mile to all other vessels owned or operated by SeaTran (currently $1.00 per mile) plus any expenses incurred if transported by a member of the operations staff. If additional staff are required or an outside vendor used the cost will be billed to the vessel as an operating expense.

(e) SeaTran shall maintain and preserve the Vessel in good condition, working order and repair, ordinary wear and tear excepted, as necessary to retain all American Bureau of Shipping (if applicable) and Coast Guard certificates, FCC licenses, and all other certificates necessary to permit the operation of the Vessel in the manner contemplated hereunder. Owner shall pay, as an Owner Operating Expense, all costs associated with such upkeep and maintaining such certificates. Owner or its representative shall have the option to inspect the Vessel upon reasonable notice to SeaTran. Any such inspection shall be conducted in a manner as to not unreasonably interfere with SeaTran's management and operation of the Vessel. SeaTran shall have the sole decision making authority in the selection of all vendors in the operation of the Vessel. SeaTran shall have the sole decision making authority to shut down the Vessel if it determines the Vessel to be in unsatisfactory condition

18-51277 - #112-1  File 12/18/18  Enter 12/26/18 10:19:17  Exhibit seatran 1  Pg 5 of 18

to market and operate.

(f) SeaTran shall moor and provide routine maintenance on the Vessel when not in service at the expense of the Owner.

(g) SeaTran shall procure and maintain in place during the term of this Agreement, the insurance coverage provided for in Article 6 hereof, subject to the terms of this Agreement.

(h) SeaTran shall have sole decision making authority for the repairs, vessel improvements, and capital expenditures on the Vessel; provided, however, that any capital expenditure that will upgrade or improve the Vessel and is estimated to cost more than $50,000, must receive the prior approval of Owner, which approval shall not be unreasonably withheld, conditioned or delayed. SeaTran shall notify Owner as soon as reasonably possible after becoming aware of a needed expenditure in excess of the $50,000 threshold.

(i) All Owner Operating Expenses incurred by SeaTran in connection with providing services to the Vessel or to Owner as described in this Article 4 or elsewhere in this Agreement shall be for the Owner's account and shall be reimbursed to SeaTran from funds held on account of Owner.

(j) At the outset of this Agreement, Owner will make an advance deposit of $75,000 for each Vessel that will be operated by SeaTran. SeaTran shall invoice Owner twice monthly for the Owner Operating Expenses for such prior 15 day period. Owner Operating Expenses shall be based on the accrual basis of accounting. SeaTran's bi-weekly invoices shall be due and payable by Owner within five (5) business days of the invoice date. Should Owner fail to pay the invoice timely, SeaTran may place Owner in default of this Agreement (the "Default Notice) and if the unpaid invoice for Owner Operating Expenses is not paid in full by Owner within ten (10) days of its receipt of the Default Notice, SeaTran, in addition to any other rights it may have under this Agreement, at law or in equity, may terminate this Agreement.

(k) All purchase orders or invoices for Owner Operating Expenses shall be issued in the name of SeaTran.

(l) As soon as commercially possible after the Effective Date, SeaTran's logo, emblem or other identifying features selected by SeaTran shall be painted or otherwise placed or installed on the Vessel at the expense of the Owner; provided, however, it is understood that until SeaTran has entered into a master service agreement or time charter agreement with any customer for which the Vessel may be working, the Vessel may maintain Owner's current emblem, logo or other identifying features on the Vessel. When the Vessel is next due for painting, Owner and SeaTran shall discuss the advisability of painting the Vessel in a uniform color scheme with SeaTran's other vessels under its management so as to have a more easily recognizable and identifiable fleet of vessels to enhance SeaTran's marketing power and SeaTran's position in the offshore vessel industry in the Gulf of Mexico. Absent any agreement between SeaTran and Owner, Owner shall have the final decision making authority in determining which color scheme will be used on the Vessel.

(m) The Vessel will be required to be equipped with a fully operational and up to date telephone and data transmission system in order to permit SeaTran's operational personnel to communicate with and to track the location of the Vessel. Owner will be responsible for the cost to

18-51277 - #112-1 File 12/18/18 Enter 12/26/18 10:19:17 Exhibit seatran 1 Pg 6 of 18

purchase, install and maintain such telephone and data transmission system and any the monthly usage fees incurred as an Owner Operating Expense.

ARTICLE 5. **RESPONSIBILITIES OF OWNER.** Notwithstanding anything above to the contrary, Owner shall, at all times, retain exclusive responsibility for the following matters:

(a) Retain title to Vessel and its certification and endorsements to operate in coastwise trade of the United States;

(b) Owner agrees to assist SeaTran with all paperwork and other action that may be required of Owner to keep the Vessel in compliance with all regulatory body requirements including the U.S. Coast Guard and, if applicable, the American Bureau of Shipping or other classification body.

(c) Pay its own taxes (income and ad valorem taxes on Vessel) and other expenses that Owner may independently incur with respect to the Vessel, including any attorney's fees, accountant's fees and related expenses.

(d) Pay when due all Owner Operating Expenses, whether billed directly to Owner and billed to SeaTran, as the agent of Owner.

(e) Defend, indemnify and hold SeaTran and its affiliates harmless from any loss, liability or expense, including, without limitation, all attorneys' fees and costs incurred by SeaTran in enforcing this indemnity and in defending against such claim arising out of or related to any claim brought by a contractor, vendor or supplier asserting non-payment of Owner's Expenses. The foregoing defense and indemnity obligations with respect to any such unpaid Owner's Expenses incurred in accordance with and during the term of this Agreement shall survive the termination or expiration of this Agreement. Should Owner fail or refuse to abide by its defense and indemnity obligations above, SeaTran may retain counsel of its choosing to defend any such claim and Owner shall pay such defense fees and any indemnity costs as and when incurred by SeaTran.

[margin: Deleted: ( ]
[margin: Deleted: ) as incurred ]

ARTICLE 6. **INSURANCE.**

(a) Subject to Article 6(e), SeaTran shall carry the following insurance coverages during the term of this Agreement:

(i) Hull and Machinery insurance against all marine risks (including, without limitation, riots, civil commotion, strike and civil strife) with Owner and SeaTran as the loss payee as their interest may appear in an amount of not less the value Owner elects to insure the Vessel for unless otherwise limited by the insurer, with no more than a $25,000 deductible per occurrence.

It is in the interests of SeaTran and Owner to minimize the number of hull and machinery claims made with the insurer. Accordingly, with respect to any hull and machinery claim where the estimated cost of repairs to the Vessel is less than the greater of two times the applicable deductible or $30,000, SeaTran shall have the option of not making a claim with the insurer. In such event, the entire cost of repairs shall be deemed an Owner Operating Expense.

(ii) Primary Protection and Indemnity and Marine Employer's Liability insurance

18-51277 - #112-1  File 12/18/18  Enter 12/26/18 10:19:17  Exhibit seatran 1 Pg 7 of 18

including Jones Act coverage for the master and crew, collision, pollution, tower's and contractual liability, and such other risks normally covered by protection and indemnity policies, with a limit of not less than $1,000,000 per occurrence, with no more than a $25,000 base deductible per occurrence. In addition to the base deductible, this insurance may include an annual aggregate deductible ("AAD"). The AAD shall be allocated to all vessels managed by SeaTran and included under the policy on a pro rata basis based on the number of crewmembers on the Vessel. Owner's allocable share of the AAD will be an Owner Operating Expense.

(iii) Cargo legal liability insurance with limits of no less than $1,000,000 per occurrence and a deductible of not more than $25,000.

(iv) Excess or bumbershoot liability to provide total coverage under the above-described policies of $25,000,000 per occurrence.

(v) Owner, SeaTran and its affiliated companies, shall be named as insureds under the foregoing policies with underwriters waiving all rights of subrogation in their favor.

(b) In addition to the foregoing insurance coverage, SeaTran shall carry, at SeaTran's expense, the following insurance coverage during the term of this Agreement:

(i) Worker's compensation insurance for SeaTran's office personnel in compliance with the laws of all states where SeaTran conducts operations (to include, where applicable, coverage under the Federal Longshore and Harbor Worker's Act) in an amount equal to the full statutory limits, with a deductible no more than $25,000 per occurrence.

(ii) Automobile liability insurance in an amount of not less than $1,000,000 per occurrence for bodily injury and property damage liability. Said insurance shall also name, cover and protect Owner to the extent of SeaTran's indemnity obligations under this Agreement.

(iv) Commercial general liability insurance covering third party bodily injury and property damage liability and contractual indemnity liability in an amount of not less than $1,000,000 combined single limit. Such policy shall include coverage for personal injury, cross liability, contractual liability, broad form property damage and other risks customarily covered by comprehensive general liability policies, with no more than a $25,000 deductible per occurrence. Notwithstanding anything herein to the contrary, the premium for this commercial general liability insurance shall be charged to the Vessel on a pro-rata basis based on the respective crewmember payrolls of SeaTran's owned/affiliated or other managed vessels and such portion shall be billed to Owner as an Owner Operating Expense on a monthly basis.

(v) Excess or bumbershoot liability to provide total coverage under the above-described policies of $25,000,000 per occurrence.

(c) All policies of insurance described in Article 6(a) above shall: (i) be in a form and with underwriters approved by Owner; (ii) be endorsed to waive subrogation against SeaTran, its affiliates, and any third parties designated by SeaTran; (iii) with respect to the coverage in Article 6(a)(i) above, name Owner, as loss payee; (iv) name Owner, SeaTran, their affiliates, and any

{N0861803 -} -8-

third parties designated by SeaTran as additional assureds; (v) provide that they may not be altered, modified or canceled (including non-renewal) without thirty (30) days prior written notice having been furnished to SeaTran and Owner; (vi) provide that all deductibles under the aforesaid policies of insurance described in Article 6(a) above shall be for sole account of Owner; and (vi) provide that all deductibles under the aforesaid policies of insurance described in Article 6(b) above shall be for sole account of SeaTran. Owner has the right to request higher deductibles than those set forth in this Article VI and SeaTran will use its best efforts to accommodate this request provided that Owner agrees, upon SeaTran's reasonable request, to furnish added security to ensure that any agreed higher deductibles will be met by Owner and provided further that such request does not adversely affect SeaTran's overall insurance program covering the Vessel and the other vessels being operated by SeaTran.

(d) Upon execution of this Agreement and as may be reasonably requested by Owner thereafter, SeaTran shall deliver to Owner certificates of insurance reflecting all insurance policies and all renewals thereof during the term of this Agreement.

(e) Owner shall be billed its pro rata portion of the insurance premiums for the above coverages on a monthly basis as an Owner Operating Expense.

ARTICLE 7. **FIRST OPPORTUNITY TO PURCHASE AND RIGHT OF FIRST REFUSAL, AND BROKERAGE SERVICES.**

(a) Owner shall provide the members of SeaTran the first option to purchase the Vessel in the event Owner decides to sell the Vessel or sell an interest in the Vessel during the term of this Agreement. Owner and SeaTran acknowledge that during the course of this Agreement, Owner may receive offers for the purchase of the Vessel. Owner hereby grants the members of SeaTran the right to match any offer to Purchase the Vessel that may be received by Owner from a third party that Owner is willing to accept (herein an "Acceptable Purchase Offer") under the same terms and conditions as the Acceptable Purchase Offer made to Owner. Owner shall promptly provide SeaTran with a copy of any Acceptable Purchase Offer in the form received which SeaTran will then forward to the members of SeaTran; provided, however, that a written summary may be given for any Acceptable Purchase Offer that has been made verbally. SeaTran shall have the right to require Owner to obtain in writing any verbal Acceptable Purchase Offer that may have been made. The members of SeaTran shall have fifteen (15) days from their receipt of the Acceptable Purchase Offer to indicate their willingness to purchase the Vessel on these same terms. Thereafter, the members of SeaTran participating in the purchase of the Vessel shall have thirty (30) days to purchase the Vessel on the same terms as those set forth in said Acceptable Purchase Offer. In the event the members of SeaTran purchase the Vessel from Owner, this Agreement shall be deemed terminated effective the date of such sale, except for Owner's indemnity obligations assumed herein which shall survive the termination of this Agreement. Should one or more SeaTran members be willing to purchase the Vessel on the same terms as in the Acceptable Purchase Offer, such accepting members shall purchase the Vessel collectively in either their own names in undivided interests or through a limited liability company or other acceptable entity formed for such purpose. Unless otherwise agreed, SeaTran's members willing to purchase the Vessel shall purchase an ownership interest in the Vessel determined by heads among those members participating in such purchase.

(b) Owner shall provide SeaTran the first option to bareboat charter the Vessel in the event Owner decides to bareboat charter the Vessel during the term of this Agreement. Owner and SeaTran acknowledge that during the course of this Agreement, Owner may receive offers for the bareboat charter of the Vessel. Owner hereby grants SeaTran, or any designee of SeaTran, a right to

{N0861803 -} -9-

match any offer to bareboat charter that may be received by Owner from a third party that Owner is willing to accept (herein an "Acceptable Charter Offer") under the same terms and conditions as the Acceptable Charter Offer made to Owner. Owner shall promptly provide SeaTran with a copy of any Acceptable Charter Offer in the form received; provided, however, that a written summary may be given for any Acceptable Charter Offer that have been made verbally. SeaTran shall have the right to require Owner to obtain in writing any Acceptable Charter Offer that may have been made. Upon SeaTran's receipt of a written Acceptable Charter Offer from Owner, SeaTran shall have fifteen (15) days to match any offer. Thereafter, SeaTran shall have thirty (30) days to bareboat charter the Vessel on the exact terms as those set forth in said Acceptable Charter Offer. In the event SeaTran bareboat charters the Vessel from Owner, this Agreement shall be deemed terminated effective the date of such bareboat charter, except for Owner's indemnity obligations assumed herein which shall survive the termination of this Agreement.

(c) In the event Owner elects to sell the Vessel during the term of this Agreement, Owner agrees to appoint SeaTran as its exclusive sales broker for such sale. In the event of a sale, SeaTran will receive a brokerage commission equal to 5% of the gross sales price; provided, however, that SeaTran agrees that it will share the 5% commission if another broker is involved in the sale and if requested by Owner to share such brokerage commission but in no event shall SeaTran's brokerage commission be less than 2.5% of the gross sales price of the Vessel. This 5% brokerage commission shall be paid to SeaTran at or prior to the closing. In the event of a sale of the Vessel by Owner to a buyer identified by SeaTran (including any affiliated party of such buyer) within twelve (12) months of the Owner's termination of this Agreement, the five (5%) percent commission shall be due and paid to SeaTran out of the sale proceeds.

ARTICLE 8. **TERMINATION OF AGREEMENT.** In the event of a material breach by a Party hereto of any of the terms or provisions of this Agreement and the failure to correct or remedy the breach within ten (10) days after receipt of written notice from the other Party, that Party shall have the right to terminate this Agreement. A material breach under this Agreement include, but are not limited to, Owner's failure to pay Owner's Expenses or any other amounts due by Owner in a timely manner, or the filing of bankruptcy. Owner agrees that in the event the Vessel is sold to a third party, this Agreement, at SeaTran's option, shall remain in full force and effect until the termination date provided for in this Agreement. In the event SeaTran elects not to continue this Agreement with the new owner, Owner shall pay the Termination Fee (as defined below) in accordance with the provisions below.

Owner acknowledges that SeaTran has expended and will expend substantial amounts, resources and manpower to perform its obligations under this Agreement (including the hiring of a crew and support personnel) that is impossible to calculate with exact precision and, therefore, Owner and SeaTran have mutually agreed to the liquidated damages formula set forth below to reasonably compensate SeaTran should this Agreement be terminated prematurely due to no fault of SeaTran. Accordingly, in the event Owner terminates this Agreement before the end of its term for any reason (other than as a result of SeaTran's material breach of this Agreement, which is not timely cured following written notice thereof from Owner), or if SeaTran terminates this Agreement due to Owner's material breach of this Agreement, which is not timely cured following written notice thereof from SeaTran, or SeaTran elects not to manage the Vessel for a new owner, Owner shall pay SeaTran, not as a penalty but as liquidated damages a termination fee (the "Termination Fee") equal to Owner's pro-rata share of its unpaid portion (if any) of all start-up expenses incurred by SeaTran in the start-up and formation of the business and the restructuring expenses (severance payments, retention bonuses, etc.) that are incurred by SeaTran as a result of Owner's termination of this Agreement. SeaTran will provide suitable documentation for its computation of the Termination

{N0861803-} -10-

Fee. The Termination Fee shall be due and payable on or before the effective date of the termination of this Agreement and, in all events, prior to the Vessel being returned to Owner. Notwithstanding anything herein to the contrary, Owner shall provide SeaTran no less than ninety (90) days prior written notice of its election to terminate this Agreement for its convenience. If for any reason such prior ninety (90) days written notice is not provided by Owner and the Vessel is removed from SeaTran prior to the expiration of such ninety (90) day notice period, SeaTran, in addition to the aforesaid Termination Fee, shall be entitled to liquidated damages and not as a penalty, a fee (the "Early Exit Fee") equal to 10% of the average daily gross revenues of the Vessel (based on the three (3) calendar months prior to such written notice of termination) multiplied by the number of days the Vessel was prematurely terminated. The Early Exit Fee shall be computed by multiplying the average daily gross revenues earned by the Vessel over such three (3) month period multiplied by the number of days this Agreement was prematurely terminated by Owner. By way of example, if Owner terminates this Agreement and removes the Vessel forty-five (45) days earlier than the ninety (90) days required hereunder and the average daily gross revenues of the Vessel in the prior three (3) month period was $5,000 per day, the Early Exit Fee will be $22,500 [45 days x $5,000.00/day x 10%]. The Early Exit Fee shall be due and payable on or before the effective date of the termination of this Agreement and, in all events, prior to the Vessel being returned to Owner.

In the event the Vessel is stored at SeaTran's facility after the termination of this Agreement, Owner shall pay a daily storage fee at SeaTran's then existing rate until the Vessel is removed from SeaTran's facility. Since SeaTran does not presently have a vessel storage facility, SeaTran, on Owner's behalf, will contract with either an affiliated company or a third party vendor to store the Vessel at Owner's risk, in which case the Owner shall be directly responsible to such party for the payment of storage fees.

If the Vessel is under charter to a third party on the date of termination of this Agreement would otherwise become effective hereunder, this Agreement shall continue in full force and effect until the expiration of such charter or the replacement of the Vessel by SeaTran with a suitable replacement vessel of SeaTran's choosing, whichever occurs first. If this Agreement is terminated for any reason other than a material breach by SeaTran (which is not timely cured following written notice thereof from Owner) and the Vessel continues to work for the same customer (or resumes work for such customer within ninety (90) days of cancellation), SeaTran shall be entitled to receive and Owner shall pay SeaTran a 5% commission of the gross revenues received by Owner so long as the Vessel remains in service of the same customer. It is understood and agreed that an interruption in service of less than thirty (30) consecutive days of the Vessel with this same customer shall be deemed a continuation of the work and Owner shall remain obligated to pay SeaTran the 5% commission due hereunder. Owner acknowledges that the Vessel name, emblem, and color scheme, in whole or in part, are the property of SeaTran and hereby agrees that prior to Vessel leaving the operation and management of SeaTran pursuant to this Agreement for any reason SeaTran shall have the right, at Owner's sole costs and expense, to remove SeaTran's emblem and change the Vessel name and color scheme to a name and color scheme that cannot reasonably be confused with that of the vessels operated by SeaTran.

In the event this Agreement is terminated by either Owner or SeaTran for any reason, Owner shall pay on or before the effective date of such termination, all amounts due SeaTran hereunder including any Shared Overhead Fees, Owner Operating Expenses and Termination Fee. SeaTran will exercise its best efforts to provide Owner a reconciliation of all such amounts owing in reasonable detail no less than five (5) calendar days before the effective date of termination. Any amounts owed by Owner up through and including the termination date which cannot be precisely quantified will be estimated by SeaTran in good faith and that estimated amount paid by Owner. The Parties will

{N0861803-} -11-

undertake a post-termination adjustment as soon thereafter as is practical and account to the other Party, as appropriate for any shortage or surplus. Without limiting the foregoing and without waiver of any other rights of Owner under this Agreement or at law, SeaTran shall have the further right to offset any such amounts due by Owner against any receivables or other amounts held or later received by SeaTran for the account of Owner.

Upon termination of this Agreement, Owner shall, within thirty (30) days of such termination, remove SeaTran's symbols, insignias and color scheme from the Vessel. On or before the effective date of termination of this Agreement, Owner shall return to SeaTran all software and hardware related to the safety, maintenance, operations and communications systems and programs that are SeaTran's proprietary property and agrees not to use or allow any other person to use any such software or hardware following termination of this Agreement.

If Owner fails to promptly make any payment required under this Article 8 and SeaTran commences a suit to collect such payment, Owner shall indemnify SeaTran for its fees and expenses (including attorneys fees and expenses) incurred in connection with such suit and shall pay interest on the amount of the payment at the rate prescribed in Article 15 as of the date the payment was payable pursuant to this Article 8.

ARTICLE 9. <u>NO HIRE OF SEATRAN'S VESSEL CREW.</u> Owner acknowledges that the Vessel's Crew and/or land based support personnel are employees of SeaTran or SeaTran's affiliated companies and in which SeaTran (or its affiliate) has made a substantial investment in education and training. In no event shall Owner solicit for hire or permit any successor owner, manager or operator of the Vessel to solicit for hire or hire any of the Vessel's Crew or any land based support personnel of SeaTran or SeaTran's affiliated companies during the Term or within twelve (12) months after either the sale of the Vessel or the termination or expiration of this Agreement. In the event Owner or any successor owner, manager or operator of the Vessel hires any of the Vessel Crew in violation of this Article 9, Owner shall pay SeaTran the sum of $25,000 for each crew member (other than a captain) and the sum of $100,000 for any managerial or supervisory personnel (including a Vessel captain) hired by Owner or any successor owner, manager or operator of the Vessel, as liquidated damages, and not as a penalty. Likewise, in the event SeaTran shall hire an employee of Owner without Owner's consent, SeaTran shall pay a like penalty to Owner. Notwithstanding anything herein to the contrary, Owner shall be entitled to hire upon termination or expiration of this Agreement without penalty any SeaTran employee who had previously been employed by Owner and such employee has been specifically excluded from this Article 9 pursuant to Exhibit "B" hereto.

ARTICLE 10. <u>INDEMNITY AND RISK OF LOSS.</u> Owner assumes all responsibility for and agrees to protect, defend, indemnify and hold SeaTran, its affiliates, employees, agents, underwriters, and those third parties contractually designated by SeaTran harmless from and against all demands, claims, damages, expenses, attorneys' fees and costs in enforcing this provision, suits or judgments, claims for indemnity or contribution for bodily injury or death or property damage or loss (including but not limited to loss of or damage to the Vessel) as incurred arising out of or related to the ownership, operation, management, repair, maintenance, or use of the Vessel, even if the such loss or damage is caused, in whole or in part, by the negligence of SeaTran, the unseaworthiness of the Vessel, strict liability or any other theory of fault imposed or sought to be imposed upon SeaTran. This indemnity and risk of loss provision shall not apply to loss or damage shown to have been caused by SeaTran's willful and intentional misconduct. This indemnity and risk of loss provision shall survive the termination of this Agreement, regardless of the reason or cause of such termination; provided, however, that this provision shall only apply to events or circumstances

arising under and during the term of this Agreement.

ARTICLE 11. **MISCELLANEOUS PROVISIONS.**

(a) In the event of an accident involving the Vessel or Vessel Crew, SeaTran shall promptly notify Owner of such accident as soon as reasonably possible.

(b) In the event the Vessel comes on or off charter, SeaTran shall notify Owner as soon as reasonably possible.

(c) Owner's Vessel shall receive preferential treatment as to any potential charters over a vessel subchartered or brokered by SeaTran. This preferential treatment does not apply to other SeaTran managed vessel or SeaTran or SeaTran affiliate owned vessels, which vessels, along with Owner's Vessel, shall receive equal treatment with respect to any charters, subject to customer requirements and availability. Without limiting the foregoing, SeaTran will normally charter the Vessel in accordance with a "first in and first out" policy providing the Vessel meets the requirements of the customer and such Vessel is crewed and ready to go to work. SeaTran shall maintain a list of all vessels under its management listed by type of service (crewboat, supply boat, etc.), marketed length and showing the off charter dates (the "Priority List") which will be available to Owner on request. The Vessel and other vessels under management by SeaTran shall remain on the Priority List so long as such vessels are crewed and available for work. A vessel expected to be out of service for less than thirty (30) days including temporary unavailability as a result of a vessel undergoing a regulatory drydocking and inspection shall retain its position on the Priority List for work opportunities even if such vessel(s) is not available when an opportunity for work arose as a result of such temporary unavailability and such work opportunity had to be assigned to another vessel.

ARTICLE 12. **NOTICES.** Any notice or other communication by either party to the other shall be in writing, and shall be deemed to have been duly given if either delivered personally or mailed, postage prepaid, certified mail, addressed as follows:

SeaTran:

SeaTran Marine, LLC
Attn: Blake Miguez, CEO
3820 Lake Palourde Road
Amelia, LA 70380

Owner:

_____
_____
_____
_____

ARTICLE 13. **ASSIGNMENT.** This Agreement is personal in nature and may not be assigned, sold, pledged or otherwise transferred by either party without the prior written consent of the other party; provided, however, that SeaTran shall have the right without the consent of Owner to assign this Agreement to any of its subsidiaries or affiliates. This Agreement shall be binding upon and inure solely to the benefit of each party and their respective successors and assigns, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any right except as expressly provided herein.

ARTICLE 14. **APPLICABLE LAW AND FORUM SELECTION.** This Agreement shall be deemed to be a contract made under the maritime and admiralty laws of the United States and shall be construed and interpreted in accordance with said laws. To the extent that the maritime and

{N0861803-1}  -13-

admiralty laws of the United States are not applicable to any issue pertaining to the construction or interpretation of this Agreement, the law of the State of Louisiana (exclusive of such state's choice of law rules) shall apply. In the event of any claim or dispute between the parties relating to or arising out of this Agreement or the performance hereunder (whether based in contract, tort or other theory of law), the parties agree to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Louisiana or any state or federal court in any other jurisdiction in which the Vessel described in this Agreement is located for the resolution of such claim or dispute. If for any reason subject matter jurisdiction does not exist in federal district court, the parties agree that such claim or dispute shall be resolved exclusively in the State Judicial Court for the Parish of St. Mary, State of Louisiana.

ARTICLE 15. INTEREST. Any sums that are due to SeaTran by Owner pursuant to the terms and provisions of this Agreement, including, but not limited to, the Shared Overhead Fee and/or Owner Operating Expenses that are not reimbursed to SeaTran within the time period specified in this Agreement, or, if a time period for payment thereof is not specified for herein, within ten (10) days of invoicing to Owner by SeaTran, shall bear interest at the rate of 1-1/2% per month until paid, and Owner agrees to pay such interest promptly at the end of each month as invoiced. In the event SeaTran fails to remit monies owed to Owner within the time period specified in the Agreement, SeaTran shall pay interest at the rate of 1.5% per month on such amounts until paid by SeaTran.

ARTICLE 16. MARITIME LIEN AND SECURITY INTEREST OF SEATRAN. Owner acknowledges and recognizes that SeaTran, during the course of operation of the Vessel, will incur costs or charges owed or due by Owner, including, but not limited to, the Shared Overhead Fees, Owner Operating Expenses and, if applicable, a Termination Fee. To the extent that SeaTran is owed the Shared Overhead Fees, a Termination Fee or has advanced sums for Owner Operating Expenses, including crew's wages, fuel or other necessaries for the Vessel, Owner shall reimburse or pay SeaTran all such amounts owed under this Agreement. Without limiting any of its other rights granted in this Agreement or under applicable law, Owner acknowledges that SeaTran is relying on the credit of the Vessel to secure payment of such sums and shall have a maritime lien on the Vessel to secure the payment of all such amounts and that SeaTran's maritime lien arises at the time of such advances and irrespective of whether there are accounts receivable due or to become due to Owner with respect to the Vessel. If requested by Owner, SeaTran will enter into a subordination agreement with Owner's lender(s) that will subordinate SeaTran's maritime lien for necessaries and arising pursuant to this Agreement to the lien of any preferred ship mortgage(s) in favor of Owner's lenders.

ARTICLE 17. ATTORNEYS' FEES AND EXPENSES. If either Party engages an attorney to enforce its rights under this Agreement and/or institutes litigation to enforce such rights, the losing Party (as determined by the court) shall pay all attorneys' fees and expenses, court costs, costs of vessel arrest and seizure incurred by the other Party.

ARTICLE 18. MULTIPLE COUNTERPARTS. This Agreement may be executed in multiple originals and multiple counterparts on different dates and in different places, but which when taken together shall constitute one and the same Agreement.

ARTICLE 19. ENTIRE AGREEMENT. This Agreement contains the entire agreement of the Parties hereto pertaining to the management and operation of the Vessel and supersedes any and all prior understandings and agreements with respect to this matter, whether given orally or in writing. This Agreement may not be modified or supplemented except by express written agreement signed by both parties hereto. Any waiver or any obligation of either party hereto shall not be

construed as a continuing waiver of any such obligation under any provision hereof, or as a waiver of any other obligation. Each party and each Guarantor as hereinafter defined) acknowledges that it has had a full opportunity to review this Agreement, and to have it reviewed by counsel of its choosing, before executing it, and the language in all parts of this Agreement shall be construed as a whole in accordance with its fair meaning, not for or against any party, and without regard to any statute or rule which provides for the language of an agreement to be construed against the drafter. Section headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

ARTICLE 20. **WAIVER OF CONSEQUENTIAL DAMAGES.** EXCEPT AS SET FORTH IN THIS AGREEMENT TO THE CONTRARY, UNDER NO CIRCUMSTANCES SHALL SEATRAN OR OWNER BE LIABLE TO THE OTHER OR ANY PERSON CLAIMING THROUGH THE OTHER, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR ANY LOSS OF PROFITS, LOSS OF USE OF EQUIPMENT, OR INDIRECT, DELAY, INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, OR FOR ANY PAYMENT RELATED TO OR AS A RESULT OF SUCH LOSSES OR DAMAGES ARISING OUT OF OR OTHERWISE RELATED TO THIS AGREEMENT OR THE ENFORCEMENT OF ANY RIGHT OR REMEDY PROVIDED HEREIN OR AT LAW, WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH LOSSES AND WITHOUT REGARD TO ANY DETERMINATION THAT ANY REMEDY SPECIFIED IN THIS AGREEMENT FAILS ITS ESSENTIAL PURPOSE. THE FOREGOING WAIVER DOES NOT LIMIT OWNER'S INDEMNITY OBLIGATIONS TO SEATRAN WITH RESPECT TO ANY CLAIM FOR LOSS OF PROFITS, LOSS OF USE OF EQUIPMENT, OR INDIRECT, DELAY, INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES MADE AGAINST SEATRAN BY ANY UNRELATED THIRD PARTY.

*[Signature page follows]*

18-51277 - #112-1  File 12/18/18  Enter 12/26/18 10:19:17  Exhibit seatran 1  Pg 15 of 18

SEATRAN MARINE, LLC

By:_____
Name: Blake Miguez
Its:    Chief Executive Officer

Date:_____


_____


By:_____
Name: _____
Its:   _____

Date:_____

{N0861803 -}          -16-

18-51277 - #112-1  File 12/18/18  Enter 12/26/18 10:19:17  Exhibit seatran 1 Pg 16 of 18

## EXHIBIT A

| VESSEL NAME | OFFICIAL NO. | MARKETED LENGTH* OF VESSEL |
|---|---|---|
| | | |

* Marketed length is subject to adjustment from time-to-time based on the mutual agreement of Owner and SeaTran.

18-51277 - #112-1  File 12/18/18  Enter 12/26/18 10:19:17  Exhibit seatran 1 Pg 17 of 18

**EXHIBIT B**

LIST OF PERSONS EXCLUDED FROM THE
NON-SOLICITATION RESTRICTIONS IN ARTICLE 9

A. Iberia Marine Service, L.L.C.

B. COMAR Marine, L.L.C.

C. Captain Elliott's Party Boats, Inc. d/b/a Texas Crewboats, Inc.