| | |
|---|---|
| 1 | Thomas E. Shuck SBN 116228 |
| | PARKER, MILLIKEN, CLARK, |
| 2 | O'HARA & SAMUELIAN |
| | A Professional Corporation |
| 3 | 555 S. Flower St., 30th Floor |
| | Los Angeles, California 90071-2440 |
| 4 | Telephone: (213) 683-6500 |
| | Facsimile: (213) 683-6669 |
| 5 | tshuck@pmcos.com |
| 6 | Attorneys for Plaintiff |
| | SBN V FNBC LLC |
| 7 | |

<div align="center">

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

</div>

| | | |
|---|---|---|
| 11 | SBN V FNBC LLC, successor to FDIC as Receiver for First NBC Bank | Case No. |
| 12 | | **VERIFIED COMPLAINT IN REM FOR FORECLOSURE OF** |
| 13 | Plaintiff, | **PREFERRED SHIP MORTGAGE** |
| 14 | v. | |
| 15 | THE VESSEL, "MR. STEVEN" | |
| 16 | Defendant. | |

17

18    Plaintiff SBN V FNBC LLC, successor to FDIC, as Receiver for First NBC

19    Bank ("Plaintiff") sues the defendant vessel "Mr. Steven" ("Mr. Steven" or

20    "Defendant") in rem and alleges as follows:

<div align="center">

**JURISDICTION AND VENUE**

</div>

22    1.    This is an action under admiralty and maritime jurisdiction and is an

23    action in rem, and as such, pursuant to 46 U.S.C. 31325(c) this court has exclusive

24    jurisdiction to hear this action.  This action is a maritime and admiralty claim

25    within the provisions of Fed. R. Civ. P. 9(h) and within the Supplemental Rules for

26    Certain Admiralty and Maritime Claims and of this honorable court.

27    2.    The claim asserted against the vessel Mr. Steven is within the

28    jurisdiction of this Court because the vessel is or will during the pendency of this

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

**EXHIBIT**
18-51277
mr. Steven llc
sbn #10
12/18/18

1   action be present within the Central District of California and subject to arrest

2   within the District to enforce Plaintiff's preferred maritime lien in accordance with

3   the provisions of 46 U.S.C. section 31325 and 31326 and Rule C of the

4   Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal

5   Rules of Civil Procedure.  Venue is proper because the vessel is in this district and

6   the Promissory Note and Preferred Ship Mortgage under which Mr. Steven was

7   pledged as collateral provide that "Should the vessel, for any reason whatsoever, be

8   located outside of the State of Louisiana at the time of default hereunder, or at any

9   time thereafter, Lender shall have the right, at its sole and exclusive option and

10   discretion, to take any one or more of the following actions to the full extent

11   permitted by applicable law: (1) Exercise all the rights and remedies in foreclosure

12   and/or as otherwise given to mortgagees generally by laws of the United States of

13   America or other applicable provisions of law, including without limitation the laws

14   of any jurisdiction in which the Vessel and other Collateral may then be found."

15   **PARTIES**

16   3.   Plaintiff is, and at all times herein mentioned was, a limited liability

17   company, organized and existing under and by virtue of the laws of the State of

18   Delaware, with offices in Denver, State of Colorado.  Plaintiff is successor to the

19   FDIC as Receiver for First NBC Bank, the mortgagee and lender identified in the

20   Promissory Note and Preferred Ship Mortgage being foreclosed on in this action,

21   and in other instruments referenced below.

22   4.   The Defendant, in rem, is a vessel named "Mr. Steven" and has an

23   official number of 1249191, is of approximately 96 gross tons and 66 net tons and

24   is now located in this district.

25   **FIRST CLAIM FOR RELIEF**

26   5.   On or about September 28, 2015, borrower Steven, LLC executed and

27   delivered to Plaintiff, for consideration, a Promissory Note in the sum of

28   $22,500,000.00, a copy of which is attached hereto as Exhibit 1 and incorporated

- 2 -

COMPLAINT

4844-9772-8627.2

MILLER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

1    herein by reference.

2         6.    On or about September 28, 2015, borrower Steven, LLC, executed and

3    delivered to Plaintiff, to secure the Promissory Note, Exhibit 1 hereof, a Preferred

4    Ship Mortgage, a copy of which is attached as Exhibit 2 and incorporated herein by

5    reference.

6         7.    Pursuant to the Promissory Note and Preferred Ship Mortgage,

7    Exhibits 1 and 2 herein, Plaintiff was granted a security interest in the collateral

8    described as a 2015 vessel, official number 1249191, of approximate 96 gross tons

9    and 66 nets tons, together with any and all present and future engines, boilers,

10   machinery, components, masts, boats, anchors, cables, chains, rigging, tackle,

11   apparel, furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances,

12   fittings, spare and replacement parts, trailers, and any and all other appurtenances

13   thereto, appertaining or belonging to the mortgaged vessel, whether now or

14   hereafter acquired, whether on board or not on board, together with any and all

15   present and future additions, improvements and replacements therefor, made in or

16   to the vessel, or any part or parts thereof.

17        8.    At the time of the execution of the Promissory Note and Preferred Ship

18   Mortgage, Exhibits 1 and 2 hereof, and at all times thereafter, the Defendant vessel

19   Mr. Steven was and is a vessel of the United States, duly documented under the

20   laws of the United States.

21        9.    On September 30, 2015, the Preferred Ship Mortgage was duly

22   recorded and registered in the Office of the U.S. Coast Guard, National Vessel

23   Documentation Center.  The Preferred Mortgage was recorded as Batch No.

24   30994200, Document No. 9, at 10:56:00 a.m. on that date, which recording was

25   duly indexed to show all information required to be shown under the provisions of

26   46 U.S.C. section 31321.  The Preferred Ship Mortgage, Exhibit 2 hereof, in all

27   ways complies with the requirements of 46 U.S.C. section 31321 and 31322 and

28   accordingly is entitled to the status of a Preferred Mortgage under the provisions of

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 3 -
COMPLAINT

4844-9772-8627.2

1    said statutes.

2        10.    Under the terms and conditions of the Promissory Note and Preferred

3    Ship Mortgage, Exhibits 1 and 2 hereof, any failure to make any payment, either as

4    to the principal indebtedness or the interest thereon when due, constitutes a default,

5    which entitles Plaintiff to declare all of the principal indebtedness and all accrued

6    interest thereon immediately due and payable.

7        11.    On or about October 18, 2017, the FDIC, as Receiver for First NBC bank,

8    for consideration, executed an Assignment of Preferred Ship Mortgage (the

9    "Assignment") and an Endorsement and Allonge to Promissory Note (the "Allonge")

10   assigning all of its rights, title, and interest in and to the Note, and any and all other

11   documents or instruments evidencing or securing the Note, and its obligations thereunder,

12   to Plaintiff.  True and correct copies of the Assignment and the Allonge are attached

13   hereto as Exhibits 3 and 4, respectively, and are incorporated herein by reference.

14       12.    On June 28, 2017, borrower Mr. Steven, LLC failed to make the

15   monthly payment called for under the Promissory Note and Preferred Ship

16   Mortgage and since that time failed to make that payment or any of the monthly

17   payments subsequently due and required to be made.

18       13.    As a result of said default and pursuant to the provisions of the

19   Promissory Note and Preferred Ship Mortgage, Plaintiff has elected to declare the

20   entire remaining balance of said indebtedness immediately due and payable and

21   there is now due and owing to Plaintiff the principal sum of $22,018,031.52

22   together with accrued interest of $1,410,186.73 as of October 1, 2018, with interest

23   accruing thereafter at a variable rate equal to the Wall Street Journal plus 5.0% per

24   annum, plus recovery of Plaintiff's attorneys' fees and costs.

25       14.    By virtue of the Preferred Ship Mortgage and pursuant to the

26   provisions of 46 U.S.C. section 31321 et seq., Plaintiff has a lien upon the

27   Defendant vessel Mr. Steven.

28       15.    Although demand has been made on the borrower for payment of the

- 4 -

COMPLAINT

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

4844-9772-8627.2

1   above-mentioned sums, there remains due and owing to Plaintiff from borrower

2   Mr. Steven LLC the principal sum of $22,018,031.52 together with accrued interest

3   of $1,410,186.73 as of October 1, 2018, with interest accruing thereafter at a

4   variable rate equal to the Wall Street Journal plus 5.0% per annum, plus recovery of

5   Plaintiff's attorneys' fees and court costs plus costs of recovery and sale.

6       16.   As a result of the afore-described default, Plaintiff is entitled to

7   enforce its lien on the Defendant vessel Mr. Steven by foreclosure of its mortgage

8   and said Defendant. Plaintiff is therefore entitled to a judgment of foreclosure of

9   said mortgage and the sale of the Defendant vessel Mr. Steven in satisfaction of

10   Plaintiff's lien.

11       **WHEREFORE,** Plaintiff demands judgment as follows:

12       1. As against Defendant "Mr. Steven":

13         a. That process in due form of law according to the practices of this court

14   in causes of Admiralty and Maritime jurisdiction issue against Defendant "Mr.

15   Steven," citing it to appear and answer all matters in this Complaint;

16         b. That process in due form of law according to the practices of this court

17   in causes of admiralty and maritime jurisdiction issue against Defendant "Mr.

18   Steven, together with any and all present and future engines, boilers, machinery,

19   components, masts, boats, anchors, cables, chains, rigging, tackle, apparel,

20   furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances, fittings, spare

21   and replacement parts, trailers, and any and all other appurtenances thereto,

22   appertaining or belonging to the mortgaged vessel, whether now or hereafter

23   acquired, whether on board or not on board, together with any and all present and

24   future additions, improvements and replacements therefor, made in or to the vessel,

25   or any part or parts thereof;

26         c. That all persons claiming a lien or interest in the Defendant vessel

27   "Mr. Steven" be cited to appear and answer under oath all matters in this

28   Complaint, and barred and foreclosed of all right, title, claim, lien or interest in and

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 5 -

COMPLAINT

4844-9772-8627.2

1    to said Defendant vessel "Mr. Steven" except the right to redeem the same before

2    sale, as provided by law;

3         d.   That this Court enter a judgment in favor of Plaintiff in the principal

4    sum of $22,018,031.52 together with accrued interest of $1,410,186.73 as of

5    October 1, 2018, with interest accruing thereafter at a variable rate equal to the

6    Wall Street Journal plus 5.0% per annum, plus recovery of Plaintiff's attorneys'

7    fees and court costs plus costs of recovery and sale, and that Defendant "Mr.

8    Steven" be adjudged to be sold unless redeemed within the time and in the manner

9    provided by law, to pay for this amount.

10         e.   That this court enter a judgment of foreclosure of the Preferred Ship

11   Mortgage and for sale of the Defendant "Mr. Steven" as provided by law;

12         f.   That this court grant to Plaintiff such other and further relief as this

13   court may deem just and proper.

14   DATED: October 2, 2018          PARKER, MILLIKEN, CLARK, O'HARA
                                     & SAMUELIAN
15                                   A Professional Corporation

16

17

18                                   By:/s/Thomas E. Shuck
                                        THOMAS E. SHUCK
19                                      Attorneys for Plaintiff
                                        SBN V FNBC LLC

20

21

22

23

24

25

26

27

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 6 -

COMPLAINT

4844-9772-8627.2

1

## <u>VERIFICATION</u>

2

3 **STATE OF COLORADO, COUNTY OF DENVER:**

4     I, Mark A. Kilcoin, am Asset Manager for Summit Investment Management, LLC,

5 contractual asset manager and custodian of records for SBN V FNBC LLC, which is a

6 party to this action, and have authority to execute the verification on behalf of SBN V

7 FNBC LLC.

8     I have read the foregoing **COMPLAINT IN REM FOR FORECLOSURE**

9 **OF PREFERRED SHIP MORTGAGE**, and know its contents.

10     The matters in the foregoing document are true of my own personal knowledge

11 except as to those matters that are stated on information and belief, and as to those

12 matters, I believe them to be true.

13     I declare under penalty of perjury, under the laws of the United States of America

14 that the foregoing is true and correct.

15     Executed this 1st day of October, 2018, at Denver, Colorado.

16

17

18                            Mark A. Kilcoin

19

20

21

22

23

24

25

26

27

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN A
PROFESSIONAL
CORPORATION

4844-9772-8627.2

- 7 -
COMPLAINT

1

## PROMISSORY NOTE

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC;
MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON
LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY
EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1630
AMELIA, LA 70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

**Principal Amount: $22,500,000.00**       **Date of Note: September 28, 2015**

**PROMISE TO PAY.** IBERIA MARINE SERVICE, L.L.C., MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC ("Borrower") promise to pay to the order of FIRST NBC BANK ("Lender"), in lawful money of the United States of America the sum of Twenty-two Million Five Hundred Thousand & 00/100 Dollars (U.S. $22,500,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a multiple advance basis as provided herein, together with simple interest at the rate or rates provided herein in the "PAYMENT" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on September 28, 2015, and continuing until this Note is paid in full.

**MULTIPLE ADVANCE LOAN.** This Note contemplates multiple loan advances. Once the total amount of principal has been advanced under this Note, Borrower will not be entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments during the construction loan phase under this Note until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: STEVE J. MIGUEZ, Manager of IBERIA MARINE SERVICE, L.L.C.; STEVE J. MIGUEZ, Manager of MR. BLAKE LLC; STEVE J. MIGUEZ, Manager of MR. RIDGE LLC; STEVE J. MIGUEZ, Manager of LADY GLENDA LLC; STEVE J. MIGUEZ, Manager of MR. MASON LLC; STEVE J. MIGUEZ, Manager of MR. ROW LLC; STEVE J. MIGUEZ, Manager of LADY BRANDI L.L.C.; STEVE J. MIGUEZ, Manager of LADY EVE, L.L.C.; and STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 12 monthly consecutive interest payments, beginning October 28, 2015, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days; 47 monthly consecutive principal and interest payments in the initial amount of $149,395.47 each, beginning October 28, 2016, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days; and one principal and interest payment of $19,780,850.41 on September 28, 2020, with interest calculated on the unpaid principal balances using an interest rate based on the WALL STREET JOURNAL PRIME (currently 3.250%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 5.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 6:00 PM CENTRAL TIME, Lender will credit Borrower's payment on the next business day.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rates stated in this Note.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued unpaid interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST NBC BANK, KENNER OFFICE, 3535 CHATEAU BLVD SUITE 19, KENNER, LA 70065.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10.000% of the unpaid portion of the regularly scheduled payment with a maximum of $250.00. Late charges will not be assessed following declaration of default and acceleration of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) if the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) if the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Default Under Loan Agreement.** If an event of default occurs or exists under the terms of Borrower's Loan Agreement in favor of Lender.

   **Payment Default.** Borrower fails to make any payment when due under this Note.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $25.00 or 5.000% of the dishonored item (whether check or electronic payment), whichever is greater.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** This Note is secured by Titled Collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

**PROMISSORY NOTE
(Continued)**

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

IBERIA MARINE SERVICE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of IBERIA MARINE
SERVICE, L.L.C.

MR. BLAKE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. BLAKE LLC

MR. RIDGE LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. RIDGE LLC

LADY GLENDA LLC

By: _____
STEVE J. MIGUEZ, Manager of LADY GLENDA LLC

MR. MASON LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. MASON LLC

MR. ROW LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. ROW LLC

LADY BRANDI L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY BRANDI
L.L.C.

LADY EVE, L.L.C.

By: _____
STEVE J. MIGUEZ, Manager of LADY EVE, LLC

MR. STEVEN LLC

By: _____
STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC

2



**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Director
National Vessel Documentation Center

792 T. J. Jackson Drive
Falling Waters, WV 25419
Phone: (800) 799-8362
Fax: 304-271-2405

**October 7, 2015**

**AMERITITLE INC
ATTN: STEVEN A WATTS
4200 S I-10 SERVICE ROAD W  SUITE 110
METAIRIE LA 70002**

**Regarding your recent submission to the National Vessel Documentation Center**

This cover letter with enclosure(s) is sent in response to a submission made to this office.  If you
have any questions, please contact the National Vessel Documentation Center at the number
shown above.

**Enclosures:**

(1) <Certified Copy> Preferred Mortgage        O/N: 1249191        15 PAGE(S)

**TOTAL:**                                   16 PAGE(S) (including cover page)

518260                    Reference Number: 41129568                    Page 1

### "NOTICE OF MORTGAGE"

This Vessel is owned by MR. STEVEN, LLC, and is covered by a Preferred Ship Mortgage in favor of FIRST NBC BANK, as Mortgagee.   Under the terms of said Mortgage, no owner, operator, charterer, cargo owner, subcharterer of this Vessel, or any person, has the right, power or authority to create, incur or permit to exist on this Vessel any lien whatsoever other than liens for crew's wages or salvage.

National Vessel Documentation Center USCG
I hereby certify this to be a true copy
of the records of this office.

*Truett V. Sher*     10/06/2015

Director, National Vessel Documentation Center

PREFERRED SHIP MORTGAGE
ON 100.000% OF THE MR. STEVEN
OFFICIAL NO. 1249191

EXECUTED BY
MR. STEVEN, LLC
IN FAVOR OF
FIRST NBC BANK
ON THE 25TH DAY OF SEPTEMBER, 2015
OBLIGATIONS SECURED DIRECT OR CONTINGENT, EXCLUSIVE OF INTEREST,
EXPENSES AND FEES, PURSUANT TO 46 U.S.C.A SECTION 31321 (B)(3)
AND 46 CFR SECTION 67.235: $50,000,000.00

NAME OF VESSEL
MR. STEVEN

HAILING PORT: NEW IBERIA
GROSS TONNAGE: 98.90
NET TONNAGE: 66.00
YEAR BUILT: 2015
DATE CERTIFICATE OF DOCUMENTATION ISSUED: 05-05-2015
LOCATION OF MORTGAGED VESSEL: NEW IBERIA, LA
GRANTOR'S INTEREST: 100.000%, 100.00
LENDER'S INTEREST: 100.000%, 100.00

| GRANTOR: | LENDER: |
|---|---|
| MR. STEVEN, LLC | FIRST NBC BANK |
| 105 HWY 90 WEST | KENNER OFFICE |
| NEW IBERIA, LA 70560 | 3535 CHATEAU BLVD SUITE 19 |
| | KENNER, LA 70065 |

*0000001000138770%0000000%0945%09282015%881098285*

# PREFERRED SHIP MORTGAGE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $22,500,000.00 | 09-28-2015 | 09-28-2020 | 1000138770 | 4A / 055 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC
P.O. BOX 1820
AMELIA, LA 70340

**Lender:** FIRST NBC BANK
KENNER OFFICE
3535 CHATEAU BLVD SUITE 19
KENNER, LA 70065

**Grantor:** MR. STEVEN, LLC
109 HWY 90 WEST
NEW IBERIA, LA 70560

---

**PREFERRED SHIP MORTGAGE**

**BY: MR. STEVEN, LLC**

**UNITED STATES OF AMERICA**

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

**IN FAVOR OF:**

**FIRST NBC BANK**

**And Any Future Holder or Holders**

**BE IT KNOWN, that on September 28, 2015;**

***IN THE PRESENCE OF** the undersigned competent witnesses;*

**PERSONALLY CAME AND APPEARED:**

**MR. STEVEN, LLC**, a limited liability company duly organized, validly existing and in good standing under the laws of the State of Louisiana and has its registered offices at 109 HWY 90 WEST, NEW IBERIA, LA, 70560, appearing herein through its duly authorized member(s);

**WHO DECLARED THAT:**

**TERMS AND CONDITIONS:**

**COLLATERAL DESCRIPTION.** The word "Collateral" means the Vessel and Grantor's Rights.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Ship Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, all up to a maximum principal amount outstanding at any one or more times, or from time to time not to exceed U.S. $50,000,000.00, plus all interest, costs, expenses, reasonable attorneys' fees and other fees and charges, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act *shall affect Lender's rights against Grantor or the Collateral.*

**GRANTING OF MORTGAGE.** And now, in order to secure the prompt and punctual payment and satisfaction of the Indebtedness, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, Grantor does by these presents specifically mortgage, affect and hypothecate unto and in favor of Lender, and does hereby grant a continuing security interest in and to any and all of Grantor's present and future rights, title and interest in and to the whole of the above described Vessel.

**MORTGAGE SECURING FUTURE INDEBTEDNESS.** This Preferred Ship Mortgage has been executed by Grantor for the purpose of securing the Indebtedness that may now be existing and that may arise in the future as provided herein, with the preferences and priorities provided under applicable law.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of the Indebtedness and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower or Grantor may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Grantor is granting Lender a continuing security interest in any and all funds that Grantor may now and in the future have on deposit with Lender or in certificates of deposit

**PREFERRED SHIP MORTGAGE**

Loan No: 1006135770      (Continued)      Page 2

or other deposit accounts as to which Grantor is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Grantor further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Grantor may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Grantor is an account holder against the unpaid balance of the Indebtedness and any and all other present and future Indebtedness and obligations that Borrower or Grantor may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**DURATION OF SHIP MORTGAGE.** This Ship Mortgage shall remain in full force and effect until such time as all of the Indebtedness shall have been paid in full, in principal, interest, costs, expenses, reasonable attorneys' fees and other fees and charges.

**REPRESENTATIONS, WARRANTIES, AND OBLIGATIONS CONCERNING THE VESSEL.** Grantor represents, warrants, and covenants to Lender as follows with respect to the Vessel:

> **Hailing Port.** The hailing port of the Vessel is and shall at all times be NEW IBERIA, LA. As long as this Ship Mortgage remains in effect, Grantor shall advise Lender, upon request, of any change in the hailing port of the Vessel.

> **Location of Vessel.** When not in use elsewhere, the Vessel shall be berthed at: NEW IBERIA, LA.

> **Notice of Mortgage.** Grantor shall exhibit and cause a certified copy of the Ship Mortgage and any and all amendments or supplements hereto or assignments hereof, to be exhibited, on demand, to any person having business with the Vessel or with Grantor or with any of Grantor's representatives. Grantor shall further cause the following notice, printed in plain type of such size that each paragraph of reading matter shall cover a space not less than six inches (6") wide by nine inches (9") high, and framed under glass, to be placed and kept prominently displayed on the Vessel:

> **"NOTICE OF MORTGAGE"**

> This Vessel is owned by MR. STEVEN, LLC, and is covered by a Preferred Ship Mortgage in favor of FIRST NBC BANK, as Mortgagee. Under the terms of said Mortgage, no owner, operator, charterer, cargo owner, subcharterer of this Vessel, or any person, has the right, power or authority to create, incur or permit to exist on this Vessel any lien whatsoever other than liens for crew's wages or salvage.

> Grantor agrees that such notice shall be changed whenever necessary to reflect the identity of any successor to Grantor or Lender.

**Use of Vessel.** Grantor shall use, and shall cause others to use, the Vessel at all times in accordance with the laws, treaties, conventions, rules, regulations and ordinances of the United States of America, the several states and municipalities thereof, and any other sovereign jurisdiction in which the Vessel may be located. The Vessel shall further be used only for any purpose and in the manner set forth in the application for insurance executed in connection therewith, as from time to time in effect, and furthermore, may not be used for any illegal purpose. Grantor shall not, without the prior written consent of Lender, do any act, or voluntarily suffer or permit any act to be done, whereby any insurance required under this Ship Mortgage shall or may be cancelled, suspended, impaired or defeated, or suffer or permit the Vessel to engage in any voyage or to carry any cargo not permitted under the policies of insurance then in effect, without procuring insurance satisfactory to Lender covering the Vessel in all respects for such voyage.

**Hazardous Substances.** Grantor represents and warrants that the Vessel never has been, and never will be so long as this Ship Mortgage remains a lien on the Vessel, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Vessel for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Ship Mortgage. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Ship Mortgage.

**Alterations.** Grantor shall not, without the prior written consent of Lender, make or permit others to make, any alterations to the Vessel or any part or component of the Vessel, that may reduce or impair the Vessel's value or utility.

**Abandonment of Vessel.** Grantor shall not, nor shall Grantor permit others, to abandon, commit waste, or destroy the Vessel, or any part or component of the Vessel.

**Repairs and Maintenance.** Grantor shall keep and maintain, and cause others to keep and maintain, the Vessel in good order, repair and seaworthy condition to Lender's satisfaction and to the satisfaction of the Vessel's salvage association, classification society and the United States Coast Guard, as applicable. Grantor shall further make and cause all necessary repairs to be made to the Vessel, including the repair and restoration of any portion of the Vessel, or its parts or components, that may have been lost, damaged or impaired.

**Inspections; Audits.** Lender and Lender's agents may periodically inspect or survey the Vessel to ascertain its condition and to satisfy Lender that the Vessel is being properly repaired and maintained. Lender and Lender's agents may further periodically enter upon Grantor's premises at reasonable hours and conduct audits of Grantor's books and records that in any way pertain to the Vessel, any part or parts thereof, or Grantor's Rights. Lender shall have the further right to periodically inspect the log of the Vessel.

**Prohibitions Regarding the Vessel.** So long as this Ship Mortgage remains in effect, Grantor shall not, without Lender's prior written consent, (1) sell, assign, transfer, convey, option, mortgage, lease or charter the Vessel; (2) permit any Encumbrances to be placed on or attached to the Vessel; (3) change the hailing port of the Vessel or (4) register the Vessel under the laws of any foreign nation.

**PREFERRED SHIP MORTGAGE**
(Continued)

Loan No: 1000135770                                                                 Page 3

**Preferred Ship Mortgage.** Grantor shall comply with and satisfy all of the provisions of applicable law and regulations of the United States of America, as the same may at any time be amended, including without limitation all laws and regulations relating to citizenship of Grantor, in order to establish and maintain this Ship Mortgage as a first priority "preferred mortgage" upon the Vessel for the full amount secured hereby. Grantor shall also execute and record from time to time, at its expense and at reasonable advance intervals, such additional instruments as may be necessary or appropriate within Lender's sole discretion, so that this Ship Mortgage may be established and preserved as a valid lien on the Vessel until this Ship Mortgage shall be cancelled in the manner provided in this Ship Mortgage.

**VESSEL OWNERSHIP AND TITLE.** Grantor represents, warrants, and covenants to Lender as follows:

**General Representations and Warranties.** Grantor is and shall continue to be a citizen of the United States entitled to own and operate the Vessel under its marine document, which Grantor shall maintain in full force and effect. Grantor will at all times continue to keep the Vessel properly documented with the Documentation Office of the U.S. Coast Guard (the "Documentation Office") and properly and timely pay to the Documentation Office all documentation renewal fees and make any filings with the Documentation Office required thereby to properly maintain the current status of the Certificate of Documentation for the Vessel. Except as previously disclosed to and accepted by Lender in writing: (a) Grantor is and will continue at all times to be the sole lawful owner of the Vessel; (b) Grantor has the right to mortgage the Vessel to Lender; (c) as of the time this Ship Mortgage is recorded, there are no prior Encumbrances affecting the Vessel, or any part or parts thereof, (d) the security interests granted under this Ship Mortgage shall at no time become subordinate or junior to any security interest, lien or claim of any person, firm, corporation or other entity, except for statutory liens for crew's wages, salvage and similar charges; (e) this Ship Mortgage is binding upon Grantor as well as Grantor's heirs, successors, representatives and assigns; and is legally enforceable in accordance with its terms; and (f) the Vessel is and will continue to be properly documented under the laws of the United States of America. The foregoing representations and warranties, and all other representations and warranties contained in this Ship Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as this Ship Mortgage is cancelled in the manner provided herein.

**Prior Encumbrances.** To the extent applicable, Grantor shall fully and timely perform any and all of Grantor's obligations under any prior Encumbrances affecting the Vessel. Without limiting the foregoing, Grantor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Grantor shall further not modify or extend any of the terms of any prior Encumbrance or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Vessel, or any part or parts thereof, with possible preference and priority over the lien of this Ship Mortgage.

**Future Encumbrances.** Neither Grantor, nor any charterer, master or operator of the Vessel, shall, without the prior written consent of Lender, grant, or create any Encumbrance, or incur any obligation that may give rise to an Encumbrance (other than for crew's wages or salvage), that may affect the Vessel, or any part or parts thereof, nor shall Grantor, or any charterer, master or operator of the Vessel, permit or consent to any Encumbrance attaching to or being filed against the Vessel, or any part or parts thereof, in favor of anyone other than Lender. Grantor shall further promptly pay when due, or cause to be paid when due, all statements and charges of the master, crew, seamen, mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, operation, repair, maintenance and salvage of the Vessel, or any and all part or parts thereof, or otherwise furnish appropriate security or bond so that no Encumbrance may ever attach to or be filed against the Vessel or any of Grantor's rights assigned and pledged under this Ship Mortgage.

**Notice of Encumbrances.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, claim or other Encumbrance affecting the Vessel. Grantor additionally agrees to notify Lender immediately in writing, upon the occurrence of any default, or event that, with the passage of time, failure to cure, or giving of notice, might result in a default, under any of Grantor's obligations that may be secured by any presently existing or future Encumbrance, or that may result in an Encumbrance affecting the Vessel, or any part or parts thereof, or should the Vessel be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**VESSEL INSURANCE REQUIREMENTS AND PROVISIONS.** Grantor represents, warrants, and covenants to Lender as follows with respect to insurance and the Vessel:

**Required Insurance.** So long as this Ship Mortgage remains in effect, Grantor shall keep, at Grantor's sole cost, and/or cause others at their expense to keep, the Vessel constantly insured as specified below, as well as to keep the Vessel insured against such additional risks as may be commercially reasonable or reasonably specified by Lender from time to time:

(a) insurance against loss or damage by fire, and against all marine risks and disasters, including marine (including without limitation navigation and port risks) hull and machinery insurance under the latest forms (determined at the time of issuance of the policies in question) of policies approved by Lender, insuring the Vessel against the usual risks covered by such forms (including, at the option of Grantor, such amounts of increased value and other forms of "total loss only" insurance that are permitted by said hull insurance policies), for an amount at least equal to the amount which shall from time to time remain unpaid under the Note and interest thereon.

(b) Liability insurance for bodily injury, death and property damage as shall be required by Lender.

(c) In addition, Lender's interest in the Vessel shall be noted by the Protection and Indemnity Club (where applicable) in which the Vessel may be enrolled.

(d) insurance for such other risks and liabilities, and in such amounts, as Lender shall from time to time require.

**PREFERRED SHIP MORTGAGE**
**(Continued)**

Loan No: 1000130770

Page 4

Grantor shall further keep the Vessel insured against marine protection and indemnity risks and liabilities, and against pollution liability, by policies of insurance approved by Lender as to form and amount.

**Insurance Companies.** Grantor may purchase such insurance through one or more marine insurance brokers of its choice, with such insurance being placed and kept with such American, British or other insurance companies, underwriters' associations, clubs or underwriting funds reasonably acceptable to Lender. All such insurance policies, including renewals and replacements, must also be in form, amount and substance acceptable to Lender and must additionally contain a noncontributory lender's loss payable clause in favor of Lender, providing in part that: (a) all proceeds and returned premiums under such policies of insurance will be paid directly to Lender; (b) no act or omission on the part of Grantor or any of its officers, agents, employees or representatives, or the master or crew of the Vessel, or any charter or subcharter thereof, or breach of any warranties contained in such policies, shall affect the obligations of the insurer to pay the full amount of any loss to Lender; (c) such policies may not be cancelled or altered without thirty (30) days' prior written notice to Lender of such intended cancellation or alteration; (d) there shall be no recourse against Lender for the payment of premiums or commissions; and  (e) if such policies provide for the payment of club calls, assessments or advances, there shall be no recourse against Lender for the payment thereof.

**Insurance Policies.** Grantor agrees to provide Lender with originals or certified copies of such policies of insurance. Grantor further agrees to promptly furnish Lender with copies of all renewal notices and, if requested by Lender, with copies of receipts for paid premiums. Grantor shall provide Lender with originals or certified copies of all renewals or replacement policies of insurance no later than ten (10) days before any such existing policy or policies should expire.

**Casualties and Accidents.** Grantor agrees to immediately notify Lender in writing of any material casualty to or accident involving the Vessel, whether or not such casualty or loss is covered by insurance. Grantor further agrees promptly to notify Grantor's insurers and to submit an appropriate claim and proof of claim to such insurers in the event that the Vessel, or any part or parts thereof, are lost, damaged, or impaired as a result of an insured hazard. Lender may submit such a claim and proof of claim to the insurer on Grantor's behalf, should Grantor fail to do so promptly for any reason. Grantor hereby irrevocably appoints Lender as its agent and attorney-in-fact, such agency being coupled with an interest, to make, settle and adjust any and all claims under such policy or policies of insurance and to endorse the name of Grantor on any check or other item of payment for the proceeds thereof; it being understood, however, that unless one or more Events of Default exist under this Ship Mortgage, Lender will not settle or adjust any such claims without the prior approval of Grantor (which approval shall not be unreasonably withheld).

**Insurance Certificates or Opinions.** Grantor will further furnish to Lender, and Lender may rely upon; a certificate or opinion of a firm of marine insurance brokers acting for Grantor with respect to the Vessel, as of the date of this Ship Mortgage, stating in effect, that such insurance complies in all respects to the applicable requirements of this Ship Mortgage. Annually hereafter, Grantor shall further furnish to Lender a detailed certificate or opinion signed by a qualified firm of marine insurance brokers as provided above, as to the insurance maintained by Grantor pursuant to this Ship Mortgage, specifying the respective policies of insurance covering the same, and stating, in effect, that such insurance complies in all respects with the applicable requirements of this Ship Mortgage.

**Insurance Proceeds.** Lender shall have the right to receive directly the proceeds of all insurance protecting the Vessel. In the event that Grantor should receive any such insurance proceeds, Grantor agrees immediately to turn over such proceeds and to pay the same directly to Lender. All insurance proceeds may be applied, at Lender's sole option and discretion, and in such a manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Lender in this connection), whether or not an Event of Default exists under this Ship Mortgage, for the purpose of  (a) repairing or replacing any lost, damaged or impaired portion, parts or components of the Vessel, as well as payment of any liabilities, salvage or other charges and expenses (including labor charge due or paid by Grantor), that may be covered by such policies of insurance; or  (b) reducing the then outstanding balance of the indebtedness, with such payments to be applied in the manner provided in this Ship Mortgage. Lender's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Ship Mortgage. Nothing under this section shall be deemed to excuse Grantor from Grantor's obligations promptly to repair, replace or restore any lost, damaged or destroyed portion, part or component of the Vessel, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender. Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender shall not be deemed to cure or waive any Event of Default under this Ship Mortgage. In the event of an accident or event resulting in a constructive total loss of the Vessel, Lender shall have the right (a) to assert a claim on behalf of Grantor, and if (a) such claim is accepted by all underwriters under the policies then in force, and (b) payment in full thereof is made in cash, then Lender shall have the right to abandon the Vessel to the underwriters, free from the lien of this Ship Mortgage. Lender shall also have the right, in its sole discretion, to enter into any agreement or compromise with regard to the total loss or the constructive total loss of the Vessel.

**TAX REQUIREMENTS AND PROVISIONS.** Grantor represents, warrants, and covenants to Lender as follows with respect to taxes relating to the Vessel and this Ship Mortgage:

**Taxes.** Grantor shall promptly pay, or cause to be paid when due, all taxes, local and special assessments, and governmental and other charges, fines and penalties, of every nature and description, that may from time to time be imposed, assessed and levied against the Vessel or against Grantor. If requested by Lender, Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges, fines and penalties have been paid in full and in a timely manner.

**Tax Law Changes.** In the event that there should be any change in applicable law with regard to taxation of ship mortgages or the debts they secure, Grantor agrees to pay any taxes, assessments or charges that may be

PREFERRED SHIP MORTGAGE
(Continued)

Loan No: 1000138776

Page 5

imposed upon Lender as a result of this Ship Mortgage.

**ADDITIONAL ADVANCES FOR SPECIFIC PURPOSES.** Lender shall have the right, within Lender's sole option and discretion, to make Additional Advances on Grantor's behalf for the following purposes:

**Insurance.** If Grantor should for any reason fail to maintain insurance on the Vessel as required under this Ship Mortgage, Lender may make Additional Advances on Grantor's behalf for the purpose of purchasing and maintaining, and Lender may purchase and maintain, such insurance coverage (including insurance protecting only Lender's interests in the Vessel).

**Taxes.** If Grantor should for any reason fail to pay promptly when due taxes, assessments, and governmental and other charges as required under this Ship Mortgage, Lender may make Additional Advances on Grantor's behalf for the purpose of paying such taxes, assessments, and governmental and other charges.

**Repairs.** If Grantor should for any reason fail to make all necessary repairs to the Vessel and to keep the Vessel in good working order and seaworthy condition as required under this Ship Mortgage, Grantor agrees that Lender may make Additional Advances on Grantor's behalf for the purpose of making, and Lender may make, such repairs and maintenance to the Vessel as Lender may deem to be necessary and proper within its sole discretion. Lender and Lender's agents may board the Vessel at any time, and from time to time, for the purpose of accomplishing such repairs and maintenance.

**Encumbrances.** If Grantor should permit or allow any Encumbrance to attach to or be recorded or filed against the Vessel, without having first obtained Lender's prior written consent, or if Grantor should for any reason default under any obligation secured by any presently existing or future Encumbrance, Lender may make Additional Advances on Grantor's behalf and take such other action or actions, as Lender may deem to be necessary and proper within its sole discretion, to pay and fully satisfy such obligation and/or Encumbrance, to cure or rectify any such default or defaults and to prevent future defaults on Grantor's part.

**Arrest and Seizure of Vessel.** Should the Vessel be arrested or detained by a marshal or other officer of any court of law, equity or admiralty jurisdiction or by any government or other authority, and the Vessel not be released within fifteen (15) days from the date of arrest or detention, Lender is hereby authorized and empowered to apply for and receive and take possession of the Vessel in the name of Grantor. Lender is further authorized and empowered to appear in any court where a suit is pending against Grantor and to take such action as Lender may deem, within it sole discretion, to be necessary and/or proper to defend any such suit and/or to obtain the release or discharge of any lien against the Vessel. All funds and expenses expended or incurred by Lender for such purposes shall be considered an Additional Advance as provided under this Ship Mortgage.

**Other Purposes.** Lender may further make Additional Advances on Grantor's behalf and take such other action or actions as Lender may deem to be necessary and proper within Lender's sole discretion, to cure and rectify any actions or inactions on Grantor's part, as are required under this Ship Mortgage, that are not listed immediately above.

**No Obligations.** Nothing under this Ship Mortgage shall obligate Lender to make any such Additional Advances or to take any of the above actions on Grantor's behalf, or as making Lender in any way responsible or liable for any loss, damage or injury to Grantor, or to any other person or persons, resulting from Lender's election not to advance such additional sums or to take such action or actions. In addition, Lender's election to make Additional Advances and/or to take the above actions on Grantor's behalf shall not constitute a waiver or forbearance by Lender of any Event of Default under this Ship Mortgage.

**OBLIGATION TO REPAY ADDITIONAL ADVANCES; INTEREST.** Grantor unconditionally agrees to repay any and all Additional Advances that Lender may elect to make on Grantor's behalf, together with interest as provided herein, immediately upon demand by Lender. Grantor agrees to pay Lender interest on Additional Advances at the rate or rates provided under the Note from the date of each such Additional Advance until all such Additional Advances are repaid in full. Grantor's obligations to repay Additional Advances to Lender, together with interest thereon, shall be secured by this Ship Mortgage.

**ADDITIONAL SECURITY IN RIGHTS.** Grantor further grants a continuing security interest in the following Rights in favor of Lender as additional collateral security for the prompt and punctual payment of the Indebtedness:

**Proceeds.** Any and all proceeds of or with regard to the Vessel and Grantor's Rights, including without limitation all proceeds derived or to be derived from the sale, transfer, conveyance, exchange, insurance loss, damage, destruction, condemnation, expropriation or other taking of the Vessel and any unearned insurance premiums relating thereto, as well as any salvage awards and/or recoveries in general average, and all other sums due or to become due with respect to the Vessel, and further including the rights of Grantor to receive such proceeds directly from the obligor or obligors therefor, and to further enforce any rights that Grantor may have to collect such proceeds, including without limitation Grantor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

**Leases, Charters, Rents, and Profits.** Any and all present and future leases or charters affecting the Vessel, including without limitation any and all rents, income, profits, bonuses, revenues, royalties, cash or security deposits, advance rentals and other payments, and further including Grantor's rights to enforce such leases or charters and to receive and enforce any rights that Grantor might have to collect such payments.

**Earnings and Other Revenues.** Any and all freight, hire, earnings, issues, revenues, accounts, assets, payments, income and profits derived or to be derived from the use or operation of the Vessel, or any part or parts thereof, including the rights of Grantor to receive such payments directly from the obligor or obligors thereof, and to further enforce any rights that Grantor collect such payments, including, but not limited to, Grantor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

**Deposits.** Any and all present and future deposits or other security or advance payments, including rental payments made by or on behalf of Grantor to others, with respect to (1) moorage or dockage of the Vessel, (2) cleaning, maintenance, repair or similar services regarding the Vessel, and (3) rentals of equipment, if any.

**PREFERRED SHIP MORTGAGE**
(Continued)

Loan No: 1009138770

Page 6

used in the operation by or on behalf of Grantor regarding the Vessel.

**Options.** Any and all present and future options to sell, lease or charter the Vessel or any interest in the Vessel.

**Other Rights.** Any and all of Grantor's present and future contract rights, general intangibles, instruments and documents necessary for use or useful in connection with the ownership and operation of the Vessel, whether now existing or hereafter created or otherwise acquired by Grantor, and all liens, security interests, guaranties, remedies, privileges and other rights pertaining thereto, and all rights and remedies of any kind forming the subject matter thereof, as well as all records and data relating to any of the foregoing or to the Vessel, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all programming and software required to utilize, create, maintain, and process any such records or data on electronic media.

**REPRESENTATIONS AND WARRANTIES CONCERNING RIGHTS.** Grantor represents, warrants and covenants to Lender as follows with respect to the Rights:

**Specific Representations and Warranties.** (1) Grantor is (or with respect to future Rights, will be at the time of acquisition of the future Rights) the sole lawful owner of all the aforesaid Rights; (2) Grantor has the right to grant a security interest in such Rights in favor of Lender; (3) Grantor has not made any previous assignments or pledges or otherwise encumbered any of Grantor's Rights; (4) to the extent applicable, all of Grantor's Rights that consist of or give rise to obligations of third parties, represent and/or will at all times continue to represent bona fide obligations of the obligor thereunder, free of any offset, compensation, deduction or counterclaim; and (5) the security interest granted hereunder as affecting Grantor's Rights is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with the foregoing terms and conditions.

**Additional Obligations of Grantor with Regard to the Rights.** Grantor additionally agrees (1) so long as this Ship Mortgage remains in effect, Grantor will not, without the prior written consent of Lender, sell, transfer, assign, pledge, or grant, or create or permit to exist any lien or security interest in or against any of Grantor's Rights, in favor of any person other than Lender; (2) Grantor shall not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under or with regard to any of Grantor's Rights; and (3) Grantor will keep proper books and records with regard to Grantor's business activities and Rights, in accordance with GAAP, applied on a consistent basis throughout, which books and records shall at all reasonable times be open to inspection and copying by Lender or its designated agents. Lender also shall have the right to inspect Grantor's books and records and to discuss Grantor's affairs and finances with Grantor's officers and representatives, at such reasonable times as Lender may designate.

**Notice to Obligors.** Upon request by Lender, Grantor immediately will notify individual obligors under Grantor's Rights, advising such obligors of the fact that their respective agreements and obligations have been assigned and pledged to Lender. In the event that Grantor should fail to provide such notices for any reason upon Lender's request, Grantor agrees that Lender may forward appropriate notices to such obligors either in Lender's name or in Grantor's name.

**Protection of Rights.** Grantor will at all times protect and preserve all of Grantor's Rights.

**Lender's Right to Collect Directly and Receive Proceeds and Payments Before or After Default.** Lender shall have the right, at its sole option and election, at any time, whether or not one or more Events of Default then exist under this Ship Mortgage, to collect directly and receive all proceeds and payments arising under or in any way accruing from Grantor's Rights, as such amounts become due and payable. In order to permit the foregoing, Grantor unconditionally agrees to deliver to Lender, immediately following demand, any and all of Grantor's records, ledger sheets and all other documents in the form requested by Lender, with regard to Grantor's Rights and any and all proceeds and payments applicable thereto. Lender shall have the further right, whether or not an Event of Default then exists under this Ship Mortgage, and where appropriate and within Lender's sole discretion, to file suit, either in Lender's own name or in the name of Grantor, to collect any and all proceeds and payments that may now and/or in the future be due and owing under and/or as a result of such Rights. Where it is necessary for Lender to attempt to collect any such proceeds or payments from the obligors or debtors therefor, Lender may compromise, settle, extend or renew for any period (whether or not longer than the original period) any indebtedness thereunder or evidenced thereby, or surrender, release or exchange all or any part of said indebtedness, without affecting the liability of Grantor under this Ship Mortgage or under the Indebtedness. To that end, Grantor hereby irrevocably constitutes and appoints Lender as Grantor's attorney-in-fact, coupled with an interest and with full power of substitution, to take any and all such actions and any and all other actions permitted hereby, either in the name of Grantor or Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Ship Mortgage:

**Default Under Loan Agreement.** If an Event of Default occurs or exists under the terms of Borrower's Loan Agreement in favor of Lender.

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default under Other Agreements.** Should Grantor violate or fail to comply fully with any of the terms and conditions of, or default under any loan or other agreement governing any of the Indebtedness.

**Default under this Ship Mortgage.** Should Grantor violate or fail to comply fully with any of the terms and conditions of, or default under this Ship Mortgage and/or any of the additional obligations incurred or assumed by Grantor hereunder.

**Other Defaults in Favor of Lender.** Should Grantor or any Guarantor default under any other extension of credit, or security agreement or obligation, in favor of Lender.

**Default in Favor of Third Parties.** Should Grantor or any Guarantor default under any loan, extension of credit, security agreement, or purchase or sales agreement, in favor of any other creditor or person that may affect the Vessel or Grantor or any Guarantor's ability to perform its obligations hereunder and/or pertaining to any of the

**PREFERRED SHIP MORTGAGE**
(Continued)

Loan No: 1000138770

Page 7

Indebtedness.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Failure to Pay Additional Advances.** Borrower or Grantor fails to pay any Additional Advance, together with interest thereon, as provided in this Ship Mortgage, upon Lender's demand.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Ship Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of the Indebtedness.

**LENDER'S RIGHTS UPON DEFAULT.** Should one or more Event of Default occur or exist under this Ship Mortgage, as provided above, Lender shall have the right, at its sole option, to accelerate payment in full of any and all of the Indebtedness and to declare the same to be immediately due and payable, without further notice to, or demand of Borrower or Grantor, and without formally placing Grantor in default hereof or hereunder. Lender shall then have the right to commence appropriate foreclosure proceedings against the Vessel and against the Rights without further notice to and/or demand of Borrower or demand of Grantor, and without placing Grantor in default hereof or hereunder. In addition, Lender shall have the following rights and remedies:

**Other Remedies.** In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under this Ship Mortgage, Lender may cause the Vessel to be immediately seized, wherever found, and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making demand upon or notifying Borrower or Grantor or placing Grantor in default, all of which are expressly waived.

**Executory Process.** For purposes of foreclosure under Louisiana executory process procedures, Grantor confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Indebtedness in principal, interest, costs, expenses, reasonable attorneys' fees and other fees and charges. To the extent permitted under applicable Louisiana law, Grantor additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

**Keeper.** Should any or all of the Vessel be seized as an incident to an action for the recognition or enforcement of this Ship Mortgage, by executory process, sequestration, attachment, writ of fieri facias or otherwise, Grantor hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as Keeper of the Vessel as provided under La. R.S. 9:5136, et seq. Such a Keeper shall be entitled to reasonable compensation. Grantor agrees to pay the reasonable fees of such Keeper, which are hereby fixed at $50.00 per hour, which compensation to the Keeper shall also be secured by this Ship Mortgage in the form of an Additional Advance as provided in this Ship Mortgage.

**Declaration of Fact.** Should it become necessary for Lender to foreclose under this Ship Mortgage, all declarations of fact which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person declaring such facts to be within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. 9:3509.1, La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, as applicable.

**Foreclosure on Collateral Outside of Louisiana.** Should the Vessel, for any reason whatsoever, be located outside of the State of Louisiana at the time of default hereunder, or at any time thereafter, Lender shall have the right, at its sole and exclusive option and discretion, to take any one or more of the following actions to the full extent permitted by applicable law:

(1) Exercise all the rights and remedies in foreclosure and/or as otherwise given to mortgagees generally by laws of the United States of America or other applicable provisions of law, including without limitation the laws of any jurisdiction in which the Vessel and other Collateral may then be found;

(2) Take and enter into possession of the Vessel at any time wherever the same may be located, without legal process and without being responsible for any loss or damage to Grantor or any other third party. Grantor and all other persons then in possession of the Vessel, shall forthwith, upon demand by Lender, surrender possession of the Vessel and Lender may, without being responsible for any loss or damage to Grantor or any other third party, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and under such terms as Lender may deem to be in its best interest and advantage. Lender may further demand, collect and retain all proceeds, payments and other Rights and any and all other sums due or to become due with respect to the Vessel or with respect to any insurance thereon, from any person whatsoever, provided that the gross amount of all such proceeds or other amounts and sums referred to above (after deducting any costs or expenses of Lender therefrom), received by Lender, shall, promptly upon receipt, be applied in accordance with the provisions of this Ship Mortgage;

(3) Take and enter into possession of the Vessel at any time, wherever the same may be located, without

**PREFERRED SHIP MORTGAGE**
(Continued)

Loan No: 1000138770

Page 8

legal process, and if it seems desirable to Lender and without being responsible for any loss or damage to Grantor or any other third party, sell the Vessel, whether in whole or in component parts, at public or private sale, without survey, at any place and at any such time as Lender may specify, and in such manner as Lender may deem advisable, free from any claim by Grantor in admiralty, in equity, at law, or by statute, after first giving notice of the time and place of sale with a general description of the mortgaged Vessel. In exercising these rights, Lender may at Grantor's expense move the Vessel to any place within the United States and sell the Vessel as herein provided at private sale, or file an action to foreclose on its mortgage, and may include in such action an in personam claim against Grantor regardless of Grantor's domicile;

(4)   Exercise any rights, privileges and remedies in foreclosure otherwise given to Lender by any other instrument securing the Indebtedness; and

(5)   Any sale of the Vessel and/or its component parts made pursuant to this Ship Mortgage, whether under the power of sale hereby granted or in any judicial proceeding, shall operate to divest Grantor of all rights, title and interests of any nature whatsoever, and shall bar Grantor and Grantor's successors and assigns; and all other persons claiming by, through or under them, from any and all further rights, claims or interests in or to the Vessel and its components. The purchaser of the Vessel shall not be bound to inquire whether notice has been given, or whether any Event of Default has occurred, or as to the propriety of the sale, or as to the application of the proceeds of the sale. In any such sale, Lender may bid for and may purchase the Vessel in the form of compensation against the Indebtedness. Upon compliance with the terms of sale, Lender may hold, retain and dispose of the Vessel without further accountability therefor.

**Attorney-in-Fact.** Lender is hereby irrevocably appointed attorney-in-fact of Grantor, coupled with an interest and with full powers of substitution, to execute and deliver to any purchaser of the Vessel as provided above, and is hereby vested with full power and authority to make, in the name and on behalf of Lender, a good conveyance of the title to the Vessel and/or its component parts sold. In the event that the sale of the Vessel and/or component parts under any power of sale herein contained, Grantor will, if and when required by Lender, execute such form of conveyance of the Vessel and its component parts as Lender may direct or approve.

**Appointment of Receiver.** If any legal proceeding shall be taken to enforce any rights under this Ship Mortgage, Lender shall be entitled as a matter of right to the appointment of a receiver of the Vessel and of Grantor's proceeds, payments and other Rights. Such a receiver shall be entitled to reasonable compensation, which additional compensation shall be secured by this Ship Mortgage in the form of an Additional Advance as provided herein.

**Additional Expenses.** In the event that it should become necessary for Lender to conduct a search for the Vessel and/or to store such Vessel, Grantor agrees to reimburse Lender for the cost of conducting such a search and/or storing the Vessel, which additional expense shall also be secured by the lien of this Ship Mortgage in the form of an Additional Advance as provided herein.

**Separate Sale of Grantor's Rights Following Default.** Lender shall have the additional right, at its sole option, separately to sell Grantor's aforesaid Rights or any part or parts thereof, at private or public sale, at such price or prices as Lender may deem best, either for cash or for any other compensation, or on credit, or for future delivery, without the assumption of any credit risk. The sale of the Grantor's aforesaid Rights may be without appraisement, the benefit of which is also expressly waived by Grantor. Grantor expressly grants to Lender the full and irrevocable power, coupled with an interest, to sell the Grantor's aforesaid Rights, or any part or parts thereof, in the manner herein specified without the intervention of any court and without any formalities other than those provided herein. For purposes of selling the Grantor's aforesaid Rights, Lender is hereby made and constituted the agent of Grantor, such agency being coupled with an interest.

**Automatic Transfer of Rights.** In the event of foreclosure under this Ship Mortgage or other transfer of title or assignment of the Vessel, or any part or parts thereof, in lieu of payment of the Indebtedness, whether in whole or in part, all policies of insurance and other Rights applicable to the foreclosed upon or transferred Vessel shall automatically inure to the benefit of and shall pass to the purchasers or transferees thereof, subject to the rights of the purchasers or transferees to reject such insurance coverage or Rights at its or its sole option and election.

**Specific Performance.** Lender may, in addition to or in lieu of the foregoing remedies, in Lender's sole discretion, commence an appropriate action against Grantor seeking specific performance of any covenant contained in this Ship Mortgage or in aid of the execution or enforcement of any power in this Ship Mortgage granted.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Ship Mortgage or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Ship Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Ship Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**PROTECTION OF LENDER'S SECURITY RIGHTS.** Grantor will be fully responsible for any losses that Lender may suffer as a result of anyone other than Lender asserting any rights or interest in or to the Vessel and/or Grantor's Rights. Grantor agrees to appear in and to defend all actions or proceedings purporting to effect Lender's security interests in the Vessel and/or Rights subject to this Ship Mortgage and any of the rights and powers granted Lender hereunder. In the event that Grantor fails to do what is required of Grantor under this Ship Mortgage, or if any action or proceeding is commenced naming Lender as a party or affecting Lender's security interests or the rights and powers granted to Lender under this Ship Mortgage, then Lender may, without releasing Grantor from any of

**PREFERRED SHIP MORTGAGE**
(Continued)

Loan No: 1000138770

Page 9

Grantor's obligations under this Ship Mortgage, do whatever Lender believes to be necessary and appropriate within its sole discretion, including making Additional Advances on Grantor's behalf as provided herein, to protect the security of this Ship Mortgage.

**INDEMNIFICATION OF LENDER.** Grantor agrees to indemnify, to defend, and to save Lender harmless from any and all claims, suits, obligations, damages, losses, costs, expenses (including without limitation Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender arising out of or in any manner occasioned by this Ship Mortgage and the exercise of the rights and remedies granted Lender hereunder, and obligation to so indemnify, defend and hold Lender harmless shall be secured by this Ship Mortgage. The foregoing indemnity provision shall survive the cancellation of this Ship Mortgage as to all matters arising or accruing prior to such cancellation, and the foregoing indemnity provisions shall survive in the event that Lender elects to exercise any of its remedies as provided under this Ship Mortgage following any Event of Default hereunder.

**EXECUTION OF ADDITIONAL DOCUMENTS.** Grantor agrees to execute all additional documents, instruments, UCC Financing Statements and other agreements that Lender may deem to be necessary and appropriate, within its sole discretion, in form and substance satisfactory to Lender, to keep this Ship Mortgage in effect, to better reflect the true intent of this Ship Mortgage, and to consummate fully all of the transactions contemplated hereby and by any other Related Document heretofore, now or at any time or times hereafter executed by Grantor and delivered to Lender.

**APPLICATION OF PAYMENTS.** Grantor agrees that all payments and other sums and amounts received by Lender under the Indebtedness or under this Ship Mortgage, including, but not limited to, the net proceeds of any judicial or other sale, of any charter, management or other use of the Vessel by Lender, of any claim for damages to the Vessel and of any insurance proceeds received by Lender (except to the extent that such insurance proceeds are to be paid to Grantor pursuant to any other provisions of this Ship Mortgage) shall be held and applied by Lender from time to time in accordance with the terms of the Note.

**ADDITIONAL REPRESENTATIONS AND WARRANTIES.** Grantor further represents, warrants and covenants that:

**Authorization.** Grantor's execution, delivery, and performance of this Ship Mortgage and all the Related Documents have been duly authorized by all necessary action by Grantor and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Grantor's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Grantor or (2) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties.

**Perfection of Security Interests.** Except for the recordation of this Ship Mortgage and the filing of UCC Financing Statements with regard to perfection of the security interest in Grantor's Rights, no other filing or recording is necessary or advisable in any jurisdiction or before or with any governmental or private regulatory body in order to establish and perfect Lender's security interest in the Vessel or Grantor's Rights with respect to Grantor or any of Grantor's present or future creditors or any other third party whatsoever. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic facsimile, or other reproduction of a UCC Financing Statement or of this Ship Mortgage for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection, termination, and the continuation of the perfection of Lender's security interest in the Collateral.

**Waiver of Certificate.** The parties to this Ship Mortgage hereby waive the production of certificates and relieve and release the Notary before whom this Ship Mortgage is acknowledged from all responsibilities and liabilities in connection therewith.

**Further Covenants.** Grantor further represents, warrants and agrees that: (1) Grantor has agreed and consented to grant the security interest provided herein to secure payment of Borrower's Indebtedness in favor of Lender at Borrower's request and not at the request of Lender; (2) Grantor will receive and/or has received a direct or indirect material benefit from the transactions contemplated herein and/or arising out of Borrower's Indebtedness; (3) Grantor has established adequate means of obtaining information from Borrower on a continuing basis with regard to Borrower's financial condition; and (4) Lender has made no representations to Grantor as to the creditworthiness of Borrower. Grantor agrees to keep adequately informed of any facts, events or circumstances which might in any way affect Grantor's risks with regard to Borrower's Indebtedness. Grantor further agrees that Lender shall have no obligation to disclose to Grantor any information or material relating to Borrower's Indebtedness.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Ship Mortgage:

**Amendments.** No amendment, modification, consent or waiver of any provision of this Ship Mortgage, and no consent to any departure by Grantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness and Lender's legal expenses, incurred in connection with the enforcement of this Ship Mortgage. Lender may hire or pay someone else to help enforce this Ship Mortgage, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Ship Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Ship Mortgage.

**Exemption Waiver.** In granting this Ship Mortgage, Grantor waives any and all homestead exemptions and

**PREFERRED SHIP MORTGAGE**
**(Continued)**

other rights and all other exemptions from seizure or sale with regard to the Vessel to which Grantor may be entitled under the laws of the State of Louisiana.

**Governing Law.** This Ship Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Ship Mortgage has been accepted by Lender in the State of Louisiana.

**Notices.** To give Grantor any notice required under this Ship Mortgage, Lender may hand deliver or mail the notice to Grantor at Grantor's last address on Lender's records. If there is more than one Grantor under this Ship Mortgage, notice to a single Grantor shall be considered as notice to all Grantors. To give Lender any notice under this Ship Mortgage, Grantor (or any Grantor) shall mail the notice to Lender by registered or certified mail at the address specified in this Ship Mortgage, or at any other address that Lender may have given to Grantor (or any Grantor) by written notice as provided in this section. All notices required or permitted under this Ship Mortgage must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail as provided herein.

**Effect of Waivers.** Any failure or delay on the part of the Lender to exercise any of the rights and remedies granted under this Ship Mortgage or under any other agreement or agreements by and between Borrower and Grantor and Lender, shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies, it being Borrower's and Grantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Furthermore, any failure or delay on the part of Lender at any time or times hereafter to require strict performance by Borrower or Grantor of any of the provisions, warranties, terms and conditions contained herein or in any other agreement, document or instrument now or hereafter executed by Borrower or Grantor and delivered to Lender, shall not waive, affect or diminish the rights of Lender thereafter to demand strict compliance and performance therewith and with respect to all other provisions, warranties, terms and conditions contained herein or therein. None of the warranties, conditions, provisions and terms contained in this Ship Mortgage or any other agreement, document or instrument now or hereafter executed by Borrower or Grantor and delivered to Lender, shall be deemed to have been waived by any act or knowledge of Lender, its agents, officers or employees, but only by an instrument in writing specifying such waiver, signed by a duly authorized officer of Lender and delivered to Borrower or Grantor. A waiver or forbearance on the part of Lender as to one Event of Default shall not constitute a waiver or forbearance as to any other or subsequent default.

**Severability.** If any provision of this Ship Mortgage is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Ship Mortgage shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Ship Mortgage shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Ship Mortgage, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound; Solidary Liability.** Subject to any limitations set forth herein on transfer of the Vessel, this Ship Mortgage shall be binding upon and inure to the benefit of the parties, and their successors and assigns. In the event that there is more than one Grantor under this Ship Mortgage, all of the agreements and obligations made and/or incurred by any Grantor under this Ship Mortgage shall be on a "solidary" or "joint and several" basis.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Ship Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Ship Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code and Regulations thereunder dealing with or involving documented vessels, commercial instruments relating to such vessels, and maritime liens and in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.) when applicable:

**Additional Advance.** The words "Additional Advance" mean any and all additional sums that Lender may advance on Grantor's behalf as provided under this Ship Mortgage.

**Borrower.** The word "Borrower" means IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Ship Mortgage.

**Encumbrance.** The word "Encumbrance" means individually, collectively and interchangeably any and all presently existing and/or future mortgages, liens, privileges and other contractual and/or statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Vessel or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Ship Mortgage in the default section of this Ship Mortgage.

**PREFERRED SHIP MORTGAGE**
**(Continued)**

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means MR. STEVEN, LLC.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including principal, interest, costs, expenses and attorneys' fees and all other fees and charges together with all other indebtedness and costs and expenses for which Borrower is responsible under this Ship Mortgage or under any of the Related Documents.

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of the Note or any interest therein.

**Note.** The word "Note" means the Note dated September 28, 2015 and executed by IBERIA MARINE SERVICE, L.L.C.; MR. BLAKE LLC; MR. RIDGE LLC; LADY GLENDA LLC; MR. MASON LLC; MR. ROW LLC; LADY BRANDI L.L.C.; LADY EVE, L.L.C.; and MR. STEVEN, LLC in the principal amount of $22,500,000.00, together with all renewals, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means any and all of Grantor's additional rights granted and pledged to Lender as provided under this Ship Mortgage.

**Ship Mortgage.** The words "Ship Mortgage" mean this mortgage as the same may be amended or modified from time to time.

**Vessel.** The word "Vessel" means the following described vessel:

**Name:** MR. STEVEN;   **Official Number:** 1249191;   **Gross Tonnage:** 96;   **Net Tonnage:** 96;   **Year Built:** 2015;   **Date Certificate of Documentation Issued:** 05-05-2015;   **Hailing Port:** NEW IBERIA, LA;   **Grantor's Percentage of Interest:** 100.000%;   **Grantor's Interest:** 100.00;   **Lender's Percentage of Interest:** 100.000%;   **Lender's Interest:** 100.00;

together with any and all present and future engines, boilers, machinery, components, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances, fittings, spare and replacement parts, trailers, and any and all other appurtenances thereto, appertaining or belonging to the mortgaged vessel, whether now or hereafter acquired, and whether on board or not on board, together with any and all present and future additions, improvements and replacements thereof, made in or to the vessel, or any part or parts thereof.

**THIS DONE AND SIGNED,** on the day, month and year first written above, by the presence of the undersigned competent witnesses, who hereunto sign their names with Grantor after reading of the whole.

**WITNESSES:**

X _Eula Flemiox_
Witness   Eula Flemiox

X _Kim S. Rogers_
Witness   Kim S. Rogers

**GRANTOR:**

**MR. STEVEN, LLC**

By: _____
STEVE J. MIGUEZ, Manager of MR.
STEVEN, LLC

Loan No: 1000438770

**PREFERRED SHIP MORTGAGE**
(Continued)

Page 12

### ACKNOWLEDGMENT OF SUBSCRIBING WITNESS

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

BEFORE ME, the undersigned Notary Public, personally came and appeared the undersigned party, who declared that he or she was a witness to the foregoing Act and that he or she personally witnessed the parties thereto execute the same.

_____
Subscribing Witness
Eula Fleming

SWORN TO AND SUBSCRIBED BEFORE ME

on the _28th_ day of _September_, 20 _15_.

_____
STEVEN A. WATTS
NOTARY PUBLIC.
LA Bar/Notary ID No. _13783_

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _LOUISIANA_                    )
                                         ) SS
PARISH OF _Jefferson_                    )

BE IT KNOWN, that on this _28TH_ day of _SEPTEMBER_, 20 _15_ ;

BEFORE ME, a Notary Public,

PERSONALLY CAME AND APPEARED:

STEVE J. MIGUEZ, Manager of MR. STEVEN, LLC, a partner or designated agent of MR. STEVEN, LLC, who, being duly sworn, did say and acknowledge that he or she executed the foregoing Ship Mortgage on behalf of said limited liability company as its free act and deed.

GRANTOR:

MR. STEVEN, LLC

By: _____
STEVE J. MIGUEZ, Manager of MR.
STEVEN, LLC

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said Parish and State the date and year last above written.

Sworn to and subscribed before me this _28TH_ day of _SEPTEMBER_, 20 _15_.

_____
STEVEN A. WATTS
Notary Public
LA Bar/Notary ID No. _13783_

CERTIFICATE OF AUTHORITY

OF

MR. STEVEN LLC

At a meeting of all members of MR. STEVEN LLC, the undersigned being all of the officers and members of said limited liability company, do hereby take cognizance of and authorize, by unanimous consent, the following:

1.      Steve Miguez, a Manager of this limited liability company, namely, MR. STEVEN LLC, is hereby authorized and empowered, for and on behalf of this limited liability company, to enter into and execute a Settlement Statement, Promissory Note, Declaration of Citizenship, Preferred Ship Mortgage on Vessel "MR. STEVEN" in favor of First NBC Bank, and any other documents required by First NBC Bank to effectuate and secure the loan to Iberia Marine Service, L.L.C. et al in the total principal sum of $22,500,000.00.

The undersigned members of MR. STEVEN LLC, certify that Steve Miguez is the manager of MR. STEVEN LLC, and that the above and foregoing constitutes a true and correct copy of the Certificate of Authority duly adopted at a meeting of the members and officers of said limited liability company held on September 28, 2015, at which meeting all members were present and voted in favor of said Certificate of Authority, said Certificate of Authority; having never been modified or rescinded and remains in full force and effect.

Iberia Crewboat and Marine Services, LLC, Member

September 28, 2015

Date                                       Steve Miguez, Manager

3

EMAILED Batch #: 50596900 / Doc #: 47 / File Date: 2/9/2018 3:22:00 PM

## ASSIGNMENT OF PREFERRED SHIP MORTGAGE

**THIS ASSIGNMENT OF PREFERRED SHIP MORTGAGE** (this "Assignment") is being executed on the date or dates set forth below, but effective as of October 18, 2017 (the "Effective Date"), and is given by **FEDERAL DEPOSIT INSURANCE CORPORATION ("FDIC") as Receiver for First NBC Bank, New Orleans, Louisiana** (the "Assignor"), to and in favor of **SBN V FNBC LLC**, a Delaware limited liability company, (the "Assignee"), with offices at c/o Summit Investment Management LLC, Wells Fargo Center, Suite 2150, Denver, Colorado 80203.

### R E C I T A L S:

A.      The Mr. Steven, Official No. 1249191, (as defined in the Mortgage) is subject to and more particularly described in that certain Preferred Ship Mortgage (the "Mortgage") dated September 28, 2015, given by Mr. Steven, a limited liability company organized under the laws of the State of Louisiana (the "Shipowner") in favor of the Assignor and filed for record with the United States Coast Guard National Vessel Documentation Center (the "NVDC") on September 30, 2015 under Batch No. 30994200, Document ID 9, reference to which is hereby made for all purposes; and

B.      Pursuant to that certain Loan Sale Agreement (the "LSA"), dated as of October 18, 2017, the Assignor assigned to the Assignee, among other obligations, the indebtedness of the Shipowner to the Assignor secured by the Mortgage and evidenced in part by that certain promissory note dated September 28, 2015, made by Iberia Marine Service, L.L.C.; Mr. Blake LLC; Mr. Ridge LLC; Lady Glenda LLC; Mr. Mason LLC; Mr. Row LLC; Lady Brandi L.L.C.; Lady Eve, L.L.C.; and Mr. Steven, LLC payable to the order of the Assignor in the original principal amount of $22,500,000.00 together with certain additional rights of Assignor, including all of its rights under the Mortgage, to the Assignee, and has endorsed over to and delivered said promissory note to the Assignee; and

C.      The Assignor wishes to further assign to the Assignee, in form recordable in the records of the NVDC, all of the Assignor's right, title, interest and obligations in, to, and under the Mortgage.

NOW, THEREFORE, in consideration of the premises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1.      **Assignment.**  The Assignor does hereby grant, bargain, sell, transfer, assign and convey unto the Assignee all of Assignor's right, title, interest and obligations in, to, and under the Mortgage and all rights, power and benefits incident thereto.

Section 2.      . **Assumption.**

(a)      The Assignee hereby accepts the assignment granted, bargained, sold, transferred, assigned and conveyed by this Assignment, and assumes and agrees to perform all of Assignor's duties and obligations under the Mortgage from and after the date hereof.

1/2440955.2

EMAILED Batch #: 50596900 / Doc #: 48 / File Date: 2/9/2018 3:22:00 PM

(b)     The Assignee hereby acknowledges receipt of a copy of the Mortgage.

Section 3.     Amount of Interest Assigned.  For purposes of 46 U.S.C. Chapter 313 and 46 C.F.R. Subpart 67.237, this Assignment transfers one hundred percent (100%) of the interest of the Assignor, who is no longer the Mortgagee, to the Assignee who has become the Mortgagee.

Section 4.     Successors and Assigns.  All the covenants, promises, stipulations and agreements of the parties in this Assignment contained shall (a) bind Assignor and its successors and assigns (b) inure to the benefit of Assignee and its successors and assigns.

Section 5.     LSA Terms.  This Assignment is subject to such other additional limitations, disclaimers, waivers and qualifications as may be further set forth in the LSA.

Section 6.     Invalidity.  If any one or more of the provisions of this Assignment should at any time for any reason be declared invalid, void or otherwise inoperative by a court of competent jurisdiction, such declaration or decision shall not affect the validity of any other provision or provisions of this Assignment or the validity of this Assignment as a whole.

Section 7.     CHOICE OF LAW.  THIS ASSIGNMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE FEDERAL MARITIME LAWS OF THE UNITED STATES OF AMERICA, TO THE EXTENT SUCH LAWS ARE APPLICABLE TO THIS ASSIGNMENT AND, TO THE EVENT SUCH LAWS ARE INAPPLICABLE, THE LAWS OF THE STATE OF LOUISIANA EXCEPT THE RULES GOVERNING CONFLICTS OF LAW.

Section 8.     Counterparts; Fax.  This Assignment may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, but all of which when taken together shall constitute one and the same instrument.  For purposes of negotiating and finalizing this document, if this document is transmitted by facsimile machine or a PDF document or similar format sent electronically, it shall be treated for all purposes as an original document.  Additionally, the signature of any party to this document transmitted by way of a facsimile machine or electronically shall be considered for all purposes as an original signature.  Any such document sent via facsimile machine or electronically shall be considered to have the same binding legal effect as an original document.  At the request of any party, any such document sent by facsimile machine or electronically shall be re-executed by each signatory party in an original form.  The parties agree that none of them shall raise the use of a facsimile machine or electronic submission as a defense to this document and forever waive such defense.

Section 9.     Headings.  The headings, captions, and arrangements used in this Assignment are for convenience only and shall not affect the interpretation of this Assignment.

Section 10.     NO ORAL AGREEMENTS.  THIS ASSIGNMENT EMBODIES THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THIS ASSIGNMENT, AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF

2

1/2440955.2

EMAILED Batch #: 50596900 / Doc #: 48 / File Date: 2/9/2018 3:22:00 PM

PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES HERETO.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY OR AS RECEIVER.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]*

3

1/2440955.2

EMAILED Batch #: 50596900 / Doc #: 49 / File Date: 2/9/2018 3:22:00 PM

IN WITNESS WHEREOF, the Assignor has executed this Assignment on this *8th* day of *February*, 2018, effective as of the date first above written.

**ASSIGNOR:**

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for FIRST NBC BANK, New Orleans, Louisiana**

By: _____

Name: Melissa J. Hunting

Title: Attorney-in-Fact


THE STATE OF COLORADO

COUNTY OF DENVER

This instrument was acknowledged before me on *February 8,* 2018, by Melissa J. Hunting, Attorney-in-Fact for Federal Deposit Insurance Corporation as Receiver for First NBC Bank, New Orleans, Louisiana.

_____

Notary Public, State of Colorado

My Commission Expires: ___4-27-2019___

[S E A L]

```
WILLA MINSER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154016751
MY COMMISSION EXPIRES  APRIL 27, 2019
```

Signature Page to Assignment of Preferred Ship Mortgage

1/2440955.2

EMAILED Batch #: 50596900 / Doc #: 49 / File Date: 2/9/2018 3:22:00 PM

IN WITNESS WHEREOF, the Assignee has executed this Assignment on this _8th_ day of _February_, 2018, effective as of the date first above written.

**ASSIGNEE:**

**SBN V FNBC LLC**

By: _____

Name: Steven C. Petrie

Title: Authorized Signer

THE STATE OF COLORADO

COUNTY OF DENVER

This instrument was acknowledged before me on _February 8th_, 2018, by Steven C. Petrie, Authorized Signer of SBN V FNBC LLC, a Delaware limited liability company.

_____

Notary Public, State of Colorado

> WILLA MINSER
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20154016751
> MY COMMISSION EXPIRES  APRIL 27, 2019

Signature Page to Assignment of Preferred Ship Mortgage

1/2440955.2

4

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of
SBN V FNBC LLC
Without Recourse

that certain Promissory Note dated September 28, 2015 in the original principal amount of
$22,500,000.00, executed by Iberia Marine Service, L.L.C.; Mr. Blake LLC; Mr. Ridge
LLC.; Lady Glenda LLC.; Mr. Mason LLC.; Mr. Row LLC.; Lady Brandi L.L.C.; Lady
Eve, L.L.C.; and Mr Steven, LLC made to First NBC Bank as the same may have been
renewed, assigned, amended, supplemented, restated or modified.

Effective as of October 18, 2017.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for FIRST NBC BANK, New Orleans, Louisiana

By: _____
Name: Melissa J. Hunting
Title: Attorney-in-Fact