UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| | * | |
| MR. STEVEN, L.L.C. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE JOHN W. KOLWE |
| | * | |

* * * * * * * * * * * * * * * * * * *

**POST-TRIAL MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) AND ENTITLEMENT TO FUNDS SUBJECT TO TURNOVER MOTION**

SBN V FNBC LLC ("SBN") respectfully submits this post-trial memorandum in support of its Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d) ("Stay Motion") [D. 60] and in support of its entitlement to the funds which are the subject of the Motion to Determine Property of the Estate and for Turnover of Property ("Turnover Motion") [D.29] filed by Mr. Steven, LLC ("Debtor"). SBN incorporates by reference the Stay Motion, its Reply and Supplemental Memorandum [D. 101], and its Limited Objection to the Turnover Motion [D. 94].[1]

**I.  SBN's Security Interest and Mortgage Attaches to Charter and Charter Payments**

In the SBN Mortgage, Debtor granted a security interest in, *inter alia*, charters, rents, revenue, freight, payments and other rights derived from the Vessel:

> **ADDITIONAL SECURITY IN RIGHTS.** Grantor further grants a continuing security interest in the following Rights in favor of Lender as additional collateral security for the prompt and punctual payment of the Indebtedness:
>
> **Leases, Charters, Rents, and Profits.** Any and all present and future leases or charters affecting the Vessel, including without limitation any and all rents, income, profits, bonuses, revenues, royalties, cash or security deposits, advance rentals and other payments, and further including Grantor's rights to enforce such leases or charters and to receive and enforce any rights that Grantor might have to collect such payments.
>
> **Earnings and Other Revenues.** Any and all freight, hire, earnings, issues, revenues, accounts, assets, payments, income and profits derived or to be derived from the use or operation of the Vessel, or any part or parts thereof, including the rights of Grantor to receive such payments directly from the obligor or obligors thereof, and to further enforce any rights that Grantor collect such payments, including, but not limited to, Grantor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

---

[1] Capitalized terms herein have the meanings ascribed to such terms in these pleadings. Because Debtor and SeaTran took identical positions on all issues at the December 18, 2018 hearing, the term "Debtor" herein references Debtor and/or SeaTran unless otherwise stated. Also, since the transcript from the hearing is not yet available, SBN has relied upon its notes in summarizing the evidence.

1

Pursuant to La. R.S. 10:9-102(vi), "account" under the UCC means, among other things, "a right to payment of a monetary obligation, whether or not earned by performance . . . for the use or hire of a vessel under a charter or other contract." The Mortgage and the UCC-1 fully describing the UCC property contained in the Mortgage were both properly filed.[2] The Guice Charter between SeaTran Marine and Guice Offshore specifically recognizes the Mortgage on the Vessel (which recognition Debtor's witness Mr. Tizzard reluctantly admitted he requested).[3]

Despite this clear evidence, Debtor asserts that SBN's Mortgage and security interests do not attach to the charter payments because an "assignment of master charter agreement" was not executed. Debtor's argument was not contained in any pleading but simply stated on the record by SeaTran's counsel without citation to authority. The properly recorded Mortgage contains express language covering charters, freight, and related payments and rights such that the mortgage covers such rights for purposes of the Ship Mortgage Act. *See In re Levy–Mellon,* 61 B.R. 331, 334 (Bankr. W.D.La. 1986). The properly recorded UCC-1 likewise expressly describes such rights. La. R.S. 10:9-102(vi). SBN established that it has a properly perfected mortgage and security interest that attaches to the charter payments owed to Debtor and that SBN provided proper notice to SeaTran and Guice to collect the payments prior to the Debtor filing bankruptcy. *See also* La. R.S. 10:9-406. SBN has not located any authority suggesting that a lender who both records a consensual mortgage and files a UCC-1 has not perfected its lien on charters and charter payments. SBN has not located any authority suggesting that an assignment of master charter agreement is necessary, effective or desirable.

Debtor also claims that, by oral agreement, it transferred its rights to the charter payments from the Vessel to SeaTran prior to the Mortgage. On the one hand Debtor argues that a special assignment of master charter agreement was required for SBN to obtain a collateral assignment of

---

[2] SBN Trial Exhibits 3, 4, and 5.
[3] SBN Exhibit 13, box 28, p. 2 and clause 12(b); SBN Exhibit 15.

2

charter payments despite that the Mortgage contains these terms, while on the other hand Debtor argues that this this Court should accept Debtor's claim that it effectively orally assigned charter payments to SeaTran in violation of the written Mortgage. Putting aside its conflicting positions, Debtor failed to introduce any competent evidence to establish an effective assignment of rights relating to the Vessel in the form required by law[4] or to refute the clear terms of the Mortgage and the UCC-1. In fact, Debtor admitted that the Mortgage and the other loan agreements stated that Debtor owned these rights and did not recognize the alleged assignment. Debtor was not able to reference anything in writing where Debtor even told First NBC Bank ("FNBC") about this alleged assignment (much less a subordination or attornment agreement). Clearly the alleged extrinsic evidence of an oral agreement is not admissible to refute the terms of the Mortgage.[5]

Even if this Court were to consider Debtor's extrinsic evidence (and it clearly should not), Debtor's purported evidence undermines its position. In fact, in the inadmissible June 23, 2015 email,[6] Mr. Tizzard, an officer of SeaTran, assures FNBC that it did not need financials from SeaTran because it is just a co-op and a management company who will remit **100%** of the receivables from the Vessel to the vessel owners. Nothing in this email or any other document discloses or even suggests that Debtor had orally assigned charters and the payments from charters relating to the Vessel to SeaTran. Obviously, if Debtor had disclosed that it had made such a transfer in violation of the Mortgage the bank would have required that SeaTran grant a security interest on such rights. Mr. Tizzard was unable to provide any credible evidence of an effective assignment, consideration provided to Debtor for any such assignment, or that effective notice of any such assignment was provided to FNBC.

---

[4] Any assignment of a documented vessel or any part of a vessel must be filed with the Secretary of the Department of Homeland Security to be valid. 46 U.S. Code § 31321
[5] See La. R.S. 6:1122.1, La. R.S. 6:1122, La. Civ. Code art. 1848 (precluding evidence that would negate or vary terms of authentic act or act under private signature); 12 U.S.C 1823(e) (codifying the *D'Oench, Duhme* doctrine).
[6] SeaTran Exhibit 3.

Regardless, more than two months **after** the June 23, 2015 email, Debtor, with Mr. Tizzard's assistance, agreed to and signed the Mortgage in which Debtor represented and warranted that it owned the charter rights and payments which it had not and would not transfer. Mortgages would mean nothing if debtors could evade them by alleging a prior oral assignment of the rights granted to the mortgagee. SBN is entitled to the charter payments. This Court should order that the charter payments being held by Guice be remitted to SBN pursuant to its security interest and prepetition notice to Guice and SeaTran. *See* La. R.S. 10:9-406(a); 10:9-607(a).

## II. SBN Is Entitled to Relief from the Automatic Stay and/or the Stay Is Terminated

Under section 362(g), Debtor bears the burden of proof on all issues except its equity in the Vessel. Debtor failed to refute SBN's evidence establishing its entitlement to stay relief under section 362(d)(1) and (2).

### A. Section 362(d)(2)

SBN established both requisites for relief under section 362(d)(2). Debtor's schedules establish that it has no equity in the Vessel.[7] The Vessel was not necessary to an effective reorganization because Debtor cannot confirm a plan over SBN's objection. Numerous courts have held that property is not necessary to an effective reorganization in such case.[8] Debtor cannot obtain the vote of an impaired accepting non-insider class as required by section 1129(a)(10).

To try to avoid this plain result, Debtor amended its schedules the day before the December 18, 2018 hearing (*after* the depositions of Debtor and Mr. Miguez had been taken) to add three unsecured creditors (Adams & Reese in the amount of $10,050.69, an accounting firm with an

---

[7] As discussed in the Supplemental Memorandum, the Fifth Circuit has held that property owned by other parties may not be considered for purposes of determining equity under section 362(d)(2). *McManus v. Cadle Co. (In re McManus)*, 30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. Jul. 18, 1994) (unpublished). Other courts agree. *See In re SW Boston Hotel Venture LLC*, 449 B.R. 156 (Bankr. D. Mass. 2011); *NationsBank of Virginia, N.A. v. DCI Pub of Alexandria, Inc.*, 160 B.R. 538, 539 (E.D. Vir. 1993).

[8] *In re 500 Fifth Ave. Associates*, 148 B.R. 1010, 1021 (Bkrtcy. S.D.N.Y. 1993); *In re 266 Washington Associates*, 141 B.R. 275, 281 (Bkrtcy. E.D. N.Y. 1992); *In re State Street Assocs., L.P.*, 342 B.R. 32, 44-45 (Bkrtcy. N.D. N.Y. 2005).

4

alleged claim of $1,152.50, and a law firm with a claim of $329.50). Debtor's original schedules, prepared by Adams & Reese, listed SBN as the sole non-insider creditor and Mr. Miguez testified at the section 341 meeting that he was not able to identify any other creditors.[9] On page 6 of its employment application and paragraph 4 of the accompanying affidavit [D. 18; 18-1], Adams and Reese affirmatively represented to the Court that "Adams and Reese is not a creditor, equity security holder or insider of the Debtor."

Regardless, even under the Debtor's highly suspect amended schedules, SBN's deficiency claim, which according to the Debtor's schedules is more than $10,000,000, would constitute more than 99% of the unsecured class. Thus, Debtor cannot obtain the 2/3 in amount necessary to carry this class.[10] The Fifth Circuit and other courts have made clear that Debtor cannot separately classify SBN's deficiency claim to avoid this result.[11] Debtor failed to cite to any authority or evidence to establish that it can confirm a plan over SBN's objection.

Further, Debtor's proposed plan term sheet, discussed further below, is premised on the continued impermissible pretext that the charter payments are owned by a nondebtor entity, and worse, that the nondebtor entity would use Debtor's charter payments to pay the obligations of other vessels owned by other separate entities. As explained above, Debtor's position is in direct violation of the Mortgage and unlawful, rendering Debtor's plan un-confirmable on its face.[12] SBN is entitled to relief from the stay under section 362(d)(2).

B. <u>Section 362(d)(1)</u>

Likewise, SBN is entitled to relief from the stay under section 362(d)(1). At the hearing, SBN established that each of the *Little Creek* factors is present in this case. Debtor did not

---

[9] Supplemental Memorandum, Exhibit H, § 341 Meeting Transcript, Nov. 27, 2018, at 18:4-7.
[10] 11 U.S.C. §1126(d).
[11] "The Debtor's classification of claims predicament is insoluble." *In re 266 Washington Associates*, 141 B.R. at 287; *see also In re Greystone III Joint Venture,* 948 F.2d 134, 137-38 (5th Cir.1991), *withdrawn in part, reinstated in part on reh'g* (5th Cir.1992), *cert. denied,* ___ U.S. ___, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992).
[12] *See*, *e. g.* 11 U.S.C. §1129(a)(1)-(3).

introduce any evidence to the contrary.

Although not necessary to establish its entitlement to relief from the stay, SBN's unrefuted evidence showed that Debtor and Miguez engaged in a lengthy pattern of delay and bad faith in dealing with SBN. Indeed, Debtor added to the already lengthy list of bad faith tactics set forth in the Supplemental Memorandum and Motion by (i) filing its amended schedules the day before the hearing and after SBN had taken the deposition of Debtor and Miguez, (ii) emailing SBN counsel the plan term sheet at 9:04 pm the night before the hearing, and (iii) seeking, without advance notice to SBN, a status conference with the Court wherein it requested that the final hearing on the Motion be continued to a later date despite that SBN's witnesses had travelled for the hearing.

Debtor's legal position that the insider and non-debtor SeaTran owns the Guice charter and payments further established Debtor's bad faith. Debtor's inexplicable legal position that is directly contrary to its interest is so factually and legally baseless that it could only be posited to frustrate and improperly delay payment to SBN. Debtor sets forth no evidence or cogent legal argument to support its position. Debtor literally relied on its alleged oral assignment of charter rights to a non-debtor affiliate despite its clear representations in the Mortgage that it owned and would not assign such rights, despite recognition of the Mortgage in the Guice Charter, and despite that Debtor's own inadmissible evidence assuring the bank that 100% of the charter payments would be remitted to the vessel owners. Rather than recognize its clear obligations under the Mortgage as it faced bankruptcy, Debtor executed the Vessel Operating Agreement ("VOA") the day before it filed! While completely unenforceable to defeat the Mortgage or impact SBN's rights, the egregiously one-sided VOA firmly established that Debtor will literally stop at nothing to benefit its non-debtor insider affiliates at the expense of SBN and itself. Debtor's purported attempt to convey full control of its single asset to a non-debtor who is not subject to the Bankruptcy Code or this Court's supervision the day before filing bankruptcy is the epitome of bad faith. If this arrangement were upheld, this Court can expect to see a flood of other debtors

who have erected similar unseemly devices to defeat their obligations to their lenders.

Debtor could not even provide a straightforward explanation of the arrangement. Mr. Tizzard testified that if the Vessel's charter generated $100,000 per month that Debtor would receive the $100,000. Mr. Tizzard later said that the $100,000 would be subject to offset and then later that the charter payments would be available to fund the operating needs of other vessels owned by others. Notably, Debtor relied upon Mr. Tizzard to defend its position despite that Mr. Tizzard is not an officer or employee of Debtor but rather is an officer and fiduciary of SeaTran.

In its Motion, SBN referenced the $2.7 million transferred by Debtor to its nondebtor affiliate just before filing bankruptcy. In its opposition, Debtor explained this transfer as an intercompany offset. However, Debtor put forth no evidence concerning this intercompany offset or why it did not use these funds to pay its lender rather than an alleged intercompany obligation.

Indeed, SBN established that Debtor chose not to make payments after July 2017 to SBN despite available funds. Debtor's own evidence of its limited prepetition negotiations with SBN established that Debtor never sought to continue making payments but rather only sought to satisfy the SBN debt at a fraction of what was owed. Debtor's attempt to thwart SBN to leverage a discount on its debt is in bad faith. Debtor failed to introduce any evidence to refute this evidence of bad faith or of its "failure to deal with creditors fairly even where 'bad faith' is not found."[13]

Instead, Debtor feebly asserted that employing a management company is common in the industry. Debtor misses the point. The issue is not management of the Vessel by a management company, but the purported transfer of mortgaged rights (along with the rights of first refusal, exclusive broker status, a lien, exclusive control, waivers, one-sided indemnification, early termination fees, and other rights) to a non-debtor so as to defeat the rights of the mortgagor. Owners of office buildings will frequently employ a management company to lease space and

---

[13] *In re AMC Realty Corp.,* 270 B.R. 132, 140 (Bankr.S.D.N.Y.2001) (citations omitted).

7

collect rents. However, no one would argue that the owner could transfer legal title of the leases to the management company so as to defeat the rights of the mortgagor to directly collect rents. Yet this is precisely what the Debtor has argued (despite that its position is plainly contrary to law, the facts, the Mortgage, *and its own interest*).

Unable to refute SBN's evidence as to the *Little Creek* factors and bad faith, Debtor introduced a plan term sheet (emailed to SBN counsel the night before the hearing) without articulating its relevance. A plan term sheet does not change the evidence establishing the *Little Creek* factors or the extensive bad faith of Debtor. The plan term sheet does not change that Debtor cannot obtain the vote of an impaired class for any plan as required by section 1129(a)(10).

What Debtor's plan term sheet illustrates is that Debtor intends to continue its existing arrangement to impermissibly vest complete control of, and rights to, its Vessel charter payments outside of Debtor. Mr. Tizzard testified that under the plan term sheet the revenue generated by from Debtor's Vessel would be available to fund the operational shortfalls of other separate entities' vessels.[14] Debtor failed to provide any legal justification for diverting Debtor's revenue to other entities or how such a plan could be confirmable. Debtor seeks to perpetuate its bad faith arrangement with the non-debtor entities, in clear breach of the Mortgage. Meanwhile, as to SBN's claim, Debtor seeks a lengthy term, lengthy amortization and reduced fixed interest rate despite the risks to a lender inherent in its bad faith arrangement. Debtor cannot confirm such a Plan.

Lack of adequate protection is only one type of cause mandating relief from the stay under Section 362(d)(1).[15] In this case, SBN established cause mandating relief from the stay based upon the *Little Creek* factors and Debtor's bad faith. Debtor's purported offer of adequate protection

---

[14] *See also* SeaTran Exhibit 7.

[15] "Although Congress singled out lack of adequate protection as sufficient cause for modification of the automatic stay, it also made clear that cause under § 362(d)(1) was not limited to lack of adequate protection. H.Rept. No. 95–595, U.S.Code Cong. & Admin.News 1978, p. 5787 to accompany H.R. 8200, 95th Cong., 1st Sess. 343 (1977). Debtor misconduct can constitute cause under § 362(d)(1)." *Farmers & Merchants Bank & Trust v Trail West, Inc.*, 28 BR 389, 394 (DC SD 1983).

(which itself is in bad faith as explained below) does not remove or alleviate the other clear bases warranting stay relief in this case. As explained above, SBN is entitled to relief from the stay regardless of Debtor's purported offer of adequate protection.

Assuming purely for the sake of argument that SBN were only relying on a lack of adequate protection, Debtor still has not offered to adequately protect SBN's interests. Debtor has effectively placed complete control of its sole asset and the title and rights in its charters to a nondebtor that is not subject to SBN's Mortgage and other loan documents. Meanwhile, Debtor enjoys the benefits of the stay to prevent SBN from foreclosing on its collateral. SBN has not found a case or other authority that would countenance this misuse of the bankruptcy process.

While Debtor focused on diminution in value of the Vessel itself, Debtor ignored the diminution in value of SBN's related collateral, the charter and charter payments. Debtor failed to establish that SBN's interests in such rights are being adequately protected. In fact, Debtor established that such rights had purportedly been conveyed to the nondebtor SeaTran (in written form the day before it filed bankruptcy). Debtor has failed to offer any adequate protection to SBN arising from SeaTran's purported conversion of SBN's collateral rights related to the Vessel.

Further, diminution in collateral value is not the sole measure of adequate protection. Numerous courts have found that cause exists to lift the stay for lack of adequate protection where a debtor fails to make monthly mortgage payments regardless of diminution in collateral value. "The failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code."[16] Debtor's purported offer of $25,000 a month as adequate protection is itself

---

[16] *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008); *see also Campora v. HSBC Bank USA, N.A. (In re Campora)*, 2015 WL 5178823, at *5 (E.D.N.Y. Sept. 3, 2015); *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994); *In re Balco Equities Ltd.*, 312 B.R. 734, 749 (Bankr. S.D. N.Y. 2004); *In re Sterling*, 2018 WL 313085 *5 (S.D. N.Y. 2018).

in bad faith.[17] Debtor's original monthly interest only payments under the Note were $149,396.47.[18] Debtor's income from the Guice Charter is more than $100,000 per month with no attendant expense except the SeaTran management fee of $1,500 per month.[19] Facing SBN's Motion, Debtor only offered to pay SBN $25,000 per month despite its evidence as to the alleged availability of millions of dollars in Capital Construction Funds to pay the debt and the revenue from the Guice Charter. Why would Debtor not want to pay SBN under the facts of this case? If this were a single asset real estate case rather than a single asset vessel case, Debtor would be statutorily mandated to pay at least interest on the debt.[20] Debtor's failure to offer adequate protection by resuming payments, even if only accrued interest, is further evidence of bad faith.

    **C.**    **Section 362(e)**

At the December 18, 2018 hearing, Debtor requested time to file an additional brief but did not request that the stay be extended. Under section 362(e), the automatic stay terminates 30 days after the filing of a stay relief motion unless the stay is ordered to remain in effect. *See In re River Hills Apartments Fund*, 813 F.2d 702, 706 (5th Cir. 1987). Since 30 days have elapsed since SBN filed the Motion on November 26, 2018, the stay is terminated by operation of law.

**III.**    **Conclusion**

SBN requests that this Court (i) order that the funds being held by Guice be remitted to SBN pursuant to its security interest and prepetition notice to both Guice and SeaTran, and (ii) lift the automatic stay pursuant to section 362(d)(1) and (2) or recognize that the stay has been terminated pursuant to section 362(e).

---

[17] Debtor's expert admitted the incontrovertible fact that a vessel depreciates more over the early period of its life than the later period and the Vessel was put in service in 2015. Nonetheless, Debtor's expert used a flat schedule of $25,000 per month to depreciate the $16,000,000 cost over 40 years! This conflicts with Debtor's Schedules which lists the value of the Vessel at $12,614,459.61. If the Vessel was placed in service in January of 2015, Debtor's Schedules reflect that the value has depreciated by $3,385,540 over the period of 46 months or $73,598.70 per month.
[18] SBN Exhibit 1.
[19] Mr. Tizzard testified that the Vessel is treated as stacked and charged $1500 per month overhead.
[20] 11 U.S.C. §362(d)(3).

Respectfully submitted,
CARVER, DARDEN, KORETZKY, TESSIER
FINN, BLOSSMAN & AREAUX, L.L.C.

  /s/ David F. Waguespack
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102
Telephone: (504) 585-3814
Facsimile: (504) 585-3801

*Counsel for SBN V FNBC LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Post-Trial Memorandum in Support of Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Entitlement to Funds Subject to Turnover Motion* has been served by ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on December 28th, 2018.

  /s/ David F. Waguespack
DAVID F. WAGUESPACK

**Exhibit 1**

Benjamin W. Kadden on behalf of Interested Party Seatran Marine, LLC
bkadden@lawla.com, mnguyen@lawla.com

William Kaufman on behalf of Interested Party Guice Offshore, LLC
whkaufman@ohllc.com, egnormand@ohllc.com

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Stewart F. Peck on behalf of Interested Party Seatran Marine, LLC
speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com

Peter James Segrist on behalf of Creditor SBN V FNBC LLC
segrist@carverdarden.com, clary@carverdarden.com

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

Randall Scott Wells on behalf of Interested Party Guice Offshore, LLC
swells@rushing-guice.com

Greta M. Brouphy on behalf of Debtor Mr. Steven, L.L.C.
gbrouphy@hellerdraper.com

Douglas S. Draper on behalf of Debtor Mr. Steven, L.L.C.
ddraper@hellerdraper.com, kfritscher@hellerdraper.com;lcollins@hellerdraper.com

4830-3610-8164, v. 2