UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| | * | |
| MR. STEVEN, L.L.C. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | JUDGE JOHN W. KOLWE |
| | * | |

* * * * * * * * * * * * * * * * * *

**OBJECTION TO MOTION FOR ORDER AUTHORIZING APPROVAL
AND AUTHORIZATION OF DEBTORS TO OBTAIN AND
EXECUTE POSTPETITION FINANCING TERM SHEET PURSUANT TO SECTIONS
105 AND 364(C) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2003, 4001 AND 9014 AND LOCAL RULE 4001-1(B)(1)**

SBN V FNBC LLC ("SBN") respectfully objects to the Motion for Order Authorizing Approval and Authorization of Debtors to Obtain and Execute Postpetition Financing Term Sheet Pursuant to Sections 105 and 364(C) of the Bankruptcy Code and Bankruptcy Rules 2003, 4001 and 9014 and Local Rule 4001-1(B)(1) ("Motion") filed by Mr. Steven, L.L.C., Lady Eve, LLC, Lady Brandi, LLC, Lady Glenda, LLC, Mr.Blake, LLC, Mr. Mason, LLC, Mr. Ridge, LLC and Mr. Row, LLC (collectively "Debtors") and represents as follows:

1. In the Motion, the Debtors seek to obtain court approval of a DIP loan from SeaTran Marine, LLC ("SeaTran") and Mr. Miguez pursuant to the terms of a DIP Loan Term Sheet attached to the Motion as Exhibit A. SBN opposes this relief on a number of grounds as set forth herein.

2. SBN incorporates by reference its Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d) ("Stay Motion") [D. 60], its Limited Objection to Motion to Determine Property of the Estate and for Turnover of Property [D.94], its Reply and Supplemental Memorandum in

1

Support of the Stay Motion [D. 101], and its Post-trial Memorandum in Support of the Stay Motion [D. 116](collectively "SBN Pleadings").[1]

3. As set forth in the SBN Pleadings, SeaTran has converted Debtors' cash (which constitutes SBN's cash collateral) and other rights relating to its vessels pursuant to a Vessel Operating Agreement ("VOA") executed by Debtors the day before Mr. Steven, LLC filed bankruptcy. Pursuant to the VOA, Debtors have purported to yield complete control of their vessels and rights relating to those assets (including rights which were mortgaged to SBN) to SeaTran. SeaTran is improperly operating the Debtors' vessels and using their cash outside of the supervision of this Court and the requisites of the Bankruptcy Code.

4. In the Motion, Debtors claim that the DIP Loan is "required to ensure" that Debtors are able to pay its professionals, US Trustee fees, adequate protection payments to SBN and working capital for Debtors' respective businesses subject to the consent of the DIP Lender to be exercised in its sole and absolute discretion.[2]

5. However, Debtors fail to disclose that SeaTran has effectively cutoff Debtors from their cash. Would Debtors need a DIP Loan if SeaTran would simply remit 100% of the proceeds from the charter of the Vessels to the vessel owners as it represented it would do when Debtors borrowed $23,500,000 from First NBC (SBN's predecessor)? Because SeaTran is not in bankruptcy and is not required to file schedules and monthly operating reports, SBN does not know the answer to this question and has no idea what SeaTran is doing with Debtors' funds (and SBN's collateral).

---

[1] Capitalized terms herein have the meanings ascribed to such terms in these pleadings. Because Debtor and SeaTran took identical positions on all issues at the December 18, 2018 hearing, the term "Debtor" herein references Debtor and/or SeaTran unless otherwise stated. Also, since the transcript from the hearing is not yet available, SBN has relied upon its notes in summarizing the evidence.

[2] Motion, p. 3.

2

SeaTran and Miguez are both insiders of Debtor, and their status as such should have been disclosed and explained in the Motion.

6. To date, Debtors have failed to take steps to remedy this situation. Debtors has failed to reject or annul the alleged VOA such that it would timely receive the full revenue from its vessels (and if employing a manager, obtain court approval for such an arrangement). Debtors are allowing SeaTran to use SBN's cash collateral without Court approval. Rather than file a motion to use cash collateral, Debtors have chosen to perpetuate the VOA and its disastrous consequences to Debtors by requesting approval of a DIP Loan from the party who is controlling their funds.

7. Debtors acknowledge on page 7 of the Motion that they must establish that the DIP loan is "necessary to preserve the assets of the estate" and the "terms of the transaction are fair, reasonable, and adequate…" On page 8 of the Motion, Debtors claim that the DIP loan is necessary to avoid "immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees and their assets." However, Debtors do not provide any facts to support their assertions and certain of these allegations are demonstrably false.

8. Debtors have not explained why the DIP loan is necessary to preserve the assets of the estate. In fact, if Debtors would simply insist that they receive the revenue from their Vessels they may not need a DIP loan at all. Why is Debtors borrowing funds from an entity that should be a pass through entity, remitting 100% of the revenue from Debtors' vessels to Debtors? Essentially, Debtors are having to pay interest and fees to SeaTran to receive back their own money! If SeaTran were simply a co-op or management company it would not have any funds to lend to Debtors. Further, Debtors have no employees and no operating businesses so the assertions of irreparable harm are clearly not correct.

9. In consideration for providing the Debtors the DIP Loan (effectively the revenue from their own vessels), SeaTran would be provided interest and also be entitled to have its attorney fees paid by Debtor. As reflected by the recent hearing before this Court, SeaTran will be an active participant and possible defendant in future actions. The Debtors' estates should not bear the expenses of SeaTran's counsel under the guise of a DIP Loan.

10. In addition, according to the DIP Loan Term Sheet attached to the Motion, the DIP Loan Agreement will include "prohibitions against the filing of a Plan of Reorganization that has not been approved by the Lender prior to filing" and will "ensure that Lender shall have oversight of all financial aspects of Borrowers' business and shall have the authority to impose financial protocols and procedures in the Lender's sole discretion." While SBN believes that it will be granted stay relief in these cases, to the extent that it is not successful, the proposed terms would prevent a trustee or a creditor from proposing a plan that is not acceptable to SeaTran and prevent the VOA from being rejected. In short, the DIP Loan ensures that SeaTran will maintain its inappropriate control of Debtors even if a trustee is appointed or Debtors otherwise become free of their conflicted management.

11. Further, Debtors ignore that they are separate debtors with separate cases which are only being jointly administered and are not consolidated. Debtors should not be permitted to effectively consolidate their cases through the Motion. The few factual allegations in the Motion pertain to the "Debtors" rather than each Debtor. For example, which Debtor needs the funds from the DIP loan? How will Debtors each account for their use of the proceeds from the DIP loan? Why are all of Debtors liable for the full DIP loan regardless of which Debtor utilized the funds from the DIP loan? Debtors do not specify how the use of funds would be tracked between them.

12. SBN is particularly concerned that Debtors are not abiding by their obligations to treat their affairs separately as required by the Bankruptcy Code in light of testimony presented at the December 18, 2018 hearing. SeaTran's Mr. Tizzard, who is not an officer or employee of any of Debors, testified that the revenue from the Mr. Steven would being utilized to fund shortfalls of the other entities in any plan. SBN is not clear as to whether SeaTran is currently using certain Debtors' cash to pay other Debtors' expenses or otherwise commingling Debtors' affairs. Clearly this use of cash violates sections 363 and 541 of the Bankruptcy Code. Debtors cannot further exacerbate this situation through the DIP Loan.

13. The Motion further references DIP Loan Documents but fails to attach the documents which Debtors will be required to execute. Further, the DIP Term Sheet includes a disclaimer stating that the terms may change. SBN objects to Debtors' execution of any loan document not timely provided to SBN to review and any provision that is not specifically set forth in the Motion and approved by the Court.

14. Although the Motion does not seek to grant a lien on any assets of Debtors to secure the DIP Loan (apparently not necessary since Debtors purported to transfer charter rights and charter payments to SeaTran prior to filing bankruptcy and purported to grant SeaTran a lien prior to filing bankruptcy), Debtors do seek to grant SeaTran a superpriority administrative expense claim. SBN opposes a superpriority administrative expense claim as it may adversely impact Debtors ability to pay a trustee or his counsel. If these cases survive SBN's motions to lift stay, SBN submits that a trustee may be necessary in light of Debtors' conflicted management.

15. In the Motion, Debtors seek a good faith finding as to the DIP Lender which is both Mr. Miguez and SeaTran, an entity controlled by Mr. Miguez' son (who enrolled as co-counsel to represent Mr. Miguez in SBN's suit on Mr. Miguez' guaranty and then obtained three extensions

of time due to his legislative duties).  Debtors fail to identify which lender will control the DIP Loan and exercise the rights of the lender.  SBN strongly opposes any good faith finding.  The DIP Lenders are seeking to further protect SeaTran's position to the detriment of Debtors.  SBN incorporates the SBN Pleadings herein specifically as to the bad faith of SeaTran and Mr. Miguez in this case.

16. SBN requests that this Court deny the Motion.

Respectfully submitted,
CARVER, DARDEN, KORETZKY, TESSIER
FINN, BLOSSMAN & AREAUX, L.L.C.

  /s/ David F. Waguespack
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163-1102
Telephone:  (504) 585-3814
Facsimile:   (504) 585-3801

***Counsel for SBN V FNBC LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Objection to the Motion for Order Authorizing Approval and Authorization of Debtors to Obtain and Execute Postpetition Financing Term Sheet Pursuant to Sections 105 and 364(C) of the Bankruptcy Code and Bankruptcy Rules 2003, 4001 and 9014 and Local Rule 4001-1(B)(1) has been served by ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on December 31st, 2018.

  /s/ David F. Waguespack
DAVID F. WAGUESPACK

**Exhibit 1**

Benjamin W. Kadden on behalf of Interested Party Seatran Marine, LLC
bkadden@lawla.com, mnguyen@lawla.com

William Kaufman on behalf of Interested Party Guice Offshore, LLC
whkaufman@ohllc.com, egnormand@ohllc.com

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Stewart F. Peck on behalf of Interested Party Seatran Marine, LLC
speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com

Peter James Segrist on behalf of Creditor SBN V FNBC LLC
segrist@carverdarden.com, clary@carverdarden.com

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

Randall Scott Wells on behalf of Interested Party Guice Offshore, LLC
swells@rushing-guice.com

Greta M. Brouphy on behalf of Debtor Mr. Steven, L.L.C.
gbrouphy@hellerdraper.com

Douglas S. Draper on behalf of Debtor Mr. Steven, L.L.C.
ddraper@hellerdraper.com, kfritscher@hellerdraper.com;lcollins@hellerdraper.com

4846-5442-0100, v. 1