UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| | * | |
| MR. STEVEN, L.L.C | * | |
| | * | CHAPTER 11 |
| DEBTORS | * | |
| | * | |
| | * | Jointly Administered |
| | * | |
| * * * * * * * | * | |
| | * | |
| IN RE: | * | CASE NO. 18-51523 |
| | * | |
| MR. ROW, L.L.C | * | |
| | * | CHAPTER 11 |
| DEBTOR | * | |
| | * | |
| * * * * * * * | * | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## PURSUANT TO 11 U.S.C. § 362(d)

SBN V FNBC LLC ("SBN"), the secured creditor in this case, respectfully moves this Court for relief from the automatic stay imposed by 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(d) as follows:

### I. Jurisdiction

1. This Court has jurisdiction over this matter under 28 U.S.C. § 157 and § 1334. The relief sought is governed by 11 U.S.C. § 362(d), and this Motion is brought under 11 U.S.C. § 362(d), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-1 *et seq*.

2. This matter is a core proceeding under 28 U.S.C. § 157.

### II. Background

3. SBN incorporates by reference its Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d)[D. 60], its Limited Objection to Motion to Determine Property of the Estate

and for Turnover of Property [D.94], its Reply and Supplemental Memorandum in Support of the Stay Motion [D. 101], its Post-trial Memorandum in Support of the Stay Motion [D. 116] and the record from the December 18, 2018 hearing in this case.

4. Mr. Row, L.L.C. ("Debtor") filed this case on November 21, 2018 ("Petition Date") under Chapter 11 of Title 11 of the United States Bankruptcy Code. Debtor remains in possession and no trustee has been appointed. Debtor's business consists of owning a single marine vessel, the M/V Mr. Row (the "Vessel"). Debtor has no revenue or operating business as its sole asset is in storage.

5. As of the Petition Date, Debtor is indebted unto SBN in the full principal sum of $22,018.031.52, together with accrued interest thereon through November 21, 2018 in the amount of $1,577,923.30, plus interest continuing to accrue,[1] plus late charges of $1,250, plus SBN's attorneys' fees and costs. Debtor's indebtedness to SBN is evidenced by that certain Promissory Note dated September 28, 2015 in the original principal amount of Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($22,500,000) ("Note") executed by Debtor and Iberia Marine Service, LLC, Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Steven, LLC, Lady Brandi, LLC, and Lady Eve, LLC (collectively, "IMS Parties"). True and correct copies of the Note and the September 28, 2015 Business Loan Agreement are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, which are incorporated herein by reference.

6. Debtor's indebtedness to SBN is secured by that certain Preferred Ship Mortgage (the "Mortgage") dated September 28, 2015 executed by the IMS Parties, including Debtor, on *inter alia*, the Mr. Row and all earnings, issues, revenues, accounts, assets, payments, income and profits derived

---

[1] As of January 1, 2019, the Note is accruing interest at the default rate of 21% and a per diem of $12,843.85.

from the use or operation of the Mr. Row, or any part or parts thereof. The Mortgage was properly recorded with the National Vessel Documentation Center on October 7, 2015. A certified copy of the Mortgage is attached hereto as Exhibit C and incorporated herein by reference. A UCC-1 financing statement was filed on October 9, 2015, at No. 26-349271. A certified copy of the UCC-1 is attached hereto as Exhibit D and incorporated herein by reference.

7. On October 18, 2017, SBN purchased the Note, the Mortgage and related documents from the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for First NBC Bank. A copy of the Endorsement and Allonge memorializing SBN's purchase of Debtor's indebtedness and related documents is attached hereto as Exhibit E and incorporated herein by reference. A certified copy of the Assignment of the Mortgage is attached hereto as Exhibit F and incorporated herein by reference and a certified copy of the UCC-3 for the assignment of the UCC-1 financing statement is attached hereto as Exhibit G and incorporated herein by reference.

8. Neither Debtor nor any other IMS party has made a payment on the Note since July 31, 2017 thereby placing the Note in default. Despite demand, IMS and Miguez have still failed to make any payment on the Note.

9. On February 6, 2018, SBN filed a *Verified Petition for Collection on Note and Guaranty* against Miguez in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana, which suit bears case no. 780-357, seeking judgment against Miguez for unpaid principal, interest, fees, costs and attorneys' fees. In SBN's suit against Miguez where he employed a large law firm to defend him, Miguez then enrolled his son Blake Miguez as additional counsel, who then obtained three separate extensions to answer for Miguez based upon his legislative obligations.[2] Miguez managed to postpone answering the suit for more than six month after it was filed. Blake

---

[2] The record of this case has now been referred to this Court. SBN incorporates this record by reference.

3

Miguez admitted in his deposition that "I'm not a practicing attorney…"[3] Then shortly before Miguez's response was due to SBN's motion for summary judgment, Miguez removed the case to the Eastern District of Louisiana thereby upsetting the December 5, 2018 hearing. When SBN resubmitted the motion for summary judgment in the Eastern District, Miguez filed a motion to again delay the submission of the motion for summary judgment until after his motion to transfer was decided. On November 30, 2018, the Eastern District Court denied Miguez's motion to again delay the submission of the motion for summary judgment until after his motion to transfer was decided. A few days later, on December 6, 2018, Debtors filed an Ex Parte Motion for a Temporary Restraining Order and thereafter obtained a temporary restraining order that included factual findings, advising SBN of the submission of the order or allowing SBN to review the form of order.[4] Debtor obtained the TRO without a hearing and based upon the false allegation that Miguez "is the principal party in obtaining work for the vessels, handling any problems that may arise in connection with the vessels and in dealing with vendors for the vessels."[5] Miguez then submitted the order to the Eastern District which cited the order and its findings (issued without a hearing) to transfer the case to the Western District, thereby again delaying the ruling on SBN's Motion for Summary Judgment.[6] Miguez then withdrew his motion for injunctive relief at the December 18, 2018 hearing.

10. On October 2, 2018, SBN filed a *Verified Complaint in Rem for Foreclosure of Preferred Ship Mortgage* in the United States District Court for the Central District of California,

---

[3] Blake Miguez's deposition, p. 6:11-12 attached hereto as <u>Exhibit H</u>.
[4] See adversary proceeding no. 18-05043 [Doc. 6].
[5] Id. at p. 4, paragraph 7; See SBN's opposition to Debtor's motion for preliminary injunction. As this Court learned at the December 18, 2018 hearing these tasks are handled by SeaTran and not Miguez.
[6] Adversary proceeding no. 18-05044; Eastern District Court's Order and Reasons was signed on December 12, 2018, see page 13 ("The Court finds it significant that the Bankruptcy Court itself has issued a temporary restraining order….") .

case no. 2:18-cv-08492-RSWL-RAO, wherein SBN sought to enforce its Mortgage against the Mr. Steven.

11. The same day, on October 2, 2018, Debtor and SeaTran Marine, LLC ("SeaTran") and other related entities executed a document entitled Vessel Operating Agreement ("VOA") which purported to be effective on July 1, 2014.[7] SeaTran is an affiliate entity which is not an obligor on the SBN debt.[8] In the VOA, Debtor purported to grant its affiliate, SeaTran: (i) sole decision making authority and exclusive rights to control all aspects of the Vessel;[9] (ii) a waiver of any Debtor's rights, title, or interest in and to any charters, contractual relationships or funds derived from same;[10] (iii) ownership of all invoices for the charter of the Vessel;[11] (iv) the right to offset any amounts which may be due to Debtor;[12] (v) full indemnification without a reciprocal indemnity despite that SeaTran purports to be in total control of the Vessel;[13] (vi) the right of first refusal on a sale of the Vessel,[14] (vii) appointment as its exclusive broker for any sale;[15] (viii) brokerage fee of 1% or $50,000 upon any sale of the Vessel;[16] (ix) an early termination fee upon

---

[7] A copy of this VOA is attached hereto as <u>Exhibit I</u>.
[8] SBN reserves all rights and claims against SeaTran and simply means by this statement that SeaTran did not sign the note or a guaranty.
[9] VOA, Art. 4 ("SeaTran shall be solely responsible and have sole decision making authority for the solicitation, bidding, setting charter rates, selecting customers and negotiation of charters. Any and all charters or other contractual relationships entered into with respect to the use of the Vessel shall be in the name of SeaTran and shall be the sole property of SeaTran and the Owner shall not have any rights, title, or interest in any toe any such charters or other contractual relationships or funds or charter-hire derived from same..."). VOA, Art. 1 ("Owner hereby appoints SeaTran to manage, maintain books and records, operate, maintain, oversee and supervise the chartering, crewing, provisioning, maintenance and repair of the Vessel and SeaTran hereby accepts such appointment on the terms and conditions set forth herein…. Unless otherwise agreed in writing by SeaTran, Owner agrees that SeaTran shall have the exclusive right to operate and manage all vessels owned, managed or operated by Owner." However, while the Vessel was under charter the charter party took care of nearly aspect of the Vessel. Seatran's Mr. Tizzard testified that as of January 1, 2018 the Debtor was charged only a flat monthly fee but this is not reflected in the terms of the VOA.
[10] VOA Art. 4(a)
[11] VOA, Art.4(g)(i)
[12] VOA, Art. 4(h)
[13] VOA, Art. 11, Art. 6(e).
[14] VOA, Art. 8.
[15] VOA, Art. 8.
[16] VOA, Art. 8.

5

any sale of the Vessel if the VOA is not continued by the new owner;[17] (x) a fee of 5% of gross revenues from any active charter of the Vessel if the VOA is terminated;[18] (xi) a maritime lien for any amounts owed to SeaTran;[19] (xii) a waiver of the right to recover most forms of damages from SeaTran;[20] (xiii) the obligation to pay a disproportionate share of shared overhead fees and expenses;[21] (xiv) a term through at least July 1, 2019;[22] and (xv) many other rights and interests which are adverse to its own interests. Further, Debtor purports to be an intervenor in the VOA stating its agreement to be fully bound by the VOA without a single reciprocal obligation by SeaTran.

12. The next day, October 3, 2018, Mr. Steven LLC filed bankruptcy.

13. On November 15, 2018, SBN filed a *Verified Complaint* in the United States District Court for the Eastern District of Louisiana, case no. 2:18-cv-11020, wherein SBN sought to enforce its Mortgage against the vessel the Lady Eve. While SBN was preparing to file foreclosures on the Vessel and other vessels owned by the IMS Parties, Debtor filed this bankruptcy case on November 21, 2018.

14. Debtor's schedules show the value of the Vessel as $1,837,997.09.[23] SBN's secured claim exceeds $23 million. The Vessel is generating no income and is in storage.

15. Based on the facts set forth above, the automatic stay should be lifted because (1) "cause" exists to lift the stay because Debtor's petition was not filed in good faith and Debtor and

---

[17] VOA, Art. 9(c),(d).
[18] VOA, Art. 9(h).
[19] VOA, Art. 17.
[20] VOA, Art. 21.
[21] VOA, Art. 3 (the Shared Overhead Fee is based upon the percentage that the Vessel's length bears to all of the vessels' lengths being operated by SeaTran. Since the Vessel is by far the longest vessel operated by SeaTran, the Debtor bears the largest percentage of the fees despite that
[22] VOA, Art. 2.
[23] *See* Schedules, case no. 18-51523 [Doc. 22], at 5.

its principals/related entities have employed specious tactics to thwart and delay SBN's enforcement of its rights and interests (Debtor's only secured creditor), and SBN's interest in the Vessel is not adequately protected; and (2) Debtor does not have equity in the Vessel and the Vessel is not necessary to an effective reorganization.

### III. Relief Requested

16. SBN respectfully requests that the Court modify, vacate, and lift the automatic stay to allow SBN to commence and continue with the enforcement of any and all rights SBN possesses in law or in equity as to Debtor and the Note, Mortgage, and the Vessel, including its right to foreclose on the Vessel.

17. Further, SBN requests waiver of the 14-day stay provided for by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

### IV. Analysis

18. The automatic stay provided in 11 U.S.C. § 362 commences upon filing a bankruptcy case and protects the assets of the debtor for equitable distribution to creditors. *In re Chestnut*, 422 F.2d 298, 201 (5th Cir. 2005) (citing *McMillan v. MBank Fort Worth*, N.A., 4 F.2d 362, 366 (5th Cir. 1993)). SBN is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2), which provides (emphasis added):

> (d) On request of a party in interest and after notice and a hearing, the court ***shall grant relief from the stay*** provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) ***for cause***, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> > (a) the ***debtor does not have an equity in such property***; and

7

(b) such property is *not necessary to an effective reorganization*.

19. Section 362(d) of the Bankruptcy Code provides two separate grounds under which relief from the automatic stay may be granted. *In re Tewell,* 355 B.R. 674, 679 (Bankr. N.D. Ill. 2006) (citations omitted). The first ground is for cause, including lack of adequate protection, and the second ground is that the debtor does not have equity in the property and the property is unnecessary to an efficacious reorganization. *Id*.

20. Although a motion for relief from the stay often is filed after a debtor has failed to take any action toward filing a plan, the U.S. Supreme Court has recognized that relief from the automatic stay may be granted early in a bankruptcy case. *See U.S. v. Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) ("*Timbers I*"). The Fifth Circuit has noted that because the vast majority of chapter 11 cases do not end with confirmed plans, the challenge to the bankruptcy court is to recognize those cases promptly and limit the administrative expenses and costs borne by the creditors. *Canal Place Ltd. P'ship v. Aetna Life Ins. Co.* (*In re Canal Place Ltd. P'ship)*, 921 F.2d 569, 577 (5th Cir. 1991).

A. **Cause Exists to Lift the Automatic Stay Under § 362(d)(1)**

21. Section 362(d)(1) states that relief from the stay may be granted "for cause, including the lack of adequate protection of an interest in property…" "'Cause' as is used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis." *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995); *see also Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1996) (cause is "not defined in the statute as to afford flexibility to the bankruptcy courts.") (citing *In re Victory Constr. Co.*, 9 B.R. 549, 558-60 (Bankr. C.D. Cal. 1981) ("cause" is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process)). "'Cause' is an intentionally broad and flexible concept that permits

8

the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *Texas State Optical*, 188 B.R. at 556. Factors generally looked to in determining whether to modify an automatic stay for cause include interference with bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditor if the stay is modified, injury to movant if the stay is not modified, and proportionality of harms from modifying or continuing the stay. *See In re Milne,* 185 B.R. 280, 283 (N.D. Ill 1995).

22. Courts have recognized that a debtor's lack of good faith in filing a petition for bankruptcy may be the basis for lifting the automatic stay. *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994) (collecting cases, including *Little Creek Dev.*, 779 F.2d at 1071-72 (lack of good faith constitutes "cause" for lifting the stay to permit foreclosure)); *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995). The analysis of bad faith under § 362(d) proceeds in much the same way as the analysis of whether to dismiss a case for cause under § 1112(b). *See Trident*, 52 F.3d at 131. The good faith requirement balances the interests of the debtors and creditors. As the Fifth Circuit noted:

> [The good faith requirement] furthers the balancing between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons… available only to those debtors and creditors with "clean hands."

*Little Creek Dev.*, 779 F.2d at 1072; *see also Elmwood Dev. Co. v. Gen. Elec. Pension Trust (In re Elmwood Dev. Co.),* 964 F.2d 508, 510 (5th Cir. 1992). Good faith generally is held to require "honesty of intention." *See In re Metro. Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970) ("'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory

9

process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose.").

23. Findings of bad faith are based upon an overall review of the circumstances on a case-by-case basis. *See Little Creek Dev.*, 779 F.2d at 1072. Although there is no particular test for determining whether a debtor has filed a petition void of good faith, courts generally conduct a balancing test and "consider any factors which evidence an 'intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Boughton*, 243 B.R. 830, 834 (Bankr. M.D. Fla. 2000) (internal citations omitted); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

24. The Fifth Circuit has developed a list of non-exclusive factors that indicate bad faith, including:

> The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(2), 363(e), or 364(d)(1). Typically, there are only a few, if any unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court…Bankruptcy offers the only possibility of forestalling loss of the property.

*Little Creek Dev.*, 779 F.2d at 1073.

25. The automatic stay should be lifted in this case for cause because most of the *Little Creek* "bad faith" factors are satisfied. First, Debtor has virtually no other creditors (three creditors are scheduled in the collective amount of $4,300). This is a two-party dispute. Second, Debtor has only one real asset—the Vessel—which is subject to the Note and Mortgage. Even if the Court were to accept Debtor's value of the Vessel as $1,837,997.09, Debtor has no equity in the Vessel as the outstanding balance on the Note is in excess of $23 million. Third, Debtor has no operating

business. The Vessel is in storage and has not generated revenue for a long time. Fourth, Debtor has no employees. Fifth, there is no possibility of reorganization. SBN is under secured by at least $21 million according to Debtor's own schedules,[24] the Vessel is generating no revenue, there are no assets to distribute to unsecured creditors, and SBN has a blocking position on any plan and will not vote for any plan. This bankruptcy proceeding will only serve to accrue legal fees and expenses which will detract from SBN's recovery. Sixth, bankruptcy offers the only possibility of forestalling loss of the Vessel. Debtor filed bankruptcy simply to stop a foreclosure proceeding on the Vessel. Seventh, no payment has been made on the Note since July 31, 2017. Debtor did not even try to pay SBN. Eighth, Debtor executed the VOA in direct violation of the Mortgage and purported to vest complete control of the Vessel and mortgaged rights and interests in SeaTran, an affiliated entity that is not in bankruptcy and not an obligor on the Note. Through the VOA, Debtor is impermissibly attempting to place its asset and affairs outside of the purview and control of this Court and the Bankruptcy Code while enjoying the benefits of the automatic stay. Finally, the timing and nature of Debtor's filing, along with related proceedings and the tactics employed therein, evince an intent to improperly delay and frustrate SBN's efforts to enforce its rights under the Note and Mortgage.

26. Nothing has changed since Debtor filed bankruptcy. Debtor has not provided adequate protection to SBN since filing its bankruptcy case. Debtor's Vessel is in storage. The Vessel

---

[24] To the extent Debtor will rely on *In re Cardell*, 88 B.R. 627, 632 (Bankr. D.N.J. 1988), to argue the collateral of the other IMS entities secures the Mortgage, this argument has been rejected by the Fifth Circuit. *See McManus v. Cadle Co. (In re McManus),* 30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. July 18, 1994) (unpublished). There, the debtors "contend[ed]… that the bankruptcy court should have considered a piece of property owned by a different party … in assessing whether the [debtors] had equity in their home" citing *Cardell*. *Id*. The Fifth Circuit distinguished *Cardell*, finding that the bankruptcy court in *Cardell* "in determining equity considered other property of the debtor, not property owned by a different party." *Id*. The Fifth Circuit summarized the relevant holding from *Cardell* as "finding [the] debtor had equity under § 362(d)(2) because companies [the] debtor owned and controlled provided alternative sources to satisfy creditor's debt." *Id*. The Fifth Circuit ultimately held that equity under 362(d)(2) did not include property owned by a different party. *Id*.

is depreciating in value. Debtor is unable to put the Vessel to work. Debtor has not generated revenue from the Vessel for an extended period and has no prospect of generating revenue from the Vessel. Debtor is accruing insurance costs, storage fees and other costs and expenses with respect to the Vessel for no reason. The other IMS Parties have Vessels which are also stacked or in storage and others which are being chartered by the Debtor's affiliate SeaTran. In fact, Debtor has purported to yield complete control of the Vessel to SeaTran, an entity which is not in bankruptcy and whose interests are adverse to Debtor. To make matters worse, the IMS Parties have suggested that they intend to file a plan which would allow the revenue from profitable IMS Parties to fund the shortfalls of unprofitable debtors like the Debtor. In other words, not only will the Debtor and its creditor SBN be harmed if the stay is not lifted in this case but other IMS Parties would be harmed if this Court were to not lift the stay and confirm the plan outlined by the IMS Parties.

27. SBN respectfully submits that the facts of this case establish strong cause to lift the stay.

**B.**     **Debtor Has No Equity in Vessel and Vessel Not Necessary to Effective Reorganization Such that Stay Should Be Lifted Under § 362(d)(2)**

28. In addition, the automatic stay should be lifted because the Vessel's value is substantially less than the amount of the indebtedness which it secures, and the Vessel is not necessary to an effective reorganization. Section 362(d)(2) of the Bankruptcy Code provides that the Court must lift the automatic stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

*Debtor has no equity in Vessel*

29. "'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it." *In re Sutton*, 904 F.2d 327, 329 (5th Cir. 1990). The Vessel is subject to the Mortgage which secures indebtedness to SBN in excess of $23.6 million.

Even if the Court were to accept Debtor's value of the Vessel as $1,837,997.09, Debtor has no equity in the Vessel. Thus, the value of the Vessel is markedly less than Debtor's secured indebtedness to SBN. Further, Debtor cannot rely on collateral not owned by the Debtor to establish equity in its property. *See McManus v. Cadle Co. (In re McManus),* 30 F.3d 1491, 1994 WL 397944, at *1 (5th Cir. July 18, 1994) (unpublished); *see also In re SW Boston Hotel Venture LLC*, 449 B.R. 156, 177-78 (Bankr. D. Mass. 2011); *NationsBank of Virginia, N.A. v. DCI Pub of Alexandria, Inc*., 160 B.R. 538, 539 (E.D. Vir. 1993).

*Vessel is not necessary to an effective reorganization*

30. Once the movant has demonstrated there is no equity in the secured property, the burden shifts to the debtor to demonstrate that the property is necessary to reorganization. 11 U.S.C. § 362(g); *Sutton*, 904 F.2d at 330; *see also In re Canal Place*, 921 F.2d at 576 ("In every case where a creditor seeks relief under § 362(d)(2), the creditor has the burden to establish the lack of equity in the property and the debtor has the burden to establish that the property is necessary for an effective reorganization.").

31. To demonstrate that the Vessel is necessary to an effective reorganization, Debtor must show that the Vessel is "essential for an effective reorganization ***that is in prospect***." *Timbers I*, 484 U.S. at 376 (emphasis in original). "This means … there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id*. "However honest in its efforts the debtor may be, and however, sincere its motives, the [Court] is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *First Jersey Nat'l Bank v. Brown (In re Brown),* 951 F.2d 564, 572 (3d Cir. 1991) (quoting *Tennessee Publ'g Co. v. Am. Nat'l Bank*, 299 U.S. 18, 22 (1936)). "Courts usually require the debtor to do more than manifest unsubstantiated hopes for a

13

successful reorganization." *In re Canal Place Ltd.*, 921 F.2d at 577; *see also In re Brown*, 951 F.2d at 572 (quoting the Fifth Circuit in *In re Canal Place Ltd.*).

32. The Vessel is in storage and is not being operated.[25] Debtor's Statement of Financial Affairs reflect that Debtor had **no** income in the period prior to filing bankruptcy. Debtor's recent submitted plan projections indicates that Debtor has **no** prospect of operating the Vessel in the near term.[26] Debtor cannot establish that the Vessel is necessary to an effective reorganization as the Vessel has not been, and is not now, in use.

33. In addition, Debtor cannot sustain its burden that the Vessel is necessary for an effective reorganization because Debtor cannot establish that it can confirm a plan. The United States Supreme Court has interpreted the phrase "effective reorganization" in U.S.C. § 362(d)(2)(B) to require:

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time.

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). In this case, Debtor cannot satisfy the 11 U.S.C. § 1129(a)(10) requirement that at least one impaired class (not counting the votes of insiders) has accepted the plan.

34. If a chapter 11 plan is unlikely to be confirmed absent the moving creditor's affirmative vote, the property securing the claim is not necessary for an effective reorganization, and thus, the creditor is entitled to relief from automatic stay. *In re 500 Fifth Ave. Associates*, 148 B.R.

---

[25] *See* R. Doc. 112-7 (filed under seal); Statement of Financial Affairs, case no. 18-51523 [Doc. 23], at 1 and Schedules [Doc. 22].
[26] R. Doc. 112-7 (filed under seal).

1010, 1021 (Bkrtcy. S.D.N.Y. 1993); *In re 266 Washington Associates*, 141 B.R. 275, 281 (Bkrtcy. E.D. N.Y. 1992); *In re State Street Assocs.*, L.P., 342 B.R. 32, 44-45 (Bkrtcy. N.D. N.Y. 2005).

35. Since there are only three small non-insider creditors in this case whose unsecured claims total $4,300, SBN's deficiency claim, which will exceed $21,000,000, will prevent Debtor from obtaining the consent of any impaired class of creditors under section 1129(a)(10). SBN will not vote to confirm a plan proposed by Debtor. Further, Debtor cannot manipulate classification to evade this reality. "The Debtor's classification of claims predicament is insoluble." *In re 266 Washington Associates*, 141 B.R. at 287; *see also In re Greystone III Joint Venture*, 948 F.2d 134, 137-38 (5th Cir.1991), withdrawn in part, reinstated in part on reh'g (5th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992). These and many other courts have held that Debtor cannot separately classify Debtor's unsecured trade debt (in this case three unsecured claims totaling $4,300) from SBN's deficiency claim in order to create an impaired accepting non-insider class. Therefore, this Court is required to lift the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

36. Accordingly, SBN requests this Court to lift the automatic stay to allow SBN to foreclose on, and otherwise exercise its rights and remedies with respect to, the Vessel. SBN expressly requests that the entry of the Order granting relief from the automatic stay not be stayed pending the expiration of a fourteen (14) day post-entry period of the Order, pursuant to Bankruptcy Rule 4001(a)(3).

WHEREFORE, SBN V FNBC LLC prays that, after notice and hearing, for the entry of an order lifting the automatic stay accorded the Debtor under section 362(d)(1) and (2) of the Bankruptcy Code to permit SBN V FNBC LLC to foreclose on, and otherwise exercise its rights and remedies with respect to, the Vessel and providing that such order not be stayed pending the

expiration of a fourteen (14) day post-entry period of the Order, pursuant to Bankruptcy Rule 4001(a)(3).

Respectfully submitted,
CARVER, DARDEN, KORETZKY, TESSIER
FINN, BLOSSMAN & AREAUX, L.L.C.

/s/ David F. Waguespack
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
ANDREW J. BRIEN (#37051)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone: (504) 585-3814
Fax: (504) 585-3801
Counsel for SBN V FNBC LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* has been served by:

1. ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on January 17, 2019; and

2. U.S. Mail, postage prepaid, upon Debtor, Mr. Mason, L.L.C., 107 Highway 90 West, New Iberia, LA 70560 and upon Debtor, Mr. Mason, L.L.C., through its counsel of record, Douglas S. Draper, Heller, Draper, Patrick, Horn & Manthey LLC, 650 Poydras Street, Suite 2500, New Orleans, LA 70130, on January 17, 2019.

/s/ David F. Waguespack
DAVID F. WAGUESPACK

**Exhibit 1**

Benjamin W. Kadden on behalf of Interested Party Seatran Marine, LLC
bkadden@lawla.com, mnguyen@lawla.com

William Kaufman on behalf of Interested Party Guice Offshore, LLC
whkaufman@ohllc.com, egnormand@ohllc.com

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Stewart F. Peck on behalf of Interested Party Seatran Marine, LLC
speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com

Peter James Segrist on behalf of Creditor SBN V FNBC LLC
segrist@carverdarden.com, clary@carverdarden.com

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

Randall Scott Wells on behalf of Interested Party Guice Offshore, LLC
swells@rushing-guice.com

Greta M. Brouphy on behalf of Debtor Mr. Steven, L.L.C.
gbrouphy@hellerdraper.com

Douglas S. Draper on behalf of Debtor Mr. Steven, L.L.C.
ddraper@hellerdraper.com, kfritscher@hellerdraper.com;lcollins@hellerdraper.com

4851-3073-9077, v. 1