UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE - OPELOUSAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| MR. STEVEN, L.L.C.[1] | * | CHAPTER 11 |
| Debtor | * | |

## JOINT DISCLOSURE STATEMENT TO ACCOMPANY THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTORS

Mr. Steven, L.L.C.,[1] Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC, as debtors and debtors-in-possession (referred to herein as "Debtor" or collectively, the "Debtors"), appearing herein through their respective undersigned counsel, propose the following Joint Disclosure Statement of the Debtors (the "Disclosure Statement") pursuant to the provisions of 11 U.S.C. § 1121(a):

## I.    INTRODUCTION

### A.    Purpose

The purpose of a Disclosure Statement is to set forth information (1) regarding the history of the Debtors, their businesses and these Bankruptcy Cases; (2) concerning the Plan; (3) advising the Holders of Claims and Existing Equity Interests of their rights under the Plan; (4) assisting the Holders of Claims or Existing Equity Interests in making an informed judgment regarding whether they should vote to accept or reject the Plan; and (5) assisting the Bankruptcy Court in determining whether the Plan compiles with the provisions of Chapter 11 of the Bankruptcy Code and should be confirmed.

No representations concerning the Debtors or the Plan, other than as set forth in this Disclosure Statement, are authorized by the Debtors. Any representations or inducement made to secure your acceptance of the Plan that are other than as set forth in this Disclosure Statement should not be relied upon by you in arriving at your decision.

Accompanying this Disclosure Statement and the exhibits hereto are the following (collectively, with the Disclosure Statement, the ("Solicitation Package")):

---

[1]    Pursuant to this Court's December 21, 2018 Order, the Debtor's case has been procedurally consolidated and is being jointly administered with the following affiliated Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi, L.L.C. (18-51517), Lady Glenda, L.L.C. (18-51518), Mr. Blake, L.L.C. (18-51519), Mr. Mason, L.L.C. (18-51521), Mr. Ridge, L.L.C. (18-51522), and Mr. Row, L.L.C. (18-51523) (collectively, the "Debtors"). [ECF Doc. 109].

1

{00366819-1}

- the Plan, attached hereto as **Exhibit 1**;
- the Disclosure Order, attached hereto as **Exhibit 2**; and
- one or more Ballots to those members of the voting classes.

Article I of the Plan contains definitions of certain terms. Where those capitalized terms are used in this Disclosure Statement, they have the meaning set forth in Article I of the Plan. Those defined terms are very important to understand fully this Disclosure Statement.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED PLAN. PLEASE REGARD THIS DOCUMENT WITH CARE. THE PURPOSE OF THE DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTORS THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR EXISTING EQUITY INTERESTS OF THE RELEVANT CLASS TO MAKE TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. *SEE* 11 U.S.C. § 1125(A).**

**FOR THE CONVENIENCE OF CREDITORS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ANY SUMMARY. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.**

**NO REPRESENTATIONS CONCERNING THE DEBTORS' FINANCIAL CONDITION OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION THAT ARE OTHER THAN AS CONTAINED IN OR INCLUDED WITH THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED. HOWEVER, REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.**

**DEBTORS' COUNSEL HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTORS IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE STATEMENT. COUNSEL HAS NOT INDEPENDENTLY VERIFIED ALL OF THE INFORMATION CONTAINED HEREIN.**

**THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE. EACH CREDITOR SHOULD CONSULT HIS, HER, OR ITS OWN LEGAL COUNSEL AND**

2

{00366819-1}

**ACCOUNTANT AS TO LEGAL, TAX, AND OTHER MATTERS CONCERNING HIS, HER, OR ITS CLAIM.**

**B.     Disclosure Order**

As reflected in the Disclosure Order, the Bankruptcy Court approved this Disclosure Statement, in accordance with Section 1125 of the Bankruptcy Code, as containing "adequate information" to enable a hypothetical, reasonable investor typical of Holders of Claims against, or Existing Equity Interests in, the Debtors, to make an informed judgment as to whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes on the Plan. The Disclosure Order also establishes the following dates and deadlines:

- the deadline for filing objections to confirmation of the Plan;

- the date for determining that Holders of Claims or Existing Equity Interests may vote on the Plan;

- the deadline for voting on the Plan; and

- the date on which a final hearing on confirmation of the Plan will be held.

**APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.** No solicitation of votes may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. In voting on the Plan, Holders of Claims and Existing Equity Interests should not rely on any information relating to the Debtors and their businesses, other than that contained in this Disclosure Statement, the Plan and all exhibits to either.

**C.     Voting on the Plan**

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are (i) "impaired" by a plan of reorganization, and (ii) entitled to receive a distribution under such a plan are entitled to vote on the plan. If you are entitled to vote to accept or reject the Plan (see Article V(B) of this Disclosure Statement), accompanying this Disclosure Statement should be the Ballot for casting your vote(s) on the Plan and a pre-addressed envelope for the return of the Ballot.

BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS OR INTERESTS IN THE VOTING CLASSES BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS OR INTERESTS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN.

**THE DEBTORS RECOMMEND THAT THE HOLDERS OF CLAIMS AND INTERESTS IN ALL SOLICITED CLASSES VOTE TO ACCEPT THE PLAN.** The Debtors believe that the prompt confirmation and implementation of the Plan is in the best

interests of the Debtors, all Holders of Claims and Existing Equity Interests, the Debtors' Chapter 11 estates and all persons who may be affected by the confirmation or denial of the confirmation of the Plan.

After carefully reviewing this Disclosure Statement and the exhibits attached hereto, please indicate your vote with respect to the Plan on the enclosed Ballot and return it in the envelope provided. If you did not receive a Ballot, believe that there is a problem with your Ballot, or need any assistance with regard to the voting process, contact Debtors' counsel. Voting procedures and requirements are explained in greater detail elsewhere in Article VIII of this Disclosure Statement. Unless the voting procedures in Article VIII provide otherwise, **PLEASE VOTE AND RETURN YOUR BALLOT TIMELY TO DEBTOR'S COUNSEL:**

**By regular mail/messenger/overnight delivery**

Heller, Draper, Patrick, Horn and Manthey
Attn: Kelly Fritscher
650 Poydras Street
Suite 2500
New Orleans, LA 70130

**IN ORDER TO BE COUNTED, BALLOTS MUST BE RECEIVED BY THE DATE AND TIME OF THE DEADLINE FOR VOTING AS REFLECTED IN THE DISCLOSURE ORDER (THE "VOTING DEADLINE").**

**ANY EXECUTED BALLOTS WHICH ARE TIMELY RECEIVED BUT WHICH DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE. THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTORS. HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE SHOULD READ IT CAREFULLY AND IN ITS ENTIRETY, AND WHERE POSSIBLE, CONSULT WITH COUNSEL OR OTHER ADVISORS PRIOR TO VOTING ON THE PLAN.**

Most of the historic and current financial and other information contained in this Disclosure Statement has been derived from the Debtors, the Debtors' records, or the Claims Register maintained by the Clerk of the Bankruptcy Court in these Bankruptcy Cases. The Debtors believe the information to be correct; however, it has not been independently verified in every instance, nor has it been subjected to a certified audit.

4

## II. OVERVIEW OF PLAN

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full Plan. For a more detailed description of the terms and provisions of the Plan, see Article V below entitled "Summary of the Plan."

### A. Agreements and Settlements Underlying Plan

As is described in greater detail in that certain Plan Sponsor Term Sheet by and among the Debtors and the Plan Sponsor, a copy of which is attached hereto as **Exhibit 3**, and in exchange for certain considerations the Plan Sponsor has agreed to contribute $1,250,000.00 over the term of the Plan, dedicate the Capital Construction Funds held by Iberia Crewboat and Marine Services, L.L.C. ("Iberia Crewboat") and Steven J. Miguez to fund Plan principal payments to SBN V FNBC LLC ("SBN") and defer payment of the DIP Loan made by the Plan Sponsor to the Debtor.

### B. Overview of Plan Performance

The Plan provides that it will become effective on the Effective Date. The Debtors presently estimate that the Effective Date will be sixty (60) days after the Confirmation Date as mutually agreed by the Debtors and the Plan Sponsor based upon a determination that such date is as soon as reasonably practicable after the conditions to the effectiveness of the Plan specified in Article XI of the Plan have been satisfied or waived.

### C. Overview of Classification and Treatment of Claims and Existing Equity Interests

The Plan provides for payment in full of all Administrative Claims, payments for priority claims under Section 507(a)(8) on a basis that is not less favorable than the most favored nonpriority unsecured Claim provided for by the Plan as required by Section 1129(a)(9)(C) and (D) of the Bankruptcy Code, payment in full over time of the SBN Secured Claim Amount and payment in full of the Unsecured Creditors of each of the Debtors over time. The Plan also provides for retention by Holders of Existing Equity Interests (Iberia Crewboat) of its interest in the Debtors.

## III. HISTORY OF THE DEBTORS

### A. Formation

Steve Miguez, age 64, has owned and operated a fleet of vessels under various entities all of his adult life. The company started in 1975 with the acquisition of a 32' crewboat that Miguez was its captain and mechanic. Over the years he acquired additional vessels from 42' crewboats up to a 105' crewboat then a 135' crewboat. In the mid- to late-1990s, he began to acquire larger crewboats in the 150' to 172' range to build a fleet of 8-10 vessels, and sold the smaller boats. From 2010 to 2014, the fleet was further expanded with the acquisition of several 135' to 165' crewboats and the construction of a new 205' DP-2 crewboat / FSV.

{00366819-1}

**B.     Organization and Capital Structure**

The Debtors each own one vessel, and each of the Debtors are wholly owned by Iberia Crewboat.  Each Debtor and its respective vessel were operated and managed for a number of years by Iberia Marine Service, LLC ("IMS") until IMS and two other non-affiliated crewboat operators formed SeaTran Marine, LLC ("SeaTran") in 2014, with each owning a one-third share of the company.  After SeaTran was formed, the Debtors' vessels continued to be operated under a Vessel Operating Agreement with IMS, and IMS, in turn, contracted with SeaTran to manage and operate such vessels.  Since its formation, one of the original owners dropped out of SeaTran and the two remaining companies, IMS and Texas Crewboats, each now own one half of SeaTran.

**C.     Pre-Bankruptcy Operations**

The Debtors are single-purpose entities that own vessels used primarily in oil-and-gas operations.  The boats are operated by SeaTran, through an affiliate IMS.  Attached hereto as **Exhibit 4** is a listing of the names, size, type, acquisition date, cost, and utilization numbers with respect to the Debtors' Vessels.

**D.     Pre-Bankruptcy Financing and Events Leading to Bankruptcy**

The Debtors initially obtained a loan with Capital One Bank that was refinanced by First NBC Bank in 2015. The new loan at First NBC provided greater cash-flow assistance during the slowdown in market conditions in the U. S. Gulf of Mexico oil-and-gas industry. The new loan provided for one year of interest-only payments and a twenty-year amortization structure. (The previous loan called for full payments of principal and interest and had a fifteen-year amortization structure.) After making the first year of interest-only payments on time, the Debtors requested from First NBC an agreement that would allow the Debtors another year of interest-only payments. In lieu of granting the Debtors' request for interest-only payments, First NBC suggested that it advance additional funds under the total loan amount approved but not previously funded, to provide the Debtors funds to make the principal portion on the monthly payments. The Debtors agreed to that arrangement.

The Debtors had made full monthly payments of principal and interest on the First NBC Note, when the Federal Deposit Insurance Corporation ("FDIC") seized First NBC on April 28, 2017, citing First NBC's questionable internal controls and accounting practices, as well as it lack of adequate capitalization. The FDIC began liquidating First NBC's assets. The Debtors communicated with the FDIC and attempted to structure a payment plan to assist the Debtors during the continued market downturn. The FDIC later advised it could not accommodate the Debtors' request, and advised the Debtors that the First NBC Note would be auctioned and sold. On or about October 18, 2017, SBN V FNBC LLC ("SBN") purchased the Debtor's Note from the FDIC.

SBN refused the Debtors' requests to restructure the debt. Shortly thereafter, SBN demanded the entire loan balance from a guarantor of the loan and later the Debtors. After

6

unsuccessfully attempting to refinance the debt with numerous other lenders, the lack of success in part due to declining vessel values in the depressed market, the Debtors elected to seek Chapter 11 protection to provide them time to keep operating and survive until market conditions improved in 2019 and 2020. The Debtors believe that improved market conditions as well as back-stop funding from the Plan Sponsor will provide them with the ability to satisfy its payment obligations under the Plan.

## IV.    SIGNIFICANT EVENTS IN THE BANKRUPTCY CASES

### A.    Petition Dates

The Petition date for each of the Debtors is the following: (i) Mr. Steven, L.L.C. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 3, 2018; (ii) Lady Eve, L.L.C. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 16, 2018; and (iii) Mr. Mason LLC, Mr. Ridge LLC, Mr. Row LLC, Mr. Blake LLC, Lady Glenda LLC, and Lady Brandi L.L.C. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on November 21, 2018. The Debtors currently are Debtors in Possession.

### B.    Significant Events Since the Petition Date

#### 1.    Retention of Professionals

The law firm of Adams and Reese LLP filed the bankruptcy petition for Mr. Steven, L.L.C. with a supporting declaration by Steven J. Miguez, manager of Mr. Steven, L.L.C. [No. 18-51277, ECF Docs. 1 & 3]. SBN, the Debtor's secured creditor, objected to the application of the Debtor to employ Adams and Reese as counsel, alleging that the law firm had interests adverse to the Debtor. [No. 18-51277, ECF Docs. 16 & 31]. The law firm of Adams and Reese LLP ultimately moved to withdraw as counsel for the Debtor, [No. 18-51277, ECF Doc. 54], and that motion was granted by the Court on November 26, 2018, [No. 18-51277, ECF Doc. 66].

The Debtors filed an application to employ the law firm of Heller, Draper, Patrick, Horn & Manthey, L.L.C. as counsel on November 30, 2018. [No. 18-51277, ECF Doc. 78]. SBN also objected to that application, [No. 18-51277, ECF Doc. 120]; however, the Court granted the application on an interim basis at a hearing on the matter on January 8, 2018.

#### 2.    Administrative Motions

The Debtor(s) filed and the Court granted certain motions during the course of the case to facilitate the efficient administration of the case:

(i)    Order Granting Motion for Extension of Time To File Schedules and Statement of Financial Affairs [No. 18-51277, ECF Doc. 23];

(ii)    Order Pursuant to Bankruptcy Rule 1015(b) Directing Joint Administration of Chapter 11 Cases [Nos. 18-51277, ECF Doc. 109

7

{00366819-1}

**3.    Asset Analysis and Recovery**

   a.    *Debtor's Motion To Determine Property of the Estate and for Turnover of Property*

On October 31, 2018, the Debtor Mr. Steven, L.L.C. filed a Motion To Determine Property of the Estate and for Turnover of Property, seeking a determination of the Court that certain proceeds of a charter between SeaTran and Guice Offshore, LLC ("Guice") are property of the estate and requesting turnover of those proceeds. [No. 18-51277, ECF Doc. 29].

On November 13, 2018, Guice filed a limited response to the motion, stating that because SeaTran is the counterparty to the charter, Guice has received competing demands for payment of the charter proceeds and, therefore, transferred the proceeds into the trust account of its counsel pending a determination from the Court. [No. 18-51277, ECF Doc. 43].

On December 11, 2018, SeaTran filed an opposition to the motion, asserting, among other things, that the Debtor has no legal interest in the charter and that neither the charter nor its proceeds are property of the estate. [No. 18-51277, ECF Doc. 93].

On December 11, 2018, SBN filed a limited objection to the motion, asserting that the Debtor assigned all present and future charters and leases affecting the vessel owned by the Debtor to SBN, and, therefore, SBN has the right to receive the proceeds from the SeaTran/Guice charter. [No. 18-51277, ECF Doc. 94].

On December 18, 2018, the Court held an evidentiary hearing on the motion and ordered supplemental briefing on the matter. On December 28, 2018, both SeaTran and SBN submitted post-hearing briefs per the Court's Order. [No. 18-51277, ECF Docs. 115 & 116]. The matter is currently under submission with the Court.

   b.    *SBN's motion for Bankruptcy Rule 2004 examination of the Debtor and related parties*

On October 23, 2018, SBN filed a motion seeking Court approval to conduct an examination of the Debtor Mr. Steven, L.L.C., its principal, Steve J. Miguez ("Miguez"), and related entities, Iberia Marine Service LLC, Mr. Blake, LLC, Mr. Ridge, LLC, Lady Glenda, LLC, Mr. Mason, LLC, Mr. Row, LLC, Lady Brandi, LLC, Lady Eve, LLC, and SeaTran. [No. 18-51277, ECF Doc. 26].

On October 31, 2018, former counsel for the Debtor filed on behalf of the Debtor a limited opposition to the Rule 2004 motion, requesting a protective order from the Court to protect Debtor's confidential and commercially sensitive documents from competitors. [No. 18-51277, ECF Doc. 28].

8

On November 5, 2018, SBN filed a reply brief to respond to Debtor's request for a protective order. [No. 18-51277, ECF Doc. 35]. On November 6, 2018, SBN amended its Rule 2004 motion to change the proposed date of the examination. [No. 18-51277, ECF Doc. 36].

On November 26, 2018, SeaTran and Miguez filed an objection to SBN's Rule 2004 motion, asserting that the motion should be denied to the extent that it (i) seeks information that is the subject of a state-court action against Miguez that has been removed and is the subject of a pending transfer motion for ultimate referral to the Bankruptcy Court; (ii) seeks to use the examination as a means to aid in its own collection of debts; and/or (iii) seeks confidential commercial information of non-debtors. [No. 18-51277, ECF Doc. 57].

On November 26, 2018, Space Exploration Technologies Corp. d/b/a SpaceX filed a limited objection to SBN's Rule 2004 Motion, requesting a protective order from the Court to protect confidential research, development, or commercial information of SpaceX. [No. 18-51277, ECF Doc. 64].

At a hearing on the matter, the parties entered into an agreed order permitting the examination of the Debtor Mr. Steven LLC.

     *c. Transfers of net charter proceeds*

As of February 4, 2019, the following net charter proceeds have been deposited into the operating accounts of the following affiliated debtors since the Petition Date:

     (i)     Lady Eve, LLC: $28,051.38
     (ii)    Mr. Blake, LLC: $141,208.17
     (iii)   Mr. Ridge, LLC: $31,310.50

**4.     Relief from Stay/Adequate Protection Proceedings**

     *a. SBN's motion to terminate the automatic stay as to the M/V MR. STEVEN*

On November 26, 2018, SBN filed a motion to terminate the automatic stay as to the M/V MR. STEVEN pursuant to 11 U.S.C. § 362(d). [No. 18-51277, ECF Doc. 60]. SBN asserted that termination of the stay is warranted for "cause" under § 362(d)(1), as allegedly evidenced by the Debtor's lack of good faith in filing the petition seeking bankruptcy relief, and under § 362(d)(2), as it asserted the Debtor has no equity in the vessel and the vessel is not necessary to the Debtor's effective reorganization.

On December 13, 2018, the Debtor and Miguez each filed an opposition to the lift-stay motion. [No. 18-51277, ECF Docs. 97 & 98]. On December 17, 2018, SBN filed a reply in support of its lift-stay motion. [No. 18-51277, ECF Doc. 101].

The Court held an evidentiary hearing on the motion on December 18, 2018, and ordered supplemental briefing on the matter. On December 28, 2018, the Debtor, Miguez, and SBN

9

submitted post-hearing briefs per the Court's Order. [No. 18-51277, ECF Docs. 115–17]. The matter is currently under submission with the Court.

> ### b. *SBN's motions to terminate the automatic stay as to the M/V MR. MASON, the M/V LADY BRANDI, and the M/V MR. ROW*

On January 17, 2019, SBN filed three motions to terminate the automatic stay as to the M/V MR. MASON, the M/V LADY BRANDI, and the M/V MR. ROW, vessels owned by affiliated Debtors. [No. 18-51277, ECF Docs. 126, 128 & 130]. SBN asserted that termination of the stay is warranted for "cause" under § 362(d)(1), as allegedly evidenced by the Debtor's lack of good faith in filing the petition seeking bankruptcy relief, and under § 362(d)(2), as it asserted that the Debtor has no equity in the vessel and the vessel is not necessary to the Debtor's effective reorganization, as none of the vessels are currently under charter.

On February 4, 2019, the Debtors as well as Miguez and SeaTran, filed oppositions to those motions. [No. 18-51277, ECF Docs. 137 & 138]. An evidentiary hearing on those motions is currently set before the Court on February 12, 2019.

### 5. Post-Petition Financing

On December 17, 2018, the Debtors filed a motion for an order authorizing them to obtain post-petition financing (the "DIP Loan") in the form of a non-revolving line of credit in the principal amount of $1 million, accruing 4% interest per annum or 12% interest per annum on default. [No. 18-51277, ECF Doc. 105]. The DIP Loan would be used by the Debtors to satisfy bankruptcy-related expenses and to provide working capital as necessary to operate the Debtors' respective businesses, subject to the approval of the DIP Lenders, SeaTran and Miguez.

On December 31, 2018, SBN filed an opposition to the Debtors' motion for approval of the DIP Loan. On January 8, 2019, the Court held an evidentiary hearing on the matter, after which the Court granted the Debtors' DIP Loan request up to $250,000 on an interim basis.

### 6. Plan of Reorganization and Disclosure Statement

On February 7, 2019, the Debtors filed a Joint Chapter 11 Plan of Reorganization of the Debtors accompanying Disclosure Statement. [No. 18-51277, ECF Doc. XXX]. The Plan features exit-funding and plan-funding commitments by the Plan Sponsor, SeaTran and Miguez. The agreement with the Plan Sponsor including, but not limited to, the commitment by the Plan Sponsor and Iberia Crewboat to provide funds to the Debtors to make payments to Creditors under the Plan provide the basis for funding of the Plan and allow for the distributions provided for under the Plan.

## V. SUMMARY OF THE PLAN

The following summary and the other descriptions in the Disclosure Statement are qualified in their entirety by reference to the provisions of the Plan and its exhibits, a copy of which is attached hereto as **Exhibit 1.** It is urged that each Holder of a Claim or Existing Equity

Interest carefully review the terms of the Plan. In the event of any inconsistency between the provisions of the Plan and the summary contained in this Disclosure Statement, the terms of the Plan shall control.

In general, a Chapter 11 plan (i) divides claims and equity interests into separate classes, (ii) specifies the property that each class is to receive under the plan, and (iii) contains other provisions necessary to confirm the plan. Under the Bankruptcy Code, "claims" and "equity interests" are classified, rather than classification as "creditors" and "shareholders," because such entities may hold claims or equity interests in more than one class. For purposes of this Disclosure Statement, the term "Holder" refers to the Holder of a Claim or Existing Equity Interest, respectively, in a particular class under the Plan.

A Chapter 11 plan may specify that certain classes of claims or equity interests are either to be paid in full when the plan becomes effective or are to remain unchanged by the treatment prescribed in the plan. Such classes are referred to as "unimpaired," and because of such favorable treatment, the Holders in such classes are deemed to accept the plan and are not entitled to vote. Accordingly, it is not necessary to solicit votes from the Holders of claims or equity interests in such classes. A Chapter 11 plan may also specify that certain classes will not receive any distribution of property or retain any claim against the debtor. Such classes are deemed not to accept the plan and, therefore, need not be solicited to vote to accept or reject the plan.

## A.    Classification of Claims and Existing Equity Interests

The following table designates the classes of Claims against and Existing Equity Interests in the Debtors and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan:

| Class | Debtors Claims/Interests | Impairment | Entitled to Vote |
|-------|--------------------------|------------|------------------|
| 1 | Administrative Expense Claims | None | No |
| 2 | Priority Claims | Yes | No |
| 3 | SBN | Yes | Yes |
| 4(a)-(h) | Unsecured Creditors of each Debtor | Yes | Yes |
| 5 | Existing Equity Interests | Yes | Yes |

11

## B. Treatment of Classified Claims and Existing Equity Interests

The following chart[2] summarizes the classification and treatment of Allowed Claims and Existing Equity Interests under the Plan:

| Class | Claim/Interest | Summary of Treatment of Claim/Interest |
|-------|----------------|----------------------------------------|
| 1 | **Administrative Expense Claims** | **Allowed Administrative Expense Claims**. To the extent any non-Professional Administrative Expense Claims are Allowed pursuant to Article II of the Plan, the Holder of such Claim will be paid by the Debtors in Cash the Allowed amount of such Claim on the Effective Date or will be paid in Cash the Allowed amount of such Claim as soon thereafter as practicable unless the Holder of such Claim agrees to alternative treatment with the Debtors prior to the Effective Date.<br><br>**United States Trustee Fees.** With respect to amounts due to the office of the United States Trustee, the Debtors shall pay the appropriate sum required by 28 U.S.C. § 1930(a)(6) within thirty (30) days of the Effective Date. The Debtors shall timely pay to the United States Trustee any and all post-confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the Bankruptcy Court. Additionally, the Debtors shall submit to the United States Trustee post-confirmation quarterly operating reports in the format prescribed by the United States until such time as this case is converted, dismissed or closed by the Bankruptcy Court. At this time, the Debtors are current on all fees owed to the United States Trustee<br><br>**Professional Compensation and Reimbursement Claims.** Within thirty (30) days from the date the Confirmation Order becomes a Final Order, any Professional seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (a) file their respective applications for final allowances of compensation for |

---

[2]     This chart is only a summary of the classification and treatment of Claims and Interests under the Plan. Reference should be made to the entire Plan and the Disclosure Statement for a complete description of the classification and treatment of Claim and Interests.

12

{00366819-1}

| | | |
|---|---|---|
| | | services rendered and reimbursement of expenses incurred; (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the Order relating to or Allowing any such Administrative Expense Claim; and (c) be able to apply any amounts held in retained up to amounts as are Allowed by the Bankruptcy Code. |
| 2 | **Priority Claims** | <u>**Priority Claims Other Than Under Section 507(a)(8).**</u> *The Debtors contend that there are no Allowed Priority Claims other than those arising under Section 507(a)(8) of the Bankruptcy Code.* To the extent there are any such Allowed Priority Claims, each Holder of such Claims will receive the treatment required by Section 1129(a)(9)(A) or (B) of the Bankruptcy Code, as appropriate.<br><br><u>**Priority Claims Under Section 507(a)(8).**</u> Holders of Allowed Priority Claims arising under Section 507(a)(8) of the Bankruptcy Code will be paid on the Effective Date of the Plan. |
| 3 | **SBN Secured Claim** | The Holder of an Allowed Class 3 SBN Secured Claim shall receive monthly payments based upon the following:<br><br>    a) principal amount equal to the amount of the Allowed SBN Secured Claim;<br>    b) Interest accruing at the Plan Rate;<br>    c) an amortization of twenty (20) years; and<br>    d) a term of seven (7) years.<br><br>On the 7th anniversary of the Effective Date, all unpaid principal and interest shall be paid to SBN in full satisfaction of its Allowed Class 3 SBN Secured Claim.<br><br>SBN shall retain a first priority Lien and security interest in and to the relevant Collateral. The Reorganized Debtors shall be entitled, in their sole discretion, to make advance or prepayments of the amounts due under this provision without penalty. Upon payment in full of the contemplated payments, SBN shall release and waive any Liens or security interests in or upon any Collateral securing the Allowed Class 3 Claim. |

13

| 4(a) – (h) | General Unsecured Claims against Each Debtor | To the extent that any Creditor has an Allowed Class 4 (a) – (h) General Unsecured Claim, such Holder of an Allowed Class 4 (a) – (h) General Unsecured Claim shall be entitled to receive a quarterly payments until such Allowed General Unsecured Claim is satisfied based upon the following: |
|---|---|---|
| | | a) the principal amount equal to the Allowed amount of such creditors claim; |
| | | b) an interest rate equal to the Plan Rate; and |
| | | c) an amortization of seven (7) years. |
| 5 | Existing Equity Interests | The Holder of any Existing Equity Interest will retain its Equity Interest in exchange for the funds available to the Debtors pursuant to the Plan Sponsor Term Sheet and the dedication of the CCF Funds to make principal payments to the Class 3 Creditor pursuant to the Plan. |

THE TREATMENT AND DISTRIBUTIONS PROVIDED TO HOLDERS OF ALLOWED CLAIMS AND EXISTING EQUITY INTERESTS PURSUANT TO THE PLAN ARE IN FULL AND COMPLETE SATISFACTION OF THE ALLOWED CLAIMS AND EXISTING EQUITY INTERESTS ON ACCOUNT OF WHICH SUCH TREATMENT IS GIVEN AND DISTRIBUTIONS ARE MADE. REFERENCE SHOULD BE MADE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EXISTING EQUITY INTERESTS.

**C.    Claims Objections and Administration**

**1.    Objections to Claims**

Except insofar as a Claim is Allowed under the Plan, the Debtors, prior to the Effective Date, and the Reorganized Debtors, subsequent to the Effective Date, shall be entitled to object to any Claim. The Debtors reserve the right to file any objection to any Claim on or before 180 days after the Effective Date, and such time period can be extended for cause upon request and approval by the Bankruptcy Court. For the avoidance of doubt, the Debtors, and the Reorganized Debtors after the Effective Date, specifically reserve and retain sole discretion to object to the validity, nature and amount of any Claim, as well as the extent, validity and priority of any alleged security interests asserted in connection with any Secured Claims asserted against the Debtors.

14

## 2.     No Distribution Pending Allowance

Notwithstanding any other provisions of the Plan, if any portion of an Administrative Expense Claim or a Claim is Disputed, no payment or distribution provided in the Plan shall be made on account of such Administrative Expense Claim or Claim unless and until such Disputed Administrative Expense Claim or Claim is resolved and becomes Allowed.

## 3.     Estimation of Claims

The Debtors may require at any time that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Clam, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.

## VI.     SUMMARY OF PLAN IMPLEMENTATION

## A.     Agreement Providing the Foundation of the Plan.

The foundation of the Plan is the agreement by and among the Debtors and the Plan Sponsor, all as reflected in the Plan Sponsor Term Sheet pursuant to which the necessary funds and assets are provided in order to effectuate and implement the Plan.  The agreement with the Plan Sponsor including, but not limited to, the commitment by the Plan Sponsor and Iberia Crewboat to provide funds to the Debtors to make payments to Creditors under the Plan provide the basis for funding of the Plan and allow for the distributions provided for under the Plan. Given this agreement, which is incorporated into and embodied in the Plan, the Plan is much more feasible than if a Plan had been proposed separate and apart from this agreement.  In light of this agreement, the feasibility of the Plan is substantially increased and the execution risks associated with the Plan and the inability for the obligations under the Plan to be funded is substantially decreased.

## B.     Vesting of Assets

On the Effective Date, the Debtors, their properties and interests in property, and their operations will be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the bankruptcy estates of the Debtors, with the exception of the Retained Causes of Action, will vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests, but specifically subject to the obligations of the Reorganized Debtors as provided in the Plan.

15

{00366819-1}

## C. Sources of Payments

There are five (5) principal sources of payments by which the Plan will be funded. More specifically, and as set forth in further detail in the Plan Sponsor Term Sheet, the payments to Holders of Allowed Secured Claims and General Unsecured Claims as contemplated under the Plan shall be funded utilizing the proceeds derived from, *inter alia,* (a) the operations of the Debtors, (b) cash to be paid to the Debtors pursuant to the terms of the Plan Sponsor Term Sheet, (c) the CCF Funds, (d) the sale of Debtors assets; and (e) recoveries from the Retained Causes of Action.

## D. Retained Causes of Action

The Debtors specifically and unequivocally reserve the right to assert, after the confirmation of the Plan herein, any and all of the claims, rights, and Causes of Action, and all proceeds of the foregoing, including, but not limited to, those listed in Schedule 5.5 to the Plan, which is a non-exclusive list of Causes of Action and Potential Parties against whom the Debtors may assert Causes of Action. The failure to include a person or an entity on this list shall not constitute a release of such entity and shall not indicate Causes of Action against such entity have not been retained. All possible Causes of Action, including claims and Causes of Action not listed herein are retained against all entities not expressly released pursuant to the Plan or a final order of the Bankruptcy Court. In the event of any inconsistency between the releases pursuant to the Plan or a final order of the Bankruptcy Court and Schedule 5.5 to the Plan, such releases granted pursuant to the Plan or final order of the Bankruptcy Court shall govern. The Debtors specifically retain all Causes of Action of any kind whatsoever against all such persons or entities, including without limitation the Causes of Action set forth on Schedule 5.5 to the Plan, including without limitation, any and all Avoidance Actions against the parties and in the approximate amounts as more particularly set forth in on Exhibit "A" to Schedule 5.5 to the Plan, but only to the extent that the aggregate value of all property that constitutes or is affected by such transfer to a particular transferee is greater than $6,425.00.

**On Exhibit "A" to Schedule 5.5 to the Plan, there are listed all payments made by the Debtors on or within ninety (90) days before the Petition Date, or between ninety (90) days and one (1) year before the Petition Date if such creditor at the time of such transfer was an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code. The transferees of any of these payments may be subject to having an Avoidance Action (as defined in the Plan) filed against such transferee to recover such transfers. Such transfers may be subject to certain defenses available to the transferee.**

## E. Distribution to Holders as of the Confirmation Date

As of the close of business on the Confirmation Date, the Claims Register and other registers as maintained by the Clerk of the Bankruptcy Court will be closed and there will be no further changes in the record Holder of any Claim. The Reorganized Debtors will have no obligation to recognize any transfer of any Claim occurring after the Confirmation Date, and the Reorganized Debtors will instead be authorized and entitled to recognize and deal for all purposes under the Plan only with those record Holders stated on the Schedules and/or Claims

16

{00366819-1}

Register, as the case may be, and other registers as of the close of business on the Confirmation Date.

**F.    Financial Projections**

Attached hereto as **Exhibit 5** are financial projections for the Reorganized Debtors taking into account the ongoing and continuing operations of the businesses of the Reorganized Debtors, together with the financial commitments and funds to be provided pursuant to the Plan Sponsor Term Sheet. The Debtors specifically reserve the right to amend and supplement **Exhibit 5**.

## VII.    PROVISIONS GOVERNING EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Assumption or Rejection of Executory Contracts**

The Bankruptcy Code empowers the Debtors to assume or reject their executory contracts and unexpired leases. All executory contracts and unexpired leases that existed between the Debtors and any Person or entity will be *deemed* to be rejected by the Debtors as of the Petition Date, except for any executory contract or unexpired lease that has previously been assumed pursuant to an order of the Bankruptcy Court or is listed on Schedule 10.1 to the Plan. For the avoidance of doubt, the Debtors specifically reserve the right to amend Schedule 10.1 of the Plan at any time prior to the Confirmation Date. In the event that the Debtors, pursuant to Section 10.1 of the Plan, add any executory contract or unexpired lease to Schedule 10.1 prior to the Confirmation Date, the Debtors shall provide written notice to all counterparties to such executory contract or unexpired lease and include therein the amount of any associated Cure Amount Claim, if any. For the avoidance of doubt, listing a contract or lease on Schedule 10.1 will not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code or that the Debtors have any liability thereunder.

**B.    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Entry of the Order approving this Disclosure Statement will constitute the approval, pursuant to Sections 365(a) and 1123(b2) of the Bankruptcy Code, of the assumption or rejection, as applicable, of the executory contracts and unexpired leases assumed and rejected, as applicable, pursuant to the foregoing Section.

**C.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Any Rejection Claim must be filed with the Bankruptcy Court and served upon the attorneys for the Debtors on or before the Rejection Claim Bar Date. In the event that the rejection of an executory contract or unexpired lease by the Debtors or the Reorganized Debtors results in damages to the other party or parties to such contract or lease, a Claim for such

17

{00366819-1}

damages, if not evidenced by a timely-filed Rejection Claim, will be forever barred and will not be enforceable against the Debtors, the bankruptcy estates or the Reorganized Debtors.

## D. Payments Related to Cure Amount Claims and Deadline to Object to or Assert any Cure Amount Claim

### 1. Payment of Cure Amount Claims.

With respect to any executory contract or unexpired lease to be assumed pursuant to the Plan, Schedule 10.1 to the Plan further provides the Debtors' proposed Cure Amount Claim, if any, associated with each such executory contract and unexpired lease. Cure Amount Claims will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtors, (1) by payment of the Cure Amount Claim in Cash on the Effective Date or (2) on such other terms as are agreed to be the parties to such Executory Contract or Unexpired Lease. To the extent that any counterparty to an executory contract or unexpired lease to be assumed by the Debtors pursuant to the Plan disputes the asserted amount of the Cure Amount Claim set forth on Schedule 10.1 to the Plan or asserts any other dispute regarding the proposed assumption, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

### 2. Objections to Cure Amount Claims.

Assumption of any executory contract or unexpired lease set forth on Schedule 10.1 to the Plan, together with the associated Cure Amount Claim set forth thereon, will be deemed effective as of the Effective Date unless the other party (or parties) to such executory contract or unexpired lease files in the Bankruptcy Case and serves on the Debtors not late than five (5) days prior to the Confirmation Date an objection to (1) the amount of any Cure Amount Claim as set forth on Schedule 10.1; (2) the ability of the Debtors "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption of such executory contract or unexpired lease.

## VIII. CONFIRMATION OF PLAN

The Plan cannot be consummated unless it is confirmed by the Bankruptcy Court. Confirmation of the Plan requires that, among other things, either (i) each class of Claims or Existing Equity Interests that is Impaired by the Plan has voted to accept the Plan by the requisite majority, or (ii) the Plan is determined by the Bankruptcy Court to be fair and equitable, as defined by the Bankruptcy Code, with respect to classes of Claims or Existing Equity Interests that have rejected the Plan. The Bankruptcy Code also requires that the Confirmation of the Plan be in the "best interests" of all Holders of Claims and Existing Equity Interests. The Debtors believe that the Plan meets the Confirmation requirements of the Bankruptcy Code.

{00366819-1}

## A.     Manner of Voting

IT IS IMPORTANT THAT HOLDERS OF CLAIMS AND EXISTING EQUITY INTERESTS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN. All known Holders of Claims and Existing Equity Interests entitled to vote on the Plan have been sent a Ballot contained in the Solicitation Package. Such Holders should read the Ballot carefully and follow the instructions contained therein. In voting for or against the Plan, please use only the Ballot(s) sent to you with this Disclosure Statement. If a creditor has an Allowed Claim or Existing Equity Interest in more than one class, such creditor may vote multiple Ballots.

FOR YOUR BALLOT TO COUNT, YOUR BALLOT MUST BE ACTUALLY RECEIVED BY DEBTORS' COUNSEL (IDENTIFIED BELOW) NO LATER THAN THE VOTING DEADLINE. IF YOU MUST RETURN YOUR BALLOT TO YOUR ATTORNEY OR ANYONE ELSE WHO WILL BE VOTING FOR YOU, YOU MUST RETURN YOUR BALLOT TO THEM IN SUFFICIENT TIME TO PROCESS IT AND RETURN IT TO DEBTORS' COUNSEL BY THE VOTING DEADLINE.

ANY BALLOT WHICH IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DEEMED AN ACCEPTANCE OF THE PLAN. IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES OR IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT DEBTORS' COUNSEL AT THE FOLLOWING ADDRESS OR TELEPHONE NUMBER:

> Heller, Draper, Patrick, Horn & Manthey
> Attn: Douglas S. Draper
> 650 Poydras Street, Suite 2500
> New Orleans, LA 70130
> (504) 299-3333

Additional copies of the Plan, the Disclosure Statement, or any exhibits to such documents may be obtained at your own expense, unless otherwise specifically required by Rule 3017(d) of the Federal Rules of Bankruptcy Procedure by requesting copies thereof from Debtors' counsel.

## B.     Creditors Eligible to Vote

Subject to the provisions of the Disclosure Orders, any Holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Articles III and IV of the Plan (*i.e.*, Classes 2- 4a-h) shall be entitled to vote to accept or reject the Plan.

If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in Section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or to undertake to have the Bankruptcy Code confirm the Plan under Section 1129(b) of the Bankruptcy Code or both. Section 1129(b) of the Bankruptcy Code

19

provides that the Plan may be confirmed by the Court despite not being accepted by every Impaired Class if (i) at least one Impaired Class of Claims, excluding the claims of insiders, has accepted the Plan; and (ii) the Court finds that the Plan does not discriminate unfairly and is fair and equitable to the rejected Class. Among other things, such a finding would require a determination by the Court that the Plan provides that no Holder of an Allowed Claim or Existing Equity Interest junior to the rejecting Class will receive or retain property or payment under the Plan until or unless such rejecting Class is paid in full. The Debtors reserve the right pursuant to Section 1129(b) of the Bankruptcy Code to request the Court to confirm the Plan if all of the applicable requirements of Section 1129(a) of the Bankruptcy Code have been met. In addition, the Debtors reserve the right pursuant to Section 1126(e) of the Bankruptcy Code to request the Court to strike any Ballot rejecting the Plan cast by any Holder of a Claim or Existing Equity Interest that was not cast in good faith.

## C.     Acceptance Necessary to Confirm the Plan

For the Plan to be accepted and thereafter confirmed, it must be accepted by at least one (1) class of Claims that is Impaired by the Plan. Under Section 1126 of the Bankruptcy Code, the Impaired class is deemed to have accepted the Plan if: (i) with respect to a class of Claims, votes representing at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of Allowed Claims that have voted in that class have accepted the Plan, and (ii) with respect to a class of Existing Equity Interests, votes representing at least (2/3) in amount of those Existing Equity Interests that have voted have accepted the Plan; provided, however, that the vote of any Holder of an Allowed Claim or Existing Equity Interest whose acceptance or rejection of the Plan was not made in good faith, as determined by the Court, will not be counted.

If a class of Claims has been Impaired by the Plan, the Impaired class must accept the Plan. Otherwise, the Bankruptcy Court, in order to confirm the Plan, must independently determine that the Plan provides to each Holder of a Claim or Existing Equity Interest, as the case may be, of such class a recovery which has a value, as of the Effective Date, at least equal to the value of the distribution which such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

CREDITORS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE DISCLOSURE ORDER FOR A FULL UNDERSTANDING OF VOTING REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, USE OF BALLOTING FORMS.

## D.     General Procedures for Solicitation and Voting

Pursuant to Bankruptcy Rule 3017(d), on or before the date as specified in the Disclosure Order (the "Solicitation Mailing Date"), the Debtors will transmit the Solicitation Packages to all parties entitled to receive them.

### 1.   Procedures for Holders of Contingent, Unliquidated, and Disputed Claims

Pursuant to Bankruptcy Rule 3003(c)(2), the Debtors will not mail or distribute any documents or notices to any Holders of Claims or Existing Equity Interests (a) whose Claim or

20

{00366819-1}

Existing Equity Interest is not scheduled or is scheduled at zero, in an unknown amount or as disputed, contingent, or unliquidated and (b) who failed to file a Proof of Claim timely. Moreover, such Holders shall not be treated as a Holder of a Claim or Existing Equity Interest with respect thereto for the purposes of voting and distribution.

### 2. Procedures for Vote Tabulation

#### a. Voting Deadline

Pursuant to Bankruptcy Rule 3017(c), and as set forth above, the last date and time by which ballots for accepting or rejecting the Plan must be received by the Debtors in order to be counted shall be the Voting Deadline.

#### b. Tabulation Process

The following general voting procedures and standard assumptions shall be used in tabulating ballots:

- Except to the extent determined by the Debtors in their sole discretion, the Debtors will not accept or count any Ballots received after the Voting Deadline;

- The method of delivery of Ballots to be sent to the Debtors is at the election and risk of each Holder, provided that, except as otherwise provided in the Plan, such delivery will be deemed made only when the original executed Ballot is actually received by the Debtors;

- If multiple Ballots are received from, or on behalf of, an individual Holder for the same Claims prior to the Voting Deadline, the last Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

- Any trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, who signs a Ballot must (i) indicate his or her capacity as such when signing and (ii) unless otherwise determined by the Debtors, submit proper evidence of such authority to act on behalf of a beneficial interest Holder in form and content satisfactory to the Debtors;

- The Debtors reserve the absolute right to reject any and all Ballots not proper in form, the acceptance of which would, in the opinion of the Debtors and their counsel, not be in accordance with the provisions of the Bankruptcy Code; and

- Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to

21

{00366819-1}

deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (as to which any irregularities have not theretofore been cured or waived) will not be counted.

## E. Distributions Under the Plan

### 1. Distributions on Account of Allowed Claims

Distributions with respect to Allowed Claims shall be made in accordance with the Plan. All Allowed Claims in a particular class held by a Creditor shall be aggregated and treated as a single Claim. Any Creditor holding multiple Allowed Claims shall provide to the Debtors a single address to which any distribution shall be sent. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 2. Disallowed Claims

In the event the Debtors have asserted a Cause of Action under Chapter 5 of the Bankruptcy Code against the Holder of a Claim, then such Claim shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code. Consequently, the Holders of such Claims may not vote to accept or reject the Plan until the Cause of Action against such Claimant has been settled or adjudicated by the Bankruptcy Court and any amounts due the Debtors have been received.

### 3. Estimated Claims

To the extent that any Claim is estimated for any purposes other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

### 4. No Interest

Except as expressly stated in the Plan or otherwise allowed by Final Order of the Bankruptcy Court, no Holder of an Allowed Claim will be entitled to the accrual of Post-Petition Date interest or the payment of Post-Petition interest penalties, or late charges on account of such claim for any purpose.

### 5. Modification of Payment Terms

With the consent of the Holder of any such Allowed Claim, to the extent provided in Section 1123(a)(4) of the Bankruptcy Code, the Debtors may modify the treatment of any Allowed Claim at any time after the Effective Date.

22

{00366819-1}

### 6. Delivery of Distributions

Except as otherwise provided herein, all distributions under the Plan shall be made by the Debtors. Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions to any Holder of an Allowed Claim by the Reorganized Debtors will be made to the Holder of each Allowed Claim at the address of such Holder as listed in the Schedules, or on the books and records of the Debtors unless the Reorganized Debtors have been notified in advance in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such Holder that provides an address for such Holder different from the address reflected in the Schedules or in the Debtors' books and records. In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder will be made unless and until the Reorganized Debtors have been notified of the then-current address of such Holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such Holder without interest; provided, however, that such undeliverable distributions will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date of distribution, and any Claim of any Holder in or to such property shall be discharged and forever barred. Nothing herein shall require or be construed to require the Reorganized Debtors or their designee to locate any Holder of any Allowed Claim. Rather it is the duty of each Holder of any Allowed Claim to keep the Reorganized Debtors apprised of its current mailing address. The Reorganized Debtors will have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Schedules and the books and records maintained by Debtors (including any proofs of claim filed against the Debtors).

### 7. Manner of Payment

At the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or, at the option of the Reorganized Debtors, by wire transfer.

### 8. Withholding and Reporting Requirements

In connection with the Plan and all instruments issues in connection therewith and distributed thereunder, the Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 9. Time Bar to Cash Payments

Checks issued by the Reorganized Debtors in accordance with the Plan in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtors by the Holder of the Allowed Claim to whom such check was originally issues. Any such request in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors

{00366819-1}

for the benefit of the Holders of other Claims and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Reorganized Debtors.

### 10. Minimum Distributions

No payment of Cash in an amount less than $100 shall be made by the Reorganized Debtors. Any Cash that cannot be distributed in accordance with this Section shall automatically vest in the Reorganized Debtors for the benefit of the Holders of other Claims.

### 11. Setoffs and Recoupment

The Reorganized Debtors may, but shall not be required, to set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Claims of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim the Debtors may have against the Holder of such Claim.

In addition, the Plan shall not adversely affect the right of recoupment possessed by creditors against the Debtors.

### 12. Allocation of Plan Distribution Between Principal and Interest

All distributions in respect of any Allowed Claim made by the Reorganized Debtors shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### F. Hearing on Confirmation of the Plan

Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of a plan of reorganization. A hearing on confirmation of the Plan will be held on the date and time specified in the Disclosure Orders, before the Honorable John W. Kolwe, at the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division, 214 Jefferson Street, Suite 100, Lafayette, Louisiana 70501 (the "Confirmation Hearing"). The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan of reorganization. Any objection to confirmation of the Plan must be made in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, set forth the name of the objector, the nature and amount of the Claim or Existing Equity Interest held or asserted by the objector against the Debtors' estates or property, the basis for the objection and the specific grounds therefor, including to which Debtor the objection pertains. **The objection, together with proof of service thereof, must be filed with**

24

the Clerk of Court on or before the time and date specified in the Disclosure Statement Order (the "**Plan Objection Deadline**") and served on the following persons by such Plan Objection Deadline:

1. Counsel for the Debtors:
   Douglas S. Draper
   Heller, Draper, Patrick, Horn & Manthey
   650 Poydras St., Suite 2500
   New Orleans, LA 70130

2. Counsel for the Plan Sponsor
   Stewart F. Peck
   Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
   601 Poydras Street, Suite 2775
   New Orleans, LA 70130

3. Office of the United States Trustee
   Gail B. McCulloch
   Assistant United States Trustee
   300 Fannin Street
   Shreveport, LA 71101

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND PROPERLY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## G.    Requirements for Confirmation of the Plan

### 1.    Acceptance

Holders of Claims and Interests in Classes 3, 4(a)-(h) and 5 are Impaired under the Plan, and the Holders of such Claims and Interests are entitled to vote on the Plan and, therefore, must accept the Plan in order for it to be confirmed without application of the "fair and equitable test," described below, to such Class. As stated above, a Class of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and a majority in number of the Claims of such Class (other than any Claims of creditors designated under Section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### 2.    Confirmation Without Unanimous Acceptance; Cramdown

Section 1129(b) of the Bankruptcy Code provides that the Plan may be confirmed by the Court despite not being accepted by every Impaired class if (i) at least one Impaired class of Claims, excluding the claims of insiders, has accepted the Plan; and (ii) the Court finds that the Plan does not discriminate unfairly and is fair and equitable to the rejected classes. Among other things, such a finding would require a determination by the Court that the Plan provides that no

25

Holder of an Allowed Claim or Existing Equity Interest junior to the rejecting class will receive or retain property or payment under the Plan until or unless such rejecting class is paid in full.

The Debtors reserve the right pursuant to Section 1129(b) of the Bankruptcy Code to request the Court to confirm the Plan if all of the applicable requirement of Section 1129(a) of the Bankruptcy Code have been met. In addition, the Debtors reserve the right pursuant to Section 1129(e) of the Bankruptcy Code to request the Court to strike any Ballot rejecting the Plan cast by any Holder of a Claim or Existing Equity Interest that was not cast in good faith.

### 3. Absolute Priority Rule

The "absolute priority rule" provides that the Plan is fair and equitable with respect to a rejecting class if the rejecting class receives payment in full over time with interest or as long as no class junior to it receives a distribution under the Plan. The Debtors believe that the Plan represents the best option available to maximize the return to all creditors. Furthermore, under the Plan, no inferior class of creditors or Interest Holders will receive or retain anything unless the Allowed Claims of all superior classes are paid in full.

### 4. Best Interest Test

Attached as **Exhibit 6** is a liquidation analysis showing that each Class of Creditors will receive more under the Plan than under a hypothetical Chapter 7. The Debtors specifically reserve the right to amend and supplement **Exhibit 6**.

## H. Conditions Precedent to Effective Date

### 1. Conditions Precedent to Effectiveness

The Effective Date will not occur and the Plan will not become effective unless and until (a) the Confirmation Order shall have been entered and shall have become a Final Order and (b) satisfaction of the "Closing Conditions" and other conditions precedent set forth in the Plan Sponsor Term Sheet.

### 2. Waiver of Conditions Precedent

The conditions precedent of the Plan may be waived, in whole or in part, by the Debtors with the consent of the Plan Sponsor. Any such waiver may be effected at any time, without notice, without leave or Order of the Bankruptcy Court, and without any formal action.

### 3. Satisfaction of the Conditions Precedent

Any action required to be taken on the Effective Date will take place and will be deemed to have occurred simultaneously, and no such action will be deemed to have occurred prior to the taking of any other such action. In the event that the condition precedent specified has not occurred or otherwise been waived, (i) the Confirmation Order will be vacated, (ii) the Debtors and all Holders of Claims and Interests will be restored to the status quo ante as of the day

26

immediately preceding the Confirmation Date as those the Confirmation Date never occurred, and (iii) the Debtors' obligations with respect to Claims and Existing Equity Interests will remain unchanged an nothing contained in the Plan will constitute or be deemed a waiver or release of any Claims or Existing Equity Interests by or against the Debtors or any other Person to prejudice in any manner the rights of the Debtors or any Person in further proceedings involving the Debtors.

## I.     Effect of Confirmation

### 1.     Binding Effect

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan will bind any Holder of a Claim against, or Existing Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Existing Equity Interest including any Existing Equity Interest of such Holder is impaired under the Plan and whether or not such Holder is entitled to distribution under the Plan.

### 2.     Discharge of Claims

The confirmation of the Plan does not discharge the Debtors from any existing Debts and Claims asserted against the Debtors that arose prior to the Effective Date, as provided by Section 1141(d)(3)(A) of the Bankruptcy Code.

### 3.     Release and Exculpation

EACH OF THE DEBTORS AND EACH HOLDER OF A CLAIM OR INTEREST WHO (I) ACCEPTS A DISTRIBUTION UNDER THE PLAN, (II) VOTES TO ACCEPT OR IS DEEMED TO ACCEPT THE PLAN, OR (III) DOES NOT TIMELY SUBMIT ITS BALLOT VOTING ON THE PLAN, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE CONCLUSIVELY DEEMED FOR ALL PURPOSES TO HAVE FOREVER WAIVED ANY AND ALL CAUSES OF ACTION, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, LOSSES OR LIABILITIES WHATSOEVER, AGAINST ALL COVERED PARTIES ARISING PRIOR TO THE EFFECTIVE DATE, AND RELEASE ALL COVERED PARTIES FROM ALL CAUSES OF ACTION, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, LOSSES OR LIABILITIES WHATSOEVER ARISING PRIOR TO THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, ALL CAUSES OF ACTION ARISING IN CONNECTION WITH OR RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE (A) OPERATIONS OF THE DEBTORS PRIOR TO AND DURING THE CASES, (B) BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY HOLDER OF A CLAIM OR INTEREST WHO (I) ACCEPTS A DISTRIBUTION UNDER THE PLAN, (II) VOTES TO ACCEPT OR IS DEEMED TO ACCEPT THE PLAN, OR (III) DOES NOT TIMELY SUBMIT ITS BALLOT VOTING ON THE PLAN AND ANY COVERED PARTIES, (C) SUBJECT MATTER OF OR THE TRANSACTIONS OR EVENTS GIVING RISE TO ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, (D) PURSUIT OF CONFIRMATION OF THE PLAN, (E) CONSUMMATION OF THE PLAN, (F) ADMINISTRATION OF THE

{00366819-1}

PLAN, (F) PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, OR (G) TRANSACTIONS CONTEMPLATED BY THE PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EXCEPT AS TO OBLIGATIONS EXPRESSLY PROVIDED IN OR RESERVED BY THE PLAN OR THE CONFIRMATION ORDER. ON THE EFFECTIVE DATE, ANY AND ALL CAUSES OF ACTION OF EACH OF THE DEBTORS AND EACH HOLDER OF A CLAIM OR INTEREST WHO (I) ACCEPTS A DISTRIBUTION UNDER THE PLAN, (II) VOTES TO ACCEPT THE PLAN, OR (III) DOES NOT TIMELY SUBMIT ITS BALLOT VOTING ON THE PLAN AGAINST ANY OF THE COVERED PARTIES SHALL AUTOMATICALLY AND IMMEDIATELY BE FULLY AND FINALLY WAIVED, RELEASED, AND DISCHARGED FOR ALL PURPOSES.

NONE OF THE COVERED PARTIES SHALL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY OF THE DEBTORS OR ANY HOLDER OF A CLAIM OR INTEREST OR ANY OTHER PARTY IN INTEREST IN THE CASES, OR ANY OF THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, AGENTS, REPRESENTATIVES, ATTORNEYS, ADVISORS OR OTHER PROFESSIONAL REPRESENTATIVES, OR ANY OF THEIR SUCCESSORS, HEIRS, OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF (I) THE CASES, (II) ANY ACT TAKEN OR OMITTED TO BE TAKEN ON OR AFTER THE PETITION DATE IN CONNECTION WITH THE CASES, OR (III) THE DISCLOSURE STATEMENT, THE PLAN, OR THE DOCUMENTS AND ACTIONS NECESSARY TO PERFORM THE PLAN, EXCEPT FOR OBLIGATIONS OF ANY OF THE COVERED PARTIES EXPRESSLY ARISING UNDER OR IN ACCORDANCE WITH THE PLAN AND CONFIRMATION ORDER, AND EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; AND EACH OF THE COVERED PARTIES SHALL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN AND CONFIRMATION ORDER.

Notwithstanding the foregoing, no Covered Party shall receive a release or exculpation in excess of that allowed under applicable Bankruptcy Law.

**4.    Plan Exclusive Remedy/Suit Limitation**

Notwithstanding anything contained herein to the contrary, neither the Debtors, the Reorganized Debtors, the Officers nor the Guarantors shall be discharged and released from any liability for Claims under the Plan, however, the exclusive remedy for payment of any Claim of a Creditor that is being paid in full (including any Guaranty Claims possessed by such Creditor) under the Plan so long as the Plan is not in default shall be the Plan.

Notwithstanding anything contained herein to the contrary, none of the Debtors, Reorganized Debtors, the Officers, or Guarantors shall be discharged and released from any liability for Claims under the Plan, however, absent further Court Order upon Notice and Hearing, the exclusive remedy for payment of any Claim (including any guaranty claim possessed by such creditor) of a Creditor that is being paid in full under the Plan so long as the

28

Plan is not in default shall be the Plan. Each Creditor which possesses a guaranty of a Claim against the Debtors (a "Guaranty") to the extent that such Creditor is being paid in full (including any Guaranty Claims possessed by such Creditor) under the Plan is enjoined from filing suit against any of the guarantors or sureties of such Claim (each, a "Guarantor") absent: 1) the Plan being in default with respect to such Creditor; or 2) so long as the Debtors' Bankruptcy Cases remain open, an order of the Bankruptcy Court is entered authorizing the Creditor to proceed against any or all of the Guarantors; provided, however, that notwithstanding any term or provision in this Plan, any Guaranty shall continue to be in full force and effect and any Guarantor that is liable to any Creditor pursuant to any Guaranty shall be liable to such Creditor for the Debtors' obligations to such Creditor under this Plan pursuant to the terms and conditions of the Guaranty.

To the extent a creditor whose claim will be time barred as a result of the stay contained in the Plan, the Debtors and any affiliate of the Debtors shall execute a new note or other document to toll the running or extend the applicable statute of limitations. The cost of the documentation shall be the sole cost of the creditor and the terms and conditions contained in such documentation shall not alter or change the terms of this Plan or the loan documents that existed between the Debtors and such creditor (as modified by the Plan) that existed prior to the documentation executed pursuant to this provision of the Plan.

5.    **Injunction or Stay**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against the Debtors will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtors or Reorganized Debtors; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors and Reorganized Debtors with respect to such Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or against property or interests in property of the Debtors or Reorganized Debtors with respect to such Claim; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors with respect to such Claim; and (v) pursuing any Claim released pursuant to the Plan.

## IX.    GENERAL PROVISIONS

A.    **Tax Reporting Requirements**

Each Holder of an Allowed Claim that is to receive a distribution under the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

{00366819-1}

**B.     No Transfer Tax**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer in anticipation of or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**C.     Substantial Consummation**

Upon completion of all payments to Creditors pursuant to the Plan, the Plan will be deemed substantially consummated under Section 1101 and 1127(b) of the Bankruptcy Code. Upon full consummation, the Reorganized Debtors will file appropriate pleadings seeking to close the Bankruptcy Cases.

## X.     MISCELLANEOUS PROVISIONS

**A.     Confirmation Order and Plan Control**

In the event of an inconsistency between the terms of the Confirmation Order or the Plan with the Disclosure Statement, or any other agreement entered into between or among the Debtors and any third party, the Confirmation Order shall control the Plan, and the Plan shall control the Disclosure Statement.

**B.     Modification of Plan**

Amendments or modifications of or to the Plan may be proposed in writing by the Debtors, with the consent of the Plan Sponsor, at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided: (i) the Plan, as altered, amended, or modified, satisfies the requirements of Section 1122 and 1123 of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and hearing, confirms the Plan, as altered, amended, or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such alterations, amendments, or modifications. A Holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

Prior to the Effective Date, the Debtors, with the consent of the Plan Sponsor, may make appropriate technical adjustments and modifications to the Plan of Reorganization, provided the adjustments or modifications are allowable under the Bankruptcy Code and Rules, without further order or approval of the Bankruptcy Court and provided that such technical adjustments

30

and modifications do not adversely affect in a material way the treatment of Holders of Claims or Existing Equity Interests.

## C. Revocation, Withdrawal, Amendment or Supplementation of the Plan

The Debtors, with the consent of the Plan Sponsor, reserve the right to revoke, withdraw, amend and/or supplement the Plan, in whole or in part, prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan in whole prior to the Confirmation Date, then the Plan will be deemed null and void. If the Debtors, with the consent of the Plan Sponsor, amend and/or supplement the Plan prior to the Confirmation Date, then the Plan shall be subject to such amendment or supplementation, as applicable.

## D. Severability of Plan Provisions

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

## E. Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana without giving effect to its principles of conflict of laws.

## F. Notices

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic mail transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail transmission, when received and confirmed by return electronic mail transmission, addressed as follows:

If to the Debtors, addressed to:

Mr. Steven, L.L.C., et al.
c/o Steven J. Miguez, Manager
107 Hwy 90 West
New Iberia, LA 70560

{00366819-1}

with a copy to:

Douglas S. Draper, Esq.
Heller, Draper, Patrick, Horn & Manthey, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130

If to the Plan Sponsor, addressed to:

Mr. Steven J. Miguez
107 Hwy 90 West
New Iberia, LA 70560

with a copy to:

Stewart Peck, Esq.
Lugenbuhl, Wheaton, Peck, Rankin
& Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

## XI.   JURISDICTION OF BANKRUPTCY COURT

Subsequent to Confirmation of the Plan (including after the Bankruptcy Cases have been closed), the Court shall retain jurisdiction of all matters arising out of or related to the Bankruptcy Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, but not limited to, the following purposes:

(i)      To determine any and all objections to and proceedings involving the allowance, estimation, classification, priority, payment or subordination of Claims or Interests;

(ii)     To determine any and all applications or motion for allowances of compensation and reimbursement of necessary expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(iii)    To hear and determine any timely objections to, or requests for estimation of, disputed Claims, in whole or in part;

(iv)    To determine any and all applications, adversary proceedings, and contested or litigated matters initiated or asserted by the Debtors on or prior to the Effective Date and initiated or asserted by the Reorganized Debtors subsequent to the Effective Date and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Bankruptcy Cases, including but not limited to, (a) Causes of Action to avoid or recover transfers of the Debtors' property, including, but not limited to, all Avoidance Actions and actions pursuant to applicable state law; (b) all Claims and Causes of Action arising from prepetition activities of the Debtors, whether arising by statute or common law, whether arising under the laws of the United States,

{00366819-1}

Mississippi, or any other state having jurisdiction over any claim or controversy, and whether maintainable against third parties, affiliates, or insiders of the Debtors; and/or (c) Claims, Causes of Action, and other litigation that may adversely impact or affect the Post-Confirmation Debtors' property;

(v)     To issue orders, determinations, and rulings regarding the valuation, recovery, disposition, distribution, operation or use of the Debtors' property, including claims to recover preferences, fraudulent conveyances, or damages of any type from any person and whether initiated before or after the Effective Date;

(vi)     To consider any modifications to the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(vii)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, implementation, or consummation of the Plan or any Person's obligation and responsibilities thereunder;

(viii)     To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtors or the Reorganized Debtor;

(i)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(ii)     To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions, and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(iii)     To enforce the automatic stay and to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person or entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

(iv)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(v)     To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

(vi)     To consider any amendments to or modifications of the Plan or to cure any defect or omission, to reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vii)     To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document

33

{00366819-1}

governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(viii) To recover all assets of the Debtors and property of the bankruptcy estates, wherever located;

(ix) To determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(x) To hear any other matter not inconsistent with the Bankruptcy Code; and

(xi) To enter a final decree closing the Bankruptcy Cases.

## XII. CONCLUSION AND RECOMMENDATION

The Debtors believe that the Plan is in the best interests of all Holders of Claims and Interests and of all other persons who will be affected by the confirmation of the Plan. The Debtors urge the Voting Classes to vote to accept the Plan and to evidence such acceptance by returning their Ballots so that they will be actually received by the Debtors' counsel by the Voting Deadline.

[Remainder of Page Left Blank Intentionally]

{00366819-1}

Dated: February 7, 2019

Respectfully submitted,

/s/ Douglas S. Draper
Douglas S. Draper, La Bar No. 5073
Leslie A. Collins, La Bar No. 14891
Greta M. Brouphy, La Bar No. 26216
Heller, Draper, Patrick, Horn & Manthey, LLC
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: (504) 299-3300
Fax: (504) 299-3399
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: gbrouphy@helldraper.com

*Attorneys for Debtors*

{00366819-1}