UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| MR. STEVEN, L.L.C | * | |
| | * | CHAPTER 11 |
| DEBTORS | * | |
| | * | Jointly Administered |
| IN RE: | * | CASE NO. 18-51523 |
| MR. ROW, L.L.C | * | |
| IN RE: | * | CASE NO. 18-51517 |
| LADY BRANDI, L.L.C | * | |
| IN RE: | * | CASE NO. 18-51521 |
| MR. MASON, L.L.C | * | |
| DEBTORS | * | |

**REPLY TO OMNIBUS OPPOSITION TO MOTIONS FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

SBN V FNBC LLC ("SBN"), the secured creditor in each of the captioned cases, respectfully replies to the omnibus oppositions to motions to lift stay filed by Mr. Mason, LLC, Mr. Row, LLC and Lady Brandi LLC (collectively "Debtors") and by SeaTran Marine, LLC ("SeaTran") as follows:

**Debtors' Opposition**

*Debtors' Statement of Facts Inaccurate*

SBN is not clear why the Debtors would overtly misstate the evidence presented at the hearing on the motion to lift stay in the Mr. Steven LLC, case no. 18-51277. This Court has the record—including the loan documents and the other evidence. Quite simply, Debtor's legal position that SeaTran owns the charter rights and payments and a myriad of other rights and that

such rights were transferred to SeaTran by verbal agreement (and written agreement signed the day before the bankruptcy) is belied by the properly perfected Mortgage. Debtor's assertions that "the structure of the agreement and the economics of the agreement were made available to the FNBC prior to its making its loan"[1] and various references to what FNBC thought or relied upon is wholly unsupported, belied by the clear written loan documents, and irrelevant as a matter of law. Debtor's assertion is even contradicted by Mr. Tizzard's own June 23, 2015 email where he tells the bank that SeaTran is just a manager and that 100% of the receivables from the vessels are funded to the vessel owners. SBN will refrain from correcting the numerous other misstatements of the evidence from the December 18, 2018 hearing as this Court has the record and is aware of the facts.

***Debtors' Do Not Address Basis for Stay Relief***

SBN is clearly entitled to relief from the stay. Debtor has simply ignored the very clear case law under section 362(d)(2) – Debtor cannot establish that the vessels are necessary for a reorganization because it cannot confirm a plan over SBN's objection. SBN fully briefed this issue, and the Debtor has failed to refute the holdings of the cases cited by SBN. This basis for stay relief is unrefuted.

Unable to refute the clear caselaw under sections 362(d)(2) and 1129(a)(10) cited by SBN, Debtors literally changed SBN's argument in its Opposition and then misleadingly cite *Matter of Village at Camp Bowie I, LP*, 710 F.3d 239 (5th Cir. 2013). Debtors argue that "[t]he fact that the unsecured creditor class may be small in comparison to the SBN claim does not mean that a small unsecured creditor class cannot satisfy the requirements for plan confirmation contained in 11

---

[1] Debtor Opposition, p. 2.

U.S.C. § 1129(a)(10)."[2] SBN has not argued that Debtors cannot satisfy section 1129(a)(10) because the unsecured class is small. SBN has established that it is undersecured as to each Debtor, and thus its deficiency claim which must be placed in the unsecured class prevents Debtor from obtaining the acceptance of an impaired accepting class. In *Camp Bowie*, the secured creditor was ***oversecured*** and had no deficiency claim in the unsecured class. The secured creditor objected to the plan as artificially impairing the unsecured class which was to be paid in full over a period of three months. *Id.* at 243. The secured creditor argued that a plan proponent cannot "'artificially' impair a friendly class of creditors solely to create the impaired accepting class necessary to satisfy § 1129(a)(10)." *Id.* at 244. The Fifth Circuit found that the unsecured class was impaired for purposes of section 1129(a)(1) even thought it was paid over just three months. In so doing, the Fifth Circuit specifically distinguished the secured lender's argument in *Bowie* from the typical secured lender position under section 1129(a)(10)(which is the SBN position in this case):

> Moreover, it ignores the determinative role § 1129(a)(10) plays in the typical single-asset bankruptcy case, in which the debtor has negative equity and the secured creditor receives a deficiency claim that allows it to control the vote of the unsecured class. In such circumstances secured creditors routinely invoke § 1129(a)(10) to block a cramdown, aided rather than impeded by the Code's broad definition of impairment.

Accordingly, the only case cited by Debtors referencing section 1129(a)(10) specifically recognizes SBN's blocking position in this case as routine.

Further, the evidence establishing Section 362(d)(1) cause for stay relief is overwhelming as this Court heard during the December 18, 2018 hearing. The Court has the Fifth Circuit precedent on this issue and it has been fully briefed. Debtors mistakenly cite *In re Fay Associates*, 225 B.R. 1 (Bankr. D.C. 1998) for the proposition that "there *cannot* be bad faith where the

---

[2] *Id.* at ¶ 19.

proposed plan will pay the secured creditor in full and satisfy the requirements of 11 U.S.C. § 1129."[3] Not only is this not the court's holding, the *Fay* court recognized the well-established proposition that, "[i]f it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist." *Id.* at 5 (quoting *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. B.A.P. 1983)). Debtors argument that cause under section 362(d)(1) cannot be found where a plan purports to pay creditors in full is simply not supported by *Fay* or any other authority cited by Debtors.[4]

*Debtors' Plan Not Feasible Even under Its Own Projections*

Ignoring SBN's legal position on section 362(d)(2), Debtors argue that their plan is feasible, and thus, the vessels are necessary to an effective reorganization. Even if SBN did not have a blocking position, Debtors' argument that the proposed plan is feasible and that confirmation is probable is clearly misguided.

As an initial matter, Debtors fail to recognize the impact of their SeaTran legal position on its proposed cramdown plan. No lender would ever lend into this structure. SeaTran has no legal obligations of any kind to the lender. SeaTran owes no financials, duties, or obligations of any kind to the lender. Yet SeaTran purports to have free and clear title to the charters and charter

---

[3] *Omnibus Opp. to Mot. for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) for ECF Nos. 126, 128, and 130* [Doc. 137], at ¶ 16 (emphasis added).

[4] Seatran incorrectly cites *Town of Hempstead Emps. Fed. Credit Union v. Wicks*, 215 B.R. 316, 321 (E.D.N.Y. 1997) for the proposition that "[t]he fact that a 100% Plan is being proposed itself undercuts SBN's ability to show 'cause' or bad faith." SeaTran Opposition, ¶ 6. *Town of Hempstead*, however, sets forth no rule that a debtor's proposal of a 100% plan precludes a finding of "cause" or bad faith. In *Town of Hempstead*, a Chapter 13 debtor proposed a plan that would pay its creditors in full, and the debtor's creditor contemporaneously violated the automatic stay by freezing the debtor's accounts post-petition, for months, without court approval. *Id.* at 317-318. When the debtor finally filed for an order releasing the funds, the creditor cross-moved for relief from stay and a right of setoff. *Id.* at 318. The Court denied the creditors' motion to because the creditor in *Town of Hempstead* offered no real argument or evidence in support of its assertion that "cause" existed so as to justify relief from the stay and found that "the debtors were entirely current with all of their loan payments to the Credit Union." This is certainly not the case here. The *Town of Hempstead* case is *not* authority for the proposition that cause or bad faith shall never be found where a "100% Plan" is being proposed.

payments with complete and absolute control of the vessel collateral. What would a lender say if the Debtors requested that it lend $23,500,000 into this absolutely absurd structure? In fact, there is no market for the purported SeaTran structure—none—at any rate of interest. Even without the SeaTran structure, vessel financing is nearly impossible to find and the terms are exorbitant (north of 15%). How much more would a lender charge if forced to lend into the SeaTran structure? To make matters worse, in the filed Plan, Debtors purport to further modify the Mortgage so as to allow Debtors to short sell collateral without lender consent (subject to a 7 day right of first refusal) and to allow Debtors to charter the vessels without lender consent. Putting aside that Debtors cannot modify the Mortgage in the Plan, these provisions even if allowed would be a nonstarter for any lender and would only further increase the market rate of interest.

Debtors, even if this Court were to effectively allow them to substantively consolidated with a nondebtor as proposed in the Plan (which is legally impermissible under the facts of this case), do not have the cashflow to fund a cramdown plan. Debtors' own rosy projections that the market is coming back cannot fund a market rate of interest on this level of debt even assuming that all of the capital construction funds are applied to principal. At a 15% rate of interest, monthly interest would accrue at $293,750.00 per month. Even at 10%, monthly interest would accrue at $195,833.33. Even at 5%, monthly interest would accrue at $117,500. Under its own projections, Debtor's 2019 monthly operating consolidated operating income is $105,000!  Debtors do not even have the operating cash to fund interest on the SBN claim much less amortize principal. Debtor's plan platitudes cannot overcome the Bankruptcy Code and cannot overcome financial reality.

Debtors need to reduce debt. They simply cannot service $23,500,000 in debt. The Debtors cannot afford to have 3 vessels that have been stacked for years, generating no revenue

5

18-51277 - #144  File 02/08/19  Enter 02/08/19 14:33:12  Main Document  Pg 5 of 14

and incurring significant expenses. A sale of the Mr. Steven, which has a strategic buyer, along with the Mr. Row, Ladi Brandi, and Mr. Mason will greatly reduce debt and expenses. If the capital construction funds were available, then did Debtors not use them to make payments on the debt to avoid foreclosure? Why would the Plan not provide the use of the funds at the outset of the Plan to reduce debt accruing interest at a high rate instead of sitting in an account generating interest at a low rate? Debtors cannot establish the availability of such funds given Mr. Miguez's obligations. SBN has not filed a motion to lift stay on the remaining vessels in the hope that this Court's granting the motions to lift stay as required by law will somehow force debtors to deal with reality and focus on a reorganization that is conceivably possible.

*Filing the Plan on the Eve of the Stay Relief Hearing*

Debtors filed their Plan and Disclosure Statement on February 7, 2019 at 9:25 pm, less than three business days before the hearing on the motion to lift stay. In the very case relied upon by the Debtors, *Matter of Canal Place Ltd. Partnership*, 921 F.2d 569, 575 (5th Cir. 1991), the Fifth Circuit lifted the stay and noted the ill practice of this tactic:

> Finally, it should be noted that the Debtor filed its disclosure statement and plan just three days before the hearing on the lift stay. Although this was done within the exclusivity period, the Court finds the Debtor's primary purpose was not to expedite this bankruptcy reorganization, but rather to prolong it. The Debtor was simply trying to place form over substance in the hope the Court would be obliged to deny the motions to lift the stay and set the Plan for a confirmation hearing or, at the very least, after another delay, entertain an expedited motion to dismiss or convert.

Debtors had a purported plan term sheet at the December 18, 2018 hearing yet waited until a time when SBN would not be afforded the opportunity to conduct discovery on the actual plan prior to the hearing on the lift stay. Debtors may have filed this Plan within their exclusive period but they did not file the Plan within the exclusive period for Mr. Steven LLC. If for some reason SBN's motion to lift stay as to the Mr. Steven is not granted, SBN intends to file its own plan in that case.

*Debtors May Not Rely On Turnaround*

The Debtors acknowledge the downturn in the oil and gas industry, and concede that the current market conditions caused and/or contributed to their current, and prepetition, financial difficulties.[5] They cite the Debtors' purported earning capacity in fiscal years 2011 and 2012—more than six years ago—in support of their opposition to the Motion to Lift Stay, while conceding that the vessels are not currently generating revenue of any kind. While the Debtors candidly acknowledge that they would like to delay the foreclosure of the vessels until "an improved market scenario" presents itself, Debtors' position has been expressly rejected by the Fifth Circuit in the very case law relied upon by Debtors in their opposition.

In *Matter of Canal Place Ltd. Partnership*, 921 F.2d 569 (5th Cir. 1991), cited by Debtors, the Fifth Circuit stated, as a preliminary matter, that:

> [E]arly and ongoing judicial management of Chapter 11 cases is essential, and . . . the key to avoid excessive administrative costs, which are borne by the unsecured creditors, as well as excessive interest expense, which is borne by all creditors, is early and stringent judicial management of the case . . . . [T]he challenge to the bankruptcy court is to recognize these cases as promptly as possible and limit the administrative expenses and costs borne by the creditors . . . . The bankruptcy judge must meet head-on his obligation to decide, fairly and impartially, the hard questions.

*Matter of Canal Place Ltd. Partnership*, 921 F.2d 569, 576 (5th Cir. 1991) (citations and internal quotations omitted). In *Canal Place*, the debtor, Canal Place Limited Partnership, after suffering a string of pre-petition losses, filed its voluntary Chapter 11 Petition on February 21, 1990. Secured creditors thereafter filed motions to lift stay with respect to more than $60 million dollars' worth of prime real estate in downtown New Orleans. On June 8, 1990, just three days prior to the hearing on the motion to lift stay, the debtor filed its disclosure statement and plan of

---

[5] *Id.* at ¶¶ 28-29.

reorganization. *Id.* at 571. The proposed plan, similar to the anticipated plan herein, generally provided for the modification of the loan documents, the issuance of several letters of credit, the payment of prepetition debts, and the retention or sale of the estate's property by the debtor. *Id.* at 573. The plan also proposed to pay the secured lenders over a 25 year term, although the debtor acknowledged that, "in the current New Orleans real estate market, no such loan by a willing lender would ever be made." *Id.* at 574. In granting the motion to lift stay, the court found that

> ***the implicit objective of the Plan is to delay foreclosure . . . until the Debtor can either sell Canal Place or wait for the return of the favorable office and retail market. As such, the Plan only benefits the partners of the Debtor and is detrimental to [the movants, secured creditors,] and the unsecured creditors.*** Given the motives and consequences of the proposed Plan, the Debtor has failed to carry its burden of persuasion that there is a reasonable prospect for a successful reorganization.

*Id.* at 577 (emphasis added). The upshot is that, as a matter of Fifth Circuit law, collateral property is not necessary to a reorganization if a proposed plan involving that property is necessarily dependent upon future improved market conditions.

***Debtors Rely Upon Cases That Support SBN and Not Debtors***

In addressing their burden under section 362(g)(2), Debtors cite *In re Holly's, Inc.*, 140 B.R. 643 (Bankr. W.D. Mich. 1993) and *In re Gunnison Center Apartments*, LP, 320 B.R. 391 (Bankr. D. Colo. 2008) for the proposition that Debtors' burden of proving that the vessels are necessary to an effective reorganization is a "sliding scale" depending on how far along a case has progressed.[6] In these cases, the exclusive period terminated prior to a plan being filed for Mr. Steven LLC, the entity upon whose revenue the Debtors nearly entirely rely. As the end of the exclusivity period nears with respect to the other Debtors, the burden of proof that the vessels are

---

[6] *Id.* at ¶ 17.

necessary to an effective reorganization becomes increasingly stringent. In order for Debtors to prevail, "[s]ufficient evidence must be presented to persuade the court it is more likely than not that the debtor[s are] capable of producing a plan which by preponderance may be confirmable." *In re Holly's, Inc.*, 140 B.R. 643, 701-702 (Bankr. W.D. Mich. 1993). "If the court concludes that it is improbable that the debtor can formulate a plan, the creditor should not have to bear any additional delay and the stay should be lifted." *Id.* at 702.

In *Holly's*, the court found that, although the debtor's hotel—its sole asset—was clearly necessary for any reorganization plan, "***this conclusion is not enough to warrant denying relief from the stay.***" *Id.* at 703 (emphasis added). Debtors are also required to prove that a successful reorganization is plausible, and, towards the end of the exclusivity period, ***probable***. In *Holly's*, the court denied a motion to lift stay, but only because the debtor carried its burden by presenting evidence of detailed financial projections and "extensive evidence regarding the improvement in their management[.]" *Id.* at 704. Debtors here have not come close to making such a showing.

In citing the *Gunnison* case, Debtors apparently fail to recognize that the *Gunnison* court *granted* the secured lender's motion to lift stay. *Gunnison* is particularly instructive because it involved an undersecured creditor whose claim, like SBN's, would ultimately be split into a secured portion and an unsecured portion. The court there found that:

> When the claim of [the secured creditor] is split into a secured and unsecured claim based upon the valuation of the Property, [the secured creditor] is in a blocking position with respect to the unsecured class vote in any plan. On this topic, [the secured creditor] made it clear in the trial that it intends to vote against any proposed plan.

As a result, the Court found that the proposed plan presented "major concerns as to feasibility." *Gunnison*, 320 B.R. at 404. The Court continued:

> According to the Debtor, the unsecured claim of [the secured creditor] will be placed in a separate unsecured class, presumably to facilitate a potential favorable

9

vote in the other unsecured class, thus satisfying the requirements of 11 U.S.C. § 1126(c). Whether this approach is proper and legal under the Bankruptcy Code is an issue for another day. However, such an approach has been restricted in other cases. *See e.g., Boston Post Road Ltd. Partnership v. F.D.I.C. (In re Post Road Ltd. Partnership),* 21 F.3d 477, 483 (2nd Cir.1994); *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assoc.,* 987 F.2d 154, 159–60 (3rd Cir.1993); *Lumber Exch. Bldg. Ltd. Partnership v. Mutual Life Ins. Co. (In re Lumber Exch. Bldg. Ltd. Partnership),* 968 F.2d 647, 649 (8th Cir.1992); *Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),* 961 F.2d 496, 502 (4th Cir.1992); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (Matter of Greystone III Joint Venture),* 995 F.2d 1274, 1278–1279 (5th Cir.1991).

*Id.* at 404-405.

Here, similar to the facts in *Gunnison* where the court lifted the automatic stay: (1) SBN is undersecured with respect to each of the Debtors' respective collateral; (2) SBN's claim will be split into both a secured and unsecured portion; (3) SBN is in a blocking position with respect to the unsecured class vote in any plan; (4) SBN has manifested its intent to vote against any proposed plan, particularly any plan that maintains the current management and ownership structure in place;[7] and (5) Debtors are prohibited as a matter of law from segregating the unsecured portion of SBN's claim into its own unsecured class to satisfy the requirements of 11 U.S.C. § 1126(c).[8]

**SeaTran Objection**

SeaTran filed an opposition to the Motions to Lift Stay but failed to allege facts establishing

---

[7] *See also Matter of Canal Place Ltd. Partnership*, 921 F.2d 569, 576 (5th Cir. 1991) ("The reference to an 'effective' reorganization should require relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations.").

[8] *See generally* 11 U.S.C. § 1126(c) (stating:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.).

*See also* 11 U.S.C. § 1129(a)(10) (providing that the court shall confirm a plan only if: if "a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.").

that it has standing to do so. SeaTran is controlling these Debtors' estates and property, using cash collateral without court authority, without lender consent, and without a budget. SeaTran objected to the production of any financial information to SBN and has filed no reports in this Court establishing what it is doing with Debtors' property. SeaTran had the Debtors sign an entirely one-sided agreement the day before Mr. Steven LLC filed bankruptcy to divest Debtors of all control of their assets and the title to their charters and charter payments. SeaTran's role in this case is unprecedented and repugnant to the Bankruptcy Code and SBN's rights.

Like the Debtors, SeaTran failed to address SBN's blocking position under section 1129(1)(10) and the clear caselaw that establishes that SBN is entitled to relief from the stay because the Debtors cannot confirm a Plan over its objection.

SBN will briefly respond to SeaTran's arguments which were not addressed in SBN's reply to Debtor's opposition above:

> *"SBN has not satisfied its burden of showing cause to lift the automatic stay…"[9]*

> Debtors bear the burden under section 362(g).

> *"These Vessels are worth more to the going-concern value of the affiliated Debtors' entire enterprise than the amount of any of the Vessels would receive if liquidated in this market right now."[10]*

> "Debtors enterprise" is not the "Debtors enterprise" but SeaTran's enterprise (which holds vessels owned by other entities). SeaTran is not the Debtor and its interests and well-being are irrelevant.

> *"With an improved market and the Vessels being returned to active status, the values of the Vessels could easily return to the $4 million to $5 million each…"[11]*

> Mr. Tizzard's affidavit is cited for this proposition. Mr. Tizzard has not been qualified as an expert in vessel valuation and SBN objects to his affidavit as hearsay, lack of foundation, and other grounds. Moreover, the value of the vessels

---

[9] SeaTran Objection, ¶1
[10] *Id.* at ¶15.
[11] *Id.* at ¶16.

11

if things change is not relevant.

"*Accordingly bankruptcy courts in the Fifth Circuit have stated that "the oft-cited laundry list of [Little Creek] factors is not always relevant or dispositive on the facts of a given case[.] See In re Briggs-Cockerham, LLC, No. 10-34222, 2010 WL 4866874 (Bankr. N.D. Tex. Nov. 23, 2010)..."*[12]

SeaTran's reliance on *Briggs* is misplaced. The *Briggs* court, in fact, reaffirmed and expanded upon the factors to be considered in determining whether "cause" exists, going on to cite *Little Creek* and stating that "the Fifth Circuit has noted that 'determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id.* at *5. The Bankruptcy Court in *Briggs* further stated that *"w*ith respect to "bad faith" as "cause" to dismiss a chapter 11 case, courts typically consider several factors: (1) whether the debtor has only a single asset, such as a tract of land; (2) whether its assets are fully encumbered; (3) whether the debtor has any employees, cash flow and source of income to fund a plan; (4) whether the debtor has any unsecured creditors and the relative size of their claims, (5) whether there has been a foreclosure action on the debtor's assets.*"* *Id.* at *5. In *Briggs*, it was undisputed that the debtor had no operations or employees or ongoing business to rehabilitate. *Id.* Noting that "[t]he central purpose of chapter 11 is to facilitate reorganizations[,]" and that the *Briggs* debtor had no going concern to reorganize, the court found that cause existed for dismissal. *Id.* at *6. Likewise, Debtors have no operations or employees or ongoing business. Debtors merely have a third party manager who would like to continue to keep the vessels in its fleet should market conditions improve.

"*....each of the Vessels is the sole income-producing asset of the pertinent affiliated Debtor[.]*"[13]

The plan and disclosure statement recently filed in this case by the Debtors indicates that none of these Vessels have generated a single dollar for more than three years.[14] These Vessels are not producing income.

SBN request that this Court lift the automatic stay as to each of the Debtors' vessels as set forth in the motions.

Respectfully submitted,<br>
CARVER, DARDEN, KORETZKY, TESSIER<br>
FINN, BLOSSMAN & AREAUX, L.L.C.

---

[12] *Id.* at ¶ 3.
[13] *Id.* at ¶ 11.
[14] *See* Ex. 4 to Debtors' Disclosure Statement, *Vessel Info.* [Doc. 141-4], at 2 (noting 0% utilization of the Vessels in 2016, 2017, and 2018).

/s/ David F. Waguespack
DAVID F. WAGUESPACK (#21121)
PETER J. SEGRIST (#35314)
ANDREW J. BRIEN (#37051)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone: (504) 585-3814
Fax: (504) 585-3801
Counsel for SBN V FNBC LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Reply to Oppositions to Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* has been served by:

1. ELECTRONIC FILING through the Courts' Notice of Electronic Filing to the parties listed on the attached Exhibit "1" on February 8, 2019; and

2. U.S. Mail, postage prepaid, upon Debtor, Mr. Mason, L.L.C., 107 Highway 90 West, New Iberia, LA 70560 and upon Debtor, Mr. Mason, L.L.C., through its counsel of record, Douglas S. Draper, Heller, Draper, Patrick, Horn & Manthey LLC, 650 Poydras Street, Suite 2500, New Orleans, LA 70130, on February 8, 2019.

/s/ David F. Waguespack
DAVID F. WAGUESPACK

**Exhibit 1**

Benjamin W. Kadden on behalf of Interested Party Seatran Marine, LLC
bkadden@lawla.com, mnguyen@lawla.com

William Kaufman on behalf of Interested Party Guice Offshore, LLC
whkaufman@ohllc.com, egnormand@ohllc.com

Gail Bowen McCulloch on behalf of U.S. Trustee Office of U. S. Trustee
gail.mcculloch@usdoj.gov

Stewart F. Peck on behalf of Interested Party Seatran Marine, LLC
speck@lawla.com, erosenberg@lawla.com;ymaranto@lawla.com

Peter James Segrist on behalf of Creditor SBN V FNBC LLC
segrist@carverdarden.com, clary@carverdarden.com

Office of U. S. Trustee
USTPRegion05.SH.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor SBN V FNBC LLC
waguespack@carverdarden.com, plaisance@carverdarden.com

Randall Scott Wells on behalf of Interested Party Guice Offshore, LLC
swells@rushing-guice.com

Greta M. Brouphy on behalf of Debtor Mr. Steven, L.L.C.
gbrouphy@hellerdraper.com

Douglas S. Draper on behalf of Debtor Mr. Steven, L.L.C.
ddraper@hellerdraper.com, kfritscher@hellerdraper.com;lcollins@hellerdraper.com

4842-8120-6919, v. 1