| COMPROMISE AND | * | UNITED STATES OF AMERICA |
| --- | --- | --- |
| | * | |
| SETTLEMENT AND | * | STATE OF LOUISIANA |
| | * | |
| RECEIPT AND RELEASE | * | PARISH OF ORLEANS |

BE IT KNOWN, that on the below-listed dates, before the separate undersigned Notaries Public, duly commissioned and qualified in and for the State and Parish/County listed below, and in the presence of the undersigned competent witnesses,

PERSONALLY CAME AND APPEARED:

**Mr. Steven LLC**, a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Mr. Row LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Mr. Ridge LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Mr. Blake LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Mr. Mason LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Lady Glenda LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Lady Eve LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Lady Brandi LLC,** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Iberia Marine Service, LLC ("Iberia Marine"),** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**Iberia Crewboat & Marine Services, L.L.C. ("Iberia Crewboat"),** a Louisiana limited liability company maintaining its principal place of business and mailing address at 107 Highway 90 West, New Iberia, LA 70560, represented herein by its undersigned duly authorized manager;

**SeaTran Marine, L.L.C. ("SeaTran"),** a Louisiana limited liability company maintaining its principal place of business and mailing address at

_____, represented herein by its undersigned duly authorized manager;

**Steve Miguez ("Miguez"),** a person of the full age of majority and a resident and domiciliary of the Parish of _____, State of Louisiana, with a mailing address of _____, LA _____; and

**SBN V FNBC LLC (the "Lender"),** a Delaware limited liability company represented herein by its undersigned _____;

all of whom, after being duly sworn, did declare and state:

This Compromise and Settlement and Receipt and Release ("Agreement") is made and entered into by and between Mr. Steven LLC, Mr. Row LLC, Mr. Ridge LLC, Mr. Blake LLC, Mr. Mason LLC, Lady Glenda LLC Lady Eve LLC and Lady Brandi LLC (collectively, the "**Debtors**"), Iberia Marine, Miguez (Miguez together with Debtors and Iberia Marine are collectively "**Obligors**"), Iberia Crewboat, SeaTran, and Lender (Obligors, Iberia Crewboat, SeaTran, and Lender are collectively referred to at times as "**Parties**").

WHEREAS, as of February 6, 2019, Obligors were indebted unto Lender in the full principal sum of $22,018.031.52, together with accrued interest thereon through February 6, 2019 in the amount of $2,149,624.91 (default interest rate of 21% from 1/1/19 forward; prior to that date nondefault interest rate applied), plus interest continuing to accrue $12,843.85 per day, plus late charges of $1,250, plus Lender's attorneys' fees and costs, which indebtedness to Lender is evidenced by that certain Promissory Note dated September 28, 2015 in the original principal amount of Twenty-Two Million Five Hundred Thousand and 00/100 Dollars ($22,500,000) ("**Note**") executed by Debtors and Iberia Marine Service, LLC and guaranteed by Miguez pursuant to, *inter alia*, that certain Commercial Guaranty dated September 28, 2015 ("**Guaranty**") as well as that certain Business Loan Agreement dated September 28, 2015 by the Obligors ("**Loan Agreement**");

WHEREAS, the indebtedness to Lender is secured by those certain Preferred Ship Mortgages (the "**Mortgages**") dated September 28, 2015 executed by Debtors, on *inter alia*, the vessels known as the M/V MR. STEVEN, the M/V MR. ROW, the M/V MR. RIDGE, the M/V MR. BLAKE, the M/V MR. MASON, the M/V LADY GLENDA, the M/V LADY EVE, and the M/V LADY BRANDI and all earnings, issues, revenues, accounts, assets, payments, income and profits derived from the use or operation of such vessels, or any part or parts thereof, and all further rights and property described in the Mortgages (collectively "**Vessels**"), which Mortgages were

properly recorded with the National Vessel Documentation Center, and the related UCC-1 financing statements ("**Financing Statements**") properly filed;

WHEREAS, the Lender is the owner and holder of the Note, the Loan Agreement, the Guaranty, the Mortgages, the Financing Statements and any and all related documents (collectively "**Loan Documents**") as a result of Lender's acquisition of the Loan Documents from the Federal Deposit Insurance Corporation ("**FDIC**"), in its capacity as receiver for First NBC Bank ("**FNBC**") on October 18, 2017;

WHEREAS, on February 6, 2018, SBN filed a *Verified Petition for Collection on Note and Guaranty* against Miguez in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana, which suit bears case no. 780-357, seeking judgment against Miguez for unpaid principal, interest, fees, costs and attorneys' fees and other amounts owed on the Note, which case was removed by Miguez to the United States District Court for the Eastern District of Louisiana, then transferred to United States District Court for the Western District of Louisiana, and then referred to the Bankruptcy Court, as hereinafter defined, where such suit remains pending, bearing adversary case no. 18-05044 in the Bankruptcy Case, as hereinafter defined ("**Miguez Suit**");

WHEREAS, on October 2, 2018, Lender filed a *Verified Complaint in Rem for Foreclosure of Preferred Ship Mortgage* in the United States District Court for the Central District of California, case no. 2:18-cv-08492-RSWL-RAO, wherein Lender sought to enforce its Mortgage against the Mr. Steven ("**Mr. Steven Foreclosure**");

WHEREAS, on November 15, 2018, Lender filed a *Verified Complaint* in the United States District Court for the Eastern District of Louisiana, case no. 2:18-cv-11020-JTM-KWR, wherein Lender sought to enforce its Mortgage against the Lady Eve ("**Lady Eve Foreclosure**");

WHEREAS on October 3, 2018, November 16, 2018 and/or November 21, 2018, Debtors each filed bankruptcy under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana ("**Bankruptcy Court**") where Debtors' bankruptcy cases are being jointly administered under case no. 18-51277 ("**Bankruptcy Case**");

WHEREAS, on January 15, 2019, Lender filed a Petition against Iberia Marine in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, case no. 791244, Div. L,

Iberia Marine suit seeking judgment against Iberia Marine for unpaid principal, interest, fees, costs and attorneys' fees and other amounts owed on the Note ("**Iberia Marine Suit**");

WHEREAS on November 26, 2018, Lender filed a Motion for Relief from Automatic Stay with respect to the M/V MR. STEVEN, and on January 17, 2019, Lender filed separate Motions for Relief from the Automatic Stay with respect to the M/V MR. ROW, the M/V MR. MASON, and the M/V LADY BRANDI, which motions for relief from stay were granted by the Bankruptcy Court's orders entered on March 7, 2019 ("**Stay Relief Orders**");

WHEREAS, the Obligors have requested that, in lieu of Lender immediately exercising its rights and remedies, Lender allow the Obligors to satisfy their indebtedness owed to Lender on the terms set forth herein;

WHEREAS, the Parties hereto declare that he, she, or it is familiar with all of the issues involved in said matter and all disputes and controversies related thereto; and

WHEREAS, the Parties desire to compromise, settle, and resolve such disputes and controversies in accordance with the terms of this Agreement;

NOW THEREFORE, the Parties hereto, for the cause and in consideration of the action of the other parties in entering into this Agreement and of the obligations of the other parties contained herein, and for the cause and consideration hereinafter expressed, hereby agree as follows:

I. **Lender Claim**.

a. The Obligors and Lender stipulate and agree that Lender's claim ("**Lender Claim**") against the Obligors for the amounts due to Lender under the Loan Documents is as follows ("**Lender Claim Amount**"): principal in the amount of $22,018,031.52, plus accrued interest through March 21, 2019 in the amount of $1,927,304.22 (calculated at the existing non-default rate of 5.5% in the Note), plus interest continuing to accrue at a per diem of $3,363.87, plus unpaid charges costs and expenses of $88,195.09, plus unpaid late charges of $1,250.00, plus other amounts which may become due under Loan Documents; provided however that if a default occurs under this Agreement or the Amended Loan Documents, as defined herein, Lender shall be entitled to default interest which has accrued since January 1, 2019 and all legal fees which have accrued since December 1, 2018. The total Lender Claim as of March 21, 2019 is $24,034,780.83 (such balance includes a credit for the $50,000 adequate protection payment previously paid by Debtors

to Lender) plus interest, fees and other amounts continuing to accrue pursuant to the Loan Documents.

    b.    The Lender shall be afforded an allowed secured claim for the Lender Claim Amount in the Plan.

II.    **Initial Required Payments to Lender**

In addition to the other amounts stated herein, Obligors and Iberia Crewboat shall indefeasibly pay the following amounts to Lender by the following dates, which amounts shall be credited to the Lender Claim (collectively "**Required Payments**"):

    1.    **Guice Funds**

In addition to the other amounts stated herein, the Obligors and SeaTran will have the following amounts arising from the charter of the Mr. Steven paid to Lender to be credited to the Lender Claim in accordance with the Loan Documents:

    a.    The Debtors will have the $1,207,609.00 representing the charter payments through December 2018 associated with the charter of the Mr. Steven currently held in escrow in the Rushing & Guice, P.L.L.C. Trust Account (the "**Guice Escrow Funds**"), which amount shall be paid to Lender no later than April 20, 2019.

    b.    All charter and other payments and consideration associated with the Mr. Steven and earned and not yet paid through the closing of the sale of the Mr. Steven to a third party (the "**Mr. Steven Charter Hire Payments**") will be paid directly to Lender by Guice or other user of the Mr. Steven but in no case later than the Effective Date without offset or reduction of any kind; provided, however, that if any Mr. Steven Charter Hire Payments have been earned but not received by the Debtors as of the Effective Date, as defined herein, of the Plan, as defined herein, Debtors agree to direct and assign any associated accounts, accounts receivable and right to collection to Lender; Debtor shall ensure that Lender receive any and all Mr. Steven Charter Hire Payments by July 31, 2019.

    c.    Debtor Mr. Steven, LLC shall file a motion authorizing the disbursement and direction of the Guice Escrow Funds to Lender and the Mr. Steven Charter

Hire Payments to Lender pursuant to Federal Bankruptcy Rule 9019 (the "**Guice Funds 9019 Motion**"). The Debtors shall (i) file the Guice Funds 9019 Motion by April 1, 2019, and (ii) seek an expedited hearing on such motion on April 16, 2019. The Guice Funds 9019 Motion and the associated order shall direct Guice to immediately remit all Guice Escrow Funds and the Mr. Steven Charter Hire Payments to Lender. The Order approving the Guice Funds 9019 Motion shall be in form and substance acceptable to Lender.

2. **Upfront Payment**

In addition to the other amounts stated herein, Iberia Marine, Miguez, and Iberia Crewboat will pay to Lender $4,500,000.00 no later than May 15, 2019 ("**Upfront Payment**") consisting of the following amounts:

    a. Capital Construction Funds- Miguez, Iberia Crewboat, and Iberia Marine shall pay the funds in their respective capital construction fund accounts ("**Capital Construction Funds**") to Lender to be applied to the principal amount of the Lender Claim:

        i. Miguez shall pay the balance of the funds in its Capital Construction Fund Account which balance as of November 30, 2018 was $2,617,997.84;

        ii. Iberia Crewboat shall pay the balance of the funds in its Capital Construction Fund Account which balance as of November 30, 2018 was $1,630,775.16; and

        iii. Iberia Marine shall pay the balance of the funds in its Capital Construction Fund Account with UBS which balance as of November 30, 2018 was $5,030.87.

    b. Miguez and Iberia Marine shall pay the difference between the Capital Construction Funds and $4,500,000, which differential amount shall be applied to the Lender Claim in accordance with the Loan Documents.

3. **Proceeds from Sale of the M/V MR. STEVEN**

In addition to the other amounts stated herein, Debtors shall pay to Lender the entire proceeds from the sale of the M/V MR. STEVEN in an amount of not less than $8,500,000.00 ("**Mr. Steven Sales Proceeds**") no later than May 15, 2019.

    a. Any sale of the M/V MR. STEVEN for less than $8,500,000 shall be in Lender's sole and absolute discretion.

    b. The sale of the M/V MR. STEVEN shall be free of any charter with any party.

    c. SBN reserves all rights to credit bid at any sale.

    d. The Order approving the sale of the M/V MR. STEVEN shall be in form and substance acceptable to Lender.

    4. **Adequate Protection Payments**

In addition to the other amounts stated herein, and commencing on April 1, 2019 and on the first day of each month thereafter through the Effective Date, as defined herein, Debtors shall pay Lender $70,000.00 each month as adequate protection, which payments shall be credited to the Lender Claim as provided in the Loan Documents.

### III. Incentive Credits and Early Payoff Discount

Obligors shall pay the Lender Claim in full, including all interest, fees and other amounts as provided in the Amended Loan Documents, except to the extent that the Mr. Steven Incentive Credit, defined below, or the Early Payoff Discount, defined below, are earned in accordance with the terms of this Agreement.

    1. **Incentive Credit for Sale of M/V MR. STEVEN**

    a. By May 15, 2019, Lender shall receive no less than $8,500,000 on account of the sale of the M/V MR. STEVEN. In connection with the sale of the M/V MR. STEVEN and effective upon payment in full of the Lender Claim and provided that there is no default hereunder or under the Modified Loan Documents, as defined herein, Lender will provide, if applicable, the following credit to the Lender Claim ("**Mr. Steven Incentive Credit**") based upon the amount of the Mr. Steven Sales Proceeds received by Lender by May 15, 2019:

- Between $8,500,000 and $9,099,999, the Lender Claim will be reduced by $3,500,000.00 effective if and at the time that the Lender Claim (with the reduction) is paid in full; or

- Between $9,100,000 and $9,499,999, the Lender Claim will be reduced by $4,000,000.00 effective if and at the time that the Lender Claim (with the reduction) is paid in full; or

- Over $9,500,000, the Lender Claim will be reduced by $4,500,000.00 effective if and at the time that the Lender Claim (with the reduction) is paid in full.

If the M/V MR. STEVEN is not sold by May 15, 2019 for $8,500,000 or more then no incentive credit or other discount of the Lender Claim will be applicable. The Mr. Steven Incentive Credit is a single credit which will only be applied if no default occurs hereunder or under the Amended Loan Documents and only upon payment in full of the Lender Claim and as otherwise specifically stated herein.

b. Debtors, Iberia Marine, Iberia Crewboat, and Miguez may add funds to the Mr. Steven Sales Proceeds received by Lender by May 15, 2019 ("**Added Funds**") so as to reach the above stated thresholds for the Mr. Steven Incentive Credit; provided however that the Added Funds shall be in addition to the Required Payments obligations under this Agreement and all other obligations to Lender; and provided further that the Added Funds may not be derived from sale of any Lender collateral other than the M/V MR. STEVEN. The Mr. Steven Sales Proceeds and any Added Funds must be received by Lender by May 15, 2019 for Debtors to be eligible for the Mr. Steven Incentive Credit.

c. Any order approving the sale of the M/V MR. STEVEN must be in form and substance acceptable to Lender.

d. If the M/V MR. STEVEN is not sold by May 15, 2019 for $8,500,000 or more, SBN shall be entitled to exercise all rights and remedies without further notice or order. The Stay Relief Orders remain in effect.

2. **Early Payoff Discount**

If the Lender Claim is paid in full on or before May 30, 2020 and provided that no default has occurred under the Amended Loan Documents prior thereto, Debtor will receive a $500,000.00 credit on the Amended Note ("**Early Payoff Discount**").

IV. <u>Plan</u>

On or before April 1, 2019, Debtors shall file a Plan which shall seek approval of this Agreement and incorporate the terms herein. The Plan must have an effective date, and become effective, no later than May 31, 2019 ("**Effective Date**"). The Plan shall provide as follows:

1. **Allowance of Lender Claim**. The Lender Claim will be reduced by the credits from the Required Payments all of which are required to have been made by the Effective Date. The total amount of the Required Payments actually received by Lender prior to the Effective Date, together with the Mr. Steven Charter Payment earned but not yet received by the Effective Date but assigned to Lender which assigned and unearned payment shall be received by Lender by July 31, 2019, shall be no less than $14,747,609.00. The Note will be amended to reflect the amount of the Lender Claim as of the Effective Date as well as the other terms set forth herein ("**Amended Note**"). By way of example, based on the minimum Required Payments of $14,747,609.00, the Wall Street Journal Prime Rate remaining the same, and the Effective Date occurring on May 31, 2019, the estimated principal amount of the Amended Note would be $5,787,171.83. The Lender Claim shall be fully allowed in its full amount as a secured claim under the Plan.

2. **Treatment of Lender Claim**. The Plan shall provide for the payment in full of the Lender Claim as follows:

    a. The Amended Note will contain all of the existing terms of the Note except as follows:

        i. The interest rate will be amended to the Wall Street Journal Prime Rate plus 1% (the floor will remain at 5.00%).

        ii. The payments due under the Note shall be amended as follows:

            1) Regular payments under the Amended Note shall commence on June 1, 2019 and continue on the first day of each of the next 23 consecutive months, with a final payment of all amounts due under the Amended Note on May 30, 2021. The Amended Note shall mature and be fully due and owing on May 30, 2021.

            2) For purposes of determining the regular monthly payments due under the Amended Note only, the Mr. Steven Incentive Credit will be provisionally applied to the amount of the Amended Note

("**Amortization Balance**") and then the Amortization Balance will be amortized over a ten (10) year period. By way of example, if the Mr. Steven Incentive Credit is $3,500,000.00, then the approximate regular monthly payments under the Amended Note would be $65,712.17. To the extent any Mr. Steven Charter Hire Payments are received by Lender after the Effective Date, the Amended Note shall not be re-amortized but such amounts shall be applied to principal.

    iii. The application of the Mr. Steven Incentive Credit to the amount of the Amended Note for purposes of calculating the regular payments under the Amended Note is provisional only. Any Mr. Steven Incentive Credit or Early Payoff Discount if earned shall only be applied to the Amended Note when the Amended Note is paid in full and provided there is no default under the Amended Loan Documents prior thereto.

    iv. Upon default by the Obligors under the Amended Loan Documents, the full amount of the Lender Claim will be immediately due and owing, without any application of the Mr. Steven Incentive Credit or the Early Payment Discount, which to the extent each are applicable, shall immediately terminate and not be earned.

    v. The Amended Note will delete the following demand provision: "Borrower will pay this loan in full immediately upon Lender's demand."

b. The Loan Agreement will contain all of the existing terms of the Loan Agreement except as follows:

    i. The following negative covenants will be amended: (i) the negative covenant entitled "Distributions" shall be amended to permit distributions to Members (as defined in the Loan Agreement) for purposes of satisfying their tax liability arising from, and to the extent of, income from the Debtors for tax years 2019 forward, and (ii) the negative covenant captioned as "Indebtedness and Liens" shall be amended to provide for the Debtors to effectuate the sale of the Vessels to the extent allowed in this Agreement.

ii. The following Events of Default shall be amended/deleted: (a) the Event of Default captioned "Death" shall be amended to remove the death of Steve Miguez, and (b) the Event of Default captioned "Insecurity" shall be deleted.

iii. Lender shall waive any alleged Event of Default existing as of the Effective Date on account of the insolvency of the Debtors.

c. All of the Loan Document shall continue to remain in full force and effect except as to the specific amendments to the Note and the Loan Agreement set forth herein (collectively "**Amended Loan Documents**"). The Mortgages and all other existing mortgages and security interests shall continue to encumber the Vessels and all other property described in such documents and secure the Lender Claim and Amended Note. Lender's mortgages and security interests shall be recognized in the Plan as first and prior, and remain in full force and effect in accordance with their terms. The Lender Claim and the Amended Note shall continue to be guaranteed by Steve Miguez and all obligors on the existing Note shall remain as obligors on the Amended Note. Iberia Crewboat will execute a guarantee guarantying the indebtedness due under the Amended Loan Documents. The Amended Note, the Amended Loan Agreement and the Iberia Crewboat guaranty will be executed by the Debtors and Iberia Crewboat prior to the Effective Date.

d. Upon default under this Agreement, the Plan, or the Amended Loan Documents, Lender shall be entitled to fully enforce all rights and remedies without notice or order of the Court.

3. **Rejection of the Vessel Operating Agreement**

The Debtors shall reject any and all Vessel Operating Agreements and any other agreements related to the management or control of the Vessels, and the Plan shall provide that and any associated alleged rejection damages by SeaTran, Iberia Marine or any other party shall be subordinated to the Lender Claim under the Amended Plan and no payments may be made on any such rejection damages claim until the Amended Note is paid in full.

4. **Debtors' Operations and Accounts**

All proceeds and revenue related to the Vessels and Debtors' operations shall be paid to Debtors and deposited in Debtors' bank accounts. The Debtors shall remain in

control of their Vessels and property related to the Vessels subject to Lender' rights under the Amended Loan Documents. The Debtors may not employ a manager or other operator with respect to the Vessels, including without limitation, SeaTran, absent Lender's written consent to the written terms of any such management agreement. All charters, invoices, receivables and accounts related to the Vessels shall be in the name of Debtors.

    a. Notwithstanding the foregoing, and to the extent Lender approves any new management agreement between Debtors and SeaTran, SeaTran may remain the party to certain charters with respect to the Vessels to the extent necessitated by the existence of current ongoing business relationships and master charters and agreements between SeaTran and third parties; provided however, that to the extent SeaTran shall remain the party to certain charters, SeaTran shall (i) grant to Lender a first priority security interest in the charter hire associated with such charters, (ii) execute an assignment of charter hire, (iii) segregate charter hire proceeds in an account that shall be subject to a Deposit Control Agreement in favor of the Lender, and (iv) take such other or further actions as are necessary to preserve Lender's Mortgages and security interest.

5. **Release Prices for Other Vessels**

Subsequent to the Effective Date and provided the Obligors are not in default under the Amended Loan Documents, Lender agrees to permit the sale of the Vessels (other than the M/V Mr. Steven) to third parties who are not related to any of the Parties to this Agreement free and clear of any liens or encumbrances in favor of Lender with all proceeds paid to Lender for application to the Lender Claim provided that such proceeds paid to Lender are not less than the following amounts:

- M/V LADY EVE: $2,750,000.00
- M/V MR. BLAKE: $1,000,000.00
- M/V MR. RIDGE: $1,000,000.00
- M/V LADY GLENDA: $750,000.00
- M/V MR. MASON: $550,000.00
- M/V MR. ROW: $550,000.00
- M/V LADY BRANDI: $550,000.00

Gross proceeds associated with the sale of the Vessels shall be promptly remitted to Lender and shall be applied to the balance of the Amended Note. Any sales motions and orders granting such motions must be in form and substance acceptable to Lender.

6. Debtors' Amended Plan and Order Confirming Amended Plan must be in form acceptable to Lender.

**V.** **Other Obligations and Agreements**

Debtors, Miguez, Iberia Marine, Iberia Crewboats and SeaTran shall comply with the terms of this Agreement and not interfere with any other Parties' obligations under this Agreement. In addition, Debtors, Miguez, Iberia Marine, Iberia Crewboats and SeaTran agree as follows:

1. **No Material Transfers of Assets**

In addition to his other obligations hereunder, Miguez and each of the other Obligors hereby agree that each of them will not transfer any material asset (defined as any assets whose value exceeds $15,000) absent Lender's written consent until the Amended Note is paid in full. Notwithstanding the foregoing, Steve Miguez shall be permitted to transfer assets to the Debtors and the Debtors may transfer assets among each other as long as all of such assets are paid to Lender to satisfy the obligations under the Amended Note. Additionally, the Debtors and SeaTran may transfer monies among each other only if allowed in a Vessel Management Agreement that has been approved by the Lender in writing.

2. **Consent Judgments**

On or before the Effective Date, Steve Miguez and Iberia Marine shall enter into Consent Judgments for the amount of the Lender Claim which shall be filed and entered in the Miguez Suit and the Iberia Marine Suit respectively. Other than to record the Consent Judgments, Lender shall not enforce the Consent Judgments unless and until a default occurs under the Amended Loan Documents. Notwithstanding the foregoing, Lender shall agree to subordinate any judgment lien arising out of the recorded Consent Judgment to any line of credit, term loan or other financing insofar as all of the proceeds of such financing are used to pay Lender to satisfy payment obligations under the Amended Note.

3. **Iberia Crewboat Guaranty**

On or before May 15, 2019 and prior to tendering its portion of the Upfront Payment, Iberia Crewboat shall execute a guaranty of the Lender Claim in form and substance acceptable to Lender (the "Iberia Crewboat Guaranty").

4. **SeaTran and Iberia Marine Specific Obligations**

    a. SeaTran and Iberia Marine hereby stipulate and agree that any claim they may have against the Debtors, whether due to rejection of the Vessel Operating Agreement or otherwise, is fully subordinate to the Lender Claim, and SeaTran and Iberia Marine may not be paid until the Amended Note is paid in full.

    b. SeaTran and Iberia Marine agree that any management agreement with any of the Debtors will be on written terms acceptable to Lender and be fully consistent with, and where appropriate incorporate, the terms of this Agreement.

    c. SeaTran and Iberia Marine hereby agree to fully abide by the Mortgages and not interfere with the Mortgages in any way. SeaTran and Iberia Marine hereby confirm and agree that the Mortgages are enforceable, perfected and cover all charter payments and other rights and interests related to the Vessels as set forth therein without the need for further documentation.

    d. SeaTran specifically agrees to section IV, 4 of this agreement and to execute the security agreement, deposit control agreement and the other documentation required thereby.

    e. SeaTran and Iberia Marine agree to execute such further documents as reasonably requested by Lender to protect Lender's rights and interests with respect to the respective obligations of SeaTran and Iberia Marine under this Agreement.

5. **Release**

Debtors, Miguez, Iberia Marine, Iberia Crewboats and SeaTran, including each of their officers, directors, members, managers, operators, estates, bankruptcy estates, beneficiaries, attorneys, settlors, shareholders, nominees, partners, joint venturers, principals, employees, agents, servants, parent entities, predecessors, executors, executrixes, administrators, administratrices, representatives, legal representatives, affiliates, related entities, subsidiaries, heirs, legatees, trustees, bankruptcy trustees, participants, subrogees, insurers, successors, and assigns of each of them (collectively "**Releasing Parties**") hereby fully, finally, and forever compromise, settle,

satisfy, waive, release, acquit, discharge, surrender, and/or cancel Lender, the FDIC and FNBC, including each of their officers, directors, members, managers, operators, estates, bankruptcy estates, beneficiaries, attorneys, settlors, shareholders, nominees, partners, joint venturers, principals, employees, agents, servants, parent entities, predecessors, executors, executrixes, administrators, administratrices, representatives, legal representatives, affiliates, related entities, subsidiaries, heirs, legatees, trustees, bankruptcy trustees, participants, subrogees, insurers, successors, and assigns ("**Released Parties**") from any and all claims, rights, demands, damages, actions, causes, causes of action, suits, controversies, accounts, reckonings, obligations, expenses, interest, costs, payments, debts, losses, fines, assessments, attorneys' fees and liabilities of any nature whatsoever, including, but not limited to, those arising in tort, negligence, intentional conduct, federal or state law, federal or state statutes, the Bankruptcy Code, including Chapter 5 causes of action, fraud, lender liability, lack of good faith, contract, breach of fiduciary duty, breach of contract, admiralty, equity, bankruptcy, worker's compensation, or for indemnity, contribution, reimbursement, offense, quasi-offense, or unjust enrichment, or by way of subrogation or assignment, or arising in any other way whatsoever, now existing or hereafter arising, known or unknown, choate or inchoate, matured or unmatured, direct or indirect, asserted or unasserted, liquidated or unliquidated, contingent or exigible, anticipated or not anticipated.

      6.    **Reservation of Rights**.

Notwithstanding anything to the contrary herein contained, nothing herein releases or is intended to release or shall be construed to release any Obligor or other party from any obligation in favor of the Lender or any collateral absent and until payment in full of the Lender Claim. Other than as explicitly set forth herein, Lender hereby expressly reserves and retains all of its rights and interests.

      7.    **Other Documents**

Debtors, Miguez, Iberia Marine, Iberia Crewboats and SeaTran Miguez shall execute all documents as may be reasonably required by Lender to document the contemplated transactions.

VI.    **Miscellaneous.**

      1.    It is further hereby agreed and understood: (i) that there are no oral agreements, terms, or commitments relating to this Agreement, the Vessels, the Lender Claim, the Indebtedness, or the Loan Documents; and (ii) that this Agreement will not be affected by any facts,

circumstances, or occurrences arising subsequent to the execution of this Agreement except as stated herein.

2. If any payment to Lender, or any part or portion thereof is ever rescinded, ordered returned, ordered turned over, or ordered paid by Lender to any person or entity for any reason whatsoever, then the Lender Claim and all collateral and security securing same shall be reinstated to the status and priority which existed prior to the consummation of this Agreement, to the effect that, *inter alia*, the full amount of the Lender Claim shall be reinstated and be fully due and payable to Lender and that all collateral and security shall be reinstated and continue in effect. The Obligors agree to execute any documents restoring such status as requested by Lender. In such case, all other terms and provisions of this Agreement shall continue in full force and effect. No other provision of this Agreement is voidable or subject to any resolutory condition.

3. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties or signatories hereto may execute this Agreement by signing any such counterpart.

4. This Agreement and the transactions and obligations contained herein are governed by and shall be construed under Louisiana law, without regard to the conflicts of law principles of said state.

5. **WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR IN CONNECTION WITH OR RELATING TO THIS AGREEMENT, THE LENDER CLAIM, THE LOAN DOCUMENTS, THE AMENDED LOAN DOCUMENTS, THE PLAN, THE VESSELS, OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY OR THE RELATIONSHIP ESTABLISHED THEREBY OR HEREBY, EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY PROCEEDING, ACTION, OR CONTROVERSY, INCLUDING COUNTER-CLAIMS, RECONVENTIONAL DEMANDS, CROSS-CLAIMS, INCIDENTAL DEMANDS, THIRD-PARTY CLAIMS OR OTHERWISE, FOR ALL CAUSES OF ACTION ON ANY MATTER CONCERNING, ARISING UNDER, OUT OF, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS AGREEMENT, THE LENDER CLAIM, THE LOAN DOCUMENTS, THE AMENDED LOAN DOCUMENTS,**

**THE PLAN, THE VESSELS, OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY OR THE RELATIONSHIP ESTABLISHED THEREBY OR HEREBY,**

6. The Releasing Parties acknowledge and agree that there are no commitments or obligations by Lender to loan any of them any funds whatsoever. The Releasing Parties specifically acknowledge that any such commitment or obligation is hereby revoked.

7. The Releasing Parties represent and warrant that they are the sole owners of and have good and indefeasible title to the claims they are releasing herein, free and clear of all security interests, privileges, liens, and encumbrances and has not executed any security agreements or documents or financing statements relating to any of such claims. Furthermore, Releasing Parties have not heretofore conveyed or agreed to convey or encumber all or any of the Claims in any way. Participating Obligors further represent and warrant that the persons executing this Agreement on behalf of Participating Obligors are duly authorized to enter into and execute this Agreement.

8. Each of the Parties certifies that such Party is executing this Agreement under the advice of such Party's own counsel, after due deliberation and with full knowledge of all circumstances surrounding or relating to the matters covered hereby.

9. This Agreement becomes effective on the date it is executed by Lender.

THUS DONE AND PASSED in multiple original counterparts in my office at _____, Louisiana, _____ Parish, on the _____ day of March 2019, in the presence of the undersigned competent witnesses who hereunto sign their names with the parties listed below and me, Notary, after due reading of the whole.

WITNESSES:

|  |  |
|---|---|
| _____ <br> Printed Name: | **Mr. Steven LLC** <br><br> By:_____ <br><br> Its:_____ |
| _____ <br> Printed Name: | **Mr. Row LLC** <br><br> By:_____ <br><br> Its:_____ |
|  | **Mr. Ridge LLC** <br><br> By:_____ <br><br> Its:_____ |

**Mr. Blake LLC**

By:_____

Its:_____

**Mr. Mason LLC**

By:_____

Its:_____

**Lady Glenda LLC**

By:_____

Its:_____

**Lady Eve LLC**

By:_____

Its:_____

**Lady Brandi LLC**

By:_____

Its:_____

**Iberia Marine Service, LLC**

By:_____

Its:_____

**Iberia Crewboat & Marine Services, L.L.C.**

By:_____

Its:_____

**SeaTran Marine, L.L.C.**

By:_____

Its:_____

**Steve J. Miguez**

_____

_____
NOTARY PUBLIC

THUS DONE AND PASSED in multiple original counterparts in my office at _____, on the _____ day of March 2019, in the presence of the undersigned competent witnesses who hereunto sign their name with Bank and me, Notary, after due reading of the whole.

| WITNESSES: | **SBN V FNBC LLC** |

_____  By: _____
Printed Name:
                                 Its:

_____
Printed Name:

_____
NOTARY PUBLIC

4814-3397-9793, v. 1