**SO ORDERED.**

**SIGNED April 26, 2019.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| MR. STEVEN, L.L.C.[1] | * | CHAPTER 11 |
| DEBTOR | * | |

\* \* \* \* \* \* \*

### ORDER GRANTING MOTION OF DEBTORS PURSUANT TO SECTIONS 105 AND 363 AND FED. R. BANKR. P. 2002 AND 6004 FOR (A) AN ORDER AUTHORIZING THE SALE OF SUBJECT ASSETS OF DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO SEACOR MARINE AND APPROVING BID PROCEDURES

Upon consideration of, on April 16, 2019, the _Motion of Debtors Pursuant to Sections 105 and 363 and Fed. R. Bankr. P. 2002 and 6004 for (A) an Order Authorizing the Sale of Subject Assets of Debtors Free and Clear of Liens, Claims, Interests and Encumbrances to SEACOR Marine  and Approving Bid Procedures_ (the "Motion") (Dkt. #172) filed by the Mr. Steven, L.L.C.

---

[1] Pursuant to this Court's December 21, 2018 Order, the Debtor's case has been procedurally consolidated and is being jointly administered with the following affiliated Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi, L.L.C. (18-51517), Lady Glenda, L.L.C. (18-51518), Mr. Blake, L.L.C. (18-51519), Mr. Mason, L.L.C. (18-51521), Mr. Ridge, L.L.C. (18-51522), and Mr. Row, L.L.C. (18-51523) (collectively, the "Debtors"). [ECF Doc. 109].

("Debtor"), Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC, as debtors and debtors-in-possession (collectively, the "Debtors"), the lack of opposition thereto, and applicable law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.      Pursuant to Sections 105, 363(b) and (f) of the Bankruptcy Code the Motion is **GRANTED**.

2.      The Debtor is authorized to enter into the attached Agreement with SEACOR Marine LLC (the "Purchaser") and sell to Purchaser the assets identified in the Agreement ("Sale Assets") subject to the conditions stated herein.

3.      The Debtors are authorized to sell the Sale Assets to the Purchaser free and clear of liens and claims pursuant to the terms of this Order, for the sale price of $8,500,000.00 ("Sales Price") as stated in the Agreement.

4.      Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are hereby fully authorized and empowered to execute all instruments and documents of any kind or nature whatsoever that may be reasonably necessary or desirable to complete the transactions contemplated in the Agreement.

5.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, and Bankruptcy Rule 6004, upon the closing of the sale, the Sale Assets shall be sold, transferred and assigned to the Purchaser as is where is and clear of all liens and claims subject to SBN V FNBC LLC's receipt of the full $8,500,000.00 Sales Price.

6.      Debtors are directed to pay to SBN V FNBC LLC ("SBN") the Sales Price.  Upon the closing of the sale, Purchaser shall wire the full Sales Price to:

SBN V FNBC LLC
BOK Financial
Denver, CO
ABA 102000607
Account No. 4439430
Account Name Summit Investment Management LLC fbo SummitBridge National Investments V
LLC

Ref: Iberia / Miguez

Or as otherwise directed by SBN in writing to Debtor.

7.      Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order.  After closing and SBN's receipt of the Sales Price, a certified copy of this Order shall be accepted by any federal, state or local recording or filing authority as evidence of the discharge of all liens and claims against property of the Debtors.

8.      As a result of the foregoing, all persons or entities, including any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code), holding any liens against property sold under the Agreement or asserting any claims against the Debtors are forever barred and estopped from asserting any such liens or claims against the Purchaser and the Debtors for the Sale Assets.

9.      After the transfer of the Sale Assets and SBN's receipt of the Sales Price, the holders of claims and liens are directed to execute such documents and take all other actions as may be reasonably necessary to terminate and expunge such liens and claims against the assets as such Claims or liens may have been recorded or may otherwise exist.  To the extent that any holder of claims or liens refuse to execute such documents as may be necessary to terminate and expunge any liens and Claims against the Sale Assets, the Debtors and Purchaser are each authorized to

take such actions, including, without limitation, filing UCC-3 Termination Statements to release any lien.

10.    Purchaser is not a successor to the Debtors and the sale, pursuant to this Order, does not constitute a de facto merger or consolidation of the Debtors and the Purchaser, or a continuation of Debtors' businesses, and the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Sale Assets.

11.    The consideration provided by the Purchaser constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

12.    The Purchaser is hereby granted the benefits and protections of section 363(m) of the Bankruptcy Code, as a good faith purchaser and assignee.

13.    This Order shall be effective immediately upon its entry, without the Order being subject to an automatic stay, as permitted under Bankruptcy Rules 6004(h), 6006(d) and or otherwise.

14.    The reversal or modification on appeal of the Order authorizing the sale hereunder shall not affect the validity or enforceability of the sale or any of the terms and conditions of the Agreement, pursuant to Section 363(m) of the Bankruptcy Code.

## # # END OF ORDER # #

This Order was prepared and submitted by:

*/s/ Douglas S. Draper*
Douglas S. Draper, LA Bar No. 5073
Leslie A. Collins, LA Bar No. 14891
Greta M. Brouphy, LA Bar No. 26216
HELLER, DRAPER, PATRICK, HORN
   & MANTHEY, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Office: 504 299-3300/Fax: 504 299-3399
E-mail:  ddraper@hellerdraper.com
*Counsel for Debtors*

# ASSET PURCHASE AND SALE AGREEMENT

**THIS ASSET PURCHASE AND SALE AGREEMENT** ("Agreement") is dated this 10th day of April, 2019, by and between Mr. Steven, L.L.C., a Louisiana limited liability company ("Seller") and SEACOR Marine LLC, a Delaware limited liability company ("Purchaser").

## RECITALS

**WHEREAS**, the Seller, Mr. Steven, L.L.C., filed for relief pursuant to Chapter 11 of the Bankruptcy Code in the Western District of Louisiana, Case No. 18-51277;

**WHEREAS**, on November 26, 2018, SBN V FNBC LLC filed a Motion for Relief from Automatic Stay with respect to the M/V MR. STEVEN, which Motion was granted;

**WHEREAS**, Seller filed a motion to sell the M/V MR. STEVEN, IMO# 9744465 (the "Vessel") to Purchaser free and clear of liens and claims; and

**WHEREAS**, on the terms and subject to the conditions set forth in this Agreement, and specifically subject to (1) approval from the Bankruptcy Court and an Order from that Court pursuant to 11 USC §363, awarding title to the vessel free and clear of any liens or other interest and (2) a Closing Date of no later than April 30, 2019, Buyer desires to purchase from Seller the Vessel upon the covenants and subject to the conditions set forth below.

**NOW, THEREFORE**, in consideration of the mutual covenants of the parties and for other good and valuable consideration, the parties agree as follows:

**1.** *Purchase of Vessel.* Subject to the covenants and conditions of this Agreement, Seller agrees to sell to Purchaser and Purchaser agrees to buy from Seller the Vessel, together with any and all appurtenances, capital improvements, equipment currently on board the Vessel and spares inventories for the Vessel, whether on board or ashore, on an "AS IS, WHERE IS" basis, at its current location at Port Canaveral, Florida safely afloat and freely accessible. Everything currently onboard is included in the sale, without exclusions or removals, including all vessel logs and manuals but excluding equipment, machinery and items belonging to SpaceX/Guice Offshore.

**2.** *Purchase Price and Sales Tax.* The total purchase price for the Vessel shall be $8,500,000.00 (the "Purchase Price"). The Purchase Price shall be paid by Purchaser to Seller at Closing, as set forth in Article 5, below. Sales taxes, if any, are for Seller's account.

**3.** *Inspection of Vessel.* The Vessel will be made available for a final inspection before purchase at its current berth in Port Canaveral, Florida Delivery will occur at a mutually agreeable point offshore in federal waters beyond the three mile limit off the coast off Florida near Port Canaveral, Florida pursuant to the Protocol of Delivery, (said location being the "Delivery Point"), and Purchaser has agreed to accept the Vessel at the Delivery Point on the Closing Date in its current condition, ordinary wear and tear excepted. If such final inspection,

1

survey, or dry dock reveals to the Purchaser's reasonable satisfaction that the Vessel is free of material damage or defects, then Purchaser shall accept the Vessel and close the sale contemplated by this Agreement. If the inspection, survey, or dry dock reveals the existence of material damage or defects, then Seller and Purchaser shall endeavor to reach a mutually agreeable reduction in purchase price.

   **4.     *Warranty of Clear Title and No Liens; Waiver of Other Warranties.*** Seller, upon entry of the Court's Order approving the sale warrants that Buyer will hold title to the Vessel, free and clear of all liens and encumbrances. Seller shall indemnify, defend and hold Purchaser harmless from and against any liability, cost, or expense arising out of or connected with breach of any of this warranty. A breach of this warranty is a material breach of, and cause for Purchaser to terminate, this Agreement with no further liability to Seller.

   Other than the warranty of lien free title, Purchaser agrees and acknowledges the Vessel is being sold "AS IS, WHERE IS" with no other warranties of any kind whatsoever, including as to class, condition, seaworthiness, merchantability, and fitness for any purpose intended and specifically including any implied warranties under the Louisiana law of redhibition.

   **5.     *Delivery of Documents in Trust for Closing; Transfer of Title.*** On or before April 30, 2019, the Closing Date, Seller will provide to Stewart F. Peck, Esq. or Lugenbuhl, Wheaton, Peck, Rankin & Hubbard as Escrow Agent, the following:

   (1) Two original executed Bills of Sale for the Vessel on Form CG-1340, and warranting that the Vessel is free and clear from all mortgages, liens and other encumbrances;

   (2) The original Certificate of Documentation for the Vessel;

   (3) Duly authorized and signed resolutions from both Purchaser and Seller authorizing a person with authority to act on the behalf of each party to consent to the sale of the Vessel and the other obligations of the parties in accordance with the terms of this Agreement;

   (4) A copy of the Bankruptcy Court's Order selling the Vessel to Purchaser free and clear of claims, liens, preferred ship mortgages or other encumbrances and ordering that a satisfaction of mortgage and release/satisfaction of Maritime liens, if any, be filed with the Coast Guard upon payment in full of the Purchase Price to SBN.

   Upon receipt of the full Purchase Price from Purchaser and the receipt of the foregoing documents required for the purchase ("Documents"), the Vessel shall be tendered for delivery by Seller to Purchaser safely afloat, freely accessible, everything currently onboard included in the sale without exclusions or removals and in the same condition as when previously inspected by Purchaser, ordinary wear and tear excepted, at the Delivery Point by the Closing Date.

   Upon tender of delivery of the Vessel by Seller in its agreed condition, receipt by Purchaser of the Documents, and receipt by Seller of the Purchase Price, and execution of the Form of Protocol of Delivery and Acceptance (Exhibit "A"), the transfer of title to the Vessel from Seller to Purchaser and the "Closing" shall be deemed to have occurred.

2

6.    *Liability and Indemnity.*

    a.    *Seller:*  Seller shall be liable for and shall indemnify, defend and hold Purchaser, its parent, subsidiary and affiliated entities and their respective members, officers, directors, shareholders, successors and assigns, harmless of and from any and all claims, actions, demands, losses, liabilities, penalties and damages (including costs, expenses, and reasonable legal fees), relating to the Vessel which accrued or the operative facts of which arose prior to Closing, except as provided below in subsection b.

    b.    *Purchaser:*  Purchaser shall be liable for and shall indemnify, defend and hold Seller, its parent, subsidiary and affiliated entities and their respective members, officers, directors, shareholders, successors and assigns, harmless of and from any and all claims, actions, demands, losses, liabilities, penalties and damages (including costs, expenses, and reasonable legal fees), relating to the Vessel which accrued or the operative facts of which arose after Closing.

7.    *Equipment Included in Sale; Change of Name and Colors.*  Other than as set forth in this Agreement, there is no other equipment included in this sale

8.    *Risk of Loss.*

    a.    Except as otherwise provided herein, all risk of loss of the Vessel prior to Closing shall be borne by Seller. All risk of loss of the Vessel subsequent to Closing shall be borne by Purchaser.

    b.    In the event of a total loss or constructive total loss of the Vessel prior to Closing, this Agreement shall terminate. Seller shall be entitled to receive and retain all insurance proceeds payable as the result of such loss.

    c.    Should either the Vessel be damaged in any material respect prior to Closing but should not be deemed a total loss or constructive total loss, Purchaser may, at Purchaser's sole option, terminate this Agreement by giving written notice to Seller no later than five (5) days after Purchaser has received notice of such related casualty and having had the opportunity to inspect the damaged Vessel. If Purchaser so elects to terminate this Agreement, Purchaser shall be entitled to a refund of any amounts deposited prior to Closing and Seller shall be entitled to receive and retain all insurance proceeds payable as the result of such loss. Seller and Purchaser may opt to agree to a mutually acceptable price for any undamaged remaining Vessel and/or for a damaged Vessel; such transaction shall be subject to the terms and conditions of this Agreement.

9.    *Termination.*  This Agreement may, by written notice given at or prior to the Closing, be terminated:

    (i)    By mutual consent of the Seller and the Purchaser;

3

(ii)    By the Seller if there has been a breach by the Purchaser of any material representation, warranty or covenant of the Purchaser contained in this Agreement;

(iii)   By the Purchaser if there has been a breach by the Seller of any material representation, warranty or covenant of the Seller contained in this Agreement;

(iv)   By the Seller if any of the conditions to Closing to be satisfied by the Purchaser as set forth in this Agreement hereof shall not have been satisfied by the Purchaser or waived by the Seller or if the Closing has not occurred by the outside Closing Date for any reason;

(v)    By the Purchaser if any of the conditions to Closing to be satisfied by the Seller as set forth in this Agreement hereof shall not have been satisfied by the Seller or waived by the Purchaser or if the Closing has not occurred by the outside Closing Date for any reason;

Upon termination of this Agreement, this Agreement shall be void and of no effect and there shall be no liability by reason of this Agreement or the termination thereof on the part of any party except as set forth in any provision hereof that by the terms hereof expressly survives termination of this Agreement. Notwithstanding anything above to the contrary, in the event that Purchaser is in default under the agreement, in lieu of termination of the Agreement, Seller may demand enforcement of the Agreement by the remedy of specific performance brought by Seller against Purchaser.

    **10.**    *Free and Clear of Liens.* As a condition precedent to confection of the sale, the sale and purchase must be approved by the Bankruptcy Court and the sale shall be pursuant to 11 USC §363, free and clear of any liens or other interest in the Vessel.

    **11.**    *Binding Effect.* This Agreement shall inure to the benefit of and be binding upon the parties hereto, their directors, officers, assigns, agents, employees, and successors-in-interest.

    **12.**    *Relationship of Parties.* It is the intention of this Agreement to create the relationship of seller-purchaser only between the parties hereto and no other relationship shall be construed or inferred hereby.

    **13.**    *Entire Agreement; Neutral Constructions.* This Agreement constitutes the entire agreement between the parties. This Agreement shall be construed neutrally rather than for or against either party. The terms of this Agreement shall survive transfer of title of the Vessel from Seller to Purchaser.

    **14.**    *Applicable Law.* This Agreement shall be governed and construed in accordance with the bankruptcy laws and general maritime laws of the United States, insofar as applicable, otherwise by the laws of the State of Louisiana. With respect to any litigation arising out of this Agreement or out of the performance hereunder, the parties hereby submit to the exclusive jurisdiction of the United States Bankruptcy Court located in the Western District of Louisiana.

The substantially prevailing party in any such action shall be entitled to recover its reasonable attorneys' fees and costs. If any term or provision, or any part of any term or provision, of this Agreement is held by any court or other competent authority to be illegal or unenforceable, the remaining terms, provisions, rights and obligations shall not be affected.

**15.** *Counterparts and Facsimile Signatures.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together will constitute the same agreement, whether or not each party executes each separate counterpart. A facsimile or other electronic signature shall be deemed equivalent to an original signature.

**16.** *Corporate Authority.* The parties each represents and warrants to the other that they are duly authorized to execute and perform this Agreement; all corporate action of the directors of the respective parties necessary or required by law for the execution and delivery of this Agreement been duly and effectively taken; the execution and delivery of this Agreement is not in contravention of law or the terms of the respective party's Certificate of Incorporation or By-laws.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives on the date first appearing above.

Mr. Steven, L.L.C.

By: _____

Its: ___MANAGER___

SEACOR Marine LLC

By: _____

Its: ___EVP & COO___

5

# EXHIBIT "A"

## FORM OF PROTOCOL OF DELIVERY AND ACCEPTANCE

### KNOW ALL MEN BY THESE PRESENTS:

That Mr. Steven, L.L.C ("Seller") has sold and does grant the delivery at _____.m. local time on this ___ day of _____, 2019 to SEACOR Marine LLC ("Purchaser"), all its right, title and interest in that certain vessel M/V MR. STEVEN, IMO# 9744465 (the "Vessel"), pursuant to that certain Asset Purchase and Sale Agreement by and between the Seller and the Purchaser dated April __, 2019, said sale and delivery taking place at_____, Louisiana, and

That the Purchaser does hereby accept delivery, title and risks of and to the aforesaid Vessel, subject to the terms of the aforesaid Asset Purchase and Sale Agreement.

This Protocol of Delivery and Acceptance may be executed in counterparts and delivered via fax and each such counterpart shall be deemed to be an original instrument and together shall constitute one Protocol of Delivery and Acceptance.

For and on behalf of Seller:                    For and on behalf of Purchaser:

Mr. Steven, L.L.C.                              SEACOR Marine LLC

By: _____                      By: _____
Name: _Steve Miguez___                         Name: _____
Title: _MANAGER___                             Title: _____

6