UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE - OPELOUSAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 18-51277 |
| MR. STEVEN, L.L.C.[1] | * | CHAPTER 11 |
| Debtor | * | |

## JOINT CHAPTER 11 AMENDED PLAN OF REORGANIZATION OF THE DEBTORS

Mr. Steven, L.L.C.,[1] Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC, as debtors and debtors-in-possession (referred to herein as "Debtor" or collectively, the "Debtors"), appearing herein through their respective undersigned counsel, propose the following Joint Chapter 11 Amended Plan of Reorganization of the Debtors (the "Plan") pursuant to the provisions of 11 U.S.C. § 1121(a):

## INTRODUCTION

The Debtors propose this Plan pursuant to Chapter 11 of the Bankruptcy Code. All creditors are encouraged to consult the accompanying Disclosure Statement approved by the Bankruptcy Court before voting to accept or reject the Plan. No other solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

---

[1] Pursuant to this Court's December 21, 2018 Order, the Debtor's case has been procedurally consolidated and is being jointly administered with the following affiliated Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi, L.L.C. (18-51517), Lady Glenda, L.L.C. (18-51518), Mr. Blake, L.L.C. (18-51519), Mr. Mason, L.L.C. (18-51521), Mr. Ridge, L.L.C. (18-51522), and Mr. Row, L.L.C. (18-51523) (collectively, the "Debtors"). [ECF Doc. 109].

1

# ARTICLE I.
## DEFINITIONS

**1.1** The following definitions apply to the Debtors' Disclosure Statement and Plan and all exhibits which may accompany same:

**1.1.1.** "**Administrative Expense Claim**" means any right to payment constituting a cost or expense of administration of the Bankruptcy Cases allowed under and in accordance with, as applicable, Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Bankruptcy Estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Bankruptcy Cases, and (d) any compensation for professional services rendered and reimbursement of expenses incurred, including without limitation, any fees or charges assessed against the Bankruptcy Estates pursuant to 28 U.S.C. § 1930.

**1.1.2.** "**Administrative Expense Claim Bar Date**" means the date which is thirty (30) days after the Confirmation Date.

**1.1.3.** "**Allowed**" means, with reference to any Claim against the Debtors, (a) any Claim against any of the Debtors that has been listed by such Debtor in its Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed or no timely objection to allowance or request for estimation has been interposed; (b) any timely filed proof of claim either (i) as to which no objection has been or is interposed by the General Bar Date or Government Bar Date, as applicable, or such other applicable period of limitation fixed by the Bankruptcy Code, the

2

Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder of such Claim; (c) any Claim expressly allowed by a Final Order or under this Plan; or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claim."

      **1.1.4.** "**Avoidance Actions**" means all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Reorganized Debtors, arising under chapter 5 of the Bankruptcy Code, including avoidable transfers under Sections 547 and 549 of the Bankruptcy Code ("Preferential Transfers"), and fraudulent transfers under 11 U.S.C. § 548 and applicable state law (including fraudulent transfers or fraudulent conveyances, collectively, "Fraudulent Transfers") and Section 544 of the Bankruptcy Code, or under any related state or federal statutes or common law, regardless whether such action has been commenced prior to the Effective Date.

      **1.1.5.** "**Ballot**" means the form distributed to each Holder of an impaired Claim that is entitled to vote to accept or reject this Plan on which is to be indicated acceptance or rejection of this Plan.

      **1.1.6.** "**Bankruptcy Cases**" means the Chapter 11 cases of the following affiliated Debtors that have been administratively consolidated for joint administration pursuant to that certain *Order Pursuant to Bankruptcy Rule 1015(b) directing Joint Administration of Chapter 11 Cases* dated December 21, 2018 [ECF Doc. #109]: Mr. Steven, L.L.C. (18-51277); Lady Eve, L.L.C. (18-51488), Lady Brandi L.L.C.(18-51517), Lady Glenda LLC (18-51518), Mr.

{00368042-2}

Blake LLC (18-51519), Mr. Mason LLC (18-51521), Mr. Ridge LLC (51522), and Mr. Row LLC (18-51523).

      **1.1.7.** **"<u>Bankruptcy Code</u>"** means title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Cases.

      **1.1.8.** **"<u>Bankruptcy Court</u>"** or **"<u>Court</u>"** means the United States Bankruptcy Court for the Western District of Louisiana, exercising jurisdiction over these Bankruptcy Cases and all adversary proceedings and contested matters therein, or any other court of the United States having jurisdiction over these Bankruptcy Cases.

      **1.1.9.** **"<u>Bankruptcy Rules</u>"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as amended from time to time, as applicable to the Bankruptcy Cases, and any Local Rules of Bankruptcy Court.

      **1.1.10.** **"<u>Business Day</u>"** means any day other than a Saturday, Sunday, or any other day on which banking institutions in New York City, New York are required or authorized to close by law or executive order.

      **1.1.11.** **"<u>CCF Funds</u>"** shall mean the Capital Construction Funds in the name of Iberia Crewboat and Marine Services, L.L.C. and Steven J. Miguez.

      **1.1.12.** **"<u>Cash</u>"** means legal tender of the United States of America.

      **1.1.13.** **"<u>Cause of Action</u>"** means any Claim of the Debtors, whether or not contingent, direct or indirect, liquidated, fixed, inchoate, known or unknown, which arose prior to the Effective Date.

      **1.1.14.** **"<u>Chapter 11</u>"** means Chapter 11 of the Bankruptcy Code.

1.1.15. **"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.1.16. **"Claimant"** means the Holder of any Claim.

1.1.17. **"Claims Register"** means the list of claims maintained by the Clerk of the Bankruptcy Court listing all Claims filed in the Bankruptcy Cases.

1.1.18. **"Class"** means the group or category of Holders of Claims or Existing Equity Interests which are classified by this Plan pursuant to Section 1122 of the Bankruptcy Code or pursuant to an order of the Bankruptcy Court.

1.1.19. **"Collateral"** means any property or interest in property of the Bankruptcy Estates of the Debtors subject to a valid and properly perfected Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.20. **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.1.21. **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.1.22. **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.1.23. **"Contingent Claim"** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, any event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be

estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the Debtors now or hereafter exists or previously existed.

1.1.24. **"Covered Parties"** shall mean all of the present ~~attorneys and~~non-attorney professionals of any of the Debtors whose retention has been approved by the Bankruptcy Court, before or after the Petition Date up to and including the Effective Date. For the avoidance of doubt, the term "Covered Parties" shall not include any of the Insider Parties.

1.1.25. **"Creditor"** has the meaning as set forth in Section 101(10) of the Bankruptcy Code and is the Holder of one or more Claims.

1.1.26. **"Cure Amount Claim"** means any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code. Allowed Rejection Claims are classified and shall be treated as an Unsecured Claim in the Bankruptcy Case in which the Claim arose.

1.1.27. **"Cure Amount Claim Bar Date"** means the later of (i) the Effective Date or (ii) ten (10) days after the receipt of the notice of the amendment of Schedule 10.1 of this Plan.

1.1.28. **"Debt"** means liability on a Claim.

1.1.29. **"Debtors"** means, collectively, Mr. Steven, L.L.C., Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC as the debtors and debtors-in-possession in these Bankruptcy Cases.

1.1.30. **"DIP Loan"** means that certain post-petition financing granted on an interim basis under the terms approved by this Court.

1.1.31. **"Disclosure Statement"** means the Disclosure Statement accompanying this Plan, including, without limitation, all exhibits, schedules and attachments thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.1.32. **"Disclosure Statement Order"** means the order of the Bankruptcy Court approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.1.33. **"Disputed"** means, with reference to any Administrative Expense Claim or Claim, any such Administrative Expense Claim or Claim (a) to the extent neither Allowed nor disallowed under this Plan or a Final Order nor deemed Allowed under Sections 502, 503 or 1111 of the Bankruptcy Code; (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order; or (c) as to which the Debtors or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that the amount of the Claim specified in a proof of claim exceeds the amount of the Claim scheduled by the Debtors as not disputed, contingent or unliquidated (but only to the extent of such excess portion).

1.1.34. **"Disputed Claim Amount"** means the amount set forth in the proof of claim or Schedules relating to a Claim that is Disputed or an amount estimated pursuant to an

order of the Bankruptcy Court in respect of a Claim that is Disputed in accordance with Section 502(a) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.1.35.  "**Distribution**" means any distribution to the various Classes pursuant to the terms of this Plan.

1.1.36.  "**Distribution Record Date**" means the Effective Date.

1.1.37.  "**Effective Date**" or "**Effective Date of this Plan**" means a Business Day after the Confirmation Date as mutually agreed by the Debtors and the Plan Sponsor that is as soon as reasonably practicable after the conditions to the effectiveness of this Plan specified in Article XI hereof have been satisfied or waived which date shall be no later than May 31, 2019.

1.1.38.  "**Entity**" has the meaning set forth in Section 101(15) of the Bankruptcy Code.

1.1.39.  "**Existing Equity Interest**" means an equity interest in the Debtors existing on the Petition Date.

1.1.40.  "**Estates**" means the bankruptcy estates of the Debtors in the case pursuant to Section 541 of the Bankruptcy Code.

1.1.41.  "**Final Order**" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reserved, vacated or stayed and as to which (a) the time to appeal or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending; or (b) if an appeal, new trial, re-argument or rehearing thereof has been sought and a stay has been granted or a bond has been posted pursuant to applicable law, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new

trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, or move for a new trial, re-argument or rehearing shall have expired.

1.1.42. "**General Bar Date**" means that certain date to be fixed by the Bankruptcy Court upon the filing of a motion by the Debtors, pursuant to Bankruptcy Rule 3003(c)(3), by which all Persons asserting Claims against the Debtors (other than Administrative Expense Claims) are required to file proofs of claim or be forever barred from asserting such Claims against the Debtors or their property and from voting on this Plan and/or sharing in any distributions hereunder.

1.1.43. "**General Unsecured Claim**" means any Claim for which no property of the Debtors or the Bankruptcy Estates serves as security or collateral. It also consists of the Claims for unsecured debts, liabilities, and demands or any character whatsoever owed by the Debtors, including, without limitation, all Claims noted on the Schedules filed herein, all amendments hereto, and all Claims by Persons having actual and/or constructive notice or knowledge of these Bankruptcy Cases.

1.1.44. "**General Unsecured Creditor**" means the Holder of a General Unsecured Claim against the Debtors.

1.1.45. "**Government Bar Date**" means that certain date to be fixed by the Bankruptcy Court upon the filing of a motion by the Debtors, pursuant to Bankruptcy Rule 3003(c)(3), by which all Governmental Units asserting Claims against the Debtors (other than Administrative Expense Claims) are required to file proofs of claim or be forever barred from asserting such Claims against the Debtors or their property and from voting on this Plan and/or sharing in any distributions hereunder.

**1.1.46. "<u>Government Unit</u>"** has the meaning set forth in Section 101(27) of the Bankruptcy Code.

**1.1.47. "<u>Holder</u>"** means the holder, as of the Distribution Record Date, of any Claim, including without limitation any one or more of Administrative Expense Claims, Priority Claims, or General Unsecured Claims.

**1.1.48. "<u>Impaired</u>"** means with respect to any Class of Claims or Existing Equity Interests under this Plan in which this Plan has altered the legal, equitable, and contractual rights of such Claims or Existing Equity Interests, and a Claim is Impaired unless it meets one of the exceptions specified in Section 1124 of the Bankruptcy Code.

**1.1.49. "<u>Insider</u>"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

**1.1.50. "<u>Insider Claims</u>"** means any Administrative Claims, Secured Claims or General Unsecured Claims held by any Insider.

**1.1.51. "<u>Insider Parties</u>"** means any Insider together with each of their respective present or former shareholders, members, officers, directors, managers, employees, successors, assigns, heirs, agents, advisors, attorneys, insiders, and professionals (each an Insider Party).

**1.1.52. "<u>Intercompany Claims</u>"** means any Claim by one Debtor against another Debtor.

**1.1.53. "<u>IRC</u>"** means the Internal Revenue Code of 1986, as amended.

**1.1.54. "<u>Lender</u>"** means SBN V FNBC LLC.

**1.1.55. "<u>Lender Claim</u>" or "<u>SBN Claim</u>"** means the claim of SBN V FNBC LLC as set forth in the SBN Settlement.

10

**1.1.56. "<u>Lien</u>"** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.57. "<u>Net Sales Proceeds</u>"** means gross sales proceeds less the costs and expenses associated with such sale, including, without limitation, any costs associated with or arising out of any required pre-sale repairs, title or license transfer, taxes or third-party commission.

**1.1.58. "<u>Person</u>"** has the meaning set forth in Section 101(41) of the Bankruptcy Code.

**1.1.59. "<u>Petition Date</u>"** means, with respect to each of the Debtors, the date on which each of the Debtors filed its voluntary petition, which dates are as follows: (a) Mr. Steven, L.L.C. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 3, 2018; (b) Lady Eve, L.L.C. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 16, 2018; and (c) Mr. Mason LLC, Mr. Ridge LLC, Mr. Row LLC, Mr. Blake LLC, Lady Glenda LLC, and Lady Brandi L.L.C. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on November 21, 2018.

**1.1.60. "<u>Plan</u>"** means this Joint Chapter 11 Plan of Reorganization of the Debtors, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof; specifically the SBN Settlement which comprises part of the Plan, is incorporated herein, and its terms control over any other provisions of the Plan.

**1.1.61. "<u>Plan Rate</u>"** means one percent ("1%") over Wall Street Journal prime calculated on a monthly basis on the first day of the month and as further provided in the Amended Note as defined in the SBN Settlement.

{00368042-2}

**1.1.62.** "**Plan Sponsor**" means Steven J. Miguez or his respective designee.

**1.1.63.** "**Plan Supplement**" means certain forms of documents and information specified in this Plan.

**1.1.64.** "**Priority Claim**" means a Claim entitled to priority in payment as specified in Sections 507(a)(1)-(10) of the Bankruptcy Code.

**1.1.65.** "**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.1.66.** "**Pro Rata**" means, with reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

**1.1.67.** "**Professional**" means any Court-approved professional Person employed by the Debtor or the Plan Sponsor in the Bankruptcy Cases at any time before the Confirmation Date.

**1.1.68.** "**Property of the Estate**" is defined in Section 541 of the Bankruptcy Code.

**1.1.69.** "**Rejection Claim**" means any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code. Allowed Rejection Claims are classified and as an unsecured claim in the Class of unsecured claims for the counter-party to the rejection claim.

**1.1.70.** "**Rejection Claim Bar Date**" means that date that is ten (10) days after the Confirmation Date.

{00368042-2}

1.1.71. **"Reorganized Debtors"** means the Debtors after the Effective Date, or any successor thereto by merger, consolidation or otherwise.

1.1.72. **"Retained Causes of Action"** means any Causes of Action specifically or implicitly preserved and retained under this Plan.

1.1.73. **"SBN"** shall mean SBN V FNBC LLC. .

1.1.74. **"SBN Settlement**" shall mean the Compromise and Settlement and Receipt and Release attached hereto as Exhibit 1.

1.1.75. **"Schedules"** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Bankruptcy Case, as have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.1.76. **"Secured Claim"** means any Claim that is secured by a Lien on Collateral.

1.1.77. **"Secured Creditor"** means those Creditors who possess valid and perfected Liens against any property of the Debtors.

1.1.78. **"Unliquidated Claim"** means any Claim, the amount of liability for which has been not fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to bet estimated.

1.1.79. **"Unsecured Claim"** means any Claim that is not secured by a Lien on Collateral.

1.1.80. **"Voting Class"** means a Class specified as such in Article III of this Plan.

13

**1.2** **Interpretation: Application of Definitions and Rules of Construction.** The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section. Subsection or clause contained in this Plan. A term used herein that is not otherwise defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit otherwise affect any provisions of this Plan.

**ARTICLE II.**
**PROVISIONS FOR PAYMENT OF ADMINISTRATIVE**
**EXPENSE AND PRIORITY CLAIMS**

**2.1** **Administrative Expense Claims.**

**2.1.1** **Administrative Expense Claims**. All requests for the allowance and payment of an Administrative Expense Claim (including any Professional Administrative Expense Claim) must be filed as a motion with the Bankruptcy Court on or before the Administrative Expense Claim Bar Date, or such other date as approved by order of the Bankruptcy Court, and such motion shall be served upon the Reorganized Debtors and other parties-in-interest, in accordance with the Bankruptcy Code and the Bankruptcy Rules. Holders of alleged Administrative Claims must satisfy their burden regarding allowance and payment of their Administrative Expense Claim. **The failure to file and serve such a motion or application for allowance and payment of an Administrative Expense Claim or a Professional Administrative Expense Claim timely and properly shall result in such Administrative Expense Claim being forever barred and discharged. For the avoidance of doubt, an Administrative Expense Claim asserted through a proof of claim filed in the**

14

**Bankruptcy Cases is invalid unless a timely motion for allowance and payment of an Administrative Expense Claim is filed.**

        2.1.2       **Payments to Holders of Allowed Administrative Expense Claim.** To the extent any non-Professional Administrative Expense Claims are Allowed pursuant to Article II of the Plan, and unless otherwise agreed to by the Holder of such Claim prior to the Effective Date of this Plan, the Holder of any Allowed Administrative Expense Claim will be paid by the Reorganized Debtors in Cash the Allowed amount of such Claim on the later of (a) the Effective Date, or (b) the date on which such Administrative Expense Claim is determined to be Allowed by Final Order of the Bankruptcy Court.

        2.1.3       **United States Trustee Fees.** With respect to amounts due to the Office of the United States Trustee, the Reorganized Debtors shall pay the appropriate sum required by 28 U.S.C. § 1930(a)(6) ~~within thirty (30) days of the Effective Date.~~as required by statute. The Reorganized Debtors shall timely pay the to the United States Trustee any and all post-confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as these Bankruptcy Cases are converted, dismissed or closed by the Court. Additionally, the Reorganized Debtors shall submit to the United States Trustee post-confirmation quarterly operating reports in the format prescribed by the United States Trustee until such time as these Bankruptcy Cases are converted, dismissed or closed by the Court. At this time, the Debtors are current on all fees owed to the United States Trustee.

        2.1.4       **Professional Administrative Expense Claims**. Any Professional seeking any award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503 (b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a)

{00368042-2}

file, on or before the Administrative Claim Bar Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; (b) be paid in full on the date on which such Professional Administrative Expense Claim is Allowed by Final Order; and (c) be able to apply any amount held in retainer up to amounts as allowed by Final Order by the Bankruptcy Court.

    **2.2**    **Priority Claims.**

    **2.2.1**    **Priority Claim – Other Than Under Section 507(a)(8)**. The Debtors contend that there are no Allowed Priority Claims other than those arising under Section 507(a)(8) of the Bankruptcy Code. To the extent there are any such Allowed Priority Claims, each Holder of such Claim will receive the treatment required by Section 1129(a)(9)(A) or (B) of the Bankruptcy Code, as appropriate.

    **2.2.2**    **Priority Claims Under Section 507(a)(8).** The Holder of any such Allowed Priority Claim arising under Section 507(a)(8) of the Bankruptcy Code will be paid on the Effective Date of the Plan.

    **2.2.3**    **DIP Loan Claim.** The Holder of a Claim incident to the DIP Loan approved by the Court shall have his DIP Loan contributed as an equity contribution to the Reorganized Debtors.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS AND EXISTING EQUITY INTERESTS**

    **3.1**    **Classification of Claims**. The following are the Classes of Claims against and Existing Equity Interests in the Debtors:

| Class | Designation |
|-------|-------------|
| 1. | Administrative Expense Claim |
| 2. | Priority Claims |
| 3. | Lender Claim |

16

{00368042-2}

4.     Unsecured Creditors:
4(a).   Mr. Steven, L.L.C. Unsecured Creditors
4(b).   Lady Eve, L.L.C. Unsecured Creditors
4(c).   Lady Brandi L.L.C. Unsecured Creditors
4(d).   Lady Glenda LLC Unsecured Creditors
4(e).   Mr. Blake LLC Unsecured Creditors
4(f).   Mr. Mason LLC Unsecured Creditors
4(g).   Mr. Ridge LLC Unsecured Creditors
4(h).   Mr. Row LLC Unsecured Creditors
5.     Existing Equity Interests

**ARTICLE IV.**
**GENERAL PROVISIONS OF THE PLAN, PROVISIONS**
**FOR ALTERNATING THE RIGHTS OF CREDITORS AND**
**SPECIFICATIONS OF THE TREATMENT OF EACH CLASS**

**4.1     Administrative Expense Claims (Class 1).** To the extent any non-Professional Administrative Expense Claims are Allowed pursuant to Article II of the Plan, and unless otherwise agreed to by the Holder of such Claim prior to the Effective Date of this Plan, the Holder of any Allowed Administrative Expense Claim will be paid by the Reorganized Debtors in Cash the Allowed amount of such Claim on the later of (a) the Effective Date, or (b) the date on which such Administrative Expense Claim is determined to be Allowed by Final Order of the Bankruptcy Court. Accordingly, Class 1 is unimpaired under this Plan, and is not is entitled to vote to accept or reject this Plan.

**4.2     Priority Claims (Class 2).** To the extent any Priority Claims arising under Section 507(a)(8) of the Bankruptcy Code are Allowed, pursuant to Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, the Holder of any such Allowed Priority Claim will be paid in full on the Effective Date.

**4.3     Lender Claim (Class 3).**

**4.3.1     Payment of the Lender Claim.** The Lender Claim shall be paid and treated in accordance with the SBN Settlement. The SBN Settlement is approved in all respects

17

as part of the Plan.  Debtors shall provide and SBN shall be entitled to all of the terms of the SBN Settlement.  The Lender claim is allowed as set forth in the SBN Settlement.  SBN is not required to file a proof of claim.

   **4.3.3** **Loan Documents.** The existing loan and security documents by and between the Debtors and SBN (the "SBN Loan Documents") shall be modified in accordance with the SBN Settlement and, as modified, remain in full force and effect.  Additional loan documents referenced in the SBN Settlement shall be executed by the obligors prior to the Effective Date and as set forth in the SBN Settlement.

  **4.4** **General Unsecured Claims (Classes 4(a) – 4(h))**.  To the extent that any Creditor other than an Insider has an Allowed Class 4(a) through 4(h) General Unsecured Claim, such Holder of an Allowed Class 4(a) through 4(h) General Unsecured Claim shall be paid in full on the later of 1) the Effective Date of the Plan or 2) when such Claim is allowed.

  **4.5** **Existing Equity Interests (Class 5 )**.  The Holder of any Existing Equity Interest will retain its Equity Interest in exchange for the contribution of the funds set forth in the SBN Settlement and the capital contribution of the DIP Loan.

**ARTICLE V.**
**MEANS OF IMPLEMENTATION AND EXECUTION OF THE PLAN**

  **5.1** **SBN Settlement.** The Debtors and the Guarantors of the Lender Claim have reached a settlement that is embodied in the Plan.  The combination of the sale of the M/V Mr. Steven, the payment to SBN of the Guice Charter Funds, the payments by the Guarantors to SBN, the adequate protection payments and the operations of the Debtors will serve as the source of payment to SBN prior to the date the Lender Claim matures and is due and owing under the Plan and the SBN Settlement.  The balloon payment will be made from either the sale of the

remaining assets of the Debtors and/or a refinancing. The SBN Settlement shall be approved in all respects by confirmation of this Plan.

5.2 **Agreement Providing the Foundation of the Plan.** The foundation of this Plan is the agreement by and among the Debtors, the Plan Sponsor, Iberia Crewboat & Marine Services, LLC, Iberia Marine Service, LLC, SeaTran Marine, L.L.C. and SBN all as reflected in the SBN Settlement. The SBN Settlement is incorporated herein as if fully set forth herein. To the extent the Plan or the Order confirming the Plan is inconsistent with the SBN Settlement, the SBN Settlement shall control.

5.3 **Payments for Administrative, Priority and Class 4 Creditors.** Payments for creditors of the Debtors other than SBN will be made from either 1) funds on hand in the Debtors' DIP account other than any funds attributable to the Mr. Steven or from 2) amounts owed to the Debtors by Sea Tran for the post-petition use and charter of a vessel. Sea Tran will subordinate its rights of set-off or recoupment against funds due the Debtors post-petition in order that this Plan may be confirmed and consummated.

5.3 **Vesting of Assets**. On the Effective Date, the Debtors, their properties and interests in property, and their operations will be released from the jurisdiction of the Bankruptcy Court, and all property of the Bankruptcy Estates of the Debtors will vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, but specifically subject to the obligations of the Reorganized Debtors as provided in this Plan.

5.4 **Sources of Payments.** There are seven (7) principal sources of payments by which this Plan will be funded. The sources are 1) sale of the Mr. Steven; 2) monies owed by Guice Offshore with respect with the Mr. Steven bareboat charter; 3) funds owned by either Steven Miguez or Iberia Crewboat & Marine Services, L.L.C.; 4) CCF Funds; 5) Operations of

{00368042-2}

the Debtors; 6) funds in the DIP Account and; 7) amounts owed to the Debtors incident to the charter of vessels owned by the Debtors other the M/V MR. STEVEN.

**5.5** **Preservation of Retained Causes of Action**. Except as to SBN which is fully released in the SBN Settlement, the Debtors specifically and unequivocally reserve the right to assert, after the confirmation of this Plan, any and all of the claims, rights, and Causes of Action, and all proceeds of the foregoing, including, but not limited to, those listed in Schedule 5.5, which is a non-exclusive list of Causes of Action and Potential Parties against whom the Debtors may assert Causes of Action after confirmation of this Plan. The failure to include a person or an entity on this list shall not constitute a release of such entity and shall not indicate Causes of Action against such entity have not been retained. Except as to SBN which is fully released in the SBN Settlement, all possible Causes of Action, including claims and Causes of Action not listed herein, are retained against all entities not expressly released pursuant to this Plan or a final order of the Bankruptcy Court. In the event of any inconsistency between the releases pursuant to this Plan or a final order of the Bankruptcy Court and the attached Schedule 5.5, such releases granted pursuant to this Plan or final order of the Bankruptcy Court shall govern. Except as to SBN which is fully released in the SBN Settlement, the Debtors specifically retain all Causes of Action of any kind whatsoever against all such persons or entities, including without limitation the Causes of Action set forth on Schedule 5.5, including without limitation, any and all Avoidance Actions against the parties and in the approximate amounts as more particularly set forth in Exhibit "A" to Schedule 5.5 to this Plan, but only to the extent that the aggregate value of all property that constitutes or is affected by such transfer to a particular transferee is greater than $6,425.00.

{00368042-2}

On Exhibit "A" to <u>Schedule 5.5</u> to this Plan, there are listed all payments made by the Debtors on or within ninety (90) days before the Petition Date, or between ninety (90) days and one (1) year before the Petition Date if such creditor at the time of such transfer was an "Insider" as that term is defined in Section 101(31) of the Bankruptcy Code. The transferees of any of these payments may be subject to having an Avoidance Action (as defined in this Plan) filed against such transferee to recover such transfers. Such transfers may be subject to certain defenses available to the transferee.

Except as to SBN which is fully released in the SBN Settlement, the Reorganized Debtors shall have the sole discretion to pursue or not pursue any Retained Causes of Action, and all proceeds shall be retained and distributed by the Reorganized Debtors pursuant to the terms of this Plan.

**ARTICLE VI.**
**ADMINISTRATION AND IMPLEMENTATION OF THE PLAN**

**6.1** **Administration by the Reorganized Debtors.** Except as otherwise provided herein, this Plan will be administered and implemented by the Reorganized Debtors, which shall be vested with full legal power, capacity and authority, and shall be directed to administer and implement this Plan.

**6.2** **The Reorganized Debtors as Disbursing Agents**. Except with respect to any distributions to be made to the Holders of Allowed General Unsecured Claims, the Reorganized Debtors or their chosen designee shall serve as the Disbursing Agent under this Plan. The Reorganized Debtors may be authorized and directed to review, object to, prosecute, negotiate, settle or otherwise compromise any Claims in accordance with Bankruptcy Rule 9019. The powers granted to the Reorganized Debtors shall be exercisable without further approval of the Court.

6.4 **Implementation of the Plan** To implement the Plan the Debtors, Sea Tran Marine, L.L.C. , Iberia Crewboat and Marine Services, L.L.C., Steven Miguez and Iberia Marine Service, LLC will execute Exhibit 1 and any other documents deemed necessary to effectuate the terms of the SBN Settlement.

6.3 **Privileges of Debtors**. On the Effective Date, all of the Debtors' privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "Privileges") shall be transferred, assigned and delivered to the Reorganized Debtors, without waiver, limitation or release, and shall vest with the Reorganized Debtors. The Reorganized Debtors shall hold, and be the beneficiary of, all Privileges and shall be entitled to assert all Privileges on and after the Effective Date, and the Reorganized Debtors shall be entitled to assert such privilege and immunity to the same extent that the Debtors or the Bankruptcy Estates were entitled to do so prior to the Effective Date. For purposes of clarity, this Section is not intended to expand or restrict the rights, if any, of third parties to their own privileges or any common interest or joint privileges. Such privileges, if any, are not waived or transferred by this provision.

6.4 **Distributions to Holders as of the Confirmation Date**. As of the close of business on the Confirmation Date, the Claims Register and other registers as maintained by the Clerk of the Bankruptcy Court will be closed and there will be no further changes in the record Holder of any Claim. The Reorganized Debtors will not have any obligation to recognize any transfer of any Claim occurring after the Confirmation Date, and the Reorganized Debtors will instead be authorized and entitled to recognize and deal for all purposes under this Plan only with

{00368042-2}

those record Holders stated on the Schedules and/or Claims Register, as the case may be, and other registers as of the close of business on the Confirmation Date.

**6.5** **Post-Confirmation Role as of the Effective Date**. Except as otherwise provided in this Plan, all rights and obligations of the Debtors under this Plan that exist or continue after the Effective Date shall vest in the Reorganized Debtors pursuant to the terms of this Plan and shall be rights and obligations exercisable exclusively by the Reorganized Debtors after the Effective Date.

**6.6** **Effectuating Documents and Further Transactions**. The Reorganized Debtors are authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## ARTICLE VII.
## PROVISIONS GOVERNING/VOTING AND DISTRIBUTIONS

**7.1** **Voting of Claims**. Each Holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on this Plan pursuant to Article III and Article IV of this Plan (i.e., Classes 2-4a-h) shall be entitled to vote to accept or reject this Plan.

**7.2** **Nonconsensual Confirmation.** If any Impaired Class of Claims entitled to vote shall not accept this Plan by the requisite statutory majority provided in Section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend this Plan or to undertake to have the Bankruptcy Court confirm this Plan under Section 1129(b) of the Bankruptcy Code or both. Section 1129(b) of the Bankruptcy Code provides that this Plan may be confirmed by the Court despite not being accepted by every Impaired Class if (I) at least one Impaired Class of Claims, excluding the Claims of Insiders, has accepted this Plan; and (ii) the Court finds that this Plan does not discriminate unfairly and is fair and equitable to the rejected Classes. Among other

23

things, such a finding would require a determination by the Court that this Plan provides that no Holder of an Allowed Claim or Interest junior to the rejecting Class will receive or retain property or payment under this Plan until or unless such rejecting Class is paid in full. The Debtors reserve the right pursuant to Section 1129(b) of the Bankruptcy Code to request the Court to confirm this Plan if all of the applicable requirements of Section 1129(a) of the Bankruptcy Code have been met. In addition, the Debtors reserve the right pursuant to Section 1126(e) of the Bankruptcy Code to request the Court to strike any Ballot rejecting this Plan cast by any Holder of a Claim or interest which was not cast in good faith.

## ARTICLE VIII.
## PROCEDURES GOVERNING DISTRIBUTIONS

8.1    **Distributions**. The Reorganized Debtors shall make distributions in accordance with this Plan, beginning as soon after the Effective Date as is deemed practicable by the Reorganized Debtors in their reasoned judgment, from Cash received under this Plan.

8.2    **Distributions on Account of Allowed Claims.** All Allowed Claims in a particular Class held by a Creditor shall be aggregated and treated as a single Claim. Any Creditor holding multiple Allowed Claims shall provide to the Debtors a single address to which any distribution shall be sent. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.3    **Disallowed Claims**. In the event the Reorganized Debtors have asserted a Cause of Action under Chapter 5 of the Bankruptcy Code against the Holder of a Claim, then such Claim shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code. Consequently, the Holders of such Claims may not vote to accept or reject this Plan until the

24

Cause of Action against such Claimant has been settled or adjudicated by the Bankruptcy Court and any amounts due the Debtors have been received.

8.4 **Estimated Claims**. To the extent that any Claim is estimated for any purposes other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

8.5 **No Interest**. Except as to the SBN Claim and its treatment as set forth in the SBN Settlement or as expressly stated in this Plan or otherwise allowed by Final Order of the Bankruptcy Court, no Holder of an Allowed Claim will be entitled to the accrual of Post-Petition Date interest or the payment of Post-Petition Date interest penalties, or late charges on account of such Claim for any purpose.

8.6 **Modification of Payment Terms.** With the consent of the Holder of any such Allowed Claim, to the extent provided in Section 1123(a)(4) of the Bankruptcy Code, the Reorganized Debtors may modify the treatment of any Allowed Claim at any time after the Effective Date.

8.7 **Security Deposits.** To the extent the Debtors have posted security deposits (with landlords, utilities or otherwise) which are less than the indebtedness secured thereby, those amounts may be set off against Allowed Secured Claims upon the written consent of the Reorganized Debtors or upon entry of a Final Order authorizing such offset. To the extent the Debtors have posted security deposits (with landlords, utilities or otherwise) which are greater than the indebtedness secured thereby, all amounts in excess of the indebtedness shall be remitted to the Reorganized Debtors promptly after the Effective Date and shall not be offset against any Claim.

**8.8** **Delivery of Distributions**. All distributions under this Plan shall be made by the Reorganized Debtors as set forth in this Plan. Subject to Bankruptcy Rule 9010, unless otherwise provided in this Plan, all distributions to any Holder of an Allowed Claim by the Reorganized Debtors will be made to the Holder of each Allowed Claim at the address of such Holder as listed in the Schedules, or on the books and records of the Debtors unless the Reorganized Debtors have been notified in advance in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such Holder that provides an address for such Holder different from the address reflected in the Schedules or in the Debtors' books and records. In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder will be made unless and until the Reorganized Debtors have been notified of the then-current address of such Holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such Holder without interest; provided, however, that, such undeliverable distributions will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date of distribution, and any Claim of any Holder in or to such property shall be discharged and forever barred. Nothing herein shall require or be construed to require the Reorganized Debtors to locate any Holder of any Allowed Claim. Rather, it is the duty of each Holder of any Allowed Claim to keep the Reorganized Debtors apprised of its current mailing address. The Reorganized Debtors will have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Schedules and the books and records maintained by Debtors (including any proofs of claim filed against the Debtors).

**8.9**  **Manner of Payment**. At the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or, at the option of the Reorganized Debtors, by wire transfer.

**8.10**  **Withholding and Reporting Requirements**. In connection with this Plan and all instruments issued in connection therewith and distributed thereunder, the Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

**8.11**  **Time Bar to Cash Payments.** Checks issued by the Reorganized Debtors in accordance with this Plan in respect of Allowed Claims other than SBN's Allowed Claim shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtors by the Holder of the Allowed Claim to whom such check was originally issued. Any such request in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors for the benefit of the Holders of other Claims and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Reorganized Debtors.

**8.12**  **Minimum Distributions**. No payment of Cash in an amount less than $100 shall be made by the Reorganized Debtors.  Any Cash that cannot be distributed in accordance with this Section 8.12 shall automatically vest in the Reorganized Debtors for the benefit of the Holders of other Claims.

{00368042-2}

**8.13** **Setoffs and Recoupment.** The Reorganized Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Claims of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim the Debtors may have against the Holder of such Claim. In addition, this Plan shall not adversely affect the right of recoupment by creditors against the Debtors except for SeaTran and Iberia Marine Service, LLC.

**8.14** **Allocation of Plan Distribution Between Principal and Interest**. Except as to the Allowed Claim of SBN which shall be governed by the SBN Settlement, all distributions in respect of any Allowed Claim made by the Reorganized Debtors shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## ARTICLE IX.
## PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN

**9.1** **Objections to Claims.** Except insofar as a Claim is Allowed under this Plan, the Reorganized Debtors shall be entitled to and shall have sole discretion to object to any Claim asserted against the Debtors, and the Reorganized Debtors reserve the right to file any objection to any Claim on or before one hundred eighty (180) days after the Effective Date, and such time period can be extended for cause upon request and approval by the Bankruptcy Court. For the avoidance of doubt, the Debtors, and the Reorganized Debtors after the Effective Date, specifically reserve and retain sole discretion to object to the validity, nature and amount of any

{00368042-2}

Claim, as well as the extent, validity and priority of any alleged security interests asserted in connection with any Secured Claims asserted against the Debtors.

        **9.2**    **No Distributions Pending Allowance**. Notwithstanding any other provision of this Plan, if any portion of an Administrative Expense Claim or a Claim is Disputed, at the option of the Reorganized Debtors, no payment or distribution provided in this Plan shall be made on account of such Administrative Expense Claim or Claim unless and until such Disputed Administrative Expense Claim or Claim is resolved and becomes Allowed.

        **9.3**    **Estimation of Claims**. The Reorganized Debtors may request at any time that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

**ARTICLE X.**
**PROVISIONS GOVERNING EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES**

{00368042-2}

**10.1** **Assumption or Rejection of Executory Contracts.** The Bankruptcy Code empowers the Debtors to assume or reject their executory contracts and unexpired leases. The executory contracts existing between the Debtors and Sea Tran Marine, L.L.C. and Iberia Marine Service, LLC, including, without limitation, the Vessel Operating Agreement, will be rejected. In accordance with the SBN Settlement a new agreement may be entered into between the Debtors and Sea Tran Marine, L.L.C. and Iberia Marine Service, LLC. The agreement shall be subject to the consent of SBN. Any claims possessed by Sea Tran Marine, L.L.C. or Iberia Marine Service, LLC incident to the rejection of their respective contracts with the Debtors shall be subordinate to the payments set forth in this Plan and shall not be paid until the amounts due SBN under the SBN Settlement are paid in full. All executory contracts and unexpired leases that existed between the Debtors and any non-Insider Person or entity will be deemed to be accepted by the Debtors as of the Petition Date, except for any executory contract or unexpired lease that has previously been rejected pursuant to an order of the Bankruptcy Court, is rejected in this Plan, or is listed on Schedule 10.1 to this Plan. For the avoidance of doubt, the Debtors specifically reserve the right to amend Schedule 10.1 of this Plan at any time prior to the Confirmation Date. In the event that the Debtors, pursuant to this Section 10.1, add any executory contract or unexpired lease to Schedule 10.1 prior to the Confirmation Date, the Debtors shall provide written notice to all counterparties to such executory contract or unexpired lease and include therein the amount of any associated Cure Amount Claim, if any. For the avoidance of doubt, listing a contract or lease on Schedule 10.1 will not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code or that the Debtors have any liability thereunder.

{00368042-2}

**10.2    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.** Entry of the Order approving the Disclosure Statement will constitute the approval, pursuant to Sections 365(a) and 1123(b2) of the Bankruptcy Code, of the assumption or rejection, as applicable, of the executory contracts and unexpired leases assumed and rejected, as applicable, pursuant to the foregoing Section.

**10.3    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan.** Any Rejection Claim must be filed with the Bankruptcy Court and served upon the attorneys for the Debtors on or before the Rejection Claim Bar Date. In the event that the rejection of an executory contract or unexpired lease by the Debtors or the Reorganized Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely-filed Rejection Claim, will be forever barred and will not be enforceable against the Debtors, the Bankruptcy Estates or the Reorganized Debtors.

**10.4    Payments Related to Cure Amount Claims and Deadline to Object to or Assert any Cure Amount Claim.**

**10.4.1    Payment of Cure Amount Claims.** With respect to any executory contract or unexpired lease to be assumed pursuant to this Plan, Schedule 10.1 of this Plan further provides the Debtors' proposed Cure Amount Claim, if any, associated with each such executory contract and unexpired lease. Cure Amount Claims will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtors, (1) by payment of the Cure Amount Claim in Cash on the Effective Date or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. To the extent that any counterparty to an executory contract or unexpired lease to be assumed by the Debtors pursuant to this Plan

{00368042-2}

disputes the asserted amount of the Cure Amount Claim or asserts any other dispute regarding the proposed assumption, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**10.4.2 <u>Objections to Cure Amount Claims</u>.** Assumption of any executory contract or unexpired lease set forth on <u>Schedule 10.1</u> of this Plan, together with the associated Cure Amount Claim set forth thereon, will be deemed effective as of the Effective Date unless the other party (or parties) to such executory contract or unexpired lease files in the Bankruptcy Cases and serves on the Debtors not later than five (5) days prior to the Confirmation Date an objection to (1) the amount of any Cure Amount Claim as set forth on <u>Schedule 10.1</u>; (2) the ability of the Debtors "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption of such executory contract or unexpired lease.

## ARTICLE XI.
## <u>CONDITIONS PRECEDENT TO EFFECTIVE DATE</u>

**11.1 <u>Condition Precedent to Effectiveness</u>.** The Effective Date will not occur and this Plan will not become effective unless and until (a) the Confirmation Order shall have been entered and shall have become a Final Order and (b) approval of the terms of the Plan and the order confirming the Plan by SBN.

**11.2 <u>Waiver of Condition Precedent</u>.** The conditions precedent of this Plan may be waived, in whole or in part, by the Debtors with the written consent of SBN. Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

**11.3** **Satisfaction of Condition Precedent**. Any actions required to be taken on the Effective Date will take place and will be deemed to have occurred simultaneously, and no such action will be deemed to have occurred prior to the taking of any other such action. In the event that the condition precedent specified has not occurred or otherwise been waived, (I) the Confirmation Order will be vacated, (ii) the Debtors and all Holders of Claims and Existing Equity Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtors' obligations with respect to Claims and Existing Equity Interests will remain unchanged and nothing contained in this Plan will constitute or be deemed a waiver or release of any Claim or Existing Equity Interest by or against the Debtors or any other Person to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## ARTICLE XII.
## EFFECT OF CONFIRMATION

**12.1** **Binding Effect.** Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan will bind any Holder of a Claim against, or Existing Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Existing Equity Interests of such Holder is Impaired under this Plan and whether or not such Holder is entitled to distribution under this Plan.

**12.2** **Discharge of Claims**. The confirmation of this Plan does not discharge the Debtors from any existing Debts and Claims asserted against the Debtors that arose at any time prior to the Effective Date, as provided by Section 1141(d)(3)(A) of the Bankruptcy Code.

**12.3** **Release and Exculpation.**

{00368042-2}

EACH OF THE DEBTORS AND EACH HOLDER OF A CLAIM OR INTEREST WHO ~~(I) ACCEPTS A DISTRIBUTION UNDER THIS PLAN, (II)~~AFFIRMATIVELY VOTES ~~TO ACCEPT OR IS DEEMED TO ACCEPT THIS PLAN, OR (III) DOES NOT TIMELY SUBMIT ITS BALLOT VOTING ON THIS PLAN,~~IN FAVOR OF THE PLAN SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE CONCLUSIVELY DEEMED FOR ALL PURPOSES TO HAVE FOREVER WAIVED ANY AND ALL CAUSES OF ACTION, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, LOSSES, OR LIABILITIES WHATSOEVER, AGAINST ALL COVERED PARTIES (AS DEFINED IN THE PLAN) ARISING PRIOR TO THE EFFECTIVE DATE, AND RELEASE ALL COVERED PARTIES FROM ALL CAUSES OF ACTION, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, LOSSES, OR LIABILITIES WHATSOEVER ARISING PRIOR TO THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, ALL CAUSES OF ACTION ARISING IN CONNECTION WITH OR RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE (A) OPERATIONS OF THE DEBTORS PRIOR TO AND DURING THE CASES, (B) BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY HOLDER OF A CLAIM OR INTEREST WHO ~~(I) ACCEPTS A DISTRIBUTION UNDER THIS PLAN, (II) VOTES TO ACCEPT OR IS DEEMED TO ACCEPT THIS PLAN, OR (III) DOES NOT TIMELY SUBMIT ITS BALLOT VOTING ON THIS~~AFFIRMATIVELY VOTES IN FAVOR OF THE PLAN AND ANY COVERED PARTIES, (C) SUBJECT MATTER OF OR THE TRANSACTIONS OR EVENTS GIVING RISE TO ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, (D) PURSUIT OF CONFIRMATION OF THIS PLAN, (E) CONSUMMATION OF THIS PLAN, (F) ADMINISTRATION OF THIS PLAN, (F)

{00368042-2}

PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, OR (G) TRANSACTIONS CONTEMPLATED BY THIS PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EXCEPT AS TO OBLIGATIONS EXPRESSLY PROVIDED IN OR RESERVED BY THIS PLAN OR THE CONFIRMATION ORDER. ON THE EFFECTIVE DATE, ANY AND ALL CAUSES OF ACTION OF EACH OF THE DEBTORS AND EACH HOLDER OF A CLAIM OR INTEREST WHO ~~(I) ACCEPTS A DISTRIBUTION UNDER THIS PLAN, (II) VOTES TO ACCEPT THIS PLAN, OR (III) DOES NOT TIMELY SUBMIT ITS BALLOT VOTING ON THIS~~AFFIIRMATIVELY VOTES IN FAVOR OF THE PLAN AGAINST ANY OF THE COVERED PARTIES SHALL AUTOMATICALLY AND IMMEDIATELY BE FULLY AND FINALLY WAIVED, RELEASED, AND DISCHARGED FOR ALL PURPOSES.

NONE OF THE COVERED PARTIES SHALL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY OF THE DEBTORS OR ANY HOLDER OF A CLAIM OR INTEREST ~~OR ANY OTHER PARTY~~THAT AFFIRMATIVELY VOTES IN ~~INTEREST IN~~FAVOR OF THE ~~CASES~~PLAN, OR ANY OF THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, AGENTS, REPRESENTATIVES, ATTORNEYS, ADVISORS OR OTHER PROFESSIONAL REPRESENTATIVES, OR ANY OF THEIR SUCCESSORS, HEIRS, OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF (I) THE CASES, (II) ANY ACT TAKEN OR OMITTED TO BE TAKEN ON OR AFTER THE PETITION DATE IN CONNECTION WITH THE CASES, OR (III) THE DISCLOSURE STATEMENT, THIS PLAN, OR THE DOCUMENTS AND ACTIONS NECESSARY TO PERFORM THIS PLAN, EXCEPT FOR OBLIGATIONS OF ANY OF THE

{00368042-2}

COVERED PARTIES EXPRESSLY ARISING UNDER OR IN ACCORDANCE WITH THIS PLAN AND CONFIRMATION ORDER, AND EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; AND EACH OF THE COVERED PARTIES SHALL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THIS PLAN AND CONFIRMATION ORDER.

FOR AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THIS SECTION SHALL NOT APPLY TO SBN OR SBN'S CLAIM.

FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, NO INSIDER PARTY OR DIRECTOR OR OFFICER OF THE DEBTORS SHALL (I) BE CONSIDERED A "COVERED PARTY," OR (II) RELEASED FROM ANY OF THE DEBTORS OR ANY OTHER PARTY IN CONNECTION WITH THIS PLAN.

Notwithstanding the foregoing, no Covered Party shall receive a release or exculpation in excess of that allowed under applicable Bankruptcy Law

**12.4** **Plan Exclusive Remedy/Suit Limitation**. Notwithstanding anything contained herein to the contrary, neither the Debtors, the Reorganized Debtors, the Officers nor the Guarantors shall be discharged and released from any liability for Claims under the Plan.

Notwithstanding anything contained herein to the contrary, neither the Debtors, Reorganized Debtors, the Officers nor Guarantors shall be discharged and released from any liability for Claims under the Plan. Each Creditor other than SBN which possesses a guaranty of a Claim against the Debtors (a "Guaranty") to the extent that such Creditor is being paid in full (including any Guaranty Claims possessed by such Creditor) under the Plan is enjoined from

{00368042-2}

filing suit against any of the guarantors or sureties of such Claim (each, a "Guarantor") absent: 1) the Plan being in default with respect to such Creditor; or 2) so long as the Debtors' Bankruptcy Cases remain open, an order of the Bankruptcy Court is entered authorizing the Creditor to proceed against any or all of the Guarantors; provided, however, that notwithstanding any term or provision in this Plan, any Guaranty shall continue to be in full force and effect and any Guarantor that is liable to any Creditor pursuant to any Guaranty shall be liable to such Creditor for the Debtors' obligations to such Creditor under this Plan pursuant to the terms and conditions of the Guaranty; and provided further that this injunction shall not apply to SBN or the Lender Claim.

To the extent a creditor whose claim will be time barred as a result of the stay contained in the Plan, the Debtors shall execute a new note or other document to toll the running or extend the applicable statute of limitations. The cost of the documentation for creditors other than SBN shall be the sole cost of the creditor and the terms and conditions contained in such documentation shall not alter or change the terms of this Plan.

**12.5    Remedies Upon Plan Default.**  To the extent a default occurs under the Plan, creditors will be able to exercise whatever rights and remedies they possess under applicable Bankruptcy and Non-Bankruptcy Law.

**12.6    Injunction or Stay**. Except as otherwise expressly provided in this Plan, which includes the SBN Settlement, or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against the Debtors will be permanently enjoined, from and after the Effective Date, from (I) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Reorganized Debtors; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or

{00368042-2}

order against any Reorganized Debtors with respect to such Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtors or against the property or interests in property of any Reorganized Debtors with respect to such Claim; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Reorganized Debtors or against the property or interests in property of any Reorganized Debtors with respect to such Claim; and (v) pursuing any Claim released pursuant to this Plan. SBN may exercise all remedies, rights and interests as set forth in the SBN Settlement without regard to this section of the Plan.

## ARTICLE XIII.
## GENERAL PROVISIONS

**13.1** **Tax Reporting Requirements**. Each Holder of an Allowed Claim that is to receive a distribution under this Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

**13.2** **No Transfer Tax**. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust or other security interest, the assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer in anticipation of or in connection with this Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**13.3** **Expedited Tax Determination**. The Reorganized Debtors are authorized under this Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy

Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

**14.1** **Headings; Descriptions**. The foregoing descriptions are for informational purposes only and are not an admission by, nor prejudice the rights of, the Debtors and/or the Reorganized Debtors in all respects. Moreover, the descriptions contained herein and in any schedule provided in connection with this Plan are not exclusive. The inclusion or exclusion of any actions herein or on any such schedule is in no way a waiver of any Claim or cause of action whatsoever and all such Claims or causes of action are reserved and preserved. As of the date hereof, no determination has been made as to whether to pursue any such potential Claims or Causes of Action.

**14.2** **Inconsistent Terms; Controlling Document**. In the event of an inconsistency between the terms of the Confirmation Order or this Plan with the Disclosure Statement, or the SBN Settlement or any other agreement entered into between or among the Debtors and any third party, the SBN Settlement shall control this Plan, and this Plan shall control the Disclosure Statement.

**14.3** **Modification of Plan**. Amendments or modifications of or to this Plan may be proposed in writing by the Debtors, with the written consent of the Plan Sponsor and SBN, at any time prior to the Confirmation Date, provided that this Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with Section 1125 of the Bankruptcy Code. This Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided: (i) this Plan, as altered, amended or modified, satisfies the requirements of Sections

{00368042-2}

1122 and 1123 of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and a hearing, confirms this Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such alterations, amendments or modifications. A Holder of a Claim that has accepted this Plan will be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

Prior to the Effective Date, the Debtors, with the consent of the Plan Sponsor and SBN, may make appropriate technical adjustments and modifications to this Plan, provided that such technical adjustments and modifications are allowable under the Bankruptcy Code and Rules, without obtaining Bankruptcy Court approval and provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Existing Equity Interests.

**14.4** **Revocation, Withdrawal, Amendment or Supplementation of the Plan**. The Debtors, with the consent of the Plan Sponsor and SBN, reserve the right to revoke, withdraw, amend and/or supplement this Plan, in whole or in part, prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan in whole prior to the Confirmation Date, then this Plan will be deemed null and void. If the Debtors, with the consent of the Plan Sponsor and SBN, amend and/or supplement this Plan prior to the Confirmation Date, then this Plan shall be subject to such amendment or supplementation, as applicable.

**14.5** **Severability of Plan Provisions**. In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the

original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

**14.6** **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana without giving effect to its principles of conflict of laws.

**14.7** **Exhibits/Schedules**. All exhibits and schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**14.8** **Notices**. All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by electronic mail transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail transmission, when received and confirmed by return electronic mail transmission, addressed as follows:

If to the Debtors, addressed to:

Mr. Steven, L.L.C., et al.
c/o Steven J. Miguez, Manager
107 Hwy 90 West
New Iberia, LA 70560

with a copy to:

Douglas S. Draper, Esq.

41

Heller, Draper, Patrick, Horn & Manthey, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130

If to the Plan Sponsor, addressed to:

Mr. Steven J. Miguez
107 Hwy 90 West
New Iberia, LA 70560

with a copy to:

Stewart Peck, Esq.
Lugenbuhl, Wheaton, Peck, Rankin
 & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130

## ARTICLE XV.
## JURISDICTION OF BANKRUPTCY COURT

**15.1 Jurisdiction of Bankruptcy Court**. Subsequent to Confirmation of this Plan (including after the Bankruptcy Cases have been closed), the Court shall retain jurisdiction of all matters arising out of or related to the Bankruptcy Cases and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, the following purposes:

(a) To determine any and all objections to and proceedings involving the allowance, estimation, classification, priority, payment or subordination of Claims or Existing Equity Interests;

(b) To determine any and all applications or motion for allowances of compensation and reimbursement of necessary expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(c) To determine any and all application or motions pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case maybe, of executory contracts or unexpired leases to which a Debtor is a

42

party or which a Debtor may be liable, and to hear and determine, and if need be, liquidate, any and all Claims arising therefrom including the determination of defaults required to be cured;

(d)  To hear and determine any timely objections to, or requests for estimation of, disputed Claims, in whole or in part;

(e)  To determine any and all applications, adversary proceedings and contested or litigated matters initiated or asserted by the Debtors on or prior to the Effective Date and initiated or asserted by the Reorganized Debtors subsequent to the Effective Date and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Bankruptcy Cases, including but not limited to, (i) Causes of Action to avoid or recover transfers of the Debtors' property, including, but not limited to, all Avoidance Actions and actions pursuant to applicable state law, (ii) all Claims and Causes of Action arising from pre-petition activities of the Debtors, whether arising by statute or common law, whether arising under the laws of the United States, Louisiana or any other state having jurisdiction over any claim or controversy, and whether maintainable against third parties, affiliates or insiders of the Debtors, (iii) Claims, Causes of Action and other litigation that may adversely impact or affect the Post-Confirmation Debtors' Property;

(f)  To issue orders, determinations and rulings regarding the valuation, recovery, disposition, distribution, operation or use of the Debtors' property, including claims to recover preferences, fraudulent conveyances or damages of any type from any person and whether initiated before or after the Effective Date;

(g)  To consider any modifications to this Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

43

(h)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, implementation or consummation of this Plan or any Person's obligation and responsibilities thereunder, including, but not limited to, the failure to pay timely any and all Allowed Claims as provided in this Plan;

(i)     To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtors or the Reorganized Debtors;

(j)     To stay, revoke, modify or vacate the Confirmation Order on account of a default under the terms of this Plan or the Confirmation Order, including, but not limited to, the failure to pay timely any and all Allowed Claims as provided in this Plan;

(k)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is stayed, revoked, modified or vacated, including, but not limited to entering and implementing orders revoking or nullifying any rights, remedies or security interests granted under this Plan or the Confirmation Order;

(l)     To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under this Plan, the Confirmation Order or the Bankruptcy Code;

(m)     To enforce the automatic stay and to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person or entity with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(n)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order; to issue such orders in aid of execution of this Plan to the extent authorized by 11 U.S.C. § 1142;

44

(o)     To consider any amendments to or modifications of this Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(p)     To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(q)     To recover all assets of the Debtors and property of the Bankruptcy Estates, wherever located;

(r)     To determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, 546 and 1146 of the Bankruptcy Code;

(s)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(t)     To enter a final decree closing the Bankruptcy Cases.

**WHEREFORE**, the Debtors hereby request confirmation of this Joint Chapter 11 Amended Plan of Reorganization of the Debtors **pursuant to 11 U.S.C. § 1129**.

Dated: ~~April 1~~May 14, 2019

> Iberia Crewboat and Marine Services, L.L.C.
>
> */s/ Steven J. Miguez*
> By:  Steven J. Miguez
> On Behalf of Mr. Steven, L.L.C., Lady Eve, L.L.C.,
> Lady Brandi L.L.C., Lady Glenda LLC,
> Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC,
> and Mr. Row LLC

45

Douglas S. Draper, La Bar No. 5073
Leslie A. Collins, La Bar No. 14891
Greta M. Brouphy, La Bar No. 26216
Heller, Draper, Patrick, Horn & Manthey, LLC
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: (504) 299-3300
Fax: (504) 299-3399
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: gbrouphy@helldraper.com
*Attorneys for Debtors*

**Schedule 5.5**

**Nonexclusive List of Retained Causes of Action, Including Avoidance Actions, Against the Parties and In the Approximate Amounts As More Particularly Set Forth Herein, But Only to the Extent that the Aggregate Value of All Property That Constitutes or Is Affected by Such Transfer to a Particular Transferee Is Greater Than $6,425.00**

Below is a nonexclusive list of parties (collectively, the "Potential Parties") against whom the Reorganized Debtors may assert Causes of action. The failure to include an entity in this Schedule 5.5 or Exhibit "A" hereto shall not constitute a release of such entity and shall not indicate that Causes of Action against such entity have not been retained. Failure to attribute any specific Causes of Action to a particular entity in this Schedule 5.5 or Exhibit "A" hereto shall not, under any circumstances, be interpreted to mean that such Cause of Action is not retained against such entity. All possible Causes of Action, including Causes of Action not listed below, are specifically reserved and retained against all entities not expressly released pursuant to the Plan, the Confirmation Order, or a Final Order of the Bankruptcy Court.

In the event of any apparent inconsistency between the releases pursuant to the Plan, the Confirmation Order, or a Final Order of the Bankruptcy Court on the one hand, and the attached list on the other hand, such terms of this Plan, the Confirmation Order, or a Final Order of the Bankruptcy Court, as applicable, shall govern.

Subject to the foregoing, the Debtors and Reorganized Debtors retain all Claims and Causes of Action of any kind whatsoever against all Potential Parties. For avoidance of doubt, entities not listed on the attached list are not released and the Debtors and Reorganized Debtors, expressly retain all Claims and Causes of Action of any kind whatsoever against all such entities, including, without limitation, the following:

1. **Any and all Avoidance Actions against the Potential Parties and in the approximate amounts set forth in Exhibit "A" to this Schedule 5.5, but only to the extent that the aggregate value of all property that constitutes or is affected by such transfer to a particular transferee is greater than $6,425.00. Exhibit "A" to this Schedule 5.5 lists all payments made by the Debtors on or within ninety (90) days before the Petition Date, or between ninety (90) days and one (1) year before the Petition Date if such Creditors at the time of such transfer was an Insider.**

2. **To be supplemented in connection with the filing of the Plan Supplement, which Plan Supplement shall be filed not less than thirty (30) days prior to the Confirmation Hearing.**

**Schedule 5.5 – Exhibit A**

**To be provided**

{00368042-2}

**Schedule 10.1**

**List of Executory Contracts and Unexpired Leases to be Assumed by the Debtors**

      In connection with filing the Plan Supplement, which Plan Supplement shall be filed not less than thirty (30) days prior to the Confirmation Hearing, the Debtors shall file a list of the executory contracts and leases that they wish to assume.

{00368042-2}