UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
CHIEF JUDGE JOHN KOLWE



IN RE: Mr. Steven, LLC, et al        CASE NO.: 18-51277

---

## EXHIBIT RECORD

Date: May 21, 2019

Matter: Confirmation Hearing

| Exhibit No. | Description |
| --- | --- |
| Db #1 | Declaration by Steven Miguez |
| Judicial Notice | Doc. # 229 Ch 11 Ballots Tabulation |
| | |
| | |
| | |
| | |

Notes:

ECRO: _[signature]_

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-51277 |
| MR. STEVEN, L.L.C., et al[1] | § § | CHAPTER 11 |
| Debtor. | § § § | JUDGE JOHN W. KOLWE |

## NOTICE OF SUBMISSION INTO EVIDENCE
## DECLARATION OF STEVEN MIGUEZ

**NOW INTO COURT**, now into Court through undersigned counsel comes the Debtors who submit the affidavit of Steven Miguez ("<u>Affiant</u>") managing member of the sole member of Mr. Steven, L.L.C.,[1] Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC, as debtors and debtors-in-possession (referred to herein as "<u>Debtor</u>" or collectively, the "<u>Debtors</u>") in support of the *Joint Chapter 11 Amended Plan of Reorganization of the Debtors* (R. Doc. 190) together with the *Ex Parte Motion to Deem Plan Modifications to the Joint Chapter 11 Amended Plan of Reorganization of the Debtors as Immaterial Modifications* ( R. Doc. 227 (collectively, the "<u>Plan</u>"), and respectfully renders notice to this Court that at the confirmation hearing for the Plan, there will be introduced into evidence the original signed Declaration of Steven Miguez in substantially the same form as <u>Exhibit A</u> attached hereto in support of the confirmation of the Plan.

---

[1] Pursuant to this Court's December 21, 2018 Order, the Debtor's case has been procedurally consolidated and is being jointly administered with the following affiliated Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi, L.L.C. (18-51517), Lady Glenda, L.L.C. (18-51518), Mr. Blake, L.L.C. (18-51519), Mr. Mason, L.L.C. (18-51521), Mr. Ridge, L.L.C. (18-51522), and Mr. Row, L.L.C. (18-51523) (collectively, the "<u>Debtors</u>"). [ECF Doc. 109].

{00368194-3}



Respectfully submitted,

*/s/ Douglas S. Draper*
Douglas S. Draper (La. Bar No. 5073)
Leslie A. Collins (La Bar No. 14891)
Greta M. Brouphy (La Bar No. 26216)
**Heller, Draper, Patrick, Horn
& Manthey, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Tel: (504) 299-3300/Fax: (504) 299-3399
E-mail: ddraper@hellerdraper.com

***Counsel for the Debtors***

"EXHIBIT A"

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-51277 |
| | § | |
| MR. STEVEN, L.L.C., et al[2] | § | CHAPTER 11 |
| | § | |
| Debtor. | § | JUDGE JOHN W. KOLWE |
| | § | |

## DECLARATION OF STEVEN MIGUEZ

Steven Miguez ("Affiant") managing member of the sole member of Mr. Steven, L.L.C.,[1] Lady Eve, L.L.C., Lady Brandi L.L.C., Lady Glenda LLC, Mr. Blake LLC, Mr. Mason LLC, Mr. Ridge LLC, and Mr. Row LLC, as debtors and debtors-in-possession (referred to herein as "Debtor" or collectively, the "Debtors") in support of the *Joint Chapter 11 Amended Plan of Reorganization of the Debtors* (R. Doc. 190) together with the *Ex Parte Motion to Deem Plan Modifications to the Joint Chapter 11 Amended Plan of Reorganization of the Debtors as Immaterial Modifications* [R. Doc. 227] (collectively, the "Plan") hereby submits the following declaration in support of the confirmation of the Plan.

1. My name is Steven Miguez managing member of the sole member of the Debtors.

2. I have been involved in aspects of the bankruptcy proceedings for the Debtors which include the economic terms and conditions of the Plan.

---

2 Pursuant to this Court's December 21, 2018 Order, the Debtor's case has been procedurally consolidated and is being jointly administered with the following affiliated Debtors: Lady Eve, L.L.C. (18-51488), Lady Brandi, L.L.C. (18-51517), Lady Glenda, L.L.C. (18-51518), Mr. Blake, L.L.C. (18-51519), Mr. Mason, L.L.C. (18-51521), Mr. Ridge, L.L.C. (18-51522), and Mr. Row, L.L.C. (18-51523) (collectively, the "Debtors"). [ECF Doc. 109].

3. I have been personally involved in the efforts to develop and implement a plan of reorganization for the distribution of funds to satisfy the prepetition claims against the Debtors. As such, I am familiar with and knowledgeable about *Joint Amended Disclosure Statement to Accompany the Joint Chapter 11 Amended Plan of Reorganization of the Debtors* (R. Doc. 218) (the "Disclosure Statement"), and the *Order and Notice Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of Plan, Fixing Date for Confirmation Hearing, and Requiring Tabulation of Voting* [Dkt. #204].

4. I am familiar with and knowledgeable about the Plan. All undefined terms herein take on the meaning as ascribed in Article I – *Definitions and Rules of Construction* ("Article I") in the Plan.

5. This Declaration is offered in support of confirmation of the Plan. As indicated, it is based on my knowledge of the relevant facts and my understanding of the sections ("Section(s)") of the Title 11 of the United States Code, 11 U.S.C. §§ 102 *et seq.* (the "Bankruptcy Code"). This Declaration is offered in lieu of my testimony pursuant to Federal Rule of Bankruptcy Procedure 9017 (providing that the Federal Rules of Evidence and Rules 43, 44, and 44.1 of the Federal Rules of Civil Procedure apply in cases under the Bankruptcy Code.)

**SBN Settlement Agreement and Debtors' Funds**

6. The foundation of the Plan is the agreement by and among the Debtors, the Plan Sponsor, Iberia Crewboat & Marine Services, LLC, Iberia Marine Service, LLC, SeaTran Marine, L.L.C. and SBN all as reflected in the SBN Settlement.

7. The Debtors are seeking approval of the SBN Settlement in all respects by confirmation of the Plan.

8. The Debtors and the guarantors of the SBN debt since the confection of the settlement with SBN have paid to SBN $8,500,000.00 from the sale of the M/V Mr. Steven with an additional $1,000,000.00 paid by the Affiant; $1,309,909.00 from the funds held in the Rushing and Guice Trust account; $4,500,000.00 from the CCF Funds held by Iberia Crewboat & Marine Services, LLC and the Affiant; plus two adequate protection payments of $70,000.00. At present, assuming that the Debtors meet all payments due under the SBN Settlement, the amount owed to SBN is $4,084,872.00. Debtors expect additional funds will be paid to SBN from the presale use of the M/V Mr. Steven which will further reduce the amounts owed SBN. If the payments under the Plan and Settlement with SBN are not made the discounts will be lost and the amount owed to SBN will be increased.

9. The Debtors will have sufficient funds between funds currently in the DIP accounts and amounts owed to the Debtors by SeaTran Marine, L.L.C. for post petition usage that will be sufficient to pay all claims of creditors (other than SBN) in full shortly after the Effective Date of the Plan.

## Compliance with Section 1129 and Other Applicable Sections of Title 11

10. It is my understanding that Section 1129 requires that a court shall confirm a plan only if the plan complies with the applicable Sections of the Bankruptcy Code and the requirements as delineated in Section 1129. I am submitting this Declaration supporting the assertion that the Plan is in compliance with the applicable Sections of the Bankruptcy Code, Federal Rules of Procedure and the requirements of Section 1129 based on the following:

    A. <u>Compliance With 11 U.S.C. § 1122 (Classification of Claims or Interests)</u>. It is my understanding that Section 1122 requires a plan to place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest in such class. Pursuant to the following Plan Articles, each class of claims or interest consists of claims or interests that are substantially similar. The Plan classifies claims and interests in Article III – *Classification of*

*Claims and Existing Equity Interests* ("Article III") and Article IV – *General Provisions of the Plan, Provisions for Altering the Rights of Creditors and Specifications of the Treatment of Each Class* ("Article IV").

B. Section 1123 (Contents of Plan). It is my understanding that Section 1123 of the Bankruptcy Code sets forth the mandatory and permissive contents of a plan.

   1. Compliance With 11 U.S.C. § 1123(a) (Mandatory Plan Provisions). As discussed below, the Affiant asserts that the Plan is in compliance with the mandatory plan provisions of Section 1123(a) and should be confirmed.

      a. It is my understanding that Section 1123(a)(1) requires that a plan, subject to Section 1122 (as discussed herein), designate classes of claims, other than claims of a kind specified in Section 507(a)(2), 507(a)(3), or 507(a)(8) and classes of interests. Pursuant to the following Plan Articles, each class of claims or interest consists of claims or interests that are substantially similar. The Plan classifies claims and interests in Article II and Article III. The classes do not contain claims of a kind specified in Section 507(a)(2) (Federal Reserve Act claims), 507(a)(3) (involuntary filing gap claims), or 507(a)(8) (governmental unit tax claims). The Plan does identify unclassified claims for Section 1930 fees, professionals, and non-tax liabilities incurred in the ordinary course of business in Article II – *Provisions for Payment of Administrative Expense and Priority Claims* ("Article II")

      The Plan does identify unclassified Administrative Expense Claim as a right to payment in accordance with Section 330 (compensation for employed professionals) Section 503(b) (actual and necessary costs of preserving the estates) Section 507(a)(2) (administrative expenses allowed under 503(b)) and Section 507(b) (obligations incurred or assumed by the Debtors. Article II also address timely payment of amounts due the Office of the United States Trustee as required by 28 U.S.C. § 1930. Article II provides for Allowed Priority Claims for claims other than under Section 507(a)(8); however, the Debtors contend there are no Allowed Priority Claims. See Article II, Secs. 2.1 and 2.2.

      To the extent there are Priority Claims under Section 507(a)(8) the holder of such claim will be paid on the Effective Date. See Article II, Sec. 2.2.2.

      The classes as indicated in Article III and Article IV include the following: **Class 1** (Administrative Expense Claims); **Class 2** (Priority Claims); **Class 3** (Lender Claim); **Class 4** (Unsecured

Creditors identified as unsecured creditors of 4(a) Mr. Steven, L.L.C., 4(b) Lady Eve, L.L.C., 4(c) Lady Brandi L.L.C., 4(d) Lady Glenda LLC, 4€ Mr. Blake LLC, 4(f) Mr. Mason LLC, 4(g) Mr. Ridge LLC, 4(h) Mr. Row LLC; and **Class 5** (Existing Equity Interests).

b. It is my understanding that Section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." Article IV indicates that Class 1 is unimpaired and is not entitled to vote to accept or reject the Plan. Article VII – *Provisions Governing/Voting and Distributions* ("Article VII") of the Plan delineates the voting classes entitled to vote to accept or reject the Plan as holders of a claim in Class 2 and Class 4.

c. It is my understanding that Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." Article IV of the Plan specifies whether each identified class of claims or interests are not impaired or impaired and includes the treatment and distribution to each holder of an allowed claim for the classes of creditors set forth in the Plan.

d. It is my understanding that Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Pursuant to the provisions of Article IV of the Plan, the holders of claims or interests within each class are receiving identical treatment.

e. It is my understanding that Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation," and sets forth several examples of adequate means such as (A) retention by the debtor of all or any part of the property of the estate; (B) transfer of all or any part of the property of the estate to one or more entities whether organized before or after the confirmation of such plan; (C) merger or consolidation of the debtor with one or more persons; (D) sale of all or any part of the property of the estate; (E) satisfaction or modification any lien; (F) cancellation or modification of any indenture or similar instrument; (G) curing or waiving of any default; (H) extension of a maturity date or a change in an interest rate or other term of outstanding securities; (I) amendment of the debtor's charter; or (J) issuance of securities of the debtor in exchange for claims or interests.

The Affiant asserts that the means for implementing the Plan are set forth primarily in Article V – *Means for Execution and*

*Implementation of the Plan* ("Article V"). Pursuant to Article 5.1, the Debtors and the Guarantors of the Lender Claim have reached a settlement, the combination of the sale of the M/V Mr. Steven, the payment to SBN of the Guice Charter Funds, the payments by the Guarantors to SBN, the adequate protection payments and the operations of the Debtors will serve as the source of payment to SBN prior to the date the Lender Claim matures. The balloon payment will be made either from the sale of the remaining assets and/or refinancing. The SBN Settlement is incorporated into the terms of the Plan.

Payments for Administrative, Priority and Class 4 Creditors will be made from either 1) funds on hand or the amounts owed to the Debtors by Sea Tran for the post-petition use and charter of a vessel.

On the Effective Date, all property of the Bankruptcy Estates of the Debtors will vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interest other than the lien identified in the Plan in favor of SBNs, but specifically subject to the obligations of the Reorganized Debtors as provided in the Plan.

There are seven (7) principal sources of payments by which this Plan will be funded. The sources are 1) sale of the Mr. Steven; 2) monies owed by Guice Offshore with respect with the Mr. Steven bareboat charter; 3) funds owned by either Steven Miguez or Iberia Crewboat & Marine Services, L.L.C.; 4) CCF Funds; 5) Operations of the Debtors; 6) funds in the DIP Account and; 7) amounts owed to the Debtors incident to the charter of vessels owned by the Debtors other the M/V MR. STEVEN.

Except as to SBN which is fully released in the SBN Settlement, the Debtors specifically and unequivocally reserve the right to assert, after the confirmation of this Plan, any and all of the claims, rights, and Causes of Action, and all proceeds of the foregoing, including, but not limited to, those listed in Schedule 5.5, which is a non-exclusive list of Causes of Action and Potential Parties against whom the Debtors may assert Causes of Action after confirmation of this Plan.

The Reorganized Debtors shall make distributions in accordance with this Plan.

f.  It is my understanding that Section 1123(a)(6) requires that, with respect to a corporate debtor, a plan provide for the inclusion of certain provisions in the debtor's charter prohibiting the issuance of non-voting securities. The Plan does not entail the issuance of non-voting securities.

g.  It is my understanding that Section 1123(a)(7) requires that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee. Article VI – *Administration and Implementation of the Plan* ("Article VI") provides Except as otherwise provided herein, this Plan will be administered and implemented by the Reorganized Debtors, which shall be vested with full legal power, capacity and authority, and shall be directed to administer and implement this Plan.

2. Compliance With Section 1123(b) (Permissive Plan Provisions). As discussed below, the Affiant asserts that the Plan is in compliance with the applicable permissive plan provisions of Section 1123(b) and should be confirmed.

    a.  It is my understanding that Section 1123(b)(2) permits a plan of reorganization to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor . . . ." Article X – *Provisions Governing Executory Contracts and Unexpired Leases* ("Article X") provides that the executory contracts existing between the Debtors and Sea Tran Marine, L.L.C. and Iberia Marine Service, LLC, including, without limitation, the Vessel Operating Agreement, will be rejected. In accordance with the SBN Settlement a new agreement may be entered into between the Debtors and Sea Tran Marine, L.L.C. and Iberia Marine Service, LLC. The new agreement shall be subject to the consent of SBN. Any claims possessed by Sea Tran Marine, L.L.C. or Iberia Marine Service, LLC incident to the rejection of their respective contracts with the Debtors shall be subordinate to the payments set forth in this Plan and shall not be paid until the amounts due SBN under the SBN Settlement are paid in full. All executory contracts and unexpired leases that existed between the Debtors and any non-Insider Person or entity will be deemed to be rejected by the Debtors as of the Petition Date, except for any executory contract or unexpired lease that has previously been rejected pursuant to an order of the Bankruptcy Court, is rejected in this Plan, or is listed on Schedule 10.1 to the Plan.

Any rejection damage proof of claim relating to an executory contract or unexpired lease is to be filed by the Rejection Claim Bar Date (10 days after the confirmation date). Cure payments for an assumed executory contract or unexpired lease are to be on either the Effective Date or per agreement by the parties.

b. It is my understanding that Section 1123(b)(3) permits a plan of reorganization to "provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate . . . ."

The SBN Settlement comprises part of the Plan, is incorporated into the Plan, and the SBN Settlement terms control over any other provision of the Plan. The SBN Settlement is the Compromise and Settlement and Receipt and Release attached to the Plan as Exhibit 1. See also Article V.

Pursuant to Article V which provides that except as to SBN which is fully released in the SBN Settlement, the Debtors specifically and unequivocally reserve the right to assert, after the confirmation of this Plan, any and all of the claims, rights, and Causes of Action, and all proceeds of the foregoing, including, but not limited to, those listed in Schedule 5.5, which is a non-exclusive list of Causes of Action and Potential Parties against whom the Debtors may assert Causes of Action after confirmation of this Plan.

Pursuant to Article IX – *Procedures for Treating Disputed Claims Under Plan* ("Article IX"), except insofar as a Claim is Allowed under the Plan, the Reorganized Debtors shall be entitled to and shall have sole discretion to object to any Claim asserted against the Debtors, and the Reorganized Debtors reserve the right to file any objection to any Claim on or before one hundred eighty (180) days after the Effective Date, and such time period can be extended for cause upon request and approval by the Bankruptcy Court. For the avoidance of doubt, the Debtors, and the Reorganized Debtors after the Effective Date, specifically reserve and retain sole discretion to object to the validity, nature and amount of any Claim, as well as the extent, validity and priority of any alleged security interests asserted in connection with any Secured Claims asserted against the Debtors.

c. It is my understanding that Section 1123(b)(4) provides for the sale of all or substantially all of the property of the estate and distribution of the proceeds. Section 1123(b)(4) is not applicable as the Plan does not contemplate a sale of all or substantially all of the property of the estate.

d.  I understand that Section 1123(b)(6) permits the Plan to contain other provisions as long as such provisions are not inconsistent with the Bankruptcy Code. The Plan does not contain provisions inconsistent with the Bankruptcy Code.

C. <u>Compliance with Section 1125 (Postpetition Disclosure and Solicitation)</u>. It is my understanding that compliance Section 1125 means the Plan Proponent provided adequate information to creditors and other parties in interest to accept or reject a proposed plan. In accordance with the Disclosure Statement Order, the Plan Proponent served copies of the Plan, Disclosure Statement, the Disclosure Statement Order and the ballot upon all of the Debtor's known creditors and interest holders, the Office of the United States Trustee, all parties who had requested notice pursuant to Bankruptcy Rule 2002 and all parties entitled to notice pursuant to Bankruptcy Rule 2002. <u>See</u>, Certificates of Service (R. Doc. 214 and 216). On April 23, 2019, the Debtors filed and served the *Notification of Non-Voting Status for the Debtors' Joint Chapter 11 Plan of Reorganization* 9R. Doc. 213 and 214) Accordingly, the Plan Proponent has complied with the solicitation requirements set forth in Section 1125 (as well as all of the other applicable requirements under the Bankruptcy Code). The ballot tabulation was submitted. <u>See</u>, Ballot Summary and Certification (R. Doc. 229)..

D. <u>Compliance with Section 1129(a)(3) (Plan in Good Faith)</u>. It is my understanding that Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). I believe that the Plan meets the good faith requirement of Section 1129(a)(3). The Plan and the substantial negotiations that led to its creation establish the good faith of this Plan. The Plan that was ultimately created comports with the purposes of the Bankruptcy Code and is fair to creditors.

E. <u>Compliance with Section 1129(a)(4) (Approval of Plan Payments)</u>. It is my understanding that Section 1129(a)(4) requires that any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable. Article II provides that payment for: (i) administrative claims will be made the later of the Effective Date or the date such claim becomes allowed; and (ii) professional fees will be pursuant to an order from the court approving a final allowance of compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code.

F. <u>Compliance With Section 1129(a)(5)(i) and (ii) and 1129(5)(B) (Disclosure of Officers and Insiders)</u>. It is my understanding that Section 1129(a)(5)(i) requires the proponent of the plan must disclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer,

or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan with such appointment "consistent with the interests of creditors and equity holders and with public policy." Further, it is my understanding that Section 1129(5)(B) requires disclosure of the identity of any "insider" that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

Article IV provides that to the extent any Creditor other than an Insider has an Allowed Class 4(a) through 4(h) General Unsecured Claim, such holder will be paid in full on the Effective Date. The Holder of any Existing Equity Interest will retain its Equity Interest in exchange for the contribution of the funds set forth in the SBN Settlement and the capital contribution of the DIP Loan.

G. <u>Compliance with Section 1129(a)(6) (Regulatory Commission)</u>. It is my understanding that Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of the debtor approve any changes in rates provided in the plan. This provision is not applicable to the Plan or the Debtor.

H. <u>Compliance with Section 1129(a)(7) (Best Interest Test)</u>. It is my understanding that Section 1129(a)(7) requires that the plan proponent demonstrate that, with respect to each impaired class of claims or interests, each holder of a claim or interest in such class has either accepted the plan or will receive or retain under the plan property of a value not less than the amount such holder would receive in a chapter 7 liquidation. Pursuant to the liquidation analysis attached as Exhibit 6 to the Disclosure Statement,

I. <u>Compliance with Section 1129(a)(8) (Plan Acceptance)</u>. It is my understanding that Section 1129(a)(8) provides with respect to each class of claims or interests – the class has accepted the plan or the class is not impaired under the plan. It is my understanding that a class of claims accepts a plan if holders of at least two-thirds in amount and more than one-half in number of the allowed claims of that class vote to accept the plan. <u>See</u> 11 U.S.C. § 1126(c). As of the conclusion of the voting period, Class 3 (impaired) voted to accept the Plan and Class 5 (impaired) voted to accept the Plan. Thus, all impaired, non-insider classes voted to accept the Plan. There were no classes that voted to reject the Plan.

J. <u>Compliance with Section 1129(a)(9) (Payment of Claims)</u>.

    a. It is my understanding that Section 1129(a)(9)(A) requires that each holder of an allowed Claim specified in Section 507(a)(2) (administrative expense claims) and Section 507(a)(3)(unsecured claims in an involuntary proceeding) will be paid in full. As provided in Article II of the Plan, administrative claims will be paid in full on the Effective Date or the date such Administrative Expense Claim is deemed Allowed by Final Order of the Bankruptcy Court. This was not an involuntary filing so Section 507(a)(3) is inapplicable.

b. It is my understanding that Section 1129(a)(9)(B) addresses claims of the kind specified in Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7). The Debtors do not have any claims of the kind specified in Sections 507(a)(1) [domestic support obligations and appointed trustee], 507(a)(4) [wage claims], 507(a)(5) [employee benefit plans], 507(a)(6) [farmers and fishermen], or 507(a)(7) [prepetition deposits].

c. It is my understanding that Section 1129(a)(9)(C) and (D) addresses claims of the kind specified in Section 507(a)(8) which is allowed unsecured claims of governmental units. Article II provides for the payment of allowed priority tax claims on the Effective Date.

K. <u>Compliance with Section 1129(a)(10) (Acceptance By One Impaired Class)</u>. It is my understanding that Section 1129(a)(10) requires that at least one impaired class of claims accept the plan, determined without including any acceptance of the plan by an insider holding a claim in such class. One impaired class of creditors have accepted the Plan.

L. <u>Compliance with Section 1129(a)(11) (Feasibility)</u>. It is my understanding that Section 1129(a)(11) requires that confirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. It is not likely that confirmation will be followed by liquidation or the need for further reorganization.

M. <u>Compliance with Section 1129(a)(12) (Section 1930 Fees)</u>. It is my understanding that Section 1129(a)(12) requires that a plan provide that any outstanding fees payable under 28 U.S.C. § 1930 (consisting primarily of the quarterly fee to the United States Trustee) be paid by or on the Effective Date of the Plan. Furthermore, the Reorganized Debtors recognize the continued compliance with 28 U.S.C. § 1930 until such time as the cases are closed, dismissed or converted. See Article II.

N. <u>Compliance with Section 1129(a)(13) (Retiree Benefits)</u>. It is my understanding that Section 1129(a)(13) requires that the Plan provide for the continuation of payment of all retiree benefits. Such requirement does not apply under the Plan or to the Debtors.

O. <u>Compliance with Section 1129(a)(14) (Domestic Support Obligations)</u>. It is my understanding that Section 1129(a)(14) requires that a debtor pay a domestic support obligation. This provision does not apply to the Debtors.

P. <u>Compliance with Section 1129(a)(15) (Individual Debtor)</u>. It is my understanding that Section 1129(a)(15) pertains to resolution of an allowed unsecured creditor

who objects to the plan of an individual debtor. This provision does not apply to the Debtors.

Q. <u>Compliance with Section 1129(a)(16) (Transfers of Property)</u> It is my understanding that Section 1129(a)(16) pertains to the transfers of the property of the plan and such transfers shall be made in accordance with applicable non-bankruptcy law that governs the property of a corporation. Article V provides that all property of the estates shall revest in the Reorganized Debtors.

R. <u>Compliance with Section 1129(b)(1) (Confirmation of the Plan)</u>. It is my understanding that Section 1129(b)(1) provides that if all the applicable requirements of section 1129(a) are met except for Section 1129(a)(8), a plan proponent shall confirm the plan if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that are impaired under the plan.

S. <u>Compliance with Section 1129(c) (Confirmation of only One Plan)</u>. It is my understanding that Section 1129(b)(2)(C) provides that the court may confirm only one plan. There are no competing plans under consideration.

T. <u>Compliance with Section 1129(d) (Plan is Not Proposed to Avoid Taxes)</u>. It is my understanding that Section 1129(d) provides that on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or certain other laws. No governmental party in interest has requested the denial of confirmation based upon Section 1129(d); therefore, it is not applicable. In any event, however, the primary purpose of the Plan is to provide for the continued operations of the Reorganized Debtors and provide for the payment of pre-petition claims.

U. <u>Compliance with Section 1129(e) (Small Business Case)</u>. It is my understanding that Section 1129(e) provides for confirmation of a small business case. The Debtors are not small businesses.

_____
STEVEN MIGUEZ